1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10   SHERRY HUNTER, on behalf of           CASE NO. 16cv532-WQH-BLM
     herself, all others similarly situated,
11   and the general public; MALIA          ORDER
     LEVIN, on behalf of herself, all others
12   similarly situated, and the general
     public,
13
                                Plaintiffs,
14         v.

15   NATURE'S WAY PRODUCTS, LLC;
     SCHWABE NORTH AMERICA,
16   INC.,

17                              Defendants.

     HAYES, Judge:
18
           The matters before the Court are (1) the Motion to Dismiss the Complaint (ECF
19
     No. 12) filed by  Defendants Nature's Way Products, LLC ("Nature's Way") and
20
     Schwabe North America, Inc. ("Schwabe"); and (2) the Motion to Strike Allegations
21
     of the Complaint (ECF No. 13) filed by Defendants.
22
     **I. Background**
23
           On January 28, 2016, Plaintiffs Sherry Hunter and Malia Levin initiated this
24
     action by filing a Complaint in the Superior Court of the State of California County of
25
     San Diego, Case No. 37-2016-00002933-CU-NP-CTL.  On March 2, 2016, Defendants
26
     removed the action to this Court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. §
27
     1332(d)(2)(A), asserting that federal jurisdiction exists pursuant to the Class Action
28
     Fairness Act.

On March 14, 2016, Defendants filed a motion to dismiss the Complaint (ECF No. 12) and a motion to strike allegations of the Complaint (ECF No. 13).  On April 4, 2016, Plaintiffs filed an opposition to the motion to dismiss (ECF No. 18) and an opposition to the motion to strike (ECF No. 17).  On April 11, 2016, Defendants filed a reply to the opposition to the motion to dismiss (ECF No. 19) and a reply to the opposition to the motion to strike (ECF No. 20).  On June 9, 2016, Plaintiffs filed two Notices of Lodgment of Supplemental Authority (ECF Nos. 25, 26).  On June 17, 2016, Defendants filed a response to the Notices of Lodgment.  (ECF No. 27).

## II. Allegations of the Complaint

Plaintiffs allege that "Defendants have manufactured, distributed, marketed, and sold various Nature's Way brand coconut oil products on a nationwide, and indeed international basis for at least the past several years." (ECF No. 1-5 ¶ 49).  "Nature's Way brand coconut oil products challenged in this lawsuit include at least the following . . . : (a) Extra Virgin Coconut Oil, and (b) Liquid Coconut Oil . . . ." *Id.* ¶ 52.  "Each 1 tablespoon (or 15mL) of Nature's Way coconut oil . . . contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat.  Further, each 14-gram serving contains 13 grams of saturated fat." *Id.* ¶ 54.  Plaintiffs allege that various studies have shown that because of its high saturated fat content, the consumption of coconut oil increases the risk of cardiovascular heart diseases and other morbidity. *Id.* ¶¶ 45-48.

"Through statements placed directly on the labels of the Nature's Way coconut oil products, defendants market and advertise the products as both inherently healthy, and healthy alternatives to butter, margarine, and other oils, even though the products' total and saturated fat content render them both inherently unhealthy, and less healthy alternatives." *Id.* ¶ 57.

> Directly on the Nature's Way Extra Virgin Coconut Oil label, defendants claim the product has a "Variety of Healthy Uses." Defendants encourage consumers to "Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless." These claims taken individually and in context of the label as a whole, are false

and misleading because Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

*Id.* ¶ 60. "[D]efendants claim that the product[s are] 'ideal for exercise & weight loss programs.'" *Id.* ¶¶ 61, 71. "To reinforce this misleading health message, defendants label the Extra Virgin Coconut Oil [and Liquid Coconut Oil] as 'Premium Quality,' 'non-hydrogenated,' and containing 'no trans fat.'" *Id.* ¶¶ 62, 72. "[D]efendants claim that their Nature's Way Extra Virgin Coconut Oil provides 'Natural Energy' and contains '62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy.' Defendants even recommend consumers 'Take 1 tablespoon (14g) up to 4 times daily.'" *Id.* ¶ 63. "[D]efendants claim that Nature's Way Liquid Coconut Oil provides 'Natural Energy' and contains '13 g of medium chain triglycerides' or '93% MCTs.'" *Id.* ¶ 72. "[D]efendants suggest that their Nature's Way Extra Virgin Coconut Oil 'be used in place of butter, margarine, shortening or other cooking oils.'" *Id.* ¶ 64.

> [D]efendants suggest that the Nature's Way Liquid Coconut Oil be used 'as an alternative to butter, margarine or vegetable oil.' This misleadingly suggests that replacing butter, margarine or vegetable oil with Nature's Way Liquid Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption of unsaturated fat . . . ."

*Id.* ¶ 73. Plaintiffs allege that the totality of Nature's Way coconut oil "label[s] and packaging conveys the concrete message to a reasonable consumer that the product is healthy, and a more healthful alternative to butter, margarine, shortening, or other cooking oils." *Id.* ¶¶ 66, 75. The Complaint provides exemplars of the labels that are allegedly attached to Nature's Way coconut oil containers.

"The labels of the Nature's Way coconut oil products direct consumers to the Nature's Way website . . . ." *Id.* ¶ 76. "Through statements on Nature's Way's website, defendants portray Nature's Way as a company devoted 'To help[ing] [consumers] enhance their health,' . . . ." *Id.* ¶ 77. "Nature's Way further claims that 'The health properties of coconut oil have been known for thousands of years. Coconut oil naturally contains 'good fats' called medium chain triglycerides (MCTs), which your body uses to produce energy. [] Adding coconut oil to your diet can help increase

1   metabolism, and help fuel any healthy lifestyle.'" *Id.* ¶ 78.

