**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> NATURE'S WAY PRODUCTS, LLC and SCHWABE NORTH AMERICA, INC, <br><br> Defendants. | Case No: 3:16-cv-00532-WQH-BLM <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> **REDACTED FOR PUBLIC FILING** <br><br> Judge:    Hon. William Q. Hayes <br> Date:    July 3, 2017 <br><br> NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION .......................................................................................... 1

FACTS ........................................................................................................... 2

    I.     Defendants Marketed Nature's Way Coconut Oil as Healthy, Ideal for Exercise and Weight Loss, and a Healthy Substitute for Butter and Other Cooking Oils ................................................................................ 2

    II.    Plaintiff Purchased Nature's Way Coconut Oil in Reliance on Labeling Claims Suggesting the Product was Healthy ........................ 6

    III.   Claims that the Nature's Way Coconut Oil is Healthy, Promotes Weight Loss, and is a Healthy Alternative to Butter and Other Oils, are Misleading ................................................................................... 7

    IV.   The Nature's Way Coconut Oil was Misbranded ............................ 10

    V.    The Class Paid a Premium Due to the Nature's Way Coconut Oil's Unlawful and Misleading Labeling Claims ...................................... 11

LEGAL STANDARD ................................................................................. 12

ARGUMENT .............................................................................................. 12

    I.     The Requirements of Rule 23(a) are Satisfied ............................... 12

         A.    Numerosity ............................................................................ 12

         B.    Commonality .......................................................................... 13

         C.    Typicality ............................................................................... 14

         D.    Adequacy ............................................................................... 15

i

II.   The Requirements of Rule 23(b)(3) are Satisfied ............................................16

      A.    Predominance ...........................................................................16

            1.    The Class's Claims will be Resolved through Objective
                  Standards and Common Evidence that Apply Classwide ...........17

                  a.    Consumer Fraud ................................................17

                  b.    "Unlawful" Misbranding ....................................20

                  c.    Breach of Warranty ...........................................20

            2.    The Class's Price Premium Damages Model is Consistent
                  With its Theory of Liability, and Capable of Measuring
                  Damages Classwide ...............................................22

      B.    Superiority ..............................................................24

            1.    Class Members Have No Interest in Prosecuting Separate
                  Actions ..........................................................25

            2.    No Manageability Concerns Outweigh the Superiority of
                  the Class Action Device for Adjudicating the Class's
                  Claims ...........................................................25

CONCLUSION ..................................................................25

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Allen v. Similasan Corp.*,

4
    306 F.R.D. 635 (S.D. Cal. 2015) ...............................................................15, 21

5

*Amchem Prods., Inc. v. Windsor*,

6
    521 U.S. 591 (1997)...........................................................................13, 16, 19

7

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

8
    133 S. Ct. 1184 (2013)..........................................................................12

9

*Armstrong v. Davis*,

10
    275 F.3d 849 (9th Cir. 2001) ...................................................................14

11

*Berger v. Home Depot USA, Inc.*,

12
    741 F.3d 1061 (9th Cir. 2014) .................................................................17

13

*Briseno v. ConAgra Foods, Inc.*,

14
    844 F. 3d 1121 (9th Cir. Jan. 3, 2017) .......................................................12

15

*Brockey v. Moore*,

16
    107 Cal. App. 4th 86 (2003) ..............................................................17, 18

17

*Brown v. Hain Celestial Group, Inc.*,

18
    2015 WL 3398415 (N.D. Cal. May 26, 2015)................................................20

19

*Bruno v. Quten Research Inst., LLC*,

20
    280 F.R.D. 524 (C.D. Cal. 2011) ..............................................................12

21

*Bruton v. Gerber Prods. Co.*,

22
    --- Fed. Appx. ----, 2017 WL 1396221 (9th Cir. Apr. 19, 2017)...........................20

23

*Bruton v. Gerber Prods. Co.*,

24
    2014 WL 172111 (N.D. Cal. Jan. 15, 2014)................................................19

25

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

26
    917 F.2d 1171 (9th Cir. 1990) ................................................................15

27

*Chavez v. Blue Sky Natural Beverage Corp.*,

28
    268 F.R.D. 365 (N.D. Cal. 2010).............................................................22

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ...........................................................17, 18

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)............................................................17, 18, 22

*Culley v. Lincare Inc.*,
    2016 WL 4208567 (E.D. Cal. Aug. 10, 2016)....................................25

*De La Fuente v. Stokely–Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) .............................................................14

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980)............................................................................25

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)............................................................................17

*Fitzpatrick v. Gen. Mills, Inc.*,
    263 F.R.D. 687 (S.D. Fla. 2010).........................................................13

*Friedman v. Guthy-Renker LLC*,
    2016 WL 2758240 (C.D. Cal. May 12, 2016) ..................................16

*Guido v. L'Oreal*,
    2014 WL 6603730 (C.D. Cal. July 24, 2014).....................................23

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ..................................................18, 22

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2016 WL 4992504 (S.D. Ill. Sept. 16, 2016)................................13, 22

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .........................................................14, 18

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ............................................................19

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................21

iv

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) .................................................................19

*In re Pom Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014).........................................22

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................21, 24

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..........................................................................18

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. Dec. 14, 2007).......................................18

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ...............................................................13

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ...........................................................19

*Karim v. Hewlett-Packard Co.*,
   311 F.R.D. 568 (N.D. Cal. 2015).............................................................21

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ................................................................13

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985) ....................................................................21

*Kurtz v. Kimberly-Clark Corp.*,
   --- F.R.D. ----, 2017 WL 1155398 (E.D.N.Y. Mar. 27, 2017) .........................22

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .................................................................17

*Levya v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...........................................................17, 25

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014)........................................................20, 22

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ...................................................................16

*Martin v. Monsanto Co.*,
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017)........................................21

*Mary Pickford Co. v. Bayly Bros., Inc.*,
  12 Cal. 2d 501 (1939) ...............................................................................20

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
  97 Cal. App. 4th 1282 (2002) ...................................................................19

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
  823 F.3d 948 (9th Cir. May 20, 2016) ....................................................18

*Odyssey Wireless, Inc. v. Apple Inc.*,
  2016 WL 7644790 (S.D. Cal. Sept. 14, 2017)........................................22

*Pulaski Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ....................................................................18

*Rahman v. Mott's LLP*,
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014)...........................................20

*Rasario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) .................................................................13

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ...............................................................3, 10

*Robidoux v. Celani*,
  987 F.2d 931 (2nd Cir. 1993)...................................................................15

