**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiffs and the Proposed Class***

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC.,<br><br>        Defendant. | Case No: 3:16-cv-00532-WQH-AGS<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      August 26, 2019<br>Court:    14B (14th Floor)<br>Judge:   Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................iv

INTRODUCTION & CASE BACKGROUND ..................................................1

FACTS & PROCEDURAL HISTORY ..............................................................2

    I.      THE PARTIES AND PLEADINGS ..........................................2

    II.    DISCOVERY ................................................................................2

    III.   SETTLEMENT ............................................................................3

SUMMARY OF THE SETTLEMENT ..............................................................4

    I.      THE CLASS ................................................................................4

    II.    THE CLASS WILL RECEIVE NOTICE ..................................4

    III.   THE SETTLEMENT'S BENEFITS FOR THE CLASS ...................................4

        A.    Monetary Relief: Defendants will Establish a $1,850,000 Common Fund ...........................................................................4

            1.    The Claims Process ...........................................4

            2.    Notice & Administration Costs ........................6

            3.    Attorneys' Fees and Costs, and Incentive Award ..........................6

        B.    Prospective Relief: Defendants will Change their Advertising Practices ...............................................................6

    IV.   THE SETTLEMENT'S RELEASES ...........................................7

    V.    PROCEDURES FOR OPTING-OUT AND OBJECTING ...............................7

        A.    Opting Out ..............................................................................7

        B.    Objecting .................................................................................7

i

LEGAL STANDARD ...................................................................................................8

ARGUMENT .............................................................................................................8

I.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................8

    A.    The Requirements of Rule 23(a) are Satisfied ........................................9

        1.    Numerosity........................................................................................9

        2.    Commonality ....................................................................................9

        3.    Typicality .......................................................................................10

        4.    Adequacy .......................................................................................11

    B.    The Requirements of Rule 23(b)(3) are Satisfied .................................11

        1.    Predominance..................................................................................11

        2.    Superiority......................................................................................12

II.    THE COURT SHOULD PRELIMINARILY APPROVE THE
PROPOSED SETTLEMENT ......................................................................13

    A.    The Settlement is the Product of Serious, Informed, Non-
Collusive Negotiations ..........................................................................14

    B.    The Settlement Has No Obvious Deficiencies.......................................15

    C.    The Settlement Does Not Grant Preferential Treatment to the
Class Representatives or any Class Members.........................................15

    D.    The Settlement Falls Within the Range of Possible Approval ...............16

        1.    The Experience and Views of Counsel..........................................16

        2.    Investigation and Discovery ..........................................................17

ii

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

3.      The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Duration of Further Litigation; and the Risk of Maintaining Class Certification Through Trial ...............17

4.      The Amount of Settlement.............................................................19

III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND NOTICE PLAN, AND ENTER THE PROPOSED FINAL APPROVAL SCHEDULE ................................................................20

CONCLUSION ...................................................................................21

iii

## TABLE OF AUTHORITIES

**Cases**

*Ahdoot v. Babolat VS N. Am.*,
    2014 WL 12586114 (C.D. Cal. Oct. 7, 2014) .................................................................. 16

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008) ....................................................................................... 14

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ............................................................................................. 10

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ........................................................................................... 11

*Chamber v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. Oct. 11, 2016) ................................................................ 18

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................. 14

*City of Detroit v. Ginnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................................. 20

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 14

*Culley v. Lincare Inc.*,
    2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) .................................................................. 13

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ........................................................................................................... 12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ........................................................................................................... 12

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ........................................................................................... 14

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   2016 WL 4992504 (S.D. Ill. Sept. 16, 2016)...................................................10

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)...........................................................................10

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................15

*In re Beef Indus. Antitrust Litig.*,
   607 F. 2d 167 (5th Cir. 1979)..........................................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)...........................................................................15

*In re Hyundai & Kai Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019).............................................................................3

*In re Hyundai & Kia Fuel Economy Litigation*,
   881 F.3d 679 (9th Cir. 2018).............................................................................3

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015).....................................................................20

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977).........................................................................20

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995).............................................................................14

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014)...........................................................................9

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998)...........................................................................10

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .....................................................16

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Ma v. Covidien Holding, Inc.*,
　2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..................................................9, 14

*Manner v. Gucci Am., Inc.*,
　2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) ....................................................14

*Martin v. Monsanto*,
　2017 WL 1115167 (C.D. Cal. Mar. 24, 2017)...............................9, 10, 11, 12

*Mezzadri v. Med. Depot, Inc.*,
　2016 WL 5107163 (S.D. Cal. May 12, 2016)........................................................9

*Misra v. Decision One Motrg. Co.*,
　2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ........................................8, 14, 16

*Morey v. Louis Vuitton N. Am., Inc.*,
　2013 WL 12069021 (S.D. Cal. 2013) (Hayes, J.).........................................13, 14

