**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public,<br><br>            Plaintiffs,<br><br>      v.<br><br>NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC.,<br><br>            Defendant. | Case No: 3:16-cv-00532-WQH-AGS<br><br>**DECLARATION OF JACK FITZGERALD IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:      William Q. Hayes |

I, Jack Fitzgerald, declare:

1.  I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California, the Southern and Eastern Districts of New York, and the Western District of Wisconsin; and of the United States Court of Appeals for the Ninth Circuit. I make this Declaration based on my own personal knowledge in support of plaintiffs' motion for preliminary approval of the proposed class action settlement.

2.  A true and correct copy of the parties' proposed Class Action Settlement Agreement is attached hereto as <u>Exhibit 1</u>.

## **Discovery and Settlement Efforts**

3.  The parties served initial disclosures in April (plaintiff) and October (defendants) 2016.

4.  On September 26, 2016, plaintiffs served defendants with written discovery requests. In response to plaintiff's document requests, defendants produced nearly 40,000 pages of documents comprising, among other things, consumer research, labels and related business documents, pricing, sales, and science and expert related documents.

5.  Plaintiff also subpoenaed several third parties, obtaining a large amount of sales data.

6.  After reviewing these documents and other discovery responses, in March 2017, plaintiff's counsel took defendants' depositions pursuant to Fed. R. Civ. P. 30(b)(6), in Green Bay, Wisconsin. The following month, counsel deposed defendants' experts in Los Angeles and Ohio.

7.  In May 2017, defendants deposed plaintiff Sherry Hunter in a full day deposition.

8.  On February 21, 2018, the parties attended a settlement conference with Judge Schopler. After substantial negotiations, and only on the basis of a mediator's proposal Judge

Schopler made when the parties could not reach agreement themselves, the parties finally reached the instant settlement.

### The Qualifications of The Law Office of Jack Fitzgerald, PC

9.     The Law Office of Jack Fitzgerald, PC ("LOJF") was formed in April 2013 and dedicates its practice almost entirely to prosecuting class action lawsuits. LOJF been appointed class counsel in numerous cases and helped victimized consumers recover millions of dollars. This specifically includes numerous cases involving the misleading advertising of foods as healthy, and in particular, the misleading advertising of coconut oil as unhealthy. Thus, we have an especially strong understanding of this case, both on merits and potential damages, not only from litigating against Nature's Way September 2016, but based on the portfolio of coconut oil class actions. LOJF has no conflicts, and have been and will continue prosecuting the action vigorously on behalf of the Class. The firm's resume is attached hereto as Exhibit 2, providing further detail.

### Counsel's View of the Case

10.     On the merits, plaintiffs and their counsel believe there is a strong scientific case that coconut oil consumption is unhealthy, increasing LDL cholesterol and risk of heart disease, and that on this basis, there is a reasonably good chance a jury would find it misleading, within the meaning of California's consumer protection statutes, to advertise coconut oil in a manner stating or suggesting that it is healthy.

11.     But here, the labels the defendants used changed significantly between May 2010 and July 2015, dropping the more explicit claims related to consumer health and instead utilizing less concrete health claims like "Ideal for exercise and weight loss programs."

12.     During the litigation, defendants removed the primary challenged "health" claims from the label, such that the last sales of the products containing those claims occurred in June 2016. Therefore, the current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the injunctive relief contemplated by the settlement.

13.     Given this background, I believe this is a strong result for the Class, in light of some of the unique issues in this case, particularly with respect to the ability of the Class to collect on a judgment.

14.     In negotiating and ultimately agreeing to settle this matter on the terms embodied in the Agreement, we considered the benefits of settling the action to secure immediate relief with risks of proceeding with the litigation. Factors we considered include:

a)     The great discretion afforded to trial courts in deciding whether to grant or deny class certification, providing at least a possibility that this Court would deny certification of the proposed class, which would result in no recovery whatsoever for the Class;

b)     The arguments against certification of which plaintiff's counsel is already aware, such as the fact that coconut oil is also commonly used topically or that consumers may for other reasons not rely on challenged health claims;

c)     The substantial time and resources it would take to bring plaintiff's claims to trial, including the significant expense of hiring scientific, advertising/messaging, and damages experts to prove plaintiff's claims;

d)     The possibility, even if the Court certified the class, that the class might lose the case on the merits; and

e)     The possibility that the class would obtain, but be unable to collect on a judgment.

15.     We believe these factors favor settlement in this case. The cost and risks attendant with preceding to trial are substantial. For example, Class Counsel estimate that the costs and expenses associated with proceeding through certification and trial would easily eclipse $1 million, and might therefore be equal to or greater than the Class's potential recovery if only a California class is certified. Even without taking into account the risks that certification might not be obtained or defendants would prevail at trial, this weighs strongly in favor of settlement.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
DECLARATION OF JACK FITZGERALD

16.     One of the primary considerations was weighing the Class's potential recovery if proceeding through certification and trial against the relief provided by the Settlement Agreement. Based on information obtained during discovery, sales of the challenged products in California were approximately $10.2 million of the Extra Virgin product, and $2.1 million of the Liquid products. Reflecting its population, California generally accounts for 12-13%[1] of sales of retail items widely distributed nationwide, like these products. Accordingly, we project that nationwide sales were approximately $81.6 million for the Extra Virgin, and $16.8 million for the Liquid, for a total of about $98.4 million. Plaintiffs' damages experts estimated an average premium of about 13.1%. *See* Dkt. No. 60-4 at p. 43 of 268 (ECF header), Dennis Decl. Ex. 4 (Conjoint Results). Thus, the Common Fund represents about 14.3% of a nationwide class's hypothetical maximum potential recovery. We believe it is reasonable and advantageous to the Class to secure this immediate and certain relief, when weighing it against the substantial risk of obtaining no, or lesser recovery.

### **Attorneys' Fees, Costs, and Incentive Award Likely to be Requested**

17.     As we will detail in a forthcoming fee motion if the Settlement is preliminarily approved, LOJF and its co-counsel, The Law Office of Paul K. Joseph, PC, which have agreed to split fees equally, have incurred over $750,000 in fee lodestar, based on over 1,200 hours of work, and over $250,000 in out-of-pocket expenses. Nevertheless, as set forth in the Long Form Notice, we will seek no more than 33% of the common fund, or $610,500 in fees (representing a more than 20% discount on our actual lodestar). We will also seek on behalf of Plaintiff an incentive award of up to $7,500. Ms. Hunter has actively participated in the litigation since its inception. She has reviewed documents and pleadings, responded to discovery, attended the settlement conference, and was deposed for a full 8-hour day.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 22nd day of July, 2019, in San Diego, California.

/s/ Jack Fitzgerald
Jack Fitzgerald

---

[1] https://www.census.gov/quickfacts/fact/table/CA,US/PST045218.

# Exhibit 1

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Class Action Settlement, including its attached Exhibits, which are incorporated by this reference (the "Agreement"), is entered into by and between plaintiff Sherry Hunter, individually, and in her representative capacity on behalf of all others similarly situated ("the Settlement Class"), on the one hand, and defendants Nature's Way Products, LLC and Schwabe North America, Inc. (collectively, "Nature's Way"), on the other hand.  Ms. Hunter and Nature's Way are jointly referred to herein as the "Parties."  Capitalized terms used herein are defined in Section 1 herein or indicated in parentheses elsewhere in the agreement.

## RECITALS

A. **WHEREAS** on January 28, 2016, Ms. Hunter and Malia Levin filed a putative class action complaint in the Superior Court of California for the County of San Diego entitled *Sherry Hunter and Malia Levin v. Nature's Way Products, LLC, et al.*, Case No. 37-2016-00002933-CU-NP-CTL (the "Action"), in which they stated claims against Nature's Way for violations of California's Consumers Legal Remedies Act, Unfair Competition Law, California's False Advertising Law, and for Breach of Express and Implied Warranty on behalf of themselves, all others similarly situated individuals, and the general public.

B. **WHEREAS** on March 2, 2016 Nature's Way removed the Action to the United States District Court for the Southern District of California, and it was assigned case number 3:16-cv-00532-WQH-AGS.

C. **WHEREAS** after the Court's ruling granting in part and denying in part Nature's Way's motion to dismiss, Nature's Way answered the class action complaint and asserted various affirmative defenses on September 9, 2016.

D. **WHEREAS** on March 21, 2017, the Parties stipulated to dismiss Malia Levin's individual claims without prejudice, which the Court ordered on March 23, 2017.

E. **WHEREAS** on January 30, 2018, Ms. Hunter filed a First Amended Complaint, and on February 12, 2018, she filed a Second Amended Complaint, to which Nature's Way answered and asserted various affirmative defenses on February 26, 2018.

F. **WHEREAS** the Parties conducted a factual investigation and analyzed the relevant legal issues with regard to the claims in, and potential defenses to, the Action.  Ms. Hunter and her counsel contend that the claims asserted in the Action have merit, and that she and the putative class members are entitled to restitution and damages.  Nature's Way contends the claims asserted in the Action do not have merit, that Nature's Way has defenses that could eliminate or reduce liability and monetary recovery in this case, and that neither Ms. Hunter nor the putative class have been damaged in any sum whatsoever.

G. **WHEREAS** the Parties recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the claims through trial, possible appeals, and ancillary actions. The Parties also have taken into account the uncertain outcome and the

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)
P a g e | 1 of 14

risk of any litigation, especially in multi-party actions such as this proceeding, as well as the difficulties and delays inherent in such litigation.

H.   **WHEREAS** the Parties engaged in arms-length negotiations and, on February 21, 2018, participated in a mandatory settlement conference before Magistrate Judge Andrew G. Schopler, and with the assistance of Judge Schopler, the principal terms of a settlement were reached, which, after additional arms-length negotiations, are embodied in this Agreement;

I.   **WHEREAS** the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement.  The Parties desire and intend to effect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW THEREFORE**, subject to Court approval, as hereinafter provided, it is hereby agreed by the Parties that, in consideration of the promises and covenants set forth in this Agreement and upon the entry by the Court of a Final Approval Order and the occurrence of the Final Settlement Effective Date, the Action, including the claims asserted by Ms. Hunter, individually and on behalf of the Class Members as defined herein, shall be settled and compromised upon the terms and conditions contained herein.

## 1.   DEFINITIONS

In addition to the terms defined above, the below-listed terms shall be defined for purposes of this Agreement.  Some of the definitions in this section use terms that are defined later in the section.

**1.1.**   "**Agreement**" means this Settlement Agreement and Release, including all Exhibits hereto.

**1.2.**   "**Claims Administrator**" means or refers to the professional claims administrator, RG2 Claims Administration LLC, and any successors chosen to effectuate the Agreement.

**1.3.**   "**Class**" or "**Class Members**" means all persons who, during the Class Period, purchased Nature's Way Extra Virgin Coconut Oil or Nature's Way Liquid Coconut Oil bearing at least one labeling claim challenged in this action for personal or household use.  Excluded from the Class are:  (a) persons or entities who purchased Coconut Oil for the purpose of resale or distribution; (b) persons who are directors and Officers of Nature's Way or its parent, subsidiary, or affiliate companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Agreement; (e) persons who signed a release of Nature's Way for compensation for the claims arising out of the facts or claims asserted in the Action; and (f) any judicial officer hearing this Action, including his or her immediate family members and employees.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e  | 2 of 14

**1.4.**    "**Class Period**" means January 28, 2012 to the date of preliminary approval of this Agreement.

**1.5.**    "**Class Representative**" means plaintiff Sherry Hunter in her representative capacity on behalf of the general public and the Class.