2        "Plaintiff Sherry Hunter purchased Nature's Way Extra Virgin Coconut Oil. As

3   best she can remember, she purchased the 16-ounce variety of Nature's Way Extra

4   Virgin Coconut Oil in or around July 2015 from a Sprout's Farmers Market located at

5   690 3rd Ave., Chula Vista, CA 91910, for approximately $10." *Id.* ¶ 107.

6            As best she recalls, [Plaintiff Malia] Levin began purchasing Nature's
             Way Extra Virgin Coconut Oil approximately five years ago. Since that
7            time, until recently, she has purchased the product approximately once per
             month. [Plaintiff] Levin believes she most recently purchased a 32-ounce
8            container of Nature's Way Extra Virgin Coconut Oil in or around
             September or October of 2015 from Accent on Health, located on 18559
9            Devonshire Street, Northridge, California 91324, for approximately $24.

10  *Id.* ¶ 108. Plaintiffs allege that, "[w]hen deciding to purchase Nature's Way Extra

11  Virgin Coconut Oil, plaintiffs read and relied on the . . . claims . . . on the product's

12  label." *Id.* ¶ 109.

13       Plaintiffs allege that "Defendants' deceptive statements . . . violate Cal. Health

14  & Safety Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its

15  labeling is 'false or misleading in any particular.'" *Id.* ¶ 83. Plaintiffs allege that labels

16  on Defendants' coconut oil containing the phrases "non-hydrogenated," "no trans fat,"

17  "62% MCTs," "62% (8,694 mg) medium chain fatty acids (MCTs) per serving," "93%

18  MCTs," and "13 g of medium chain triglycerides," "meet the definition of nutrient

19  content claims because they characterize the level of trans fat, and fatty acids, in the

20  coconut oil products, which are the type required to be in nutrition labeling. *See* 21

21  C.F.R. § 101.13(b)(1)." *Id.* ¶¶ 88-89. "Under 21 C.F.R. § 101.13(h), a food that bears

22  an express or implied nutrient content claim, and that contains more than 13 grams of

23  total fat or 4 grams of saturated fat per serving, must also bear a disclosure statement

24  on the label, immediately adjacent to the claim, referring the consumer to nutrition

25  information for that nutrient, e.g., 'See nutrition information for total fat and saturated

26  fat content.'" *Id.* ¶ 90. Plaintiffs allege that Defendants' "labels fail to bear these

27  mandatory disclosure statements . . . . Therefore, Nature's Way Extra Virgin Coconut

28  Oil and Nature's Way Liquid Coconut Oil are misbranded." *Id.* ¶ 91. Plaintiffs allege

that Defendants' coconut oil products are "misbranded because 'no trans fat' is an unauthorized nutrient content claim that may not be used in the labeling of any foods." *Id.* ¶ 92.  "Plaintiffs and members of the Class would not have purchased the Nature's Way coconut oil products if they knew the products were and are misbranded . . . and omit material information and disclosures." *Id.* ¶ 93.

Plaintiffs allege that "the labels of the Nature's Way coconut oil products are misleading and misbranded because they claim that the oils are healthy, but the products do not meet the requirements for making such claims." *Id.* ¶ 94.  "The Nature's Way coconut oil products both contain 14 grams of total fat per RACC or labeled serving, and 50 grams of total fat per 50 grams.  Thus the Nature's Way coconut oil products do not meet the total fat requirement in section 101.65(d)(2)(i)(F), and as a result, their use of a 'healthy' term renders the products misbranded." *Id.* ¶ 100.  Plaintiffs further allege that Defendants' products are misbranded because they do not meet the saturated fat requirements of section 101.65(d)(2)(i)(F) and "do not contain 'at least 10 percent of the RDI or the DRV per RACC of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber . . . ." *Id.* ¶¶ 102-103.  "Defendants' use of the term healthy (and variations) to describe Nature's Way coconut oil products not only violate 21 C.F.R. § 101.65 and renders the products misbranded, but also misleads consumers regarding the nature of the oils, in the specific manner the regulations are intended to prevent." *Id.* ¶ 106.

Plaintiffs allege that based on these representations, they "believed the Nature's Way Extra Virgin Coconut Oil was healthy, healthier than butter, margarine, shortening and other cooking oils, and would not raise or otherwise detriment their blood cholesterol levels." *Id.* ¶ 110.  "Plaintiffs paid more for the Nature's Way Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of . . . ." *Id.* ¶ 116.  Plaintiffs allege that "[i]nstead of receiving products that had actual healthful qualities, the products that plaintiffs and the Class received were ones that are not

healthy, but rather their consumption causes increased risk of CHD, stroke, and other morbidity." *Id.* ¶ 118. Plaintiffs allege that they "would not have purchased Nature's Way Extra Virgin Coconut Oil if they knew that it was misbranded pursuant to California and FDA regulations, or that its labeling claims were false and misleading." *Id.* ¶ 119.