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D. Cal. 2014) .........................................................13

*Salvagne v. Fairfield Ford Inc.*,
  254 F.R.D. 321 (S.D. Ohio 2009)............................................................14

*Sanchez-Knutson v. Ford Motor Co.*,
  310 F.R.D. 529 (S.D. Fla. 2015)........................................................23, 24

vi

*Santos v. Carrington Mortg. Servs., LLC*,
  2016 WL 1029268 (D.N.J. Mar. 15, 2016)..................................................16

*Schramm v. JPMorgan Chase Bank, N.A.*,
  2013 WL 7869379 (C.D. Cal. 2013)..........................................................24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)...................................................................................12

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005)...............................................................14

*Spencer v. Beavex, Inc.*,
  2006 WL 6500597 (S.D. Cal. Dec. 15, 2006) ...........................................15

*Stathakos v. Columbia Sportswear Co.*,
  2017 WL 1957063 (N.D. Cal. May 11, 2017)............................................22

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2012) ...................................................................18

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ....................................................................19

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012)..........................................................19, 25

*Todd v. Tempur-Sealy Int'l Inc.*,
  2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ..........................................15

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .....................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................12, 13

*Wang v. Massey Chevrolet*,
  97 Cal. App. 4th 856 (2002) ......................................................................20

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010) ..................................................................21

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 2191901 (N.D. Cal. May 23, 2014)....................................................22

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .......................................................................17

*Zakaria v. Gerber Prods. Co.*,
   2016 WL 6662723 (C.D. Cal. 2016)............................................................23

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .....................................................................25

**Statutes**

Cal. Com. Code § 2313(1)(a).........................................................................21

Cal. Com. Code § 2313(1)(b).........................................................................21

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................12

Fed. R. Civ. P. 23(a)(2) ................................................................................13

Fed. R. Civ. P. 23(a)(3) ................................................................................14

Fed. R. Civ. P. 23(a)(4) ................................................................................16

Fed. R. Civ. P. 23(b)(3)...........................................................................17, 24

**Regulations**

21 C.F.R § 101.65(d)....................................................................................11

21 C.F.R § 101.65(d)(2)................................................................................11

21 C.F.R. § 101.13 .......................................................................................10

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

21 C.F.R. § 101.13(b)..................................................................................10

21 C.F.R. § 101.13(b)(1)..............................................................................10

21 C.F.R. § 101.13(h)(1)..............................................................................10

21 C.F.R. § 101.13(h)(4)(ii).........................................................................10

21 C.F.R. § 101.13(i)(1)...............................................................................10

**Other Authorities**

56 Fed. Reg. 60421 (Nov. 27, 1991)............................................................10

58 Fed. Reg. 2302 (Jan. 6, 1993) .................................................................10

Cal. Com. Code § 2313, comment 8 .............................................................21

Fowler R.L., *Filled milks, coconut oil, and atherosclerosis*,
  Pediatrics, Vol. 51, No. 3 (1973) ............................................................1

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

# __INTRODUCTION__

According to 200 leading cardiovascular experts representing 29 medical organizations including the American Heart Association and American College of Cardiology, "we've known for nearly a half century that 'Coconut oil is one of the most potent agents for elevating serum cholesterol levels.'" Ex. 1,[1] April 1, 2017 Supplemental Expert Report of Dr. Michael Greger, M.D., FACLM ("Suppl. Greger Report"), at 8 (quoting Fowler R.L., *Filled milks, coconut oil, and atherosclerosis*, Pediatrics, Vol. 51, No. 3, at 583-84 (1973)).

Despite overwhelming scientific evidence that eating coconut oil increases risk of cardiovascular disease—the leading cause of death in the United States—by raising "bad" LDL- and total-cholesterol levels, causing inflammation, and impairing arterial endothelial function, *see id.* at 8-14, until at least late 2016, defendants marketed their "semi-solid" Nature's Way Extra Virgin Coconut Oil as healthy, including by labeling the product as appropriate for a "variety of healthy uses," like eating "straight from the jar," as "ideal for exercise and weight loss programs," and as a healthy substitute for "butter, margarine, shortening or other cooking oils." Several labeling claims brazenly violated FDA regulations promulgated expressly to avoid consumer deception. Plaintiff brought this consumer fraud and breach of warranty class action to remedy these wrongs. The case is readily amenable to certification of a Rule 23(b)(3) damages class.

Each of the Rule 23(a) criteria is satisfied. For numerosity, plaintiff demonstrates California sales of over ███████ units and over ███████. For commonality, plaintiff demonstrates defendants' offending conduct was substantially the same to all class members, so that their liability to all will be determined by answering the same questions. For typicality, plaintiff demonstrates all class members share the same legal theories and suffered the same economic injury. And for adequacy, plaintiff demonstrates she and her counsel have no conflicts with the class, and will continue vigorously prosecuting the case on its behalf.

Rule 23(b)(3)'s predominance and superiority criteria are also satisfied. Because the

---

[1] Unless otherwise noted, all references to exhibits are to the Declaration of Jack Fitzgerald.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

class's claims turn on objective standards that will be tested and resolved through classwide evidence, establishing liability to one class member establishes liability to all, and common liability questions predominate. If defendants are liable, the amount of damages or restitution they owe the class can be calculated based on the price premium associated with the challenged labeling claims, whether because they are unlawful or convey a misleading health message. The class's damages model uses the widely-accepted conjoint analysis technique to determine the premium associated with the challenged labeling claims, ensuring any damages awarded are attributable only to defendants' conduct creating the legal liability. Finally, class treatment is superior because adjudicating the claims individually is economically infeasible.

Plaintiff and her counsel have worked diligently, and committed substantial resources to ensure all certification requirements are satisfied. Thus, Rule 23 and justice dictates, and plaintiff and her counsel respectfully request, that the Court certify the class.

## **FACTS**

### I.   **Defendants Marketed Nature's Way Coconut Oil as Healthy, Ideal for Exercise and Weight Loss, and a Healthy Substitute for Butter and Other Cooking Oils**

Defendants run a sophisticated marketing business utilizing "███████████ ███████████," Ex. 6, Schueller 30(b)(6) Dep. Tr. at 43:22-44:22. Through the many "years of experience" defendants have "selling dietary supplements to health food stores," they have "come to understand those attributes that consumers look for." *Id.* at 55:11-56:1.