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
　221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................18

*Nguyen v. Radient Pharms. Corp.*,
　2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
　688 F.2d 615 (9th Cir. 1982).................................................................................13

*Pilkington v. Cardinal Health, Inc.*,
　516 F.3d 1095 (9th Cir. 2008)...............................................................................14

*Rasario v. Livaditis*,
　963 F.2d 1013 (7th Cir. 1992)...............................................................................10

*Satchell v. Fed. Exp. Corp.*,
　2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ....................................................15

*Simpson v. Fireman's Fund Ins. Co.*,
　231 F.R.D. 391 (N.D. Cal. 2005).........................................................................10

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .......................................................................... 12

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................................. 16

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 2191901 (N.D. Cal. May 23, 2014) ....................................................... 18

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2016) ........................................................ 16

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................................. 12

**Statutes**

Cal. Civ. Code § 1542 .................................................................................................. 7

**Rules**

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 9

Fed. R. Civ. P. 23(a)(3) .............................................................................................. 10

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 11

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 11

Fed. R. Civ. P. 23(e) .................................................................................................. 13

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION & CASE BACKGROUND

In this putative class action, plaintiff alleges defendants Nature's Way Products, LLC and Schwabe North America, Inc. (collectively "defendants" or "Nature's Way") misleadingly and unlawfully marketed various Nature's Way brand coconut oil products as both inherently healthy and a healthy alternative to butter, margarine, shortening, and other cooking oils, despite that coconut oil is actually inherently unhealthy, and a less healthy option to these alternatives. Plaintiff relied on misleading and unlawful labeling claims when purchasing Nature's Way coconut oil products, and lost money as a result. Specifically, plaintiff read and relied on the following misleading claims contained on the packaging:

   a.  "Variety of Healthy Uses: Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars."

   b.  "Ideal for exercise and weight loss programs"

   c.  "non-hydrogenated; no trans fat"

   d.  "For cooking, can be used in place of butter, margarine, shortening or other cooking oils"

Plaintiff alleges that defendants violated California's Unfair Competition Law, False Advertising Law, Consumers Legal Remedies Act, and express and implied warranties.

After more than two years of litigation, extensive motion practice, including a fully-briefed motion for class certification, multiple discovery motions, expert and party depositions, and several informal settlement discussions, on February 21, 2018, during a settlement conference with Magistrate Judge Hon. Andrew G. Schopler, the parties reached a classwide settlement agreement that provides substantial relief to the Class: defendants have agreed to injunctive relief, and to establish a $1,850,000 non-reversionary common fund to pay all settlement expenses including notice and administration, Class Member claims, and any incentive awards, fees, and expenses awarded by the Court.

The proposed Settlement fairly and appropriately resolves the claims of the Class in a manner that provides immediate and definite injunctive and monetary relief. Accordingly,

1

plaintiff respectfully requests the Court grant preliminary approval, authorize Class Notice as detailed herein, appoint her Class Representative, appoint her counsel as Class Counsel, and schedule a Final Approval Hearing and related briefing deadlines.

## FACTS & PROCEDURAL HISTORY

### I.   THE PARTIES AND PLEADINGS

Plaintiff Sherry Hunter brought this action on January 28, 2016, in San Diego County Superior Court, and on March 2, Nature's Way filed a notice of removal pursuant to 28 U.S.C. § 1441 it to federal court. Dkt. No. 1. On March 14, 2016, Nature's Way moved to dismiss the case, or to strike portions of the Complaint, Dkt. Nos. 12, 13, which the Court granted in part and denied in part, Dkt. No. 28. Nature's Way answered the original complaint on September 2, 2016. Dkt. No. 31.

Plaintiff moved for class certification on June 2, 2017. Dkt. No. 60. Defendants opposed, Dkt. No. 74, and plaintiff replied, Dkt. No. 75. While the motion was pending, due to a change in Ninth Circuit law, on November 14, 2017, plaintiff moved the Court to reconsider its Order dismissing her claims for injunctive relief. Dkt. No. 85. On January 1, 2018, the Court granted the motion, giving plaintiff leave to file an amended complaint, and concurrently denied the pending certification motion as moot. Dkt. No. 90.

Pursuant to an earlier Order, following the Court's Order on the certification motion, the parties contacted Judge Schopler's chambers to schedule the mandatory settlement conference that had earlier been vacated. *See* Dkt. No. 52. Plaintiff filed a First Amended Complaint on January 30, 2018, Dkt. No. 95, and a Second Amended Complaint on February 12, 2018, Dkt. No. 96, which is the currently-operative complaint.

### II.   DISCOVERY

The parties served initial disclosures in April (plaintiff) and October (defendants) 2016. Fitzgerald Decl. ¶ 3. They held a Rule 26(f) conference on September 23, 2016, and submitted a joint report on October 7, 2016. Dkt. No. 33.