**1.6.**    "**Class Counsel**" means:

Jack Fitzgerald
**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Ste. 202
San Diego, California 92103
P | 619-692-3840
F | 619-362-9555

Paul Joseph
**The Law Office of Paul K. Joseph, PC**
4125 W. Pt. Loma Blvd, No. 309
San Diego, California 92110
P | 619-767-0356
F | 619-331-2943

**1.7.**    "**Court**" means the United States District Court for the Southern District of California.

**1.8.**    "**Common Fund**" means a qualified settlement fund (QSF) formed solely for purposes of effectuating this Agreement.

**1.9**    "**Nature's Way's Counsel**" or "**Defendant's Counsel**" means:

Kevin W. Alexander, Esq.
Thomas R. Watson, Esq.
Michael Bryant, Esq.
**GORDON & REES LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101
P | (619) 696-6700
F | (619) 696-7124

**1.10**    "**Coconut Oil**" means Nature's Way Nature's Way Extra Virgin Coconut Oil in either 16-ounce or 32-ounce jar, or Nature's Way Liquid Coconut Oil in either 10-ounce and 20-

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 3 of 14

ounce bottles, distributed by Nature's Way during the Class Period, and bearing at least one labeling claim challenged in this action.

      **1.11**    "**Fairness Hearing**" means the hearing at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable, and adequate.

      **1.12**    "**Final Approval Order**" means the Court order finally certifying the Class for settlement purposes only and approving the settlement and this Agreement, as contemplated in this Agreement.  "Final Approval" occurs on the date that the Court enters, without material change, the Final Approval Order.

      **1.13**    "**Final Effective Settlement Date**" shall be the date a judgment in the Action becomes final and non-appealable, plus five (5) business days.

      **1.14**    "**Full Class Notice**" means the legal notice of the terms of the proposed Settlement, as approved by Plaintiff's Counsel, Defendant's Counsel, and the Court, to be distributed according to a Notice Plan approved by the Court. The Full Class Notice shall be substantially in the form attached as **Exhibit A** hereto, and/or any different or additional notice that might be ordered by the Court.

      **1.15**    "**Notice Date**" means thirty (30) calendar days after entry of the Preliminary Approval Order.

      **1.16**    "**Notice Plan**" means the plan for notice as described in the Declaration of William Wickersham set forth in **Exhibit B** hereto.

      **1.17**    "**Post-Challenged Label**" means a label for any Coconut Oil that no longer bears any labeling claim challenged in this action.

      **1.18**    "**Preliminary Approval Order**" means the order: (1) provisionally certifying the Class for settlement purposes only and determining that the proposed settlement is within the range for final approval; (2) determining that Ms. Hunter adequately represents the Class and shall be its class representative; (3) appointing Class Counsel as counsel for the Class; (4) approving the Notice Plan; and (5) setting a date for the Fairness Hearing, as contemplated in this Agreement.

      **1.19**    "**Request for Exclusion/Opt Out**" means any Class Member's request to be excluded from the terms of this Agreement, by way of the procedures set forth in Section 3.6 herein.

      **1.20**    "**Settlement**" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are set forth in this Agreement and the attached exhibits, which are incorporated by reference herein.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 4 of 14

**1.21**   "**Settlement Class**" means those persons who are members of the Class who have not properly and timely submitted a Request for Exclusion/Opt Out.

**1.22**   "**Settlement Website**" means the website established by the Claims Administrator to aid in the administration of the Settlement.

**1.23**   "**Product**" means any Coconut Oil, as defined above, purchased by any Class Member during the Class Period.

## 2.   SETTLEMENT TERMS

**2.1.   Certification of the Class.**

(a)   For the purposes of Settlement and the proceedings contemplated herein only, and subject to Court approval, the Parties stipulate and agree that the Class shall be provisionally certified pursuant to Federal Rule of Civil Procedure 23 in accordance with the definition contained herein, that Ms. Hunter shall represent the Class for settlement purposes and shall be the Class Representative, and that Class Counsel shall be appointed as counsel for the Class.

(b)   As soon as reasonably practicable, Ms. Hunter shall apply to the Court for entry of the Preliminary Approval Order, as provided in this Agreement.

**2.2   Injunction – Labeling Changes.**  For a period of five (5) years commencing from the date the Court issues a Final Approval Order, Nature's Way will not advertise (including in print, on its website, on Coconut Oil Product labels or packaging, and in its sales pitches or public statements) its Coconut Oil Products using the following terms and phrases, or substantially similar terms or phrases:

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

However, this paragraph shall not apply if there is a change in law, regulations, science or FDA guidance that would make it appropriate to use the above-described terms and phrases.  The current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the terms described in this section.

**2.3   Common Fund for Class.**  Within forty-five (45) days following the date of the Preliminary Approval Order, Nature's Way or any other entity on its behalf, shall deposit ONE MILLION EIGHT HUNDRED FIFTY THOUSAND dollars ($1,850,000.00) into a Common Fund, through the Claims Administrator, to be held in trust. The Common Fund shall be administered by the Claims Administrator. The Common Fund shall constitute the funds available to compensate Class Members, the Claims Administrator, Class Counsel, and Ms.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e  | 5 of 14

Hunter.  The Common Fund, after deducting any attorneys' fees and costs, class representative incentive payment, and notice and administration costs as approved and awarded by the Court, shall be paid to those Class Members who submit a valid claim, as determined by the Claims Administrator, within forty-five (45) days after commencement of the distribution of the Full Class Notice. Class Members who have their claims validated by the Claims Administrator and who provide a proof of purchase, in the form of receipt or Product packaging, will be reimbursed as follows: $3.00 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil, $6.00 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil, $3.50 for a 10-ounce jar of Liquid Coconut Cooking Oil, and $6.00 for a 20-ounce jar of Liquid Coconut Cooking Oil. Class Members without proof of purchase who have their claims validated by the Claims Administrator will be reimbursed those same amounts, but will be capped at reimbursement for three total units for claims with no proof of purchase. Nature's Way shall not be obligated to add any additional monies to the Common Fund. If the total amount of funds claimed by Class Members is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be distributed to Class Members who submitted Valid Claims on a pro-rata basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount, but that the total amount of claims paid to each Class Member shall be capped at 50% of the approximate average retail value of the products for which they are making claims. The approximate average retail value to be used for each product is as follows: Nature's Way semi-solid Extra Virgin Coconut Oil: $20 for a 32-ounce jar, and $10 for a 16-ounce jar; Nature's Way Liquid Coconut Cooking Oil: $20 for a 20-ounce bottle, and $11.50 for a 10-ounce bottle.  If after that increase in funds to be distributed to Class Members, the total amount of funds claimed and to be distributed is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be paid to: American Heart Association, Inc., a 501(c)(3) nonprofit corporation. If the total amount of funds claimed by Class Members is greater than the total amount of the fund that is available for Class Members after costs and expenses, each claim validated by the Claims Administrator will be reduced on a pro-rata basis that is proportional to the value of each claim validated by the Claims Administrator.

      **2.4**    **Release of Common Funds.** Within seven (7) days following the entry of a Final Approval Order, the Claims Administrator shall pay to Class Counsel the amount of attorneys' fees and costs awarded by the Court, provided, however, that counsel shall be obligated to return to the Common Fund any fees if the amount is reduced prior to the Final Effective Settlement Date. On the Final Effective Settlement Date, the remaining funds in the Common Fund will become available to pay any Court-approved incentive award, and to compensate Class Members. In the event that the Agreement does not obtain final approval from the Court, the Common Fund shall be remitted back to the funding party.

      **2.5**    **Attorneys' Fees and Expenses, and Incentive Award**.  No later than twenty-eight (28) days before the Fairness Hearing, or at such other time as required by the Court, the Class Representative and Class Counsel shall apply to the Court for an award, from the Common Fund, of attorney's fees and expenses incurred in prosecuting this Action, and an incentive award for the Class Representative. The Parties have not agreed to any particular amounts that the Class Representative or Class Counsel may seek. Nature's Way is not obligated to respond, but may respond to Class Counsel's fee motion and the Class Representative's motion for an incentive award in whatever manner it deems appropriate. Any Court-approved attorney's fees and

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 6 of 14

incentive award will be paid from the Common Fund in accordance with the provisions of paragraph 2.4. In the event the Court does not approve the attorneys' fees and costs requested by Class Counsel, or the Court awards fees and costs in an amount less than that requested by Class Counsel, such award shall not be a basis for rendering the entire Settlement null, void or unenforceable, provided however, that Class Counsel retains the right to appeal any decision by the Court regarding the Court's award of Attorneys' Fees and Costs.

**2.6    Settlement Implementation Costs**.  All reasonable costs of retaining the Claims Administrator to effectuate the Settlement and provide Full Class Notice in the manner prescribed in this Agreement shall be paid from the Common Fund.

## 3. CLASS SETTLEMENT PROCEDURES

**3.1.    Settlement Approval**.  As soon as practicable after the signing of this Agreement, Ms. Hunter shall prepare and file an application seeking the following orders from the Court: (1) preliminary approval of this Agreement as fair, reasonable, and adequate; (2) preliminary determining that the Class meets all applicable requirements of Federal Rule of Civil Procedure 23, and conditionally certify the Class for purposes of the Agreement under Rule 23 for settlement purposes only; (3) approving and appointing the Claims Administrator; (4) approving the form, manner, and content of the Notice Plan described in Section 3.2 and Exhibit B; (5) setting the date and time of the Fairness Hearing and related proceedings; and (6) appointing Ms. Hunter as Class Representative, and Ms. Hunter's counsel as Class Counsel for settlement purposes only.

**3.2.    Full Class Notice**.  Subject to Court approval as provided in Section 3.1, the Parties agree that no later than thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator will provide the Class with notice of the proposed settlement via digital publication notice, consistent with the manner set forth in the Notice Plan (**Exhibit B**).

**3.3.    Claims Administrator Will Administrator Claims Process.**

i.      The Claims Administrator will administrator the claims process and oversee the distribution of settlement proceeds to Class Members in accordance with the terms and conditions of the Settlement and orders of the Court.

ii.     The Claims Administrator will review and validate all claims submitted by Class members.  The Claims Administrator shall have the discretion to review claims with the objectives of efficiency and effecting substantial justice to the Parties and the Class Members.  The Claims Administrator shall have the right to contact Class Members to validate claims.  Issues regarding the validity of claims that cannot be resolved by the Claims Administrator shall be submitted to Class Counsel and Nature's Way's Counsel for resolution and, if no resolution is reached, to the Court.  Nature's Way shall have the right to seek the review of any claim handled by the Claims Administrator.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 7 of 14

**3.4.** **Objections**. Any Class Member who wishes to object to the Settlement must file a signed, written objection with the Court, and serve copies on Class Counsel and Defense Counsel, no later than fourteen (14) days before the Fairness Hearing (or other date required by the Court). Written objections must set forth the following:

i. The name of this Action ("*Sherry Hunter v. Nature's Way, et al.*, Case No. 3:16-cv-00532-WQH-AGS");

ii. The full name, address, and telephone number of the person objecting;

iii. The word "Objection" at the top of the document;

iv. An explanation of the basis upon which the person claims to be a Class member;

v. In clear and concise terms, the legal and factual arguments supporting the objection;

vi. The identity (name, address, and telephone number) of any counsel representing the person who will appear at the Fairness Hearing;

vii. A statement confirming whether the person intends to personally appear and/or testify at the Fairness hearing; and the person's signature or the signature of the person's duly authorized counsel or other duly authorized representative.

Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections, whether by a subsequent objection, intervention, appeal, or any other process. Unless otherwise permitted by the Court, Class Members shall not be entitled to speak at the Fairness Hearing unless they have complied with this paragraph 3.4.

**3.5.** **Intention to Appear at Fairness Hearing**. Any Class Member who wishes to be heard at the Fairness Hearing must file a signed, written Notice of Intention to Appear with the Court and serve copies on Class Counsel and Defense Counsel no later than forty-five (45) days following the Notice Date (or other date required by the Court). The Notice of Intention to Appear must set forth the following:

i. The name of this Action ("*Sherry Hunter v. Nature's Way, et al., Case No.* 3:16-cv-00532-WQH-AGS");

ii. The full name, address, telephone number, and last four digits of the social security number of the person intending to appear at the Fairness Hearing;

iii. The words "Notice of Intention to Appear" at the top of the document; and

iv. The identity (name, address, and telephone number) of any counsel who will speak on the person's behalf.

**3.6.** **Requests for Exclusion/Opt Outs**. Any Class Member who wishes to be excluded from (or "opt out" of) the Settlement must submit a written, signed Request for Exclusion to the Claims Administrator no later than forty-five (45) days following the Notice Date (or other date required by the Court) (the "Opt-Out Deadline"). Request for Exclusion

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 8 of 14

forms will be available for download on the settlement website, in substantially the form attached as **Exhibit C** hereto. Requests for Exclusion must be personally signed by the Class Member who seeks to opt out. No Class Member may opt out by having a request to opt out submitted by an actual or purported agent or attorney acting on behalf of the Class Member. No opt out request may be made on behalf of a group of Class Members—i.e., so called "mass" or "class" opt outs are not allowed. Each Class Member who does not, on or before the Opt-Out Deadline, submit a Request for Exclusion substantially in compliance with this Section, shall be deemed to participate in the Settlement and all releases provided in this Agreement.  For purposes of determining timeliness, Requests for Exclusion shall be deemed to have been submitted on the date postmarked by the postal service or other expedited delivery service.

> **3.7.    CAFA NOTICE.**  Nature's Way, either directly or through the Claims Administrator (though not with funds from the Common Fund), shall send all notices and information required by 28 U.S.C. Sec 1715 to the appropriate federal and state public officials in accordance with the time requirements set forth therein.

> **3.8.    Motion for Final Approval**.  No later than twenty-eight (28) days before the Fairness Hearing, or at such other time required by the Court, Ms. Hunter shall move the Court for final approval of the Settlement.

## 4.    FINAL APPROVAL ORDER AND RELEASES.

> **4.1.    Approval of This Agreement.**  As soon as practicable after execution of this Agreement, counsel for all Parties will take all necessary and appropriate steps to secure the Court's approval of this Agreement as set forth herein.

> **4.2.    Final Approval Order**.  This agreement is subject to and conditioned upon the issuance by the Court of the Final Approval Order that finally certifies the Class for the purposes of settlement only, and grants final approval of the Settlement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' perforce of their continuing rights and obligations hereunder.

> **4.3.    Release of Nature's Way and Schwabe North America by All Class Members**.  Upon the Final Effective Settlement Date, Ms. Hunter and each member of the Settlement Class, and each of his or her successors, assigns, legatees, heirs, and personal representatives, hereby release and forever discharge Nature's Way and Schwabe North America, and each of their respective parents, sister and subsidiary corporations, affiliated entities, predecessors, successors and assigns, and any of their present and former directors, officers, employees, shareholders, agents, partners, licensors, privies, representatives, attorneys, accountants, insurers, manufacturers, retailers, distributors or any of them (collectively, "Released Parties"), from any action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, arising out of the conduct alleged or otherwise referred to in the Action, specifically any claim arising from the purchase of any Coconut Oil product (hereinafter "Released Claims").  It is expressly understood that, to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 9 of 14

    **4.4.**    **Waiver of California Civil Code section 1542**.  In addition, with respect to the Released Claims, Ms. Hunter, on behalf of herself and on behalf of the Class as Class Representative, expressly and affirmatively waives California Civil Code section 1542 to the fullest extent permitted by law, which states:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Ms. Hunter, on behalf of herself and on behalf of the Class as Class Representative, hereby waives any and all federal and state statutes similar in substance, meaning, or application to California Civil Code section 1542.

    **4.5.**    **Release of Plaintiff Persons.** Upon the Final Effective Settlement Date, Nature's Way will be deemed to have, and by operation of the judgment will have fully, finally, and forever released, relinquished, and discharged plaintiffs Sherry Hunter, Malia Levin, and their counsel, The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC, and each of their attorneys (collectively the "Released Plaintiff Persons"), from all claims, demands rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Nature's Way has or may have against the Released Plaintiff Persons arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action, and in connection with the conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

    **4.6.**    **Covenant Not To Sue.** Upon the Final Effective Settlement Date, Ms. Hunter and each Class Member shall be deemed to have given and will be bound by the Covenant Not To Sue in favor of each Released Party.  "Covenant Not To Sue" means for and in consideration of the Settlement, each Class Member shall be deemed to have covenanted that he or she will not in the future: (1) assert any claim for economic injury or for an injunction related to the Coconut Oil products and arising out of the facts and claims asserted in the Action; or (2) assert or maintain any Released Claim, directly or indirectly, against any Released Party in any court or other forum on behalf of the Class Member.

## 5.    TERMINATION

    5.1    This Agreement is being entered into only for the purpose of settlement.  In the event that (a) the Court does not approve the Settlement or a Final Approval Order and Judgment is not entered for any reason, or (b) the Final Effective Settlement Date does not occur for any reason, or (c) if the number of Class Members who exercise their rights to opt out under the terms of this Agreement exceeds a number separately agreed to by the Parties, then either party

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 10 of 14

may declare void ab initio the Agreement and Preliminary Approval Order, and all of their provisions shall be vacated by its own terms, and the Action shall revert to the status that existed prior to the execution date of this Agreement, including no certification of a class; and no term of this Agreement or any draft thereof, or of the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action, or in any other proceeding.

5.2     In the event that there is a change in state or federal food labeling laws or regulations that expressly permits the use of any of the terms listed in Section 2.2, the injunction provided in Section 2.2 shall terminate automatically upon that occurrence and Nature's Way may label and market its Coconut Oil Products in accordance with such state or federal laws or regulations.  Notwithstanding the foregoing, every other term of this Agreement shall remain in full force and effect.

## 6.     ADDITIONAL PROVISIONS.

**6.1     No Admission of Liability / For Settlement Purposes Only**.

A.   This Agreement reflects the compromise and settlement of disputed claims among the Parties and is for settlement purposes only.  Neither the fact of, or any provision contained in this Agreement or its Exhibits, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of:  (a) the validity of any claim or allegation by Ms. Hunter, or of any defense asserted by Nature's Way, in the Action or any other action or proceeding; or (b) any wrongdoing, fault, violation of law, or liability of any kind on part of any Party, Defendant, Release Party, Class Member or their respective counsel.

B.   The Agreement is without prejudice to the rights of each Releasing Party and each Released Party to:  (a) seek or oppose class certification in the Action should the Agreement not be finally approved or implemented for any reason; (b) seek or oppose class certification in any other action (except to the extent barred by the Releases and/or the Covenant Not to Sue), or (c) use the certification of the Settlement Class to oppose certification of any other proposed or existing class arising out of the facts or claims asserted in the Action.

**6.2     Fair, Adequate, and Reasonable Settlement.**  The Parties believe this Settlement is fair, adequate, and reasonable, and the Parties arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.

**6.3     Change of Time Periods**.  The time periods and/or dates described in this Agreement with respect to the giving of notices and notices of hearings are subject to approval and change by the Court or by the written agreement of counsel for the Parties, without notice to the Class.

**6.4     Real Parties in Interest**.  In executing this Agreement, the Parties warrant and represent that they, including Ms. Hunter in her representative capacity on behalf of the Class,

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 11 of 14

are the only persons having any interest in any of the claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Action, and, except as provided herein, neither said claims nor any part thereof have been assigned, granted, or transferred in any way to any other person, firm, or entity.

6.5     **Voluntary Agreement**.  This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

6.6     **Binding on Successors**.  This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

6.7     **Parties Represented by Counsel**.  The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

6.8     **Authorization**.  Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

6.9     **Entire Agreement**.  This Agreement and Exhibits attached hereto contain the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the subject matter hereof.  This Agreement is executed without reliance upon any promise, representation, or warranty by any Party or any representative of a Party, other than those expressly set forth herein.

6.10     **Construction and Interpretation**. Neither Party nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them. This Agreement has been, and must be construed to have been, drafted by all Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

6.11     **Headings**.  The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

6.12     **Exhibits**. The exhibits to this Agreement are integral parts of the Agreement and Settlement and are hereby incorporated and made a part of this Agreement.  The Parties contemplate that certain of the Exhibits relating to Class Notice may be modified by the Court or by subsequent agreement of Class Counsel and Nature's Way's counsel (with approval by the Court) prior to dissemination to Class members.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 12 of 14

**6.13    Modifications and Amendments**.  No amendment, change, or modification of this Agreement or any part thereof shall be valid unless in writing signed by the Parties and approved by the Court, except as otherwise expressly provided herein.

**6.14    Governing Law**.  This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with those laws.

**6.15    Further Assurances**.  Each of the Parties hereto shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of his or her or its obligations hereunder to carry out the express intent of the Parties hereto.

**6.16    Agreement Constitutes a Complete Defense**.  To the extent permitted by law this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

**6.17    Execution Date**.  This Agreement shall be deemed executed upon the last date of execution of all of the undersigned.

**6.18    Continuing Jurisdiction.**  The Parties agree that the Court has, and shall continue to have, jurisdiction to make any orders as may be appropriate to approve awards of attorneys' fees and costs pursuant hereto, and to supervise the administration of and the distribution of money funded pursuant to this Agreement.

**6.19    Counterparts**.  This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.  The several signature pages will be collected and annexed to one or more documents to form a complete counterpart.  Photocopies or "pdfs" of executed copies of signatures shall have the same force and effect as originals.

**6.20    Resolution of Disputes**.  The Parties shall cooperate in good faith in the administration of this Settlement.  Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court.

**6.21    Severability.**  Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable, such provision shall be ineffective to the extent of such invalidity or unenforceability, without invalidating the remainder of such provision or the remaining portions of the Agreement.