Plaintiffs allege that "Plaintiff Malia Levin did not discover that defendants' labeling of the Nature's Way Extra Virgin Coconut Oil was false, deceptive, or misleading until approximately December 2015 when she spoke with her counsel in this matter." *Id.* ¶ 123. "[Plaintiff] Levin, in the exercise of reasonable diligence, could not have discovered defendants' deceptive practices earlier because, like nearly all consumers, she does not have access to scholarly publications where scientific evidence of negative health effects of coconut oils on human health has been published." *Id.* ¶ 125.

Plaintiffs "bring this suit as a class action pursuant to California Code of Civil Procedure section 382 on behalf of themselves and a Class of all persons in California who purchased, for personal or household use, and not for resale or distribution, Nature's Way Extra Virgin Coconut Oil, or Nature's Way Liquid Coconut Oil . . . ." *Id.* ¶ 127.

Plaintiffs bring the following causes of action: (1) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* based on allegations that Defendants' claims relating to the Nature's Way coconut oil products are fraudulent, unlawful, and unfair; (2) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* based on allegations that Defendants' advertisements and labeling misled reasonable consumers; (3) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* based on allegations that Defendants falsely and deceptively advertised Nature's Way coconut oil products; (4) Breach of Express Warranties, Cal. Com. Code § 2313(1); and (5) Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314.

Plaintiffs seek class certification and an Order compelling Defendants to bear the cost of class notice.  Plaintiffs seek an Order compelling Defendants to conduct a corrective advertising campaign, to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products.  Plaintiffs seek disgorgement, restitution, punitive damages, and an award of attorneys' fees and costs.

## III. Motion to Dismiss

### A. Request for Judicial Notice

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, there are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id*.  First, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . .  is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed R. Evid. 201(b).  [U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)).  Second, under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." *Parrino v. FHP, Inc*., 146 F.3d 699, 705 (9th Cir. 1998) (internal quotation marks omitted).

"[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have

a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotations omitted).

Plaintiffs request the Court to take judicial notice of a warning letter sent from the U.S. Food and Drug Administration to Carrington Farms regarding labeling on coconut oil. (ECF No. 18-2). Plaintiffs filed two notices of supplemental authority containing orders filed in two United States District Court cases. The Court takes judicial notice of these documents which are not subject to reasonable dispute over their authenticity. *See* Fed R. Evid. 201(b); *Lee*, 250 F.3d at 690.

**B. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which

requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Medical Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000). In resolving an attack on a court's jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004). Issues regarding subject matter jurisdiction may be raised at any time, even on appeal, by motion or sua sponte by the court. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland,* 316 F.3d 822, 826-27 (9th Cir. 2002).

### C. Discussion

#### 1. Misrepresentation-Based Claims

Defendants contend that all of Plaintiffs' claims fail for lack of specific facts plausibly alleging their misrepresentation-based claims. Defendants assert that Plaintiffs do not allege that the product labeling states that Defendants' coconut oil products are "inherently healthy" or "a healthier alternative" to other oils. Defendants contend that

Plaintiffs do not allege facts to support an inference that the labeling would mislead reasonable consumers.  Defendants contend that Plaintiffs' allegations of reasonable reliance are insufficient because they do not allege that the exemplar labels are the labels they relied on when they purchased the product, do not allege that the labels provided an assurance that the product would not increase their risk of CDH, stroke, or other morbidity, and do not allege that they were unaware that coconut oil was saturated fat or that studies had linked over-consumption of saturated fats with an increased risk of heart disease.

Plaintiffs contend that a reasonable inference from the claims "Variety of Healthy Uses: Enjoy straight from the jar . . ." is that the oil is inherently healthy since consuming it "straight from the jar" is a healthy use.  Plaintiffs contend that the "Recommendation: Take 1 tablespoon (14g) up to 4 times daily" followed by "use[] in place of butter, margarine, shortening or other cooking oils" could reasonably be understood to mean that the product is healthier than those substitutes.  Plaintiffs contend that the Complaint alleges that coconut oil is inherently unhealthy because it alleges that there is no safe level of saturated fat intake.  Plaintiffs contend that they have sufficiently alleged reliance and that reasonable consumers are misled by statements on Defendants' coconut oil labels.  Plaintiff contends that Plaintiffs' claims should not be dismissed at this stage of the proceedings because health and wellness claims may plausibly mislead reasonable consumers when other harmful ingredients are present.

"To have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they relied on the misleading materials." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013).  A plaintiff may prove reliance "'by showing the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'" *Hodsdon v. Mars*, Case No. 15-cv-04450-RS, 2016 WL 627383, at *3 (N.D. Cal. Feb. 17, 2016) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).  The Ninth Circuit in *Hinojos* found that

"[p]leading that one would not have otherwise purchased the product but for the misleading advertising also satisfies the consumer's obligation to plead a causal link between the advertising and the alleged economic injury." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.5 (9th Cir. 2013); *see also Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 1841231, at *4 (S.D. Cal. Mar. 20, 2015).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code. § 17200. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." *Id.* § 17500. California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Under these California statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Id.* at 939; *accord Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007). "[I]t is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (quoting *Williams*, 552 F.3d at 939).

In this case, Plaintiffs allege that they relied on the label of the coconut oil prior to purchasing it. *See* Compl. ¶ 109. Plaintiffs allege that the claims Defendants made on the Nature's Way coconut oil products, "taken individually, and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Extra Virgin Coconut Oil is healthy, when it is not, and that the product is healthier or more nutritious than butter, margarine, shortening or other cooking oils, which it is not." *Id.* ¶ 65. Plaintiffs allege that "defendants' labeling claims are designed to conceal or distract consumers from noticing that their Nature's Way coconut oils are pure fat." (Comp. ¶ 57). Plaintiffs have alleged that the likelihood of misleading consumers is the reason why the FDA prohibits labeling foods

as "healthy" unless they contain less than 3 grams of total fact and 1 gram of saturated fat. *Id.* ¶¶ 94-106 (citing 21 C.F.R. § 101.65(d)(2)).