In late January 2012, defendants began selling Nature's Way Extra Virgin Coconut Oil in California, Ex. 4 at 4 (Response to Interrogatory No. 1), using a "promotional strategy . . . to convey certain key messages," Ex. 6, Schueller 30(b)(6) Dep. Tr. at 53:19-23, namely, that the single-ingredient product is healthy, promotes weight loss, and is a healthy alternative to butter, margarine, shortening, and other cooking oils. Although over the next four years, defendants occasionally "refreshed" the product label, statements on the label conveying these messages remained remarkably consistent. As the below table demonstrates, the claims the class challenges changed just twice during the class period, but the changes were immaterial and did not alter defendants' key messages.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

| Class Label Version 1 | Class Label Version 2 | Class Label Version 3 |
|---|---|---|
| "Natural Energy Source" | "[Natural] Energy [Source]" | "Energy Source" |
| "with 62% MCTs" | "62% MCTs" | "62% MCTs" |
| - | "Premium Quality" | "Premium Quality" |
| "Zero Trans & Hydrogenated Fat" | "Non-hydrogenated; No trans fat" | "Non-hydrogenated; No trans fat"[2] |
| "a good addition to physical activity, exercise and weight loss programs" | "Ideal for exercise and weight loss programs" | "Ideal for exercise and weight loss programs" |
| "For Cooking: Use in place of butter, margarine, shortening or other cooking oils" | "For cooking, can be used in place of butter, margarine, shortening or other cooking oils" | "For cooking, can be used in place of butter, margarine, shortening or other cooking oils" |
| - | "Variety of healthy uses: Enjoy straight from the jar or supplement your diet by mixing to smoothies, spreading on bagels and toast, or adding to homemade energy bars" | [removed "healthy" from "Variety of healthy uses"] |
| "contains 62% MCTs – medium chain 'good fats' the body uses to produce energy" | "Natural Energy: Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy" | "Energy Source: Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy" |
| "Recommendation: As a supplement, take 1 tablespoon 1-4 times daily." | "Recommendation: Take 1 tablespoon (14g) up to 4 times daily." | "Recommendation: Take 1 tablespoon (14g) up to 4 times daily." |

While due to various "refreshes," defendants' label-tracking document reflects more than one label iteration for each Class Label Version set forth above, the challenged claims

---

[2] Defendants added a disclosure to Class Label Version 3, but this did not rectify the unlawfulness because the phrase "No trans fat," like "Zero Trans Fat," is *never* permitted. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015) ("'No Trans Fat' is 'an unauthorized nutrient content claim . . . which has not been defined by the FDA.'").

did not change between these iterations. *See* Fitzgerald Decl. ¶¶ 9-41, Table 1 & Exs. 8-21 (detailed history and time line of labeling changes, including identifying defendant-designated label iterations that fall within each Class Label Version).

Even among the three Class Label Versions, differences in the challenged claims are minor, and the label always conveyed defendants' same key health messages. As a corporate representative testified, it was ████████████████████████████ ██████████████████████ Ex. 6, Schueller 30(b)(6) Dep. Tr. at 57:1-9, and thus they wanted "to be consistent about the attributes [they were] communicating about th[e] product *over time* in order for [] the message to be understood by consumers," *see id.* at 56:17-21 (emphasis added).

The "consistent" and "focused" messages defendants conveyed through the Nature's Way Coconut Oil label are "la[id] out" in defendants' "strategic planning documents," and "annual plan documents relevant to the coconut oil," *see id.* at 60:3-13. These documents show defendants placed their coconut oil in their ████████████████████████████ ██████████████████████ categories. Ex. 23, at S7698; Ex. 24, S8978. One internal presentation claimed ████████████████████████████████████ ████████████████████████████████████████████ Ex. 25, at S5824. Another claimed the ████████████████████████████████████████ ████████████████████████████████████████████ Ex. 26, at S5284. It also claimed coconut oil ██████████████████████ ████████████████████████████████████████ and is therefore ████████████████████████████████████████████ *Id.* at S5280; *see also id.* at S5286, S5290. And it explained the product is ████████████ ████████████████████████████ *See id.*, at S5285.

Other product marketing similarly conveyed defendants' key health messages. ████████████████████████████████████████████ ██████, Ex. 27, at 30859, defendants used fitness models to encourage potential purchasers to "Discover the healthy benefits of coconut oil." Ex. 28, at S7008-7009 (replicated below).

4

 

Defendants also created a marketing video, targeting ██████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 29, at

S26193. The video described Nature's Way Coconut Oil as having a ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ *See* Ex. 30, S5964-65. Similarly, ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Ex. 31, at S9128-29. And one

sales representative ████████████████████████████████████████████████████

████████████████████████████████████ Ex. 32, at S36850.

  Defendants try "to continually grow [their] profit margins," Ex. 6, Schueller 30(b)(6) Dep. Tr. at 114:11-12. They chose the challenged labeling claims and messaging to appeal to consumers, to influence them to purchase the product, and to maximize its sales. *See* Ex. 5, at 7-8, 10-14 (Responses to Request for Admission Nos. 8-12, 17, 19, 21, 23, 25); Ex. 6, Schueller 30(b)(6) Dep. Tr. at 55:11-56:1; Ex. 33, at S23296 (defendants' ██████████

██████████████████████████████████████████████████).

  Accordingly, although—after the FDA warned another coconut oil manufacturer its

5

product was similarly misbranded and plaintiff filed suit—defendants decided to remove all challenged claims from the Nature's Way Coconut Oil label, until they did so, and for more than four years, the label conveyed the "consistent" and "focused" messages that the product is healthy, promotes weight loss, and is a healthy replacement for other oils.

## II. Plaintiff Purchased Nature's Way Coconut Oil in Reliance on Labeling Claims Suggesting the Product was Healthy

In July 2015, while at her local Sprouts grocery store, a jar of Nature's Way Coconut Oil caught plaintiff Sherry Hunter's eye. Ex. 22, Hunter Dep. Tr. at 41:10-21, 104:17-105:1. Though she had not intended to buy coconut oil that day, *id.* at 97:1-3, when she picked up the jar to "[l]ook at the container," she was struck by the "many" "healthy benefits" described on the label, including that it was supposedly "good for exercise and working out," among "many others." *Id.* at 105:8-23, 107:20-23. Having only purchased coconut oil twice before, in the distant past, she was not familiar with the health effects of consuming the oil, *id.* at 94:3-25, 100:10-101:3, 102:3-7, so she was pleased to learn from its label that the Nature's Way "Premium" Coconut Oil was so healthy it was "Recommended" she consume up to 4 tablespoons per day, and that it was "a healthier alternative" to "butter, margarine, shortening, or other cooking oils." *Id.* at 151:4-152:18.