On September 26, 2016, plaintiffs served defendants with written discovery requests. *Id.* ¶ 4. On April 19, 2017, plaintiff moved to compel defendants to produce documents and

2

supplemental interrogatory responses, and moved to extend case deadlines based on defendant's failure to timely produce. Dkt. No. 50. The Court granted the motion to extend discovery cutoff dates, Dkt. No. 56, and, following a hearing on May 22, 2017, granted in part plaintiff's motion to compel, ordering defendants to pay to plaintiff $4,000 in sanctions. Dkt. No. 59.

In response to plaintiff's discovery requests, defendants produced nearly 40,000 pages of documents comprising, among other things, consumer research, labels and related business documents, and pricing, sales, science, and expert-related documents. Fitzgerald Decl. ¶ 4. Plaintiff also subpoenaed several third parties, obtaining a large amount of sales data. *Id.* ¶ 5. After reviewing these documents and other discovery responses, in March 2017, plaintiff's counsel took defendants' depositions pursuant to Fed. R. Civ. P. 30(b)(6), in Green Bay, Wisconsin. *Id.* ¶ 6. The following month, counsel deposed defendants' experts in Los Angeles and Ohio. *Id.* And in April 2017, defendants also deposed plaintiff. *Id.* ¶ 7.

## III.   SETTLEMENT

On February 21, 2018, the parties attended a settlement conference with Judge Schopler. After substantial negotiations, and only on the basis of a mediator's proposal Judge Schopler made when the parties could not reach agreement themselves, the parties finally reached the instant settlement. Fitzgerald Decl. ¶ 8; Dkt. No. 97.

In June 2018, as a result of the full court vacating a Ninth Circuit panel decision in *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018), *rev'd* 926 F.3d 539 (9th Cir. 2019), the parties asked the Court to stay these proceedings, pending resolution of a rehearing of that matter en banc. Dkt. No. 103. The Court granted the stay. Dkt. No. 104. In June 2019, the en banc panel overturned the decision, restoring the underlying district court's order approving a nationwide settlement. *See In re Hyundai & Kai Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc) ["*Hyundai*"]. The parties notified the Court of that decision, Dkt. No. 109, and it lifted the stay, Dkt. No. 110. Plaintiff now submits this motion for approval of a nationwide class settlement.

3

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## SUMMARY OF THE SETTLEMENT

### I.   THE CLASS

The proposed Settlement is on behalf of a Class of all persons in the United States who purchased, for personal or household use, any Nature's Way coconut oil product bearing at least one of the challenged labeling claims, and including specifically the 16-ounce or 32-ounce jar of Nature's Way Extra Virgin Coconut Oil, and any bottle of Nature's Way Liquid Coconut Oil, including the 10-ounce and 20-ounce bottles. Fitzgerald Decl. Ex. 1 ("Settlement Agreement" or "SA") at ¶¶ 1.3, 1.10.

### II.   THE CLASS WILL RECEIVE NOTICE

The Claims Administrator, RG2, will provide the Class with notice of the proposed settlement via digital publication notice, consistent with the manner set forth in the proposed Notice Plan. SA ¶ 3.2 & Ex. B, Declaration of William W. Wickersham ("Wickersham Decl.") (detailing proposed Notice Plan). As explained in detail in Section III, below, the proposed Notice Plan is reasonable under the circumstances.

### III.   THE SETTLEMENT'S BENEFITS FOR THE CLASS

#### A.   Monetary Relief: Defendants will Establish a $1,850,000 Common Fund

Defendants will establish a non-reversionary $1,850,000 Common Fund to pay all settlement expenses including notice and administration, Class Member claims, and any incentive award and attorneys' fees and costs awarded by the Court. SA ¶ 2.3.

##### 1.   The Claims Process

Class Members can make a claim online at the Settlement Website by filling out and submitting a short form. The website will also include a claim form that can be downloaded and mailed to the Class Administrator. SA 3.2 & Ex. B, Wickersham Decl. ¶¶ 20-21. Class members may also object to the settlement, SA ¶ 3.4, opt-out of the settlement, SA ¶ 3.6, and submit a notice of intent to appear at the final approval hearing, SA ¶ 3.5. The procedure for any class member to opt-out, object, or appear will be set forth on the Settlement Website. SA ¶¶ 1.22,  Ex. A, Long Form Notice.

Class Members with proof of purchase, who have their claims validated by the Claims

4

Administrator, will be reimbursed as follows:

- $3.00 for each 16-ounce jar of semi-solid Extra Virgin Coconut Oil purchased;
- $6.00 for each 32-ounce jar of semi-solid Extra Virgin Coconut Oil purchased;
- $3.50 for each 10-ounce jar of Liquid Coconut Cooking Oil purchased; and
- $6.00 for each 20-ounce jar of Liquid Coconut Cooking Oil purchased.