**6.22    Confidentiality of Documents and Information.**  All orders, agreements and designations regarding the confidentiality of documents and information remain in effect, and all Parties and counsel remain bound to comply with them.  Within thirty (30) days of the Final Settlement Effective Date, the Parties will certify in writing that they have used their best efforts to destroy or return all documents and information produced in the Action that were designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only."  It is stipulated and agreed

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e  | 13 of 14

that no money relief can remedy a breach of this provision such that immediate injunctive relief is proper and because of a breach of this provision by disclosure of or failure to destroy or return materials designated as "Confidential" or "Attorneys' Eyes Only," the prevailing party is entitled to reasonable Attorneys' fees and costs associated with bringing and prosecuting such enforcement action or motion.

**PLEASE READ THIS DOCUMENT CAREFULLY.  THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF, the Parties hereto, acting by and through their respective counsel of record, have so agreed.**

Dated: 7-21-19

_____
Plaintiff Sherry Hunter, for herself and for the Class

Dated: _____

_____
Defendants Nature's Way, LLC and
Schwabe North America, Inc.
By (*print*): Michael Devereaux, CEO

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 14 of 14

that no money relief can remedy a breach of this provision such that immediate injunctive relief is proper and because of a breach of this provision by disclosure of or failure to destroy or return materials designated as "Confidential" or "Attorneys' Eyes Only," the prevailing party is entitled to reasonable Attorneys' fees and costs associated with bringing and prosecuting such enforcement action or motion.

**PLEASE READ THIS DOCUMENT CAREFULLY. THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF, the Parties hereto, acting by and through their respective counsel of record, have so agreed.**

Dated: _____

_____
Plaintiff Sherry Hunter, for herself and for the Class

Dated: July 18, 2019

_____
Defendants Nature's Way, LLC and Schwabe North America, Inc.
By (*print*): Michael Devereaux, CEO

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 14 of 14

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

**NOTICE OF CLASS ACTION SETTLEMENT**

*SHERRY HUNTER. v. NATURE'S WAY PRODUCTS, LLC ET AL.,*
CASE NO. No. 16-cv-532-WQH-BLM (S.D. Cal.)

***The United States District Court has authorized this notice.***
***This is not a solicitation from a lawyer.***

***IF YOU PURCHASED NATURE'S WAY EXTRA VIRGIN COCONUT OIL, OR LIQUID COCONUT OIL, YOU MAY BE ENTITLED TO A CASH PAYMENT***



<span style="color:red">THIS NOTICE CONCERNS YOUR LEGAL RIGHTS
PLEASE READ IT CAREFULLY</span>

WHY ARE YOU RECEIVING THIS NOTICE?

• This settlement resolves a lawsuit (the "Action") against Nature's Way Products, LLC, and Schwabe North America, Inc., (referred to collectively as "Nature's Way"), alleging that Nature's Way, which marketed and sold the Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil that are the subject of the Action, violated certain California laws by misleadingly marketing the products as healthy. However, to avoid the cost of litigation, and potential risks for both sides, the Parties have reached a Stipulation of Class Action Settlement, which was preliminarily approved by the United States District Court for the Southern District of California on [DATE]. Nature's Way denies the allegations and any wrongdoing.

• If you purchased Nature's Way Extra Virgin Coconut Oil in a 16-ounce or 32-ounce jar or Nature's Way Liquid Coconut Oil in a 10-ounce or 20-ounce bottle, distributed by Nature's Way during the Class Period (January 28, 2012 to the date of preliminary approval), for your own personal or household use, and not for resale, bearing at least one of the claims below, you may be a member of the settling Class.

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat," unless the statement, "See Supplement Facts for total fat and saturated fat content," was displayed near the phrase "Non-hydrogenated, no trans fat"

• The Court requires this Notice because you have the right to know about the proposed Settlement and about all of your options before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and how to get them.

• All Class Members who do not exclude themselves from the settlement will receive the relief provided for in the settlement and will be bound by the orders issued by the Court regarding the settlement.

<u>WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?</u>

• The two sides disagree on what relief, and how much, could have been won, if any, if the Class won at trial. The settlement avoids costs and risks to you from continuing the lawsuit, provides relief to affected persons like you, and releases Nature's Way and others from liability for the related claims.

• The proposed class action settlement will provide $1.85 million in funds to pay all aspects of Settlement (the "Common Fund"), including Class Member claims, notice, administration, plaintiff's service award, legal expenses, and attorneys' fees. Nature's Way has already voluntarily removed the challenged claims from the label of the Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil products, and has agreed to refrain in the future from using the following terms and phrases, or substantially similar terms or phrases:

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

• Class Members who have their claims validated by the Claims Administrator and who provide a proof of purchase, in the form of receipt or Product packaging, will be reimbursed as follows: $3.00 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil, $6.00 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil, $3.50 for a 10-ounce jar of Liquid Coconut Cooking Oil, and $6.00

for a 20-ounce jar of Liquid Coconut Cooking Oil. Class Members without proof of purchase who have their claims validated by the Claims Administrator will be reimbursed those same amounts, but will be capped at reimbursement for three total units for claims with no proof of purchase.

• If the total amount of funds claimed by Class Members is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be distributed to Class Members who submitted Valid Claims on a pro-rata basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount, but that the total amount of claims paid to each Class Member shall be capped at 50% of the approximate average retail value of the products for which they are making claims. The approximate average retail value to be used for each product is as follows: Nature's Way semi-solid Extra Virgin Coconut Oil: $20 for a 32-ounce jar, and $10 for a 16-ounce jar; Nature's Way Liquid Coconut Cooking Oil: $20 for a 20-ounce bottle, and $11.50 for a 10-ounce bottle. If after that increase in funds to be distributed to Class Members, the total amount of funds claimed and to be distributed is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be paid to American Heart Association.

• Class Counsel will petition the Court for a fee award in an amount no greater than 33% of the common fund ($610,500), and actual litigation expenses, and Class Representative will seek a service award of no more than $7,500. Class Counsel have agreed to split any fees awarded 50% to The Law Office of Jack Fitzgerald, PC, and 50% to The Law Office of Paul K. Joseph, PC.

## BACKGROUND ON THE LAWSUIT & SETTLEMENT

The lawsuit seeks to obtain compensation for an alleged violation of California consumer protection statutes including the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA), and for Breach of Express and Implied Warranties.

After the parties engaged in substantial investigation, discovery, and settlement negotiations, plaintiff and defendants have reached an agreement providing for the settlement of the lawsuit. The terms of the proposed Settlement are set forth in the Settlement Agreement filed with the Court, which is also available online, at www.NaturesWayCoconutOilSettlement.com. The proposed Settlement Class covers the time period of January 28, 2012 to the date of preliminary approval of this Agreement.

Plaintiff and Class Counsel have evaluated the information made available in the course of the lawsuit and have taken into account the risks and uncertainties of proceeding with this litigation, including the risks and uncertainties of class certification, prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and appeal. Based upon their consideration of these factors, plaintiff and Class Counsel believe it is in the best interests of the Class to settle the lawsuit on the terms described below.

Nature's Way denies plaintiff's allegations and any wrongdoing, and the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

THE CLASS

The Court has certified a Settlement Class consisting of:

> All persons who, during the Class Period, purchased Nature's Way Extra Virgin Coconut Oil or Nature's Way Liquid Coconut Oil bearing at least one labeling claim challenged in this action for personal or household use.  Excluded from the Class are:  (a) persons or entities who purchased Coconut Oil  for the purpose of resale or distribution; (b) persons who are directors and Officers of Nature's Way or its parent, subsidiary, or affiliate companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Agreement; (e) persons who signed a release of Nature's Way for compensation for the claims arising out of the facts or claims asserted in the Action; and (f) any judicial officer hearing this Action, including his or her immediate family members and employees.

DO I HAVE A LAWYER IN THE CASE?

The Court has appointed The Law Office of Jack Fitzgerald, PC and The Law Office of Paul K. Joseph, PC, as Class Counsel in this case. The Court has determined that Class Counsel are qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases.

Nevertheless, you have the right to consult or retain an attorney of your choice at your own expense to advise you regarding the Settlement and your rights in connection with the Settlement and Final Approval Hearing described below.

YOUR RIGHTS TO PARTICIPATE IN, EXCLUDE YOURSELF FROM, OR OBJECT TO THE SETTLEMENT

The purpose of this Notice is to inform you of this lawsuit so you can make an informed decision as to whether you should remain in or opt out of this Class Action. Your legal rights are affected, and you have a choice to make now. In response to this Notice, you may (1) do nothing, (2) ask to be excluded from the lawsuit, (3) object to the proposed Settlement, or (4) submit a claim form. Those options are summarized in the following table, and then discussed in greater detail below.

| Your Legal Rights and Options in This Lawsuit | |
| --- | --- |
| **Submit a Claim Form** | The only way to get a monetary payment. Postmark or submit your Claim Form online by [DATE (within 45 days of commencement of full class notice)]. |

| Your Legal Rights and Options in This Lawsuit | |
|---|---|
| **Ask To Be Excluded** | **Get out of this lawsuit. Get no benefits from it. Keep rights.** <br><br> If you ask to be excluded you will not be bound by what the Court does in this case and will keep any right you might have to sue Nature's Way separately about the same legal claims in this lawsuit. If there is a recovery in this case, including under the proposed Settlement, you will not share in that recovery. To do so you must submit an opt out form no later than [by [DATE (within 45 days of commencement of full class notice)].] |
| **Object** | **Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.** <br><br> You may file a written objection no later than [DATE (14 days before fairness hearing], and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. |
| **Do Nothing** | **Stay in this lawsuit. Await the outcome. Give up certain rights.** <br><br> By doing nothing, you will get no cash payment and give up any right you may have to sue Nature's Way separately about the same legal claims in this lawsuit. |

## 1.      Submit a Claim Form

You must submit a Claim Form to get a monetary payment. Claim Forms may be printed or filed online at the Settlement Website, www.NaturesWayCoconutOilSettlement.com. Claim Forms are simple and easy to complete, requiring (a) personal/contact information, (b) a statement of the quantity of products purchased during the Class Period, and (c) your affirmation that the information provided is true and correct. In exchange for receiving a monetary payment, under the Settlement Agreement, you will give up your rights to sue Nature's Way about the same claims in this lawsuit.

**Claim forms must be postmarked, faxed, or submitted online no later than** [DATE (within 45 days of commencement of full class notice)]**.**

## 2.      Exclude Yourself from the Settlement and Do Not Receive Compensation

If you do not want to be bound by this settlement, you must request to be excluded from the Class. If you request to be excluded from the Class, you will retain any individual rights you have against Nature's Way and will not have "released" it from any claims. However, you will ***not*** receive the compensation described above. You may not object to the Settlement under this option. If you wish to be excluded from the Class (also referred to as "opting out"), you must download and print an Opt-Out Form from the Settlement Website (www.NaturesWayCoconutOilSettlement.com),

fill out and sign the form, and mail it to the class action administrator, postmarked on or before [DATE (within 45 days of commencement of full class notice)], at the following address:

RG2 Claims Administration
Attn: Nature's Way Coconut Oil Settlement
30 S. 17th St.
Philadelphia, PA 19103

### 3.      Object to the Settlement

If you want to express an objection to part or all of the Settlement, you may appear at the Final Approval Hearing and/or object to the proposed Settlement. If the Settlement is approved, you will still receive the Settlement compensation and be bound by the Settlement Release.