The Court concludes that the facts alleged are sufficient to support the misrepresentation claims; this is not one of the "rare situations" where granting a motion to dismiss Plaintiff's claims regarding deceptive advertising is appropriate. Representations made on the label of the coconut oil products may be misleading and deceptive even though the representations do not directly contradict the ingredients listed on the label. *See Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). The representations on the coconut oil labels "may be deceptive and actionable under the UCL, FAL, and CLRA even though [they are] truthful." *In re Ferrero Litigation*, 794 F. Supp. 2d at 1115; *see also Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985) (The UCL and FAL "have been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public."); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (Under the FAL, "even a perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose relevant information, is actionable . . . ."). Plaintiffs have alleged sufficient facts to support an inference that they relied on the representations made by Defendants on the coconut oil products that they purchased. Plaintiffs have also alleged sufficient facts to support an inference that a reasonable consumer would be deceived by the labels of Nature's Way coconut oil products. Based on the allegations in the Complaint, "at the very least, there appears to be a question of fact regarding whether a reasonable consumer would be likely to be misled . . . ." *See Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1096 (N.D. Cal. 2013). At this stage in the proceedings, the Court cannot conclude that as a matter of law the claims made on Nature's Way coconut oil

products are not deceptive.

## 2. Violation of State or Federal Food Labeling Regulations

Defendants contend that Plaintiffs do not allege the manner in which any statement on the coconut oil packaging constitutes a "health claim" under the FDA's definition. Defendants contend that Plaintiffs do not allege a violation of FDA regulations regarding the use of the word "healthy" because they do not allege use of the word "healthy" in connection with a nutrient claim. Defendants contend that Plaintiffs do not allege plausible facts of reliance and causation in connection with an alleged misbranding violation.

Plaintiffs contend that the coconut oil product labels violate general provisions prohibiting misleading claims and also specific regulations by using nutrient claims "non-hydrogenated" and "no trans fat," and claims about the products' medium triglycerides/fatty acid content along with the claim "Variety of Healthy Uses." Plaintiffs contend that the term "healthy" is used in connection with nutrient content claims. Plaintiffs contend that they need not plead reliance to assert their UCL "unlawful" claim but have alleged that they relied on the exact statements that violate federal labeling regulations.

Section 101.65(d) of 21 C.F.R. governs "labeling claims that are implied nutrient content claims because they: (i) Suggest that a food because of its nutrient content may help consumers maintain healthy dietary practices; and (ii) Are made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." Section 101.65(d) permits use of the term "healthy" or related terms as an implied nutrient content claim on the label if the food is "Low fat as defined in § 101.62(b)(2)," "Low saturated fat as defined in § 101.62(c)(2)," "The disclosure level for cholesterol specified in § 101.13(h) or less," and "At least 10 percent of the RDI or the DRV per RA of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." 21 C.F.R. § 101.65(d).

In this case, the parties dispute whether Defendant's representation "Variety of

Healthy Uses" was made in connection with a nutrient content claim. The Complaint alleges that Defendants' coconut oil products contain 14 grams of fat. Plaintiffs allege that Defendants' representation "Variety of Healthy Uses" is used in close proximity on the products' label to representations about "Non-hydrogenated; No trans fat" and claims regarding medium chain triglyceride content. These allegations are plausibly suggestive of a claim that Defendants use the term "healthy" in connection with a nutrient content claim. Plaintiffs have alleged sufficient facts to support an inference that they relied on the representations that are the basis of the alleged labeling violations and that the alleged labeling violations caused Plaintiffs' economic injuries.

### 3. Breach of Warranty Claims

Defendants contend that Plaintiffs' claims do not meet the standards to state a claim for express breach of warranty because Plaintiffs do not allege any express "affirmation of fact" made by Defendants that their coconut oil products are "inherently healthy" or a "healthier alternative" to other oils and fats. Defendants contend that Plaintiffs do not state a breach of implied warranty claim because Plaintiffs do not allege that the coconut oil was unfit for its "ordinary purpose" or was below a "minimum level of quality." Defendants contend that Plaintiffs implied warranty claims should be dismissed because Plaintiffs do not stand in direct contractual privity with Defendants because they purchased the products from third parties.

Plaintiffs contend that they properly alleged that Defendants expressly warranted Nature's Way Extra Virgin Coconut Oil as "premium quality," "healthy," and "Ideal for exercise and weight loss programs." Plaintiffs contend that their implied warranty claim stems from the products failure to conform to promises and affirmations made on the container label, not a "minimum level of quality." Plaintiff contends that where the implied warranty claim is based on reliance on statements on a product's packaging, the plaintiff does not need to allege privity.

Under the California Commercial Code § 2313, "[t]o prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of

fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013). *See also Long v. Graco Children's Products Inc.*, Case No. 13-cv-1257-WHO, 2013 WL 4655763, at * 12 (N.D. Cal. Aug. 26, 2013); *In re Ferrero Litigation*, 794 F. Supp. 2d at 117. The Ninth Circuit has held that "generalized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely." *Glen Holy Entertainment, Inc. v. Tektronix Inc*, 343 F.3d 1000, 1015 (9th Cir. 2003); *see also Viggiano*, 944 F. Supp. 2d at 894 ("The term 'premium,' however, is mere puffery; it has no concrete, discernable meaning . . . and thus cannot give rise to a breach of warranty claim.").