Among the claims that most stood out to Ms. Hunter were "Ideal for exercise and weight loss," and "Variety of Health Uses," including eating "Straight from the jar." *Id.* at 109:18-24, 113:2-7, 127:15-128:6, 130:24-131:2, 135:13-18, 136:10-13. Reading these claims in conjunction with the statement "use[] in place of butter, margarine, shortening or other cooking oils" for "cooking" led Ms. Hunter to believe it was "a healthier alternative." *Id.* at 151:21-153:16, 154:6-19, 174:20-175:10. She noticed "it says to take four tablespoons," thereby "suggesting" she put "a large amount of coconut oil into all of these different foods." *Id.* at 174:7-19. In the context of these claims, Ms. Hunter took the "no trans fat" statement to mean there was no "unhealthy fat." *Id.* at 179:16-21, 180:10-16.

"Based on the presentation of the entire label collectively," Ms. Hunter believed the product was a "healthier oil" that would provide health benefits and aid in "diet, [and] weight

6

loss." *Id.* at 138:10-16, 155:11-15, 182:19-23. Based on the claims and the overall impression they created, Ms. Hunter decided to purchase the product as a "Supplement enhancement," and began incorporating it into her diet. *Id.* at 109:1-2, 109:18-2. She chose Nature's Way despite that it was several dollars more expensive than other brands. *Id.* at 116:3-117:23, 118:15-20. As the label suggested, she soon began "eating it [straight from the jar] and putting it in [her] food." *Id.* at 109:18-24, 182:19-23. She also used it for cooking "instead of other [options] such as oil or butter," including in "protein muffins," as "part of [her] health regimen." *Id.* at 114:8-23, 138:17-22. *See also generally* Hunter Decl. ¶¶ 2-4.

## III.   Claims that the Nature's Way Coconut Oil is Healthy, Promotes Weight Loss, and is a Healthy Alternative to Butter and Other Oils, are Misleading

Contrary to defendants' representations, Nature's Way Coconut Oil is not healthy, does not promote weight loss, and is not a healthy replacement for butter, margarine, shortening, and other cooking oils. Dr. Michael Greger, M.D., FACLM, performed a comprehensive literary review, identifying over 2,400 potentially-relevant scientific and medical articles, then reviewing in depth over 250 articles he determined were in fact relevant to the health effects of consuming coconut oil, plus any additional sources defendants claimed as substantiation. Ex. 1, Suppl. Greger Report, at 4-6. Dr. Greger's review confirms what leading experts have known for decades: consuming coconut oil—which is over 90 percent saturated fat—consistently and unequivocally increases LDL-cholesterol, total cholesterol, and inflammation, and impairs critical arterial function. These physiological effects are well understood and there is scientific consensus that they directly increase risk of cardiovascular disease, stroke, and other serious illnesses.

Decades of research establishes with medical certainty that "total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD." *Id.* at 8. And studies on coconut oil consumption "consistently" show it causes "a pronounced negative physiological impact that increases risk of cardiovascular disease." *Id.* "Seven out of seven coconut oil intervention trials resulted in higher LDL levels, demonstrating coconut

7

oil's harmful effects (six out of seven statistically significantly so)." *Id.* Because the increased risk of cardiovascular disease for a given increase in LDL-cholesterol level is so well established, researchers performing a year-long study were able to demonstrate that reducing coconut oil consumption to 0.75 tablespoons, from 2.75 tablespoons per day, lowered participants' LDL cholesterol by 21.8% and total cholesterol by 11.9%, reducing coronary morbidity and mortality risky by 6-8%. *See id.* at 9-10 (citation omitted).

Coconut oil also significantly increases CHD risk by increasing inflammation, and impairing both arterial endothelial function and the anti-inflammatory properties of "good" HDL cholesterol. *Id.* at 15 (citations omitted). And coconut oil's detrimental health effects are not limited to long-term consumption, but are *immediate*. Studies show eating a single meal containing coconut oil can, within hours, "significantly raise cholesterol levels and inhibit arterial endothelial function," both "key risk factors," *id.* at 9 (citations omitted).

The evidence of coconut oil's harmful effects continues to grow. An intervention trial published this March found participants who consumed 2 tablespoons daily suffered, within a month, an average 14% increase in LDL cholesterol compared to a control group, signifying an even greater risk of coronary death or heart attack." *Id.* at 13-14 (citation omitted). "[U]sing the best available estimate of a 23% change in risk of major vascular events for each mmol/L change in LDL, daily incorporation of under 3 tablespoons of coconut oil in the diet for a period of just six months might be expected to raise the risk of coronary death or heart attack 7%." *Id.* at 12 (citations omitted).

Nevertheless—and consistent with defendants' profit-motivated interest in ███████████████████████ *see* Ex. 34, at S9250—the Nature's Way Coconut Oil label always recommended taking **up to 4 tablespoons daily**, an amount devastating to health.

Defendants' specific representation that the Nature's Way Coconut Oil is "a good addition to" or "Ideal for exercise and weight loss," is also misleading. "In a human study of coconut oil consumption, there was no difference in appetite measures or food intake compared to dairy or beef fat." Suppl. Greger Report at 16 (citation omitted). And in "the only placebo-controlled study on coconut oil and anthropometric measures," researchers

8

"found no significant difference in waist circumference between the group provided with coconut oil for cooking compared to the group provided with soybean oil." *Id.* On the other hand, "insulin resistance significantly increased in the coconut oil group," which "is a characteristic of obesity," *id.* (citation omitted). The recently-published March 2017 study likewise "found no significant effect" of coconut oil consumption on "anthropometric data, such as weight loss and abdominal circumference," and "additional measurements such as fat mass, lean body mass, hip circumference, total percent body fat, total percent andoid fat, and total percent gynoid fat." *Id.* at 14 (citations omitted).

Defendants premise their "exercise and weight loss" claim, not on studies of virgin coconut oil like the product at issue, but on studies of MCT oils, "which lack the long-chain saturated fats that comprise almost 40 percent of the fat found in coconut oil," and therefore, researchers agree, "cannot be extrapolated to coconut oil." *See id.* at 11-12 (citation omitted). Further, "[t]he medical literature demonstrates that even the [MCT] component of coconut oil may raise cholesterol as much as the longer chain saturated fats also contained in coconut oil." *Id.* at 10 (citation omitted). This is because while "true" medium chain saturated fatty acids (8 and 10 carbons in length) "are metabolized differently from long-chain [saturated fatty acids]," "coconut oil is mainly C12:0 lauric acid and C14:0 myristic acid, which have "potent LDL-C-raising effects." *Id.* at 15 (quotation omitted).