Class Members without proof of purchase, who have their claims validated by the Claims Administrator, will be reimbursed those same amounts, but will be capped at reimbursement for three total units. SA ¶ 2.3.

If the total amount of funds claimed by Class Members is less than the amount available after costs and expenses, *i.e.*, if there is a surplus in the common fund following disbursement of funds to all valid claimants, the excess funds will be further distributed to Class Members who submitted valid claims on a *pro-rata* basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount. *Id*.

However, this surplus distribution will be limited to 50% of the retail value of the products for which they are making claims. If, after surplus funds are distributed to Class Members, there is still money remaining in the common fund, it will be paid to a third party *cy pres*. The parties contemplate, and the Settlement Agreement contemplates, the *cy pres* recipient in such circumstances being the American Heart Association ("AHA").[1] *Id*. The retail price for each of the products at issue are as follows:

- $10 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil;
- $20 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil;
- $11.50 for a 10-ounce jar of Liquid Coconut Cooking Oil; and
- $20 for a 20-ounce jar of Liquid Coconut Cooking Oil.

---

[1] The AHA is a 501(c)(3) nonprofit corporation that dedicates substantial resources to educating the public regarding nutrition as it relates to cardiovascular health, and has specifically published dozens of articles related to saturated fats, cooking oils, and coconut oil in particular.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Id.*

### 2.    Notice & Administration Costs

The Common Fund will be used to pay the actual costs of class notice and administration. SA ¶ 2.3. After soliciting bids from multiple potential administrators, the parties have agreed, with the Court's approval, to retain RG/2 Claims Administration, LLC ("RG2") as the Claims Administrator. SA ¶ 1.2. RG2 estimates the total cost of notice and administration will be $128,599 for a digital Notice Plan that will produce more than 15.5 million digital notice impressions targeted to the Class using methods universally employed in the advertising industry to reach persons that match known demographics and other characteristics of purchasers of coconut oil. SA Ex. B, Wickersham Decl. ¶ 25. The digital Notice Plan will have a 70% reach, with up to 2X frequency. *Id.*

### 3.    Attorneys' Fees and Costs, and Incentive Award

Plaintiff and her counsel will seek approval for incentive awards, and attorneys' fees and costs, to be paid from the Common Fund. SA ¶ 2.5. Any fees and costs awarded will be paid within seven calendar days of entry of Judgment, with counsel obligated to return to the Common Fund any difference if the amount is overturned or reduced. SA ¶ 2.4. Defendants will bear their own fees and costs. As set forth in the Long Form Notice, plaintiff's counsel will petition the Court for a fee award in an amount no greater than 33% of the Common Fund ($610,500), and actual litigation expenses, and plaintiff will seek a service award of no more than $7,500. Fitzgerald Decl. ¶ 17; *See also* SA Ex. A at 3.

### B.    Prospective Relief: Defendants will Change their Advertising Practices

Plaintiff Sherry Hunter filed this suit on January 28, 2016. During the litigation, defendants removed the primary challenged "health" claims from the label, such that the last sales of the products containing those claims occurred in June 2016. Fitzgerald Decl. ¶ 12.

Although defendants voluntarily removed these claims during the litigation, as a term of the Settlement Agreement, for a period of five years following Final Approval, defendants will not advertise (including in print, on its website, on Coconut Oil Product labels or packaging, and in its sales pitches or public statements) its Coconut Oil Products using the

6

following terms and phrases, or substantially similar terms or phrases:

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

SA ¶ 2.2. If there is a change in law, regulations, science, or if the Food and Drug Administration offers further guidance permitting the use of the aforementioned claims, then defendants are permitted to include on their labels anything expressly permitted under the new law, regulation, or FDA guidance. *Id.*

As noted above, the current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the injunctive relief contemplated by the Settlement Agreement. Fitzgerald Decl. ¶ 12.

## IV.   THE SETTLEMENT'S RELEASES

Class Members who do not opt out will fully release defendants and related entities from all claims that could have been asserted in the litigation. SA ¶¶ 4.3 - 4.6. The release includes a waiver under Cal. Civ. Code § 1542. SA ¶ 4.4. Defendants will also release claims against plaintiff and her counsel. SA ¶ 4.5.

## V.   PROCEDURES FOR OPTING-OUT AND OBJECTING

### A.   Opting Out

Class Members who wish to opt out of the Settlement must download from the Settlement Website and submit to the Claim Administrator by the deadline, a completed Opt-Out Form. SA ¶¶ 3.6.