If you wish to object, you must, no later than  [DATE (14 days before fairness hearing],, file a signed, written objection with the Court, and serve copies on Class Counsel and Defense Counsel. The objection must contain:

      i. The name of this Action ("*Sherry Hunter v. Nature's Way, et al.*, Case No. 3:16-cv-00532-WQH-AGS");

      ii. The full name, address, and telephone number of the person objecting;

      iii. The word "Objection" at the top of the document;

      iv. An explanation of the basis upon which the person claims to be a Class member;

      v. In clear and concise terms, the legal and factual arguments supporting the objection;

      vi. The identity (name, address, and telephone number) of any counsel representing the person who will appear at the Fairness Hearing;

      vii. A statement confirming whether the person intends to personally appear and/or testify at the Fairness hearing; and the person's signature or the signature of the person's duly authorized counsel or other duly authorized representative.

If you wish to appear at the Final Approval Hearing, you should, no later than [DATE (within 45 days of commencement of full class notice)], file with the Court and serve on Class Counsel and Defense Counsel at the addresses set forth below, a Notice of Intent to Appear, either in person or through an attorney.

More detailed instructions and requirements for objecting are set forth in the Court's Preliminary Approval Order, which is available on the Class Settlement Website, at www.NaturesWayCoconutOilSettlement.com.

| | |
|---|---|
| <u>Class Counsel</u> | <u>Defense Counsel</u> |
| Jack Fitzgerald | Kevin W. Alexander, Esq. |

The Law Office of Jack Fitzgerald, PC
3636 4th Ave., Ste. 202
San Diego, CA 92103

Paul K. Joseph
The Law Office of Paul K. Joseph, PC
4125 W. Pt. Loma Blvd., No. 309
San Diego, CA 92110

Thomas R. Watson, Esq.
Michael Bryant, Esq.
**GORDON & REES LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

## 4.       Do Nothing

If you do nothing, you will get no money from the Settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit or be part of any other lawsuit against Nature's Way about the claims in this case.

## RELEASE OF CLAIMS

If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and will be forever barred from suing Nature's Way and related entities for the claims released in the Settlement. This applies whether you currently know about the existence of such claims or not.

Here, the claims you will give up are:

> any action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, arising out of the conduct alleged or otherwise referred to in the Action, specifically any claim arising from the purchase of any Coconut Oil product.

## FINAL APPROVAL HEARING

The Court has scheduled a Final Approval Hearing (also referred to as a "Fairness Hearing") to determine whether the Court should approve the Settlement as fair, reasonable, and adequate to the Class, and whether Judgment should be entered in accordance with the Settlement Agreement. The Court will also consider at the Final Approval Hearing the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as well as the request of the Class Representatives for incentive awards for services rendered on behalf of the Class.

The Final Approval Hearing will occur at [DATE] Courtroom 14B, Suite 1480, 333 West Broadway, San Diego, CA 92101.

Your attendance at the Final Approval Hearing is not required. However, you may be heard orally at the hearing in opposition to the proposed Settlement if you wish. You may also enter an

appearance through an attorney retained at your own expense. If you do not enter an appearance through an attorney, and do not object, Class Counsel will represent you at the hearing.

WHERE CAN I GET MORE INFORMATION?

The Notice's description of the case and Settlement is general. For more details of the matters involved in this lawsuit and the Settlement, you may review the Settlement agreement and related pleadings as set forth below.

If you want more detailed information about the lawsuit and proposed Settlement, including reviewing the Settlement documents, you may visit the Settlement Website at www.NaturesWayCoconutOilSettlement.com, contact RG2 Claims Administration  at [Insert Phone Number], or contact Class Counsel at (619) 692-3840.

If you wish to review the Court's docket in this case, you may do so at www.pacer.gov, the Court's public access website.

**DO NOT TELEPHONE OR ADDRESS ANY QUESTIONS ABOUT THE CASE OR SETTLEMENT TO THE CLERK OF THE COURT OR TO THE JUDGE. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS. THE COURT EXPRESSES NO VIEW AS TO THE MERITS OF ANY CLAIMS OR DEFENSES ASSERTED BY ANY PARTY TO THE ACTION.**

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated, and the general public<br><br>Plaintiff,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LLC and SCHWABE NORTH AMERICA, INC.,<br><br>Defendants. | Case No. 3:16-cv-00532-WQH-AGS<br><br>*Assigned to:  Judge William Q. Hayes*<br>*Magistrate Judge: Andrew G. Schopler* |

## DECLARATION OF WILLIAM W. WICKERSHAM WITH RESPECT TO MEDIA NOTICE PLAN

I, William W. Wickersham, declare as follows:

1.  I am over 21 years of age and am not a party to this action.  This declaration is based on my personal knowledge, information provided by the staff of RG/2 Claims Administration, LLC ("RG/2"), and information provided by RG/2's media partners.  If called as a witness, I could and would testify competently to the facts stated herein.

2.  I am Vice President or Business Development and Client Relations at RG/2, which has been retained as the Settlement Administrator responsible for administering the Media Notice Plan ("Media Notice Plan") and the claims processes for the above-captioned action.  RG/2 is a nationally-recognized leader in class action settlement administration that has provided claims administration services and notice

1

plans for class actions involving consumer rights, securities, product liability, fraud, property, employment, and discrimination.  I have experience in all areas of class action settlement notification planning, including print publication notice, and digital publication notice.

3.  A true and correct copy of RG/2's firm background and capabilities is attached hereto as Exhibit 1.

4.  I designed the Media Notice Plan for the settlement in the above-captioned action ("Settlement") in concert with RG/2's media partner, Élan Legal Media ("Élan").  I am responsible for directing RG/2's execution of the Notice Plan.

5.  This Declaration describes (a) the methodology used to create the proposed Notice Plan; (b) the proposed Notice Plan; (c)  the digital web banner notice; (d) the social media notice; (d) the web-based notice targeted using keyword search terms; (e) the print publication notice; (f) the Settlement website; and (f) the toll-free helpline.

## METHODOLOGY

6.  Working with our media partner, Élan, RG/2 designed a Notice Plan that utilizes web-based social media, display and paid search placements to reach potential Class Members in the Settlement.  In formulating the Notice Plan, we took account of the powerful data showing that individuals now spend significant amounts of time seeking and consuming information from digital sources on the Internet, and we will employ sophisticated methods of reaching and exposing Class Members to the Notice that are available to marketers in the digital, online sphere.

2

7. The proposed Notice Plan uses methods that have been and are currently used by the nation's largest digital marketing, advertising, and media departments to target and place billions of dollars in advertising. These methods include the sophisticated targeting capabilities of digital marketing technologies to meet and reach Class Members at the websites they visit most frequently.

## PROPOSED NOTICE PLAN

8. The objective of the proposed Media Notice Plan is to provide notice of the proposed Settlement to members of the Proposed Class ("Class Members" or "Class") that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

9. I understand that, subject to certain exclusions not relevant for publication notice planning, the Class includes all persons who, during the Class Period, purchased Nature's Way Extra Virgin Coconut Oil or Nature's Way Liquid Coconut Oil bearing at least one labeling claim challenged in this action for personal or household use.

10. Based upon Élan's research, the target audience of coconut oil purchasers is estimated to be 62% female and 38% male, with the highest concentration in the 25 to 45 age range. The Class is more likely than average to be Caucasian with the most common annual household income level in the $100,000-$150,000 range.

11. In terms of media consumption behaviors, the target audience profiles as heavy Internet users, both on mobile and desktop platforms. The target audience has a high index on fitness and lifestyle websites and interests on social media.

12. The research summarized above indicates that a digital notice campaign is a highly effective and efficient approach to reaching the target audience.

13.  More specifically, we have designed a Media Notice Plan that includes seven  elements:

(a) Digital web banner notice on a selection of websites in the "Fitness & Health" and "News & Weather" channels custom assembled by Élan that are likely to be viewed by Class Members.

(b) Social media notice using paid banner ads on the Facebook social network;

(c) Additional web-based notice using "keyword" searches displaying banner ads;

(d) Paid search notice ads placed on the Google and Bing search engines to appear in response to targeted search terms;

(e) Summary Notice appearing four times in the print edition of the *San Diego Union-Tribune* newspaper;

(f) A dedicated, informational website through which Class Members can obtain more detailed information about the Settlement and access the Long-Form Notice and case documents and file a claim for benefits; and

(g) A toll-free telephone helpline by which Class Members can obtain additional information about the Settlement and request a copy of the Long-Form Notice and Claim Form.

14.   The digital publication notice components of the Media Notice Plan constitute a multi-channel, digital campaign designed to obtain over 15.5 million individual notice impressions directed to the target audience.  Coverage and exposure will be further increased by the publication of the Summary Notice in the San Diego Tribune, the Settlement Website, and the toll-free helpline described below.

15.   At the conclusion of the notice campaign, RG/2 will provide a final report verifying implementation of the Media Notice campaign and provide the final notice impression delivery results.

## WEB BANNER NOTICE

16.   To reach potential Class Members, a web-based notice campaign utilizing banner-style notices with a link to the Settlement Website will be executed.  The percentage of these banner-style notices that will be served via a mobile device will be optimized during the campaign based upon the observed rate of visits to the Settlement Website from each type of ad.  Banner notices will appear on two individual "channels" of websites custom assembled to reach the target audience. The banner notices will run on websites when the sites' demographics match our target audience.  A true and correct sample of the banner ads that will be placed is attached hereto as Exhibit 2.  The two custom channels are:

- Fitness & Health Channel -- Tailored to target audience media consumption profile.

- News & Weather -- Tailored to target audience media consumption profile.

## SOCIAL MEDIA NOTICE

17.  The proposed Plan will include banner ads appearing to users of the Facebook social media network.  These banner ads will appear on Facebook web pages displayed to Facebook users who have previously expressed interest using Facebook "Likes" and otherwise in areas related to the Facebook Weight Loss, Health, Coconut Oil, and Power Foods Interest Targets. A true and correct sample of the banner ads that will be placed is attached hereto as Exhibit 2.

## USING KEYWORD SEARCH TERMS

18.  The proposed Notice Plan will include notice banner ads targeted to display in response to the entry of specific keywords associated with coconut oil products on the two major search engine websites:  Google and Bing.  All keyword search notice advertisements will link to the Settlement website.  A true and correct sample of the banner ads that will be placed is attached hereto as Exhibit 2.

## PRINT PUBLICATION NOTICE

19. Élan will cause a properly-formatted version of the Court-approved Summary Notice to be placed for print publication once per week for four successive weeks in the *San Diego Union-Tribune* newspaper.

## SETTLEMENT WEBSITE

20.  Prior to the launch of the web-based media campaign, RG/2 will design and implement a Settlement Website based upon the contents of the Court-approved Long-Form Notice.  This Settlement website will be hosted at an appropriate website domain name to be approved by the Parties.