Plaintiffs allege that defendants expressly warranted Extra Virgin Coconut Oil as "premium quality," "healthy," and "Ideal for exercise and weight loss programs." (Compl. ¶¶ 109, 167). Plaintiffs allege that they relied on these representations when purchasing the product and that "Defendants breached their express warranties by selling products that are not healthy" and increase the risk of serious diseases. *Id.* ¶ 169. The Court concludes that Defendants' use of the term "premium" is mere puffery because it has no concrete meaning in the context of coconut oil products and is not actionable under a breach of warranty claim. *See Viggiano*, 944 F. Supp. 2d at 894. The Court concludes that Plaintiffs' allegations regarding Defendants' use of the term "healthy" and claim that the coconut oil product is "Ideal for exercise and weight loss programs" are sufficient to show that Defendants made "affirmation[s] of fact or promise[s] or provided a description of its goods." *See id.* at 893. Plaintiffs have alleged sufficient facts to infer that Plaintiffs relied on Defendants' warranties and Defendants' breach of those warranties caused Plaintiffs injury. The Court concludes that Plaintiffs have alleged sufficient facts to state a claim for breach of express warranty under the California Commercial Code § 2313.

Under California Commercial Code § 2314, "a warranty that the goods shall be

merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." Although Defendants contend that Nature's Way coconut oil products are fit for their ordinary purpose of consumption, Plaintiffs bring their claim under the definition of merchantability that requires a product to conform to "the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(f). The Court concludes that Plaintiffs have alleged sufficient facts to support a claim for breach of implied warranty of merchantability under § 2314(2)(f). *See In re Ferrero Litigation*, 794 F. Supp. 2d at 1118.

Defendants also contend that Plaintiffs fail to state a claim for breach of implied warranty of merchantability because Plaintiffs' allegations do not support an inference that Plaintiffs stand in direct contractual privity with Defendants because they purchased the products from a third party retailer. "As the Ninth Circuit has explained, however, although the general rule is that a plaintiff alleging a breach of implied warranty 'must stand in vertical privity with the defendant,' an exception exists 'when the plaintiff relies on written labels or advertisements of a manufacturer.'" *Johnson v. Triple Leaf Tea Inc.*, (N.D. Cal. Sept. 23, 2014) (finding that "plaintiff need not allege privity" because "plaintiff's implied warranty claim is based on her reliance on statements on the packaging for Dieter's Green") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir. 2008) (applying California law). In this case, Plaintiffs' implied warranty claims are based on their reliance on statements on the labels of Nature's Way coconut oil products. Plaintiffs need not allege privity. Defendants' motion to dismiss Plaintiffs' breach of warranty claims is denied.

### 4. UCL Claims

Defendants contend that Plaintiffs fail to state a claim based on the "fraudulent" and "unlawful" prongs of the UCL because they fail to state claims under the CLRA,

FAL, or for a breach of warranty. Defendants contend that Plaintiffs fail to state a claim under the "unfair" prong because the Complaint does not allege facts explaining why the conduct is unfair or how it is immoral and instead pleads only labels and conclusions.

Plaintiffs contend that the allegations alleged in the Complaint are sufficient to state claims under all three independent prongs of the UCL. Plaintiffs contend that they state a claim under the "unfair" prong because Plaintiffs may be able to prove facts showing that the harm to the consumer from Defendants' misrepresentation outweighed the utility of Defendants' practice.

To violate the UCL, a business practice must meet one of three criteria: unlawful, unfair, or fraudulent. *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). The UCL prohibits similarly "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Advertising is broadly defined to include virtually any statements made in connection with the sale of goods or services, including statements and pictures of labels." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 452 (S.D. Cal. 2014) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

"The standard under . . . the 'fraudulent' prong of the UCL is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *Dorfman v. Nutramax Laboratiries, Inc.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *10 (S.D. Cal. Sept. 23, 2013) (citing *Williams*, 552 F.3d at 938). A UCL fraud claim must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotations omitted).

The Court has concluded that Plaintiffs have alleged sufficient facts to meet the "reasonable consumer" test. Plaintiffs have alleged the locations and approximate dates

at which they purchased the Nature's Way Extra Virgin Olive Oil.  Plaintiffs identify the allegedly false and misleading representations made by Defendants.  Plaintiffs cite scientific studies that allegedly undermine Defendants' representations.  The Court finds that these allegations are "sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiffs'] theory has a basis in fact."  *Dorfman*, 2013 WL 5353043, at *12 (quoting *Berson v. Applied Signal Tech, Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008). Plaintiffs allegations provide Defendants with sufficient notice to defend the claims against them.  *See id.*  The Court concludes that Plaintiffs have alleged sufficient facts to meet the particularity requirement of Rule 9(b) and to state a claim under the "fraudulent" prong of the UCL.  The motion to dismiss the UCL "fraudulent" prong claim is denied.