In sum, "The relevant scientific literature demonstrates that coconut oil substantially increases cardiovascular and metabolic disease risk by adversely affecting blood lipids, artery function, and insulin sensitivity." *Id.* at 1. Therefore, "consuming coconut oil is unhealthy and is not a healthy replacement for butter, margarine, shortening, or other cooking oils, as coconut oil consumption causes significant harm to health and is far more harmful than most substitutes." *Id.* at 2. "Further, there is no evidence that consuming coconut oil is ideal or even supports weight loss, as studies found it did not improve appetite measures or decrease body fat compared to other fats, but rather increased insulin resistance." *Id.* Instead, "The scientific community has known for more than a half century that coconut oil consumption adversely impacts cardiovascular risk by raising blood cholesterol levels," and "The majority

9

of studies subsequently published in peer reviewed medical literature have since validated this initial assessment." *Id.* at 17.

## IV.    The Nature's Way Coconut Oil was Misbranded

In addition to being misleading, several Nature's Way Coconut Oil labeling statements violated FDA-promulgated nutrient content regulations. One of the primary purposes of these regulations is "[t]o ensure that consumers are not misled and are given reliable information." 56 Fed. Reg. 60421, 60423 (Nov. 27, 1991) (citations omitted); *see also* 58 Fed. Reg. 2302, 2302 (Jan. 6, 1993) ("basic objectives" of labeling laws include "assist[ing] consumers in selecting foods that can lead to healthier diets," and "eliminat[ing] consumer confusion by establishing definitions for nutrient content claims"). Accordingly, these laws prohibit food manufacturers from using nutrient content claims unless specifically permitted, *see* 21 C.F.R. § 101.13. Here, defendants used several claims that are expressly *prohibited*.

First, all Class Label Versions said "62% MCTs." *See* Exs. 9-14. This is an express nutrient content claim because it "is [a] direct statement about the level . . . of [saturated fat] in the food." 21 C.F.R. § 101.13(b)(1). Express nutrient content claims that do not implicitly characterize the level of the nutrient must bear an adjacent disclosure statement if the food contains "more than 13.0 g of fat" or "4.0 g of saturated fat" per Reference Amount Customarily Consumed (RACC), and per labeled serving. *Id.* §§ 101.13(h)(1), (h)(4)(ii). Because defendants' coconut oil contains 14g of fat and 13g of saturated fat, all Class Label Versions were misbranded, since the MCT claims never bore the mandatory disclosure. *See* Ex. 7, Borchardt 30(b)(6) Dep. Tr. at 69:10-17 (admitting violation).

Second, Class Label Version 1 said "Zero Trans & Hydrogenated Fat," and Versions 2 and 3 said, "Non-hydrogenated; No trans fat." These are express nutrient content claims that *implicitly* characterize the level of trans fat, as the Ninth Circuit recognized in *Reid*, 780 F.3d at 962-63. Such claims are prohibited unless the FDA has defined them, *see* 21 C.F.R. §§ 101.13(b), (i)(1). The FDA has not defined any trans fat claims, which are therefore prohibited *even if accompanied by a mandatory disclosure. See Reid*, 780 F.3d at 962 ("'No Trans Fat' is 'an unauthorized health claim'"). Thus, although defendants added a disclosure

to Class Label Version 3, these claims were still prohibited and all Class Label Versions were misbranded until defendants removed the claims altogether.

Finally, Class Label Version 2 makes an implied nutrient content claim because the phrase "Variety of healthy uses" is made in connection with express nutrient content claims about trans fats and MCTs. *See* 21 C.F.R § 101.65(d)(2). The Nature's Way Coconut Oil, however, does not meet the requirements for a "healthy" nutrient content claim because it contains (a lot) more than 4 grams of total fat, and 1 gram of saturated fat per RACC. Defendants' internal documents recognize Class Label Version 2 violated § 101.65(d). *See* Ex. 16, S9011-18; Ex. 35, S9602; Ex. 36, S8864-69; Ex. 15, S8871-78.

## V.   The Class Paid a Premium Due to the Nature's Way Coconut Oil's Unlawful and Misleading Labeling Claims

The class alleges that by using the challenged claims to convey a health message, defendants were able to charge more than they otherwise could have; and that because the Nature's Way Coconut Oil was not healthy, did not promote weight loss, and was not a healthy replacement for butter, margarine, and shortening, it was worth less than what class members paid. Defendants recognize the Nature's Way Coconut Oil label's health claims command a premium. A corporate representative testified that "in coconut oil . . . what people put on their labels is impacting growth in the marketplace." Ex. 6, Schueller 30(b)(6) Dep. Tr. at 103:12-15. And defendants created their marketing video expressly ███████████████

████████████████████████████████████████████████████████████

████████████████ [3] Ex. 29, at S26193; *compare* Ex. 6, Schueller 30(b)(6) Dep. Tr. at 71:15-22 (MCT content "is a message we want consumers to look at as they compare our products to others" and "same is true for non-hydrogenated and no trans fats").

To quantify the marketplace premium associated with the challenged claims, Dr. J. Michael Dennis designed and performed a rigorous survey employing the well-accepted

---

[3] ████████████████ *See* Ex. 37, at S5650; *see also generally id.* at S5648. Notably, competitors Spectrum and Dr. Bronner's do not use health and wellness labeling. Fitzgerald Decl. ¶ 59.

11

conjoint methodology, testing those challenged labeling claims that most strongly convey the messages that Nature's Way Coconut Oil is healthy, promotes weight loss, and is healthier than other cooking oils. The results show significant premiums. *See*, *e.g.*, Ex. 2, March 24, 2017 Expert Report of J. Michael Dennis, Ph.D. ("Dennis Report"), at 21, Exhibit 4.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ["*Shady Grove*"]. But these are the *only* criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. 2017). Rule 23 "[b]y its terms . . . creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove*, 559 U.S. at 398 (citations omitted). Although a certification motion requires a district court to conduct a "rigorous analysis" that "[f]requently . . . will entail some overlap with the merits," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ["*Dukes*"], the merits may be considered "only" to "determin[e] whether the Rule 23 prerequisites to class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

## ARGUMENT

I.   **The Requirements of Rule 23(a) are Satisfied**

A.   **Numerosity**

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1). "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) (quotation omitted). Defendants sold in California more than ███████ units, *see* Ex. 38, S192, for retail sales of over ██████, *see* Ex. 3, March 24, 2017 Expert Report of Colin Weir ("Weir Report"), at 17. Thus, numerosity is satisfied.