### B.   Objecting

Class Members who wish to object must file and serve a written objection by the

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

applicable deadline.[2] An objection must contain (a) a caption or title clearly identifying the action, and a clear statement that the document is an objection, including by use of the word "Objection" at the top of the document; (b) information sufficient to identify and contact the objecting Class Member or his or her attorney; and (c) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection. SA ¶ 3.4. The objection should also indicate whether the objector intends to personally appear and/or testify at the Fairness Hearing. *Id*. Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections, whether by a subsequent objection, intervention, appeal, or any other process. *Id*. Unless otherwise permitted by the Court, Class Members will not be entitled to speak at the Fairness Hearing unless they have complied with the notice required under paragraph 3.4(vii) of the Settlement Agreement.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 23(e) generally requires the Court to approve a class action settlement and requires notice to all class members." *Misra v. Decision One Motrg. Co.*, 2009 WL 4581276, at *2 (C.D. Cal. Apr. 13, 2009). When the settlement comes before certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Id.* (quoting *Staton*, 327 F.3d at 952). "The criteria for class certification are applied differently in litigation classes and settlement classes," and while "a district court must be concerned with manageability at trial" in a litigation class, "such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Hyundai*, 926 F.3d at 556-57.

## ARGUMENT

## I.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

"Courts may certify a class action only if it satisfies all four requirements identified in

---

[2] The parties contemplate a deadline of no later than fourteen (14) days before the Fairness Hearing. SA ¶ 3.4.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Federal Rule of Civil Procedure 23(a), and satisfies one of the three subdivisions of Rule 23(b)." *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *1 (C.D. Cal. Jan. 31, 2014). Plaintiffs previously provided evidence Rule 23's requirements were satisfied in the context of a contested certification motion. *See* Dkt. Nos. 60, 75. In the settlement context, the burden may be lower, but the same evidence still shows the requirements are satisfied.

### A. The Requirements of Rule 23(a) are Satisfied

#### 1. Numerosity

Defendants' and third party records show that more than 1 million units of Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil were sold to California consumers during the Class Period, consisting of at least hundreds of thousands of individual consumers. *See* Dkt. No. 60-1 at ECF Header Page 22 of 36 (citing Expert Report of Colin Weir at 17). Thus, numerosity is easily satisfied. *See Ma*, 2014 WL 360196, at *2; *Martin v. Monsanto*, 2017 WL 1115167, at *3 (C.D. Cal. Mar. 24, 2017) (numerosity "easily satisfied because Monsanto sold thousands of Roundup Concentrates bearing the challenged labels to at least tens of thousands of consumers").

#### 2. Commonality

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted). Questions "have that capacity" when they have a "close relationship with the . . . underlying substantive legal test." *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent

factual predicates is sufficient, as is a common core of salient facts," *Hanlon*, 150 F.3d at 1019. "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rasario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), which exists "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). To satisfy Rule 23(a)(2), "even a single common question will do." *Dukes*, 564 U.S. at 359 (brackets omitted).

Here, common questions include whether the challenged representations were material, whether they constituted express or implied warranties, and whether they were likely to mislead. *See Martin*, 2017 WL 1115167, at *4 ("A classwide proceeding in this [false advertising] case has the capacity to generate common answers to common questions apt to drive the resolution of the litigation, including, for example: (1) whether the [challenged labeling claim] is an express warranty; (2) whether Monsanto breached that warranty by selling non-conforming products; (3) whether the [challenged claim] is material, and (4) whether the statement was likely to deceive reasonable consumers.").

### 3. Typicality

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). This means plaintiffs' claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory," *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

Here, plaintiff's claims are typical of the Class Members' claims because each purchased the Nature's Way Coconut Oil products and were exposed to the challenged

labeling claims, losing money as a result of overpaying for a product that contained material misrepresentations. *See Martin*, 2017 WL 1115167, at *4 ("Plaintiffs' claims are sufficiently typical of the class claims" where "Plaintiff alleges that she and all class members were exposed to the same statement . . . and that they were all injured in the same manner . . . .").

### 4.    Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, plaintiff and her counsel are adequate. Plaintiff has no conflict of interest with other Class Members, and has been and will continue prosecuting the action vigorously on behalf of the Class. Plaintiff's counsel are adequate Class Counsel because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts, and have been and will continue prosecuting the action vigorously on behalf of the Class. Fitzgerald Decl. ¶ 9 & Ex. 2;  Joseph Decl. ¶¶ 2-7 & Ex. 1.