21.  RG/2 will work with the Parties to finalize the content for the Settlement website.  The Settlement Website will provide Class Members with general information about the Settlement, answers to frequently asked questions, important dates and deadline information, a summary of Settlement benefits, the ability to file an online claim form, a means by which to download copies of certain Settlement documents (including the Long-Form Notice, Claim Form, and Settlement Agreement), and contact information for the Settlement Administrator.

## TOLL-FREE HELPLINE

22. Prior to the launch of the notice campaign, RG/2 will establish a toll-free Settlement helpline to assist potential Class Members and any other persons seeking information about the Settlement.  The helpline will be staffed by live operators during normal business hour and callers will also have the option to leave a message in order to speak with the Settlement Administrator if a live operator is not available.

23. RG/2 will work with Counsel to finalized responses to the FAQs based upon the Court-approved Long-Form Notice in order to provide accurate answers to anticipated questions about the Settlement.

## <u>MEDIA NOTICE PLAN SUMMARY</u>

24.   The digital publication notice components of the Media Notice Plan constitute a multi-channel, digital campaign designed to obtain over 15.5 million individual notice impressions directed to the target audience through website banner, social media, and paid online search notice advertisements.  Coverage and exposure will be further increased by the Print Publication Notice, the Settlement Website and the toll-free helpline.

25. It is my opinion that the proposed Notice Plan, producing more than 15.5 million digital notice impressions that are targeted using methods universally employed in the advertising industry at persons that match characteristics of purchasers of coconut oil products–and thus the Class Members–provides the best notice practicable under the circumstances to the members of the Class.   Our projection is that the digital notice tactics described in this Notice Plan will reach over 70% of the target audience at 2.0x average frequency.

## **EXHIBITS**

26.  Attached hereto are true and correct copies of the following exhibits:

      Exhibit 1:     Background information on RG/2 Administration

      Exhibit 2:     Sample Digital Media Notice Ads

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed in New York, NY on July 22, 2019.

 

_____

       William W. Wickersham
       RG/2 Administration, LLC

# EXHIBIT 1





## SETTING A NEW STANDARD IN
## CLASS ACTION CLAIMS ADMINISTRATION

**PHILADELPHIA • NEW YORK • ATLANTA • SAN DIEGO • SAN FRANCISCO**

# TABLE OF CONTENTS

**4      Class Action Experience**

**5      Cutting-Edge Technology and Skilled Resources**

**6      Experienced Professionals**

**9      Full Life-Cycle Support for Your Class Action**

**10     Range of Services**

## Class Action Experience
## High-Quality Service at Competitive Rates

RG/2 Claims seasoned professionals utilize their vast class action experience, tax and financial management resources to deliver high-quality service at competitive rates.

**RG/2 Claims** is a boutique class action claims administration firm with a nationwide presence founded by seasoned class action practitioners and highly credentialed tax professionals. Our leadership team has a collective 100 years' experience working in the field of class action litigation and settlement administration to leverage for the benefit of counsel. Our team of driven class action attorneys, highly credentialed CPAs and forensic accountants approach each matter with a personal goal to shepherd the settlement through the process from settlement negotiations through final approval. Our personal attention and care ensures that the administration is handled in a seamless matter that allows counsel to proceed with the knowledge and confidence that their settlement will receive the attention and care that they demand. In addition, our operations and IT personnel bring individualized innovations to each engagement, driving the notice and settlement administration to conclusion. We have the experience to handle large settlements with the personal attention and care expected from a boutique firm.

RG/2 Claims recognizes that cutting-edge technology is the key to efficient and reliable claim processing. Our IT Group, including an experienced web design team, enables RG/2 Claims to employ technologies used to enhance accuracy, efficiency and interaction of all participants in the claims process. Our approach focuses on analysis of case needs, development of solutions to maximize resources and reduce costs through accurate and efficient data collection and entry, and ongoing maintenance and support. Throughout the entire claims process, our goal is to (1) optimize completeness, accuracy and efficiency of the data management system, including online integration; (2) validate critical fields and data; and (3) track opt-outs and claimant responses. RG/2 Claims' proprietary database application provides a single source for managing the entire claims administration process and expediting decision making and resource management. From the initial mailing through distribution of settlement funds and reconciliation of distributed payments, RG/2 Claims' **CLEVerPay®** system centralizes data, facilitating information sharing and efficient communication.

While IT is at the heart of our operations, our people are our soul. RG/2 Claims' management team has hands-on experience in both class action practice and settlement administration. Our combined access to resources and institutions allows us to deliver superior value-added service in all aspects of settlement administration.

4



# Cutting-Edge Technology and Skilled Resources

## The CLEVerPay® System: A proprietary and revolutionary application developed exclusively by RG/2 Claims.

At RG/2 Claims, we developed a proprietary and customizable database with the goal of providing single-source management throughout the claims administration process, expediting decision making and resource management.

From the initial mailing through distribution of settlement funds and reconciliation of payments, RG/2 Claims' CLEVerPay® system centralizes the entire process while providing information sharing and communications solutions.

Our CLEVerPay® system is a robust and user-friendly resource that can be easily customized to meet your administration and distribution needs. We recognize how essential it is for data to be clean, centralized and readily accessible. RG/2 Claims' CLEVerPay® system has the capacity to assimilate and analyze large amounts of raw data from multiple inputs, to convert that raw data into useful information and to distribute the useful information in a variety of formats.

The integration of these elements results in timely and accurate distribution of secure payments generated from RG/2 Claims' single-source CLEVerPay® system.

For more information, please visit our website to download our CLEVerPay® System Datasheet at: http://www.rg2claims.com/pdf/cleverPayDatasheet.pdf.

## Experienced Professionals
## Always There When You Need Us

RG/2 Claims principals have hands-on experience in both class action practice and settlement administration. Our combined access to resources and institutions allows us to deliver superior value-added service in all aspects of settlement administration.



**GRANT RAWDIN**, Esq., CFP®, CEO and co-founder, is an attorney, an accountant and a Certified Financial Planner™ practitioner. *Worth* magazine named him one of the "Best Financial Advisors in America." Mr. Rawdin's professional background includes more than 25 years of legal and accounting experience focused in tax, business, investment analysis, legal claims and class action settlement administration. Mr. Rawdin has a juris doctor degree from Temple University Beasley School of Law and a B.A. in English from Temple University, and he is admitted to practice law in Pennsylvania and New Jersey.

rawdin@rg2claims.com



**MICHAEL A. GILLEN**, CPA, CFE, CFF, President and co-founder, has more than 25 years of experience in many facets of litigation consulting services, with particular emphasis on criminal and civil controversies, damage measurement, fraud and embezzlement detection, forensic and investigative accounting, legal claims and class action settlement administration and taxation. He assists numerous attorneys and law firms in a variety of litigation matters. Mr. Gillen graduated from La Salle University with a B.S. in Accounting.

mikegillen@rg2claims.com



**MICHAEL J. LEE**, CFA, COO, the chief architect of our proprietary CLEVerPay® system is a Chartered Financial Analyst with extensive experience in litigation consulting services, including damage assessment, measurement, evaluation, legal claims and class action settlement administration. Additionally, Mr. Lee has about a decade of experience in the financial services industry, with particular emphasis on securities valuation, securities research and analysis, investment management policies and procedures, compliance investigations and portfolio management in global equity markets. Mr. Lee has a B.S. in Business Administration with a dual major in Finance and Management from La Salle University and an M.B.A. in Finance from the NYU Stern School of Business.

mlee@rg2claims.com

6



**MELISSA BALDWIN**, Director of Claims Administration—Employment and Consumer, has over 18 years of experience in the administration of class action matters, with focuses on project management, client communication, notice coordination, claims processing and auditing, and distribution in the class action practice areas of antitrust, consumer and labor and employment. As Notice and Correspondence Coordinator, Ms. Baldwin assisted in the administration of an antitrust matter involving nine defendant banks, which included over 47 million class members and the subsequent distribution of the $330 million Settlement Fund to the valid class members. Ms. Baldwin has a B.S. in Business Administration from Drexel University.

mbaldwin@rg2claims.com



**TINA M. CHIANGO**, Director of Claims Administration—Securities and Antitrust, has over 20 years of experience in the administration of class action matters. Ms. Chiango focuses on project management; this includes establishing procedures and case workflow, client communications, notice coordination, overseeing the processing and auditing of claims, distribution to the class and preparing reports and filings for the court. Over the last 20 years, Ms. Chiango has worked on a broad spectrum of class action settlements including securities, antitrust, consumer and mass tort, among others. Ms. Chiango has a B.S. in Business Administration with a major in Accounting from Drexel University.

tchiango@rg2claims.com



**DOMINIQUE FITE**, Esq., Vice President, Business Development and Client Relations, is responsible for advising clients during the developing stages of the class action claims administration process, from pre-settlement planning through settlement in all class action practice areas. With over ten years of relevant legal industry experience, Ms. Fite plays a valuable role consulting with current and prospective clients offering practical approaches, strategic advice, and customized solutions. As both a former class action attorney and business development attorney at a leading plaintiff class action firm, she focused her practice on ERISA and Consumer Protection actions as well as securities litigation. Ms. Fite also provided substantial research assistance in the authorship of law review articles related to the Dodd-Frank Act. More recently, Ms. Fite served as a director of client relations and development for one of the largest class action settlement administrators where she was involved in many large and complex class action settlement administrations, including the Countrywide Mortgage-Backed Securities Litigation and RALI Mortgage-Backed Securities Litigation settlements. Ms. Fite has a juris doctor degree from American University, Washington College of Law and a B.A. from New York University, where she graduated magna cum laude. She is a member of the Association of Business Trial Lawyers, Consumer Attorneys of California, and the American Bar Association.

dfite@rg2claims.com



**WILLIAM W. WICKERSHAM**, Esq., Vice President, Business Development and Client Relations, focuses his practice on assisting clients in navigation of the claims administration process from pre-settlement consultation through disbursement in all class action practice areas, including, but not limited to, antitrust, consumer, labor and employment, and securities. As a seasoned director of client relations, he advises counsel on settlement administration plans and manages many large and complex class action settlements. Mr. Wickersham has also appeared in federal court on several occasions to successfully support counsel in the settlement approval process including complex securities, environmental and wage and hour matters. As a former securities class action attorney, he brings over a decade's worth of experience in the class action bar as a litigator and as a claims administrator. As a litigator, Mr. Wickersham was involved in several high profile litigations which resulted in recoveries for investors totaling over $2.5 billion. Mr. Wickersham has a juris doctor degree from Fordham University School of Law, a B.A. from Skidmore College and is admitted to practice law in New York.

wwwickersham@rg2claims.com



# Locations



San Francisco

San Diego

New York
Philadelphia

Atlanta

**PHILADELPHIA**
30 South 17th Street  •  Philadelphia, PA 19103-4196
**P** 215.979.1620  •  **F** 215.979.1695



**NEW YORK**
1540 Broadway  •  New York, NY 10036-4086
**P** 212.471.4777  •  **F** 212.692.1020

**ATLANTA**
1075 Peachtree Street NE, Suite 2000  •  Atlanta, GA 30309-3929
**P** 404.253.6904  •  **F** 404.253.6905



**SAN DIEGO**
750 B Street, Suite 2900  •  San Diego, CA 92101-4681

**SAN FRANCISCO**
Spear Tower  •  One Market Plaza, Suite 2200  •  San Francisco, CA 94105-1127
**P** 415.957.3011  •  **F** 415.957.3090



# Full Life-Cycle Support for Your Class Action
## With You Every Step of the Way

Whether engaged as a court-appointed settlement administrator, claims agent or disbursing agent, RG/2 Claims offers a complete range of claims, settlement administration and investment management services, including but not limited to:

### PROFESSIONAL CASE MANAGEMENT CONSULTING

RG/2 Claims provides custom pre-settlement consultation and highly personalized attention throughout the life cycle of settlement administration. Each retention begins with an in-depth consultation concerning the specific needs of the case. Our professionals routinely and proactively identify administrative concerns and identify and propose solutions that avoid delay and remove unpredictability from the equation. We work through a coordinated approach involving a core of specialists that are intimately familiar with the case entrusted to our care. Our retentions result in effective and efficient solutions and greater peace of mind for busy lawyers.