"Under the UCL, an 'unlawful' business practice is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Id.* (quotation omitted).  "The UCL borrows violations from virtually any state, federal, or local law and makes them independently actionable." *Id.* (quotation omitted).  Having concluded that Plaintiffs have adequately alleged claims against Defendant for express and implied breaches of warranty, violations of FDA regulations, and violations of the FAL and CLRA, the Court concludes that Plaintiffs have adequately alleged a claim against Defendants for "unlawful" conduct in violation of the UCL.

"Under the unfair prong, a plaintiff must allege facts to establish 'the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' or tether the UCL 'to some specific constitutional, statutory, or regulatory provisions." *Bautista v. Valero Marketing and Supply Co.*, (quoting *Hodson v. Mars*, Case No. 15-cv-04450-RS, 2016 WL 627383, at *7 (N.D. Cal. Feb. 17, 2016)).  When a plaintiff's claims sound in fraud, courts in this circuit have applied Rule 9(b)'s heightened pleading standard to not just the "fraudulent" prong of the UCL, but the "unlawful" and "unfair" prongs as well. *See Bautista*, at *2; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Plaintiffs allege that "Defendants' conduct with respect to the

labeling, advertising, and sale of the Nature's Way coconut oil products was unfair because defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of their conduct, if any, does not outweigh the gravity of harm to their victims." (Compl. ¶ 142). Plaintiffs allege that Defendants' conduct was also unfair "because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law." *Id.* ¶ 143. Plaintiffs allege that "Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Nature's Way coconut oil products to unwary consumers." *Id.* ¶ 145. The Court concludes that Plaintiffs' conclusory allegations regarding Defendants' "unfair" business practices are not pleaded with sufficient specificity to state a claim under the "unfair" prong of the UCL.

Defendants' motion to dismiss Plaintiffs' claims under the UCL is granted as to Plaintiffs' claim under the "unfair" prong of the UCL and denied as to Plaintiffs' claims under the "fraudulent" and "unlawful" prongs of the UCL.

### 5. Statute of Limitations

Defendants contend that Plaintiff Levin has not alleged sufficient facts to show that she was not negligent in failing to make the discovery regarding the alleged misbranding sooner and she had no actual or presumptive knowledge of facts sufficient to put her on notice. Defendants contend that the Complaint does not allege facts to show that Plaintiff Levin was unable to learn of the alleged misrepresentations by using reasonable diligence.

Plaintiffs contend that Plaintiff Levin adequately pleads delayed discovery. Plaintiffs contend that Defendants' assertion that all of Plaintiff Levin's claims are time-barred ignores the continuing violation doctrine, under which all of Plaintiff Levin's claims accrued within the statute of limitations. Plaintiffs contend that the only question is whether the delayed discovery doctrine allows Plaintiff to also seek damages

for injuries incurred before the statute of limitations period.

The statute of limitations for actions under the FAL or CLRA is three years.  Cal. Code Civ. Proc. § 338(a); Cal. Civ. Code § 1783.   The statute of limitations for UCL or breach of warranty claims is four years.  Cal. Bus. & Prof. Code § 17208.  "The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues . . . . [O]rdinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action."  *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013) (quotations omitted).  "To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods."  *Id.*  "The most important of these doctrines, the [delayed] discovery rule, where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Id.* (quotations omitted).  Under another exception, "the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period."  *Id.*  The continuing violation doctrine is meant to serve equitable purposes when "injuries are the product of a series of small harms, any one of which may not be actionable on its own," or when the plaintiff has alleged "a pattern of reasonably frequent and similar acts . . . justifying treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period."  *Id.* at 879.

> The theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance.  In addition, where the misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated.

*Id.* at 880.  The burden is on the plaintiff to allege that his or her claims fall within the

applicable statute of limitations or survive based on an exception to limitations period. *See id.* at 879.

In this case, Plaintiff Levin alleges that she purchased Defendants' product "approximately five years ago" and "[s]ince that time, until recently, she has purchased the product approximately once per month." (Compl. ¶ 108). Plaintiff Levin alleges that when she bought Nature's Way Extra Virgin Coconut Oil, she relied on the alleged misrepresentations on the label. *Id.* ¶ 109. Plaintiff Levin adequately alleges that she relied on misrepresentations Defendants made on their Extra Virgin Coconut Oil and that the misrepresentations constituted a continuing violation over the course of the approximately five years that Plaintiff Levin continued to purchase the Extra Virgin Coconut Oil. The Court finds that Plaintiff Levin has sufficiently alleged facts to infer that the continuing violation doctrine provides an exception to the statutes of limitations for the FAL, UCL, CLRA, and breach of warranty claims in this case. The Court concludes that Plaintiff Levin has plausibly alleged UCL and breach of warranty claims for the four-year statute of limitations and FAL and CLRA claims for the three-year statute of limitations preceding the filing of the Complaint.

The remaining issue regarding the statute of limitations is whether Plaintiff Levin has sufficiently alleged that the delayed discovery doctrine applies, thus allowing her to bring claims that accrued outside of the respective statute of limitations periods. "In California, the delayed discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Plumlee v. Pfizer, Inc.*, No. 13-cv-00414, 2014 WL 695024, at * 8 (N.D. Cal. Feb. 21, 2014) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008).

> A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand a motion to dismiss.