12

### B.   Commonality

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted). Questions "have that capacity" when they have a "close relationship with the . . . underlying substantive legal test." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rasario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), which exists "where a defendant has engaged in standardized conduct toward members of the class," *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)).

Commonality is satisfied here because all class members were exposed to labeling claims that conveyed the same allegedly misleading messages: Nature's Way Coconut Oil is healthy, promotes weight loss, and is a healthy substitute for butter, margarine, shortening, and other cooking oils. The minor variation in the product labels during the class period does not undermine commonality because the class alleges the label always conveyed the same misleading messages. *C.f. Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 693-94 (S.D. Fla. 2010) (rejecting defendant's argument that individual questions predominated "because each plaintiff was likely exposed to a unique array of advertising statements," where defendant

13

"employed a number of devices, jingles, and turns of phrase to convey the common message that eating Yo-Plus aids in . . . digestive health"), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011). The uniformity of these messages is further demonstrated by the fact that Dr. Greger's testimony showing coconut oil consumption increases CHD risk and does not aid weight loss is sufficient to demonstrate the falsity of each Class Label Version.

### C. Typicality

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory," *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation and citations omitted). "To assess whether or not the representative's claims are typical, the Court examines 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *3 (C.D. Cal. Apr. 12, 2011) ["*Brazilian Blowout*"] (quoting *Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009).

14

Here, plaintiff alleges she and all class members were exposed to the same or substantially similar labels containing unlawful and misleading labeling claims conveying the common messages that the product is healthy, promotes weight loss, and is a healthy substitute for other cooking oils. Plaintiff alleges all class members were injured in the same manner because they all paid a premium attributable to the label's false, misleading, and unlawful claims. Plaintiff's claims are therefore typical of the class's claims. *See Brazilian Blowout*, 2011 WL 10962891, at *4.

That some members purchased Class Label Versions 1 and 3, while plaintiff purchased Version 2 does not defeat her typicality "because the alleged misrepresentation was the same as to each" version. *See Todd v. Tempur-Sealy Int'l Inc.*, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016). Moreover, "Rule 23 'does not require the named plaintiffs to be identically situated with all other class members. It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'[4] *Spencer v. Beavex, Inc.*, 2006 WL 6500597, at *11 (S.D. Cal. Dec. 15, 2006) (Hayes, J.) (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2nd Cir. 1993)); *c.f. Allen v. Similasan Corp.*, 306 F.R.D. 635, 647-48 (S.D. Cal. 2015) ("Though the labels changed, the efficacy representations remained essentially the same. . . . Given the uniformity of the efficacy representations, the Court is not persuaded that the small differences in labelling would cause individual issues to predominate.").

**D.  Adequacy**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

---

[4] The Class Label Version 2 that plaintiff purchased includes all claims challenged on Versions 1 and 3, ensuring she will adequately represent all purchasers.

the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Plaintiff is an adequate class representative because she is a *bona fide* purchaser with standing, has no conflicts of interest, is aware of her obligations as a class representative, and has been vigorously prosecuting the action on behalf of the class and will continue to do so. Hunter Decl. ¶¶ 6-14. *See Brazilian Blowout*, 2011 WL 10962891, at *5 (class representatives adequate where they "submitted declarations" stating "they understand their responsibilities as class representatives, that no conflicts exist between their interests and other members of the class, and that they intend to vigorously pursue all claims asserted in this lawsuit"); *c.f. Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (A plaintiff is adequate if he "understands his duties and is currently willing and able to perform them. The Rule does not require more."). Plaintiff has also retained counsel with significant experience in prosecuting false advertising consumer class actions involving food products, who have no conflicts. Ex. 39; Joseph Decl. Ex. A.[5]

## II.    The Requirements of Rule 23(b)(3) are Satisfied

### A.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R.

---

[5] Under Rule 23(g)(1), the Court "has the discretion to appoint more than one firm to act as co-lead counsel." *Santos v. Carrington Mortg. Servs., LLC*, 2016 WL 1029268, at *1 (D.N.J. Mar. 15, 2016); *see also Friedman v. Guthy-Renker LLC*, 2016 WL 2758240, at *3 n.3 (C.D. Cal. May 12, 2016) ("While Plaintiffs' counsel is comprised of three separate firms, the Court considers them to be one 'applicant' . . . given that all three have represented Plaintiffs as co-counsel since this action's inception, and are jointly requesting appointment here."). Plaintiff and the class have been jointly represented by The Law Office of Jack Fitzgerald, PC and The Law Office of Paul K. Joseph, PC since this suit was filed. Plaintiff respectfully requests the Court appoint both firms Class Counsel, as this is in the best interest of the class. *See* Fitzgerald Decl. ¶¶ 63-65; Joseph Decl. ¶¶ 2-7.

Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). This includes where classwide "damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) ["*Comcast*"]). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

### 1.   The Class's Claims will be Resolved through Objective Standards and Common Evidence that Apply Classwide

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

#### a.   Consumer Fraud

California's FAL, CLRA, and UCL's "fraudulent" prong "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). This is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print," *Williams*, 552 F.3d at 939.

"[T]he primary evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given

17

representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal. App. 4th at 679). "To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ["*Pulaski*"] (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). A product's packaging is misleading if it objectively presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey*, 107 Cal. App. 4th at 99.

If plaintiff demonstrates defendants' labeling was likely to deceive under this objective "reasonable consumer" test, she will have established defendants' liability as to all class members, because relief under the FAL and UCL fraud prong "is available 'without individualized proof of deception, reliance and injury,' so long as the named plaintiff[] demonstrate[s] injury and causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (quotation omitted); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. May 20, 2016) ("[W]here the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification." (citing *Hanon*, 976 F.2d at 509 ("We emphasize that the defense of non-reliance is not a basis for denial of class certification."))). Here, common evidence—Dr. Greger's testimony that Nature's Way Coconut Oil is not healthy and does not promote weight loss—can establish deception for the whole class. *See* Ex. 1, Suppl. Greger Report.