### B.    The Requirements of Rule 23(b)(3) are Satisfied

### 1.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

"Considering whether 'questions of law or fact common to class members

11

predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Plaintiffs bring claims on behalf of the Class for breach of warranty, and under California's consumer protection statutes. Because both include objective elements that are subject to common proof, these types of claims are readily amenable to certification. *See Martin*, 2017 WL 1115167, at *7 ("In light of the elements of the claims for breach of express warranty, and violations of the CLRA, FAL, and UCL, the Court concludes that 'the questions of law or fact common to the class members predominate over any questions affecting only individual members.'"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product'" (quotation omitted)); *accord Amchem Prods.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer . . . fraud"). The Ninth Circuit recently reiterated this view in holding that class treatment is especially applicable where class members are exposed to uniform misrepresentations and suffered identical injuries within only a small range of damages. *Hyundai*, 926 F.3d at 559. "[T]hese types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions." *Id.*

## 2. Superiority

"A consideration of the[] factors [set forth in Rule 23(b)(3)(A)-(D)] requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted). The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Since the products at issue cost between $10 and $20 per unit, and each contained up

to 32 ounces of coconut oil, SA ¶ 2.3, most Class Members likely did not purchase more than a few units, at most, during the four-year Class Period. As a result, Class Members' claims for individual damages are exceedingly small in comparison to the costs of litigation. "The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (citation omitted). In addition, there is no other litigation pending concerning the class's claims. *See Brazilian Blowout*, 2011 WL 10962891, at *9 (superiority where "no individual actions [are] pending against Defendant based on the claims asserted by Plaintiffs," and action was "most procedurally advanced" among pending class actions). Accordingly, superiority is satisfied.

## II.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Morey v. Louis Vuitton N. Am., Inc.*, 2013 WL 12069021, at *4 (S.D. Cal. 2013) (Hayes, J.) (internal quotes and citation omitted). "But because '[t]he class action device . . . is [ ] susceptible to abuse and carries with it certain inherent structural risks, . . . class actions may be settled only with the approval of the district court.'" *Id*. (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982); Fed. R. Civ. P. 23(e)). Approval of a class settlement "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval," *id*. (internal quotes and citation omitted). "This initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id*. (internal quotes and citation omitted). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, th[e] Court need not review the settlement in detail at this juncture." *Id*. (internal quotes and citation omitted). Generally, to grant preliminary approval, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after . . . any party has had a chance to object and/or opt out." *Misra*, 2009 WL

13

4581276, at *3 (citation omitted).

"[B]ecause the Court cannot fully assess many of these factors prior to notice and an opportunity for objection, the Court need not conduct a full settlement fairness appraisal before granting preliminary approval; rather, the proposed settlement need only fall within 'the range of possible approval." *Morey*, 2013 WL 12069021, at *7. "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id*. (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008))

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits." (internal quotations omitted)); *Ma*, 2014 WL 360196, at *4 ("In general, there is a strong judicial policy favoring class settlements." (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1272 (9th Cir. 1992)). The Court should favor the proposed Settlement since it "eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims," *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) (citing *Morey*, 2014 WL 109194, at *5-6.

## A.   The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

The Settlement was reached 28 months into the litigation, after the parties exchanged thousands of pages of documents, consulted with merits and damages experts, took multiple fact and expert depositions, fully briefed class certification, and engaged in months of informal settlement discussions. Moreover, plaintiff's counsel had litigated numerous other similar cases in which they filed class certification motions or reached nationwide

14

settlements.[3]

The parties were therefore well informed when negotiating the settlement at the February 2018 settlement conference. Moreover, nothing about the settlement indicates collusion, because there was no collusion. To the contrary, all the *Bluetooth* "subtle signs" of collusion are absent: plaintiffs' counsel do not stand to receive a disproportionate distribution of the settlement; there is no clear sailing provision on attorneys' fees; and there is no reversion of funds to defendant. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007). Here, Judge Schopler oversaw the settlement conference, acting as mediator between the parties, ensuring settlement was reached at arms' length.

**B.    The Settlement Has No Obvious Deficiencies**

The Settlement provides retrospective monetary relief and prospective injunctive relief that addresses the primary concerns raised in plaintiff's Complaint. The Common Fund will be divided equally among all units claimed, making reimbursement simple and straightforward.

**C.    The Settlement Does Not Grant Preferential Treatment to the Class Representatives or any Class Members**

All Class Members who make a claim, including plaintiff, will receive the same reimbursement for each unit purchased, and all Class Members are subject to the same requirements and limitations regarding claims. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (no preferential treatment where settlement

---

[3] These cases include *Delalat v. Nutiva, Inc.*, No. 4:16-cv-00711-HSG (N.D. Cal.); *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-19510-CU-BT-CTL (San Diego Sup. Ct.); *Ducorsky v. Premier Organics*, No. HG16801566 (Alameda Sup. Ct.); *Zemola v. Carrington Tea Company*, No. 17-cv-760-MMA (S.D. Cal.); *Tracton v. Viva Labs, Inc.*, No. 16-cv-2772-BTM (S.D. Cal.); and *Boswell et al. v. Costco Wholesale Corporation, et al.*, No. 8:16-cv-00278-DOC (C.D. Cal.).

15

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

"provides equal relief to all class members" and "distributions to each class member—including Plaintiff—are calculated in the same way").