### NOTIFICATION PLANNING AND CAMPAIGNS

Whether routine or innovative, RG/2 Claims designs cost-effective and thorough notification plans that will suit your budget whether the settlement is national in scope or highly localized. RG/2 Claims guides you through the array of notice publication options at your disposal in a variety of media formats.

### WEBSITE DESIGN

RG/2 Claims can assist in the design and hosting of a website specific to the client's needs to allow for document posting, as well as pertinent information and deadlines about the case. RG/2 Claims can also provide various options for claims filing, which includes an online portal that allows claimants to submit their claims and supporting documentation through the website.

### CLAIMS PROCESSING

RG/2 Claims utilizes a proprietary and customizable database that provides a single-source management tool throughout the claims administration process, expediting decision making and resource management. RG/2 Claims' proprietary and sophisticated CLEVerPay® system centralizes the entire process while providing information sharing and communications solutions, from the initial mailing through distribution of settlement funds and reconciliation of payments.

### DISTRIBUTION AND TAX SERVICES

RG/2 Claims' in-house tax, accounting and financial services professionals provide disbursement services, including management of checking, sweep, escrow and related cash accounts, as well as non-cash assets, such as credits, gift cards, warrants and stock certificates. RG/2 Claims' in-house CPAs provide a broad array of accounting services, including securing private letter rulings from the IRS regarding the tax reporting consequences of settlement payments, the preparation of settlement fund tax returns and the preparation and issuance of IRS Forms 1099 and W-2.

## Range of Services
# Offering Unparalleled Value

**RG/2 offers a range of quality value-added services for your class action administration.**

### SECURITIES

RG/2 Claims' highly experienced team uses its various resources to locate beneficial holders of securities, including working with the Depository Trust Company and a proprietary list of nominee firms to identify and mail notices to the class. With RG/2 Claims' CLEVerPay system, claims are processed efficiently and accurately using our proprietary damage grid that calculates class member damages in accordance with a broad array of complex plans of allocation. Claims are automatically flagged through a validation process so RG/2 Claims can communicate with class members concerning their claims and can assist them in filing claims that are complete and properly documented. Once ready for distribution, RG/2 Claims conducts an audit of the claims to insure against calculation errors and possible fraudulent claims. Once the audit is completed, RG/2 Claims calculates distribution amounts for eligible class members in accordance with the plan of allocation and issues checks and any applicable tax documents. RG/2 Claims is also often called upon to act as the Escrow Agent for the Settlement Fund, investing the funds and filing all required tax returns.

### ANTITRUST

Because of the high-dollar settlements involved in most antitrust cases and potential large recoveries on behalf of class members, RG/2 Claims understands the importance of accuracy and attention to detail for these cases. RG/2 Claims works with counsel to arrive at the best possible plan to provide notice to the class. With RG/2 Claims' CLEVerPay system, claims filed with a large volume of data, which is common in an antitrust case, can be quickly and easily uploaded into our database for proper auditing. Our highly-trained staff consults with counsel to apply an audit plan to process claims in an efficient manner while ensuring that all claims meet class guidelines. Once ready for distribution, RG/2 Claims calculates check amounts for eligible class members in accordance with the plan of allocation and will issue checks (including wire transfers for large distributions) as well as any necessary tax documents. RG/2 Claims is also available to act as the Escrow Agent for the Settlement Fund, investing the funds and filing all required tax returns.

### EMPLOYMENT

With an experienced team of attorneys, CPAs, damage experts and settlement administrators, RG/2 Claims handles all aspects of complex employment settlements, including collective actions, FLSA, gender discrimination, wage-and-hour and, in particular, California state court class and PAGA settlements. RG/2 Claims utilizes technological solutions to securely receive and store class data, parse data for applicable employment information, personalize consents forms or claim forms, collect consents or claims electronically, calculate settlement amounts and make payments through our proprietary CLEVerPay system. Our proprietary database also allows for up-to-the-minute statistical reporting for returned mail, consents or claims received and exclusions submitted. Our CPAs concentrate on withholding and payroll issues and IRC section 468(B) compliance and reporting. Customizable case-specific websites allow for online notification and claims filing capabilities. With Spanish/English bilingual call center representatives on-staff, class members are provided immediate attention to their needs.

### CONSUMER

RG/2 Claims handles a wide range of complex consumer matters with notice dissemination to millions of class members and with settlements involving cash, coupons, credits and gift cards. Our experienced claims administrators are available to provide guidance on media, notice and distribution plans that are compliant with the Class Action Fairness Act and the state federal rules governing notice, and that are most beneficial to the class. Our proprietary CLEVerPay system provides a secure and efficient way to track class member data, claims and payments. Integrated with our database, we can provide a user-friendly claims filing portal that will allow class members to complete a static claim form or log-in using user-specific credentials to view and submit a claim personalized just for that user. A similar online portal can be provided as a highly cost-effective method for distribution where the class member can log in to obtain coupons, vouchers or credits as their settlement award.

Effective administration requires proactive planning and precise execution. Before we undertake any matter, we work with you to develop a specific plan for the administration of your case. The service plan is comprehensive, complete and tailored to your specific needs.

## RG/2 CLAIMS PROVIDES THE SERVICES SUMMARIZED BELOW:

- Technical consultation during formulation of settlement agreement, including data collection criteria and tax consequences
- Design and development of notice and administration plan, including claim form design and layout
- Claim form and notice printing and mailing services
- Dedicated claimant email address with monitoring and reply service
- Calculation and allocation of class member payments
- Claim form follow-up, including issuing notices to deficient and rejected claims
- Mail forwarding
- Claimant locator services
- Live phone support for claimant inquiries and requests
- Claim form processing
- Claim form review and audit
- Check printing and issuance
- Design and hosting of website access portals
- Online claim receipt confirmation portal
- Ongoing technical consultation throughout the life cycle of the case
- Check and claim form replacement upon request

## WE ALSO PROVIDE THE FOLLOWING OPTIONAL SERVICES:

- Periodic status reporting
- Customized rapid reporting on demand
- Issue reminder postcards
- Consultation on damage analyses, calculation and valuation
- Interpretation of raw data to conform to plan of allocation
- Issue claim receipt notification postcards
- Online portal to provide claims forms, status and contact information
- Dedicated toll-free claimant assistance line
- Evaluation and determination of claimant disputes
- Opt-out/Objection processing
- Notice translation
- Integrated notice campaigns, including broadcast, print and e-campaigns
- Pre-paid claim return mail envelope service
- Web-based claim filing
- 24/7 call center support
- Damage measurement and development of an equitable plan of allocation

## WE ALSO PROVIDE CALCULATION AND WITHHOLDING OF ALL REQUIRED FEDERAL AND STATE TAX PAYMENTS, INCLUDING:

- Individual class member payments
- Qualified Settlement Fund (QSF) tax filings
- Employment tax filings and remittance
- Generation and issuance of W-2s and 1099s
- Integrated reporting and remittance services, as well as client-friendly data reports for self-filing

> **Don't see the service you are looking for?**
> **Ask us. We will make it happen.**



FOR MORE INFORMATION, PLEASE CONTACT:

**WILLIAM W. WICKERSHAM, Esq.**
Vice President, Business Development and Client Relations
Phone: 917.531.8241
Email: wwwickersham@rg2claims.com

**DOMINIQUE FITE, Esq.**
Vice President, Business Development and Client Relations
Phone: 619.744.2259
Email: dfite@rg2claims.com

WWW.RG2CLAIMS.COM



## BOUTIQUE ADMINISTRATOR WITH WORLD-CLASS CAPABILITIES

**PHILADELPHIA • NEW YORK • ATLANTA • SAN DIEGO • SAN FRANCISCO**

# EXHIBIT 2

| Desktop Copy Examples | Creative Sample | Mobile Ad Copy Examples | Creative Sample |
|---|---|---|---|
| Did You Buy A Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. | Did You Buy a Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. CLICK HERE ▸ | Did You Buy A Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. | Did You Buy a Nature's Way Coconut Oil Product? A Class Action Settlement Will Affect Your Rights. CLICK HERE |
| Did You Purchase A Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. | Did You Buy a Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. CLICK HERE ▸ | Did You Purchase A Nature's Way Coconut Oil Product? A Class Action Settlement May Affect Your Rights. | Did You Purchase a Nature's Way Coconut Oil Product? A Class Action Settlement Will Affect Your Rights. CLICK HERE |
| Did You Purchase A Nature's Way Coconut Oil Product? You may be entitled to compensation. | Did You Buy a Nature's Way Coconut Oil Product? You May Be Entitled to Compensation. CLICK HERE ▸ | Did You Purchase A Nature's Way Coconut Oil Product? You may be entitled to compensation. | Did You Purchase a Nature's Way Coconut Oil Product? You May Be Entitled to Compensation. CLICK HERE |
| |  | |  |

# Exhibit C

## OPT-OUT FORM

*Hunter v. Nature's Way Products, LLC et al.,*
S.D. Cal, No. 16-cv-532-WQH-BLM

> **This is NOT a claim form. It EXCLUDES you from this Class Action.**
>
> **<u>DO NOT use this Form if you wish to remain IN the Class Action</u>**

Name of Class Member: _____

Address: _____
        Street               City         State    Postal Code

Telephone: _____
        Area Code / Phone No. (Ext. if applicable)

***I understand that by opting out, I will not be eligible to receive any monetary or other relief that may result from the trial or settlement of this lawsuit, if there is one. I further understand that by opting out, all personal representatives, spouses, and relatives who on account of a personal relationship to me might assert a derivative claim will be deemed to have opted out as well.***

If you wish to opt out of (put another way, exclude yourself from) this Class Action, please check the box below.

☐    By checking this box, I affirm that I wish to be excluded from this Class Action.

_____        _____
      Date Signed             Signature of Class Member or Executor, Administrator, or Personal Representative

To be effective as an election to opt out of this Class Action, this Form must be completed, signed, and sent by regular mail, postmarked no later than [***date– 45 days after commencement of class notice***], to the address listed below.

The consequences of returning this Form are explained in the Notice of Settlement.

**If you choose to opt out, you must mail this Opt Out Form to the Class Action Administrator, at the following address, in an envelope postmarked NO LATER THAN [DATE – 45 days after commencement of class notice]:**

> **RG2 Claims Administration**
> **Attn: Nature's Way Coconut Oil Settlement**
> **30 S. 17th St.**
> **Philadelphia, PA 19103**

# Exhibit 2

# The Law Office of Jack Fitzgerald, PC

Hillcrest Professional Building | 3636 Fourth Avenue, Suite 202 | San Diego, California 92103

Phone: (619) 692-3840 | Fax: (619) 362-9555

www.jackfitzgeraldlaw.com

---

## Firm Resume – July 2019

### Overview

Founded in 2013, The Law Office of Jack Fitzgerald, PC is primarily engaged in complex litigation, with an emphasis on consumer protection and intellectual property, including through class actions. We investigate marketplace fraud, and represent consumers and companies against entities that falsely advertise or otherwise market their products in a deceptive, misleading, or unfair manner. We have substantial experience in many different industries, including foods, dietary supplements, homeopathic remedies, cosmetics, fashion and accessories, computer hardware and software, telecommunications, music, sports, database protection and privacy, financial services, medical products, health services, and Internet/e-commerce marketing methods. Representative matters are described below.

• *Hadley v. Kellogg Sales Co.*, **324 F. Sup. 3d 1084 (N.D. Cal. 2018)** – Obtained certification of a Rule 23(b)(3) damages class in action alleging Kellogg used health and wellness claims on Raisin Bran, Smart Start, and Frosted Mini-Wheats cereals that were misleading in light of the products' high added sugar content.

• *Martin v. Monsanto Co.*, **2017 WL 1115167 (C.D. Cal. Mar. 24, 2017);** *Rawa et al. v. Monsanto Co.*, **2018 WL 2389040 (E.D. Mo. May 25, 2018)** – Obtained certification of a Rule 23(b)(3) damages class in action alleging that Monsanto overstated the amount of spray solution its Roundup Concentrate herbicides made. Subsequently reached and obtained final approval of classwide settlement involving a $21.5 million, non-reversionary common fund.

• *Rodriguez v. Bumble Bee Foods, LLC*, **2018 WL 1920256 (S.D. Cal. Apr. 24, 2018)** – Allegations that Bumble Bee misleadingly and unlawfully advertised its Premium Select Medium Red Smoked Salmon Filets in Oil as wild smoked salmon. Shortly after filing, defendant agreed to drastically change the challenged label to settle the action. On April 24, 2018, the Honorable Michael M. Anello granted final approval (Dkt. No. 25).

• *Hunter v. Nature's Way Prods., LLC*, **No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)** – Allegations that Nature's Way misleadingly and unlawfully advertised its coconut oil as healthy. Following the filing of plaintiff's motion for class certification, the parties reached a settlement, which included monetary and injunctive relief.

• *Boswell et al. v. Costco Wholesale Corp.*, **No. 8:16-cv-00278-DOC-DFM (C.D. Cal.)** – Allegations that Costco misleadingly and unlawfully advertised its Kirkland brand coconut oil as healthy. Settlement involving $775,000 common fund and Costco's agreement to cease using "health" claims to market coconut oil granted final approval on December 13, 2017 (Dkt. No. 133).

• *Ducorsky v. Premier Organics*, **No. HG16801566 (Alameda Super. Ct.)** - Allegations that Premier Organics misleadingly and unlawfully advertised its coconut oil as healthy. Settlement involving $312,500 common fund and Premier Organic's agreement to cease using the challenged claims to market coconut oil granted final approval on February 6, 2018.

• *Cumming v. BetterBody Foods & Nutrition, LLC*, **No. 37-2016-00019510-CU-BT-CTL (San Diego Super. Ct.)** – Allegations that BetterBody misleadingly and unlawfully advertised its coconut oil products as healthy, despite that scientific evidence demonstrates coconut oil consumption increases risk of cardiovascular heart disease, stroke, and death. Case settled prior to filing for a $1.1 million common fund and BetterBody's agreement to remove all challenged health and wellness claims from the labels of its coconut oil products. Court granted settlement final approval on February 24, 2017.

• *Belardes v. Capay Inc.*, **No. 37-2014-00041774-CU-MC-CTL (San Diego Super. Ct.)** – Allegations that Capay unlawfully charged 49,416 Californians for unordered merchandise by enrolling unsuspecting consumers in its home produce delivery service, Farm Fresh to You, and violated the California Rosenthal Fair Debt Collection Practices Act by attempting to collect on fraudulent debts resulting from the unordered merchandise. Obtained settlement cancelling more than $3 million in disputed debt, providing nearly $400,000 in free deliveries, and obligating Capay to engage in a variety of business practice changes to ensure problems did not reoccur, as well as to send to customers a corrective message. In approving the settlement on December 4, 2015, the Court found the action **"resulted in the enforcement of an important right affecting the public interests,"** and noted the **"excellent results obtained for the Class and general public."**

## Attorneys

**Jack Fitzgerald - Principal**

Mr. Fitzgerald is an accomplished class action attorney who has been appointed class counsel in numerous cases and helped victimized consumers recover millions of dollars. Mr. Fitzgerald is also a successful appellate advocate. His efforts briefing and presenting oral argument led the Ninth Circuit Court of Appeals to issue an important pro-consumer decision in *Reid v. Johnson & Johnson*, **780 F.3d 952 (9th Cir. 2015)**. Other representative matters include:

*Gallucci v. Boiron, Inc.*, **No. 11-cv-2039-JAH (S.D. Cal.)** – Allegations that Boiron misleadingly marketed homeopathic products. Obtained nationwide settlement that included $5 million and significant changes to Boiron's marketing practices. *Gallucci v. Boiron, Inc.*, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012). Following oral arguments in which Mr. Fitzgerald appeared on behalf of the certified class, the Ninth Circuit affirmed the court's final settlement approval. *Gallucci v. Gonzales*, 603 Fed. Appx. 533 (9th Cir. Feb. 24, 2015).

*In re Ferrero Litigation*, **No. 11-cv-205-H-KSC (S.D. Cal.)** – Allegations that Ferrero misleadingly advertised Nutella spread as a healthy breakfast for children. Obtained certification of a California class, *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011), then a settlement that provided the class monetary and injunctive relief, which the Honorable Marilyn L. Huff characterized as an **"excellent result[] obtained for the class,"** *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012). In July 2014, the Ninth Circuit upheld

**3** | P a g e

the settlement approval, noting that **"counsel's procurement of monetary and injunctive relief appears to have been an exceptional result."** *In re Ferrero Litig.*, 583 Fed. App'x 665, 667 (9th Cir. 2014). Mr. Fitzgerald argued both the class certification and final approval motions below, and the appeal.

*In re Apple & AT&T iPad Unlimited Data Plan Litigation*, **No. 10-cv-2553-RMW (N.D. Cal.)** – Allegations that, when they announced the first iPad, Apple and AT&T engaged in a "bait and switch" scheme by promising a no-contract, unlimited data plan during the three-month pre-order period, then got rid of the plan within a week after iPads started shipping. In March 2014, the Honorable Ronald M. Whyte approved a settlement that required defendants to refund iPad purchasers who made a claim $40 each, as well as to make available a more favorable data plan for certain purchasers.

*In re Qunol CoQ10 Liquid Labeling Litigation*, **No. 11-cv-173-DOC (C.D. Cal.)** – Allegations that defendants misleadingly labeled a dietary supplement as providing "six times more absorption." Obtained certification of a nationwide class, *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524 (C.D. Cal. 2011), and avoided decertification following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *see Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012). Obtained class settlement obligating defendants to provide refunds and refrain from advertising the product as providing six times more absorption. *Bruno v. Quten Research Institute, LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013).

*In re Quaker Oats Labeling Litigation*, **No. 10-cv-502-RS (N.D. Cal.)** – Allegations that Quaker labeled food products containing artificial trans fat with misleading health and wellness claims. In July 2014, the Honorable Richard Seeborg granted final approval to a settlement that required Quaker to remove partially hydrogenated vegetable oils containing artificial trans fat from a wide variety of bar and oatmeal products.

*In re Nucoa Real Margarine Labeling Litigation*, **No. 10-cv-927-MMM (C.D. Cal.)** – Action alleging that Smart Balance, Inc. misleadingly marketed as "healthy" a stick margarine containing artificial trans fat. In June 2012, the Honorable Margaret M. Morrow approved a settlement in which defendant established a fund to provide consumers with refunds, and agreed to remove the trans fat from Nucoa margarine.

*Rosen v. Unilever United States, Inc.*, **No. 09-cv-2563-JW (N.D. Cal.)** – Action alleging that Unilever misleadingly marketed soft spread and stick margarines containing artificial trans fat. In June 2011, the Honorable James Ware granted final approval of a settlement that required Unilever to reformulate 40 brand-name and private-label margarines to remove partially hydrogenated vegetable oil containing artificial trans fat.

Mr. Fitzgerald previously was an associate in the New York office of Baker & Hostetler LLP, and the Palo Alto office of Mayer Brown LLP. He obtained his J.D. from New York University in 2004, where he was Editor of the Law Review, and graduated from Cornell University *magna cum laude* in 2001, with a B.A. in American Studies. Mr. Fitzgerald was admitted to practice law in New York in 2005 and California in 2008. He is admitted to practice before several federal courts throughout the country, as well as the United States Courts of Appeal for the Second, Eighth, and Ninth Circuits.

**4** | P a g e

**Trevor M. Flynn - Associate**

Mr. Flynn is an experienced trial attorney who has conducted dozens of trials and arbitrations, and hundreds of contested evidentiary hearings.

He has litigated complex securities cases, representing large groups of investors, including in connection with the massive financial fraud involving Peregrine Systems, Inc., resulting in a $26 million judgment. Mr. Flynn also has longstanding experience litigating matters involving unfair business practices, common law fraud, breach of fiduciary duty, malpractice, and employment (wage and hour) violations.

Mr. Flynn has served the community of San Diego for many years as both a lawyer for a San Diego 501(c)(3) non-profit law firm, and as a Deputy County Counsel for San Diego County. Mr. Flynn was recognized as a 2012 Attorney of the Year for his non-profit work.

Mr. Flynn received his B.A. from U.C. San Diego and his J.D. from the University of San Diego School of Law, where he was a leading member of the school's renowned National Mock Trial Team, and also interned at the school's Legal Clinic on cases involving child support arrears, unlawful tenant detainer, and termination of social security disability benefits.

**Melanie Persinger - Associate**

Ms. Persinger is an experienced class action attorney who has been appointed class counsel in numerous complex consumer protection and false advertising cases. She also has been an integral part of the litigation team in class actions involving the false advertising of coconut oils, high-sugar foods, and foods made with artificial trans fat, including against companies like General Mills, Kellogg, Post, Nutiva, Nature's Way, Costco, Kroger, Kraft, Quaker, Johnson & Johnson, Smart Balance, and many others. In addition to her several years of class action practice, Ms. Persinger is a Registered Patent Agent.

Ms. Persinger graduated from San Diego State University, *magna cum laude*, with distinction in Civil Engineering. She received her J.D. from the University of Michigan Law School, where she was awarded Honors in Legal Practice, and was Contributing Editor of the *Michigan Telecommunications & Technology Law Review*.