*Id.*

Plaintiff Levin alleges that she "did not discover that defendants' labeling of the

Nature's Way Extra Virgin Coconut Oil was false, deceptive, or misleading until approximately December 2015 when she spoke with her counsel in this matter." *Id.* ¶ 123. The Complaint alleges that "Ms. Levin, in the exercise of reasonable diligence, could not have discovered defendants' deceptive practices earlier because, like nearly all consumers, she does not have access to scholarly publications where the scientific evidence of negative health effects of coconut oils on human health has been published." *Id.* ¶ 124. The Complaint alleges that Plaintiff Levin "is a lay consumer who did not possess the specialized knowledge defendants possessed regarding the negative health effects of coconut oil." *Id.* ¶ 125.

The Court concludes that Plaintiff Levin has not met her burden of pleading facts that show her diligence. The Complaint does not provide an adequate basis for the Court to conclude Plaintiff Levin was unable to discover the facts to support her claims earlier despite reasonable diligence. Plaintiff Levin pleads no facts that would support a finding that she was "not negligent in failing to make the discovery sooner and that [s]he had no actual or presumptive knowledge of facts sufficient to put [her] on inquiry." *Plumlee*, 2014 WL 695024, at * 9 (quoting *Clemens*, 534 F.3d at 1024). While Plaintiff alleges that she did not access to publications where scientific evidence about coconut oil and human health have been published, Defendants note that the Complaint lists sources on the internet for the studies cited in the Complaint. Plaintiff does not allege that she took any steps towards discovery. Because Plaintiff Levin has failed to meet her burden to adequately plead the inability to have made an earlier discovery despite reasonable diligence, Plaintiff Levin's claims for alleged violations that occurred outside of the respective statute of limitations for the CLRA, UCL, FAL, and breach of warranty claims are time-barred. Defendants' motion to dismiss Plaintiff Levin's claims based on the delayed discovery rule is granted, however Plaintiff Levin's claims remain pending insofar as they fall within the statutes of limitations allowed by the continuing violation doctrine.

### 6. Standing to Pursue Injunctive Relief

Defendants contend that Plaintiffs lack standing to pursue injunctive relief because Plaintiffs do not allege that they will buy the coconut oil product again.

Plaintiffs contend that there is a spit in the Ninth Circuit regarding whether a plaintiff may seek injunctive relief when he or she is aware that the challenged advertising is deceptive. Plaintiffs contend that consumers have a broad right to be free from deception in the marketplace regardless of whether the Plaintiff is now aware of the deception or intends to purchase the products in the future. Plaintiffs contend that as class representatives, they have standing to seek injunctive relief on behalf of absent class members that are unaware of the deception.

To have standing to pursue prospective injunctive relief, Article III of the United States Constitution requires a plaintiff to "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). "To establish standing to prospective injunctive relief, Plaintiff must demonstrate that 'he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that he will again be wronged in a similar way.' Plaintiff must establish a 'real and immediate threat of repeated injury.'" *Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM-DHB, 2013 WL 1969957 (S.D. Cal. May 13, 2013) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). This Court has recognized that "courts in this circuit 'are split over the issue of whether a plaintiff, who is seeking to enjoin a seller or manufacturer from making false or misleading misrepresentations about an item the plaintiff previously purchased, must be able to establish that he would likely purchase the item again to establish standing." *Dorfman v. Nutramax Laboratiries, Inc.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *8 (S.D. Cal. Sept. 23, 2013) (quoting *Mason*, 2013 WL 1969957, at *2-3). The court in *Mason* explained:

> [As important as consumer protection is, it is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws . . . .
>
> Moreover, plaintiffs who have no intention of again purchasing a product that is the focus of false advertising claims are not precluded from seeking

an injunctive remedy because they can sue in state court.  In assessing standing, California courts are not bound by the 'case or controversy requirement of Article III of the United States Constitution, but instead are guided by prudential considerations.

*Mason*, 2013 WL 1969957, at *4-5 (quotations omitted).  In *Mason* and *Dorfman*, the Court found that, based on the plaintiffs' allegations that the products at issue were ineffective, the plaintiffs did not intend to purchase the products again and concluded that the plaintiffs "had failed to adequately allege that [they faced] a 'real and immediate threat of repeated injury.'" *Dorfman*, 2013 WL 5353043, at *9 (quoting *Bates*, 511 F.3d at 985).

In this case, Plaintiffs have alleged similar facts and causes of action as the plaintiffs in *Mason* and *Dorfman*, which were also class action suits related to deceptive advertising of consumer products.  Plaintiffs do not allege that they will purchase Defendants' coconut oil products in the future.  Plaintiffs allege that they would not have purchased the products if they knew that it was misbranded or that the labeling claims were false or misleading.  These allegations support an inference that now that Plaintiffs are aware of the alleged misrepresentations on the coconut oil labels, Plaintiffs will not purchase the products in the future.  Accordingly, the Court finds that Plaintiffs have failed to allege that they face a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985.  Plaintiffs lack Article III standing to seek injunctive relief. *See id.*  The motion to dismiss Plaintiffs' request for injunctive relief is granted.

### 7. Standing for Claims Regarding Liquid Coconut Oil

Defendants contend that Plaintiffs have not alleged facts to support standing as to the Nature's Way Liquid Coconut Oil because neither Plaintiff alleges that they bought the liquid product or that the Extra Virgin Coconut Oil and the Liquid Coconut Oil products are substantially similar.  Plaintiffs contend that they may assert claims on behalf of the class concerning substantially similar products that they did not purchase, but that this determination is made at the class certification stage of the proceedings.

"In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase."

1   *Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at

2   *4 (E.D. Cal. Apr. 9, 2014) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp.