And while reliance is an element of the class's CLRA claims, "[t]he causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is commonly proved more likely than not by materiality." *Guido*, 284 F.R.D. at 482 (quotation omitted). That is because "[a] presumption, or at least an inference, of reliance arises . . . whenever there is a showing that a misrepresentation was material." *Tobacco II Cases*, 46 Cal. 4th at 327; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2012), *abrogated on other grounds by Comcast*, 133 S. Ct. 1426.

The materiality of an alleged misrepresentation is also judged by an objective standard,

18

*Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010). The objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quotation omitted); *accord Amchem Prods.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer . . . fraud"). Here, "the predominating common issues include whether [defendants] misrepresented" that the Nature's Way Coconut Oil is inherently healthy, promotes weight loss, and is healthier than butter and other cooking oils, "and whether the misrepresentations were likely to deceive a reasonable consumer." *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012); *see also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011).

While the objective standard for materiality alone makes certification appropriate, *see Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1294 (2002) (materiality is a "common question of fact suitable for treatment in a class action"), here the class has already developed ample evidence that the challenged claims are material. As a matter of common sense, "consumers rely on health-related claims on food products in making purchasing decisions," *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014), and defendants admit they selected claims they "believe" "are important to consumers," intending the claims to influence consumers' purchasing decisions. *See* Ex 5, at 10-14 (Responses to Request for Admission Nos. 17, 19, 21, 23, 25); Ex. 6, Schueller 30(b)(6) Dep. Tr. at 55:11-18. Further, defendants' use of prohibited nutrient content claims, like "healthy," "zero trans fat," "no trans fat," and "62% MCTs," are materially misleading as a matter of law, since "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Rahman v. Mott's LLP*, 2014 WL 6815779, at *7 (N.D. Cal. Dec. 3, 2014) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citation omitted)). Finally, plaintiff's survey evidence demonstrates materiality because the claims increase purchasing intent of actual consumers of the Nature's

19

Way Coconut Oil, who are also willing to pay more for products bearing the challenge claims. *See generally*, Ex. 2, Dennis Report.

### b.    "Unlawful" Misbranding

The UCL's "unlawful" prong "borrows" predicate legal violations and treats them as independently actionable. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). The class alleges predicate violations of FDA regulations. Establishing UCL "unlawful" prong liability for such violations does "no[t] require[] that the public be likely to experience deception." *Bruton v. Gerber Prods. Co.*, --- Fed. Appx. ----, 2017 WL 1396221, at *3 (9th Cir. Apr. 19, 2017). Even if it did, using prohibited nutrient content claims is deceptive as a matter of law. *See Rahman*, 2014 WL 6815779, at *7; *c.f. Brown v. Hain Celestial Group, Inc*., 2015 WL 3398415, at *7 (N.D. Cal. May 26, 2015) ("the California legislature's decision . . . to prohibit the sale, labeling, or representation of products as 'organic,' when they contain less than 70% organic ingredients, establishes as a matter of law that violations . . . are 'material' misrepresentations under the UCL."). Resolving these claims requires only applying the regulations to the labels to determine their compliance—a task made all that much easier here by defendants' *admitted* regulatory violations. *See* Ex. 7, Borchardt 30(b)(6) Dep. Tr. at 57:1-59:14, 62:4-69:17. So "proving the . . . 'unlawful' prong[] of the UCL . . . do[es] not depend upon any issues specific to individual consumers," *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014), and common issues predominate.

### c.    Breach of Warranty

A warranty is a guarantee by a contracting party that something contemplated by the contract has a particular character or quality; the promising party in effect insures the other against the possibility that the thing is not as warranted. *See Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501, 520 (1939) ("The obligation of a warranty is absolute, and is imposed as a matter of law irrespective of whether the seller knew or should have known of the falsity of his representations."). The elements of a claim for breach of warranty are: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re*

20

*ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) ["*ConAgra*"] (quotation omitted); *see also* Cal. Com. Code §§ 2313(1)(a)-(b).

Plaintiff alleges defendants made the same warranties to every class member, that Nature's Way Coconut Oil is "a good addition to" or "Ideal for exercise and weight loss programs" (and for purchasers of Class Label Version 2, that it is "healthy"). Resolution of every class member's claim requires determining only whether the challenged statements were express warranties, and, if so, whether the product conformed to those promises and descriptions. There are *no* individualized questions that might colorably predominate over these common questions. First, plaintiff "need not establish reliance as an element of [her] express warranty claim," and she "need not establish reliance on a classwide basis." *See Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 573 (N.D. Cal. 2015); *see also Martin v. Monsanto Co.*, 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017); *ConAgra*, 90 F. Supp. 3d at 984. "Because reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (citations omitted). Second, the class benefits from a presumption that "all statements of the seller" become part of the basis of the bargain "unless good reason is shown to the contrary." *Karim*, 311 F.R.D. at 574 (quoting Cal. Com. Code § 2313, comment 8); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1229 (2010) ("Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement."); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (1985).

In sum, "[w]hether Defendant's statements about the Product['s] efficacy are affirmations of fact, promises, or a description of the goods focuses on defendant's labels, not consumers, and therefore is plainly subject to common proof." *See Allen*, 306 F.R.D. at 648-49; *see also Martin*, 2017 WL 1115167, at *7 ("Whether such a statement constitutes an express warranty, [and] whether that warranty was breached . . . are issues subject to common and generalized proof."); *ConAgra*, 90 F. Supp. 3d at 985 (certification proper where "whether defendant misrepresented its product and whether such misrepresentations breached

21

1   warranties are issues common to members of the putative class").

2   **2.    The Class's Price Premium Damages Model is Consistent With its**
3   **Theory of Liability, and Capable of Measuring Damages Classwide**

4   At the class certification stage, a plaintiff must show "damages are capable of
5   measurement on a classwide basis," in a manner "consistent with [plaintiff's] liability case,"
6   *Comcast*, 133 S. Ct. at 1433, 1434 (quotation omitted). "Often, this will impose only a very
7   limited burden." *Lilly*, 308 F.R.D. at 244. Plaintiff need only "present a *likely* method for
8   determining class damages," and "it is not necessary to show that this method will work with
9   certainty," *Chavez v. Blue Sky Natural Beverage Corp.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010)
10   (emphasis added, quotation omitted). "If damages are capable [of] measurement on a class-
11   wide basis, questions of individual damage calculations will not overwhelm questions
12   common to the class." *Hale*, 2016 WL 4992504, at *8 (citing *Comcast*, 133 S. Ct. at 1433).