### D.   The Settlement Falls Within the Range of Possible Approval

In determining whether a proposed settlement falls within the "range of possible approval," *see Tableware*, 484 F. Supp. 2d at 1079; *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009), "the fundamental inquiry is 'substantive fairness and adequacy,'" which "entails a weighing of" several factors. *See Ahdoot v. Babolat VS N. Am.*, 2014 WL 12586114, at *9 (C.D. Cal. Oct. 7, 2014). "[S]ome or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement." *Misra*, 2009 WL 4581276, at *3 (citing *Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959). "[S]ome of these factors cannot be fully assessed until the court conducts its fairness hearing," *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2016).

#### 1.   The Experience and Views of Counsel

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiff['s] counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *11 (N.D. Cal. Feb. 2, 2009) (citation omitted). That is particularly appropriate here because, by prosecuting a number of similar actions, plaintiffs' counsel have developed a deep understanding of this case's strengths and risks.

Beginning in January 2016, plaintiffs' counsel brought nine separate lawsuits against coconut oil manufacturers who advertise their products with health and wellness claims. Three cases (including this one) have settled on nationwide class bases. In cases involving coconut oil products alone, plaintiff's counsel have reviewed hundreds of thousands of documents, taken many expert and party depositions, consulted with and retained damages and liability experts and have become uniquely expert at understanding consumer research

16

relating to the purchasing and usage behaviors of coconut oil purchasers.

In this case, as noted above, plaintiffs have taken depositions of the defendants and their experts, and have reviewed tens of thousands of pages of documents. Thus, plaintiff's counsel have an especially strong understanding of this case, both on merits and potential damages, not only from litigating against the defendants here for over two years, but based on other coconut oil class actions. Fitzgerald Decl. ¶ 9; *see also* Joseph Decl. ¶¶ 5-6, 8-10. Given this background, plaintiff's counsel believe this is a strong result for the Class, particularly in light of some of the unique challenges this case presents, which are discussed further below. Fitzgerald Decl. ¶ 13; Joseph Decl. ¶¶ 13-15.

### 2. Investigation and Discovery

Investigation and discovery has been sufficient to permit the parties and Court to make an informed analysis. Not only have the parties exchanged tens of thousands of documents and written discovery responses, but both consulted with experts on merits and damages issues. A motion for class certification was fully briefed. Plaintiffs have been informed, not just by the evidence in this case, but also consumer research and other evidence developed in similar cases, which is equally applicable here.

### 3. The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Duration of Further Litigation; and the Risk of Maintaining Class Certification Through Trial

Of the many coconut oil lawsuits plaintiff's counsel have brought and prosecuted the last several years, this one presents uniquely significant challenges, which defendants have highlighted, skillfully, in their opposition to plaintiff's motion for class certification. *See generally* Dkt. No. 74. On the merits, plaintiff and her counsel believe there is a strong scientific case that coconut oil consumption is unhealthy, increasing LDL cholesterol and risk of heart disease, and that on this basis, there is a reasonably good chance a jury would find it misleading, within the meaning of California's consumer protection statutes, to advertise coconut oil in a manner stating or suggesting that it is healthy. Fitzgerald Decl. ¶ 10. But here, the labels the defendants used changed significantly between May 2010 and July 2015,

17

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    dropping the more explicit claims related to consumer health and instead utilizing less
2    concrete health claims like "Ideal for exercise and weight loss programs." *Id.* ¶ 11.

3         There are also unique challenges in proving plaintiff's damages model as a result of
4    defendants' use of different labels, at different times, conveying different messages. It is well-
5    established that a proper measure of damages or restitution in a consumer fraud case is the
6    difference between the value of the product as misrepresented, and its actual value, or the
7    "price premium." *See, e.g., Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at
8    *22 (N.D. Cal. May 23, 2014) (plaintiff "must present a damages methodology that can
9    determine the price premium attributable to [defendant's] use of the [challenged] labeling
10   statements"). While plaintiff's expert developed a damages model reflecting the changing
11   labels, that model was vigorously attacked by defendants in their opposition to class
12   certification.

13        Given the possible difficulty of establishing damages in this case, there is no guarantee
14   plaintiff could obtain and maintain class certification through trial—and even if plaintiff had
15   obtained certification, it would have been on behalf of a California class only, whereas the
16   Settlement resolves the claims of a nationwide class. *See Chamber v. Whirlpool Corp.*, 214
17   F. Supp. 3d 877, 888 (C.D. Cal. Oct. 11, 2016) ("Because plaintiffs had not yet filed a motion
18   for class certification, there was a risk that the class would not be certified. That risk was
19   magnified in this case because nationwide class certification under California law or the laws
20   of multiple states is rare." (citations omitted)). And even if plaintiffs obtained certification, it
21   would have been expensive and risky to continue the litigation. Fitzgerald Decl. ¶ 15. Courts
22   considering preliminary approval rightly consider "all the normal perils of litigation as well
23   as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust*
24   *Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). "[U]nless the settlement is clearly inadequate, its
25   acceptance and approval are preferable to lengthy and expensive litigation with uncertain
26   results." *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 526; *c.f. Nguyen v. Radient Pharms.*
27   *Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (granting final approval where
28   "although the claims were quite strong, there were clear factual challenges facing Plaintiffs

18

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

at trial" including "challenges of calculating damages").