3   2d 861, 868 (N.D. Cal. 2012).  "However, "[t]he majority of the courts that have

4   carefully analyzed the question hold that a plaintiff may have standing to assert claims

5   for unnamed class members based on products he or she did not purchase as long as the

6   products and alleged misrepresentations are substantially similar." *Id.*  "Factors that .

7   . . courts have considered include whether the challenged products are the same kind,

8   whether they are comprised of largely the same ingredients, and whether each of the

9   challenged products bears the same alleged mislabeling." *Id.* (quoting *Wilson v. Frito-*

10  *Lay N. Am.*, 961 F. Supp. 2d 1134, 1140-41 (N.D. Cal. 2013)).

11          This case is distinguishable from the case Defendant's rely on, *Wilson v. Frito-*

12  *Lay North America*, in which the Court held that plaintiffs lacked standing as to

13  products they did not purchase because "Plaintiffs simply provide[d] a list of Non-

14  Purchased Products, attach[ed] barely-legible labels . . . and assert that these labels are

15  lawful or misleading."  961 F. Supp. 2d at 1141.  The court in *Wilson* held that

16  plaintiffs' allegations were "not enough–the Court cannot just assume that every one

17  of the Non-Purchased Products' labels is actionable in the same way as the more fully

18  described Purchased Products labels are." *Id.*  In this case, although the Plaintiffs do

19  not allege that they have purchased the liquid coconut oil product, they allege that both

20  types of coconut oil have the same composition: "in each 14-gram serving there are 14

21  grams of fat.  Further, each 14-gram serving contains 13 grams of saturated fat."

22  (Compl. ¶ 54).  Plaintiffs allege that the claims made on the labels of both types of

23  coconut oil products are nearly identical, both products containing the claims: "variety

24  of healthy uses," "premium," "non-hydrogenated," "no trans fat," and Natural Energy."

25  *Id.* ¶¶ 60-62, 70-73.  Plaintiffs also allege that both coconut oil products contain

26  assertions that the product can be used in place of "butter, margarine" and other

27  vegetable or cooking oils.  The Court concludes that Plaintiffs have alleged sufficient

28  facts to show that Nature's Way Liquid Coconut Oil is substantially similar to Nature's

Way Extra Virgin Coconut Oil. Plaintiffs have standing to bring claims on behalf of putative class members alleging that Nature's Way Liquid Coconut Oil was mislabeled.

**IV. Motion to Strike**

Defendants contend that the Complaint contains immaterial and impertinent allegations, specifically references to websites that Plaintiffs do not allege they viewed, allegations about a product they do not allege they bought, and defective class allegations, that should be stricken to avoid the expenditure of time and money required to litigate the allegations. Plaintiffs contend that allegations related to websites and products Plaintiffs did not purchase are relevant to the class action. Plaintiffs contend that Defendants' contentions that Plaintiffs' class allegations should be struck are premature at this stage in the proceedings.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (*citing Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)). "[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike, and "[u]ltimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (*citing Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)). In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Cal. Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033. "Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D.

Cal. 1995).

With regard to Defendants' motion to strike allegations regarding statements on Defendants' website and allegations regarding the coconut oil product not purchased by Plaintiffs, the Court concludes that issues regarding whether these allegations are material to the litigation will be better resolved at the class certification stage of the proceedings. *See Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, Case No. 14-cv-02006-JST, 2015 WL 510919, at *34-35 (N.D. Cal. Feb. 5, 2015) ("The Court disagrees with Defendant that these allegations are 'immaterial' to the case. . . . [E]ven though Plaintiff has not alleged that he personally relied on Defendant's website and advertising materials, these materials may be relevant to class certification and absent class members' reliance on Defendants' promotional materials.").

The Court has determined that allegations regarding the Nature's Way Coconut Oil products that Plaintiffs did not purchase are sufficient to state a claim at this stage in the proceedings.  Whether the coconut oil products are substantially similar is an issue that will be addressed at the class certification stage of the proceedings. *See Kosta v. Del Monte Corp.*, No. 12-cv-01722, 2013 WL 2147413, at *51 (N.D. Cal. May 15, 2013) (denying a motion to strike allegations regarding products not purchased because "these products and representations are sufficiently similar to those purchased and seen by Plaintiffs, and any concerns regarding the differences among products at issue are better resolved at the class certification stage.").

With regard to Defendants' motion to strike class allegations of the Complaint, the Court concludes that the class issues are more appropriately considered at the class certifications stage of the proceedings. *See In re Jamster Mktg. Litig.*, No. 05cv0819 JM (CAB), 2009 WL 1456632, at * 7 (S.D. Cal. May 22, 2009) ("Even though the arguments of [defendant] may ultimately prove persuasive, the court declines to address issues of class certification at the present time.  Piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties."); *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp.

2d 609, 615-16 (N.D. Cal. 2007) ("In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling. . . . [P]laintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery . . . ."). Defendants' motion to strike allegations of the Complaint is denied.

## V. Conclusion

IT IS HEREBY ORDERED that the motion to dismiss (ECF No. 12) filed by Defendants is granted in part and denied in part. The motion to dismiss is granted as to Plaintiffs' claims for injunctive relief and Plaintiffs claims under the "unfair" prong of the UCL. Defendants motion is denied as to all other claims

IT IS FURTHER ORDERED that the motion to strike allegations of the Complaint (ECF No. 13) filed by Defendants is denied.

DATED: August 12, 2016

**WILLIAM Q. HAYES**
United States District Judge