13   "The first step in a damages study is the translation of the legal theory of the harmful
14   event into an analysis of the economic impact of that event." *Comcast*, 133 S. Ct. at 1435
15   (citation and emphasis omitted). Here, the parties agree the price premium attributable to the
16   misleading or unlawful labeling claims is a proper measure of restitution and damages for the
17   class's claims. *See* Ex. 4, at 14-17 (Suppl. Responses to Interrogatory Nos. 9-10).[6] One
18   widely-accepted method for determining the price premium is conjoint analysis, "a
19   representative survey technique that permits an economist to analyze the value of various
20   product attributes." Weir Report ¶ 20. *See Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL
21   7644790, at *9 (S.D. Cal. Sept. 14, 2017) ("a conjoint analysis is a generally accepted method
22   for valuing the individual characteristics of a product"); *Kurtz v. Kimberly-Clark Corp.*, ---
23   F.R.D. ----, 2017 WL 1155398, at *58 (E.D.N.Y. Mar. 27, 2017) (conjoint analysis "ha[s]
24   previously been approved in consumer class actions as [a] reliable methodolog[y] available

25

26   _____
   [6] *See also Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *11 (N.D. Cal. May
27   11, 2017) (citing *In re Pom Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25,
   2014)); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, *22 (N.D. Cal. May 23,
28   2014); *Guido*, 284 F.R.D. at 479.

for calculating the price premium attributable to a product characteristic"); *Guido v. L'Oreal*, 2014 WL 6603730, at *11 (C.D. Cal. July 24, 2014) (approving conjoint analysis damages model under *Comcast*). Tellingly, defendants themselves use this methodology to "determine the effect of the labels." *See* Ex. 6, Schueller 30(b)(6) Dep. Tr. at 101:9-102:13.

Many courts have found false advertising damages measurable on a classwide basis through conjoint analysis, even before a conjoint survey was conducted, because it is a valid method for isolating the price premium attributable to the misrepresentation. *See*, *e.g.*, *Zakaria v. Gerber Prods. Co.*, 2016 WL 6662723, at *14-16 (C.D. Cal. 2016) (Because for class certification, matching "[t]he theories of liability and proposed methods for calculating damages [is] sufficient," where plaintiff merely proposed "using 'conjoint analysis' or 'hedonic regression' to calculate the price premium," finding "Plaintiff ha[d] presented a method for calculating damages that is tied to the theory of liability" satisfying *Comcast* requirements); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015) ("the Court disagrees that [the class's expert] must have already performed his proposed conjoint analysis for the Court to consider the proffered methodology"). That premium "can then be multiplied by the number of units purchased by each class member to determine both total and individual damages." *Zakaria*, 2016 WL 6662723, at *16.

While not required, here the class's survey expert, Dr. Dennis, has already performed a rigorous choice-based conjoint survey and analysis, affirmatively demonstrating that the price premium attributable to the challenged claims can reliably be determined. *See generally* Dennis Report. And the class's damages expert, Mr. Weir, has already used transactional retail sales data obtained from retailers like Whole Foods, Sprouts, and Vitamin Shoppe, and scan data obtained from SPINS and IRI, to "estimate [the] sales of the Products in both dollars and units in California during the proposed class period." Ex. 3, Weir Report at 14-15, ¶¶ 54-58. He then applied price premium data from Dr. Dennis's survey to the aggregate retail sales to calculate the class's restitution and damages. *See id.* at 18-19, ¶ 64.

Thus, plaintiff has not only demonstrated that the class's price premium model is tied to its theory of liability and legally proper, but also that it is capable of measuring damages

23

classwide. The calculation methodology is identical for every purchaser. And the amount of damages itself is identical for every 16 oz. or 32 oz. Class Label Version. In fact, the only individualized damages issue is the number of units a class member purchased, but this is not predominating. *See Schramm v. JPMorgan Chase Bank, N.A.*, 2013 WL 7869379, at *5 (C.D. Cal. 2013). Accordingly, common questions concerning damages predominate, and the class should be certified. *Compare In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413-14 ("Dr. Weir has provided enough evidence—at this stage—to satisfy the Court that a price premium associated with the 50% thicker claim exists."); *Sanchez-Knutson*, 310 F.R.D. at 539 ("The Court accepts Plaintiff's proffered expert's proposed conjoint analysis damages model for purposes of class certification, finding that it is sufficiently tied to Plaintiff's legal theory . . . .").[7]

## B.    Superiority

In determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," courts consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule

---

[7] Mr. Weir's Report assumes damages cut off in May 2016 because that is when defendants decided to remove all the challenged claims, but the accused labels were in the market after likely into at least late 2016. *See* Ex. 21 (label timeline). Mr. Weir's calculations also present some inaccuracies in terms of the relevant time periods, but this only became clear when defendants produced 30,000 pages more than a month after his report, and just shortly before plaintiff's class certification motion was due. *See* Fitzgerald Decl. ¶ 25. These inaccuracies are easily rectified once the relevant time periods are better established. *See* Weir Report ¶ 74 (reserving right to amend or modify testimony upon receipt of "updated data"). *C.f. Brazilian Blowout*, 2011 WL 10962861, at *8 (Granting certification where "[a]dditional discovery will likely . . . establish the appropriate time frame for the Class.").

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted). Superiority is satisfied here considering these factors.[8]

### 1.   Class Members Have No Interest in Prosecuting Separate Actions

Class members have no interest in controlling individual actions because the product costs under $25. *See* Dennis Report ¶ 38. Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.").

### 2.   No Manageability Concerns Outweigh the Superiority of the Class Action Device for Adjudicating the Class's Claims

There will be no difficulties managing this action because it concerns straightforward claims for breach of warranty, consumer fraud, and misbranding, based on a limited number of labeling statements that conveyed consistent health messages, made on a single-ingredient product that did not change. Manageability concerns cannot, in any event, scuttle class certification under the rubric of superiority "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Levya*, 716 F.3d at 514-15. "The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016).

### <u>CONCLUSION</u>

The Court should certify the class.

---

[8] Plaintiff is unaware of any other related litigation and plaintiff is a resident of this district seeking to represent a California class. Accordingly, factors (B) and (C) support superiority.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-BLM
MOTION FOR CLASS CERTIFICATION

Dated: June 2, 2017            Respectfully submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. #206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Counsel for Plaintiff and the Proposed Class***

26