### 4.     The Amount of Settlement

The $1,850,000 common fund represents a significant recovery for the Class in light of the expense and challenges of continued litigation, and the likelihood that damages recovered at trial would be small.

Based on information obtained during discovery, sales of the challenged products in California were approximately $10.2 million of the Extra Virgin product, and $2.1 million of the Liquid products. Fitzgerald Decl. ¶ 16. Reflecting its population, California generally accounts for 12% - 13% of sales of retail items widely distributed nationwide, like these products. *Id*. Accordingly, we project that nationwide sales were approximately $81.6 million for the Extra Virgin, and $16.8 million for the Liquid, for a total of about $98.4 million. Fitzgerald Decl. *Id*.

Plaintiff's survey expert determined that the challenged claims carried premiums between 5.9% and 20.9%, with an average of 13.1%. *See* Dkt. No. 60-4 at p. 43 of 268 (ECF header), Dennis Decl. Ex. 4 (Conjoint Results). Although it is virtually impossible that the claims of a nationwide class could ever be adjudicated in a single trial, assuming they could, the Class's maximum recovery under plaintiff's theory of liability is, accordingly, approximately $12.9 million (13.1% of $98.4 million). The $1.85 million settlement thus represents approximately 14.3% of the largest potential judgment after trial, which is substantial. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."))).

Because the majority of Class Members will not make claims, the amount claimants receive almost certainly exceed their maximum likely recovery at trial. The products had average retail prices of $10, $11.50, or $20. With a 13.1% average premium, this equates to damages of $1.31, $1.51, or $2.62 respectively; but claimants will, by default, receive $3, $3.50, or $6, respectively (representing about 30% of the retail price). And if the Common Fund is not exhausted after claims and expenses, claimants will receive even more in a

19

supplemental distribution that could net claimants up to $30 total.[4] This compares favorably to potential recovery at trial. *C.f. City of Detroit v. Ginnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the proposed recovery does not, in and of itself, mean the settlement is grossly inadequate and should be disapproved."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND NOTICE PLAN, AND ENTER THE PROPOSED FINAL APPROVAL SCHEDULE

RG2's proposed Notice Plan is reasonable under the circumstances. The plan includes targeted ads through website banners, social media (including through the use of Facebook analytics to target potential Class Members who have an interest in things related to coconut oil), paid advertising searches, and online video ads. SA Ex. B, Wickersham Decl. ¶¶ 10-13.

RG2 has defined the likely demographics and created a tailored plan to reach the maximum number of Class Members, and anticipates reaching over 70% of the projected 4.5 million potential Nature's Way coconut oil purchasers, at up to a 2X frequency. *Id*. ¶ 25 . In RG2's opinion, the plan will effectively reach the class and meet due process standards. *Id.*

The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). *Compare* SA Ex. A (Long Form Notice)

---

[4] The highest approximate average retail value is $20, and is for both the 32-ounce semi-solid Extra Virgin Coconut Oil and the 20-ounce bottle of Liquid Coconut Cooking Oil. If a class member claims the maximum three purchases for either of those products, the will receive 50% of the retail value, or $10, for each purchase, totaling $30.

Assuming the Court grants preliminary approval, plaintiff proposes the following schedule leading up to a final approval hearing, which gives absent Class Members sufficient time to receive notice and to make a claim, object, or opt out; and sufficient time to review plaintiff's Final Approval and Fee Motions.

| Event | Day | Approximate Weeks After Preliminary Approval |
|---|---|---|
| Date Court grants preliminary approval | 0 | - |
| Deadline to commence direct notice | 7 | 1 week |
| Deadline to complete direct notice | 30 | 4 weeks |
| Deadline to make a claim or opt out | 45 | 6 weeks |
| Deadline for plaintiffs to file Motions for Final Approval, Attorneys' Fees, and Incentive Awards | 60 | 8 weeks |
| Deadline for objections | 70 | 9 weeks |
| Deadline for replies to objections | 75 | 10 weeks |
| Final approval hearing date | 84 | 12 weeks |

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request the Court grant preliminary approval, authorize Class Notice, appoint plaintiff as Class Representative and her counsel as Class Counsel, and schedule a Final Approval Hearing and related briefing deadlines.

Dated: July 22, 2019          Respectfully Submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

21

Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. #309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Counsel for Plaintiff and the Proposed Class*

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT