**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. PT Loma Blvd, No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LLC, and SCHWABE NORTH AMERICA, INC.,<br><br>Defendants. | Case No. 3:16-CV-00532-WQH-AGS<br><br>Hon. William Q. Hayes<br><br>**DECLARATION OF DANA BOUB REGARDING NOTICE TO THE CLASS** |

I, Dana Boub, hereby declare and state as follows:

1.    I am a Project Manager of Claims Administration for RG/2 Claims Administration LLC ("RG/2"), whose address is 30 South 17th Street, Philadelphia, PA 19103. I am over the age of 18, have personal knowledge of the matters set forth herein, and if called upon to do so, could testify competently to them.

2.    RG/2 is a full-service class action settlement administrator offering notice, claims processing, allocation, distribution, tax reporting, and class action settlement consulting services.  RG/2's experience includes the provision of notice and administration services for settlements arising from antitrust, consumer fraud, civil rights, employment, negligent disclosure, and securities fraud allegations.  Since 2000, RG/2 has administered and distributed in excess of $1.7 billion in class action settlement proceeds.

3.    As approved in the Court's Preliminary Approval Order dated September 5, 2019, the Parties required that RG/2 be responsible for: creating a website with an online claims portal; publishing the Settlement Notice; creating and undertaking a Media Plan; processing Claims, processing Opt Out letters and objections; corresponding with Claimants; making all payments to Claimants from the settlement; tax reporting and withholding as required; and communicating the information regarding status of claims and payment to Parties' counsel.  Subsequent to this Order, RG/2 has performed the services detailed below.

4.    On July 31, 2019, RG/2 caused to be served by Federal Express or Certified Return Receipt Requested First-Class mail, where applicable, a Notice of Proposed Settlement to the United States Attorney General and 57 State and Territory Attorney Generals.  A copy of the Notice of Proposed Settlement, excluding its exhibits, is attached hereto as **Exhibit A**.

**DECLARATION OF DANA BOUB, SETTLEMENT ADMINISTRATOR**

5. The website, www.natureswaycoconutoilsettlement.com went live on September 16, 2019. The website includes the following:

    a. The "Homepage" contains a brief summary of the Settlement and advises potential Class Members of their rights under the Settlement;

    b. The "Notice/Claim Form" page contains a pdf copy of the Court-Ordered Notice and Settlement Claim Form;

    c. The "File a Claim" page that contains a link to the Claims online filing portal;

    d. The "Court Documents" page contains the: Initial Complaint, The First Amended Complaint, The Second Amended Complaint, The Stipulation of the Class Action Settlement, the Order Granting Motion for Preliminary Approval, and the Amended Order Granting Motion for Preliminary Approval. Additional documents will be added as requested;

    e. The "Contact" page contains the contact information of the Claims Administrator and Plaintiffs' Counsel.

6. In addition, on September 16, 2019, RG/2 arranged for the launching of a 29-day media campaign. The media plan consisted of:

    a) A Facebook campaign where potential Class Members could click on ads posted in Facebook and associated platforms, such as Instant Articles and Messenger. The clicked ad is linked to the case website;

    b) A banner ad campaign in which banner ads were created and appeared on various sites based on topics being searched. Class Members who

**DECLARATION OF DANA BOUB, SETTLEMENT ADMINISTRATOR**

saw the ads were able to click on the ad and be linked directly to the case website;

c)   Bing and Google Adwords pay per click campaigns in which various search words/phrases produced an ad in which Class Members could click and be linked to the case website.

Attached hereto as **Exhibit B** is the report of Elan Legal Media regarding the media campaign results as of the end of the campaign. To summarize, the online outreached delivered more than 16.9 million impressions; there were approximately 147,264 unique visitors to the settlement website. A total of 88,585 claims were received through November 1, 2019.

7.     RG/2 also arranged for the Short Form Notice to be published San Diego Union-Tribune.  The Short Form Notice was published on September 16, 2019; September 23, 2019; September 30, 2019; and October 7, 2019.  A copy of the published Notice is attached hereto as **Exhibit C.**

8.     The Short Form Notice advised Class Members of their right to exclude themselves from the Settlement, provided that their request be postmarked by October 31, 2019. To date, RG/2 has received zero (0) Requests for Exclusion from the Settlement.

9.     The Short Form Notice also advised Class Members of their right to object to the Settlement, provided that their objection be filed with the Court by November 25, 2019. To date, RG/2 has not been made aware of any objections timely filed with the Court.

10.     Class Members had until October 31, 2019 to either submit a claim through the claims portal or have their mailed Claim Form postmarked. To date, RG/2 has received

3

**DECLARATION OF DANA BOUB, SETTLEMENT ADMINISTRATOR**

76,416 claims that it currently recommends for Payment (valid claims), with a total of 225,131 total units claimed.

11.    RG/2 will continue to evaluate the claims filed and report to the Court the final number of eligible Class Members for payment.

12.    RG/2 originally estimated that costs for administration would be $128,599 based on an estimated 21,000 claims.

13.    Due to the higher than anticipated number of claims, RG/2's total fees and expenses for notice, administration, and distribution services in connection with this matter are $224,262 through completion of the initial distribution. This increase is primarily due to the increased cost of processing and mailing (postage costs) for the higher-than-estimated number of claims.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on November 15, 2019 at Philadelphia, Pennsylvania.

*Dana Boub*

Dana Boub

4

**DECLARATION OF DANA BOUB, SETTLEMENT ADMINISTRATOR**

# Exhibit A

**RG2**
**Claims**
**Administration LLC**

July 31, 2019

Via «Via_Mail»

«First» «Last», «Esquire»
«Title»
«Street_1»
«Street2»
«City», «State1» «Zip»

Re:    *Hunter v. Nature's Way Prods., LLC et al*
       United States District Court, Southern District of California
       Case No. 3:16-cv-00532-WQH-AGS
       Notice of Proposed Settlement

To the Honorable «First» «Last», Esq.:

Pursuant to the Class Action Fairness Act of 2005 (specifically 28 U.S.C.A. § 1715), Defendant, Nature's Way Prods., LLC, and the Claims Administrator, RG/2 Claims Administration LLC, hereby give notice in the above-captioned matter of the following:

1.  Class Counsel has filed the Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, a copy of which, entitled Exhibit A, is contained on the CD-Rom included herein.

2.  Pursuant to the requirements under the Class Action Fairness Act of 2005, copies of the following documents are also contained on the CD-Rom included herein:

       Exhibit 1:    Initial Complaint;

       Exhibit 2:    Amended Complaint;

       Exhibit 3:    Second Amended Complaint;

       Exhibit 4:    Declaration of Jack Fitzgerald;

       Exhibit 5:    Declaration of Paul K Joseph;

       Exhibit 6:    Settlement Agreement;

       Exhibit 7:    Proposed Order Granting Plaintiffs' Motion for Preliminary
                     Approval; and

Page 2



Exhibit 8:        Proposed Notice of Settlement.


3.  The Class is defined as all individuals who purchased Nature's Way Extra Virgin Coconut Oil in a 16-ounce or 32-ounce jar or Nature's Way Liquid Coconut Oil in a 10-ounce or 20-ounce bottle, distributed by Nature's Way during the class period (January 28, 2012 to the date of preliminary approval), for your own personal or household use, and not for resale.

4.  As this is a consumer case, the proposed class consists of all persons who purchased Nature's Way Extra Virgin Coconut Oil in a 16-ounce or 32-ounce jar or Nature's Way Liquid Coconut Oil in a 10-ounce or 20-ounce bottle during the class period.  The sales were principally at retail, and thus a complete list of such purchasers does not exist.  As a result, it is not feasible to provide the names of all class members who reside in each state or the estimated proportionate shares of the claims of class members in each state.  To ensure comprehensive notice, however, we are sending this letter and the accompanying documentation to the Attorney General in each state.

5.  It is not feasible to provide the anticipated gross settlement amount allocations for each Class Members at this time until all Class Members have had an opportunity to file a claim or otherwise respond as provided in the notice of settlement and the time to respond had expired.  The proposed settlement provides individual recoveries for Class Members according to the process set further in the enclosed settlement agreement and notice for allocation of the $1,850,000 common fund.  The amounts recovered by each individual member may vary, and such amounts will be distributed to those who file a claim in this action in accordance with the Court's final approval order.

6.  There are no contemporaneous agreements between class counsel and counsel for Defendants in conjunction with the proposed settlement, other than the enclosed proposed settlement agreement.

7.  The Final Approval Hearing for this matter has not been scheduled.


If you have questions about this notice, the lawsuit, or the enclosed materials, please contact us at 215-979-1620.   Information and materials will also be available on the settlement website at www.NaturesWayCoconutOilSettlement.com


                              Sincerely,

                              RG/2 Claims Administration LLC

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
***Counsel for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC., <br><br> Defendant. | Case No: 3:16-cv-00532-WQH-AGS <br><br> **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: August 26, 2019 <br> Court: 14B (14th Floor) <br> Judge: Hon. William Q. Hayes <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................iv

INTRODUCTION & CASE BACKGROUND ...................................................1

FACTS & PROCEDURAL HISTORY ...............................................................2

    I.      THE PARTIES AND PLEADINGS ...............................................2

    II.     DISCOVERY .................................................................................2

    III.    SETTLEMENT ..............................................................................3

SUMMARY OF THE SETTLEMENT ...............................................................4

    I.      THE CLASS ..................................................................................4

    II.     THE CLASS WILL RECEIVE NOTICE ....................................4

    III.    THE SETTLEMENT'S BENEFITS FOR THE CLASS ...................................4

        A.    Monetary Relief: Defendants will Establish a $1,850,000 Common Fund.....................................................................4

            1.    The Claims Process...........................................4

            2.    Notice & Administration Costs .......................6

            3.    Attorneys' Fees and Costs, and Incentive Award.........................6

        B.    Prospective Relief: Defendants will Change their Advertising Practices ....................................................6

    IV.    THE SETTLEMENT'S RELEASES ..........................................7

    V.     PROCEDURES FOR OPTING-OUT AND OBJECTING ...............................7

        A.    Opting Out ....................................................................7

        B.    Objecting ......................................................................7

i

LEGAL STANDARD ........................................................................................8

ARGUMENT ....................................................................................................8

I.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................8

    A.    The Requirements of Rule 23(a) are Satisfied .........................................9

        1.    Numerosity........................................................................9

        2.    Commonality ....................................................................9

        3.    Typicality .......................................................................10

        4.    Adequacy .......................................................................11

    B.    The Requirements of Rule 23(b)(3) are Satisfied ..................................11

        1.    Predominance..................................................................11

        2.    Superiority......................................................................12

II.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT ..........................................................................13

    A.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations ...............................................................14

    B.    The Settlement Has No Obvious Deficiencies.......................................15

    C.    The Settlement Does Not Grant Preferential Treatment to the Class Representatives or any Class Members.......................................15

    D.    The Settlement Falls Within the Range of Possible Approval ...............16

        1.    The Experience and Views of Counsel..........................16

        2.    Investigation and Discovery ..........................................17

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 07/25/19 PageID.4129 Page 12 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/25/19 PageID.3930 Page 4 of 30

3. The Strength of Plaintiffs' Case; the Risk, Expense,
Complexity, and Duration of Further Litigation; and the
Risk of Maintaining Class Certification Through Trial ..............17

4. The Amount of Settlement.............................................................19

III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE
AND NOTICE PLAN, AND ENTER THE PROPOSED FINAL
APPROVAL SCHEDULE ...................................................................20

CONCLUSION ..........................................................................................................21

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF AUTHORITIES**

**Cases**

*Ahdoot v. Babolat VS N. Am.*,
   2014 WL 12586114 (C.D. Cal. Oct. 7, 2014) ................................................16

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ....................................................................14

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ..........................................................................10

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ........................................................................11

*Chamber v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. Oct. 11, 2016) ..............................................18

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ..........................................................................14

*City of Detroit v. Ginnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...........................................................................20

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................14

*Culley v. Lincare Inc.*,
   2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) ...............................................13

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ........................................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ........................................................................................12

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ........................................................................14

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ..................................................10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)........................................................................10

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ..............................................15

*In re Beef Indus. Antitrust Litig.*,
    607 F. 2d 167 (5th Cir. 1979)........................................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)........................................................................15

*In re Hyundai & Kai Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019).........................................................................3

*In re Hyundai & Kia Fuel Economy Litigation*,
    881 F.3d 679 (9th Cir. 2018).........................................................................3

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)..................................................................20

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977)......................................................................20

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)..........................................................................14

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014)........................................................................9

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998)........................................................................10

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................16

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................................9, 14

*Manner v. Gucci Am., Inc.*,
   2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) ......................................................14

*Martin v. Monsanto*,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017)...................................9, 10, 11, 12

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016).........................................................9

*Misra v. Decision One Motrg. Co.*,
   2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) .........................................8, 14, 16

*Morey v. Louis Vuitton N. Am., Inc.*,
   2013 WL 12069021 (S.D. Cal. 2013) (Hayes, J.)........................................13, 14

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................18

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)................................................................................13

*Pilkington v. Cardinal Health, Inc.*,
   516 F.3d 1095 (9th Cir. 2008)..............................................................................14

*Rasario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992)..............................................................................10

*Satchell v. Fed. Exp. Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr.13, 2007) .......................................................15

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005)..........................................................................10

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ....................................................... 12

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................................. 16

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 2191901 (N.D. Cal. May 23, 2014) ................................... 18

*West v. Circle K Stores, Inc.*,
  2006 WL 1652598 (E.D. Cal. June 13, 2016) ................................... 16

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ........................................................... 12

**Statutes**

Cal. Civ. Code § 1542 .......................................................................... 7

**Rules**

Fed. R. Civ. P. 23(a)(2) ......................................................................... 9

Fed. R. Civ. P. 23(a)(3) ....................................................................... 10

Fed. R. Civ. P. 23(a)(4) ....................................................................... 11

Fed. R. Civ. P. 23(b)(3) ....................................................................... 11

Fed. R. Civ. P. 23(e) ........................................................................... 13

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# INTRODUCTION & CASE BACKGROUND

In this putative class action, plaintiff alleges defendants Nature's Way Products, LLC and Schwabe North America, Inc. (collectively "defendants" or "Nature's Way") misleadingly and unlawfully marketed various Nature's Way brand coconut oil products as both inherently healthy and a healthy alternative to butter, margarine, shortening, and other cooking oils, despite that coconut oil is actually inherently unhealthy, and a less healthy option to these alternatives.  Plaintiff relied on misleading and unlawful labeling claims when purchasing Nature's Way coconut oil products, and lost money as a result. Specifically, plaintiff read and relied on the following misleading claims contained on the packaging:

a.   "Variety of Healthy Uses: Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars."

b.   "Ideal for exercise and weight loss programs"

c.   "non-hydrogenated; no trans fat"

d.   "For cooking, can be used in place of butter, margarine, shortening or other cooking oils"

Plaintiff alleges that defendants violated California's Unfair Competition Law, False Advertising Law, Consumers Legal Remedies Act, and express and implied warranties.

After more than two years of litigation, extensive motion practice, including a fully-briefed motion for class certification, multiple discovery motions, expert and party depositions, and several informal settlement discussions, on February 21, 2018, during a settlement conference with Magistrate Judge Hon. Andrew G. Schopler, the parties reached a classwide settlement agreement that provides substantial relief to the Class: defendants have agreed to injunctive relief, and to establish a $1,850,000 non-reversionary common fund to pay all settlement expenses including notice and administration, Class Member claims, and any incentive awards, fees, and expenses awarded by the Court.

The proposed Settlement fairly and appropriately resolves the claims of the Class in a manner that provides immediate and definite injunctive and monetary relief. Accordingly,

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    plaintiff respectfully requests the Court grant preliminary approval, authorize Class Notice as

2    detailed herein, appoint her Class Representative, appoint her counsel as Class Counsel, and

3    schedule a Final Approval Hearing and related briefing deadlines.

## FACTS & PROCEDURAL HISTORY

## I.    THE PARTIES AND PLEADINGS

6        Plaintiff Sherry Hunter brought this action on January 28, 2016, in San Diego County

7    Superior Court, and on March 2, Nature's Way filed a notice of removal pursuant to 28 U.S.C.

8    § 1441 it to federal court. Dkt. No. 1. On March 14, 2016, Nature's Way moved to dismiss

9    the case, or to strike portions of the Complaint, Dkt. Nos. 12, 13, which the Court granted in

10   part and denied in part, Dkt. No. 28. Nature's Way answered the original complaint on

11   September 2, 2016. Dkt. No. 31.

12       Plaintiff moved for class certification on June 2, 2017. Dkt. No. 60. Defendants

13   opposed, Dkt. No. 74, and plaintiff replied, Dkt. No. 75. While the motion was pending, due

14   to a change in Ninth Circuit law, on November 14, 2017, plaintiff moved the Court to

15   reconsider its Order dismissing her claims for injunctive relief. Dkt. No. 85. On January 1,

16   2018, the Court granted the motion, giving plaintiff leave to file an amended complaint, and

17   concurrently denied the pending certification motion as moot. Dkt. No. 90.

18       Pursuant to an earlier Order, following the Court's Order on the certification motion,

19   the parties contacted Judge Schopler's chambers to schedule the mandatory settlement

20   conference that had earlier been vacated. *See* Dkt. No. 52. Plaintiff filed a First Amended

21   Complaint on January 30, 2018, Dkt. No. 95, and a Second Amended Complaint on February

22   12, 2018, Dkt. No. 96, which is the currently-operative complaint.

## II.    DISCOVERY

24       The parties served initial disclosures in April (plaintiff) and October (defendants) 2016.

25   Fitzgerald Decl. ¶ 3. They held a Rule 26(f) conference on September 23, 2016, and submitted

26   a joint report on October 7, 2016. Dkt. No. 33.

27       On September 26, 2016, plaintiffs served defendants with written discovery requests.

28   *Id.* ¶ 4. On April 19, 2017, plaintiff moved to compel defendants to produce documents and

2

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4136 Page 19 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3937 Page 19 of 30

supplemental interrogatory responses, and moved to extend case deadlines based on defendant's failure to timely produce. Dkt. No. 50. The Court granted the motion to extend discovery cutoff dates, Dkt. No. 56, and, following a hearing on May 22, 2017, granted in part plaintiff's motion to compel, ordering defendants to pay to plaintiff $4,000 in sanctions. Dkt. No. 59.

In response to plaintiff's discovery requests, defendants produced nearly 40,000 pages of documents comprising, among other things, consumer research, labels and related business documents, and pricing, sales, science, and expert-related documents. Fitzgerald Decl. ¶ 4. Plaintiff also subpoenaed several third parties, obtaining a large amount of sales data. *Id.* ¶ 5. After reviewing these documents and other discovery responses, in March 2017, plaintiff's counsel took defendants' depositions pursuant to Fed. R. Civ. P. 30(b)(6), in Green Bay, Wisconsin. *Id.* ¶ 6. The following month, counsel deposed defendants' experts in Los Angeles and Ohio. *Id.* And in April 2017, defendants also deposed plaintiff. *Id.* ¶ 7.

## III.  SETTLEMENT

On February 21, 2018, the parties attended a settlement conference with Judge Schopler. After substantial negotiations, and only on the basis of a mediator's proposal Judge Schopler made when the parties could not reach agreement themselves, the parties finally reached the instant settlement. Fitzgerald Decl. ¶ 8; Dkt. No. 97.

In June 2018, as a result of the full court vacating a Ninth Circuit panel decision in *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018), *rev'd* 926 F.3d 539 (9th Cir. 2019), the parties asked the Court to stay these proceedings, pending resolution of a rehearing of that matter en banc. Dkt. No. 103. The Court granted the stay. Dkt. No. 104. In June 2019, the en banc panel overturned the decision, restoring the underlying district court's order approving a nationwide settlement. *See In re Hyundai & Kai Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc) ["*Hyundai*"]. The parties notified the Court of that decision, Dkt. No. 109, and it lifted the stay, Dkt. No. 110. Plaintiff now submits this motion for approval of a nationwide class settlement.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## SUMMARY OF THE SETTLEMENT

### I.   THE CLASS

The proposed Settlement is on behalf of a Class of all persons in the United States who purchased, for personal or household use, any Nature's Way coconut oil product bearing at least one of the challenged labeling claims, and including specifically the 16-ounce or 32-ounce jar of Nature's Way Extra Virgin Coconut Oil, and any bottle of Nature's Way Liquid Coconut Oil, including the 10-ounce and 20-ounce bottles. Fitzgerald Decl. Ex. 1 ("Settlement Agreement" or "SA") at ¶¶ 1.3, 1.10.

### II.   THE CLASS WILL RECEIVE NOTICE

The Claims Administrator, RG2, will provide the Class with notice of the proposed settlement via digital publication notice, consistent with the manner set forth in the proposed Notice Plan. SA ¶ 3.2 & Ex. B, Declaration of William W. Wickersham ("Wickersham Decl.") (detailing proposed Notice Plan). As explained in detail in Section III, below, the proposed Notice Plan is reasonable under the circumstances.

### III.   THE SETTLEMENT'S BENEFITS FOR THE CLASS

#### A.   Monetary Relief: Defendants will Establish a $1,850,000 Common Fund

Defendants will establish a non-reversionary $1,850,000 Common Fund to pay all settlement expenses including notice and administration, Class Member claims, and any incentive award and attorneys' fees and costs awarded by the Court. SA ¶ 2.3.

##### 1.   The Claims Process

Class Members can make a claim online at the Settlement Website by filling out and submitting a short form. The website will also include a claim form that can be downloaded and mailed to the Class Administrator. SA 3.2 & Ex. B, Wickersham Decl. ¶¶ 20-21. Class members may also object to the settlement, SA ¶ 3.4, opt-out of the settlement, SA ¶ 3.6, and submit a notice of intent to appear at the final approval hearing, SA ¶ 3.5. The procedure for any class member to opt-out, object, or appear will be set forth on the Settlement Website. SA ¶¶ 1.22, Ex. A, Long Form Notice.

Class Members with proof of purchase, who have their claims validated by the Claims

4

Administrator, will be reimbursed as follows:

- $3.00 for each 16-ounce jar of semi-solid Extra Virgin Coconut Oil purchased;

- $6.00 for each 32-ounce jar of semi-solid Extra Virgin Coconut Oil purchased;

- $3.50 for each 10-ounce jar of Liquid Coconut Cooking Oil purchased; and

- $6.00 for each 20-ounce jar of Liquid Coconut Cooking Oil purchased.

Class Members without proof of purchase, who have their claims validated by the Claims Administrator, will be reimbursed those same amounts, but will be capped at reimbursement for three total units. SA ¶ 2.3.

If the total amount of funds claimed by Class Members is less than the amount available after costs and expenses, *i.e.*, if there is a surplus in the common fund following disbursement of funds to all valid claimants, the excess funds will be further distributed to Class Members who submitted valid claims on a *pro-rata* basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount. *Id*.

However, this surplus distribution will be limited to 50% of the retail value of the products for which they are making claims. If, after surplus funds are distributed to Class Members, there is still money remaining in the common fund, it will be paid to a third party *cy pres*. The parties contemplate, and the Settlement Agreement contemplates, the *cy pres* recipient in such circumstances being the American Heart Association ("AHA").[1] *Id*. The retail price for each of the products at issue are as follows:

- $10 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil;

- $20 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil;

- $11.50 for a 10-ounce jar of Liquid Coconut Cooking Oil; and

- $20 for a 20-ounce jar of Liquid Coconut Cooking Oil.

---

[1] The AHA is a 501(c)(3) nonprofit corporation that dedicates substantial resources to educating the public regarding nutrition as it relates to cardiovascular health, and has specifically published dozens of articles related to saturated fats, cooking oils, and coconut oil in particular.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4139 Page 22 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3940 Page 14 of 30

*Id.*

## 2. Notice & Administration Costs

The Common Fund will be used to pay the actual costs of class notice and administration. SA ¶ 2.3. After soliciting bids from multiple potential administrators, the parties have agreed, with the Court's approval, to retain RG/2 Claims Administration, LLC ("RG2") as the Claims Administrator. SA ¶ 1.2. RG2 estimates the total cost of notice and administration will be $128,599 for a digital Notice Plan that will produce more than 15.5 million digital notice impressions targeted to the Class using methods universally employed in the advertising industry to reach persons that match known demographics and other characteristics of purchasers of coconut oil. SA Ex. B, Wickersham Decl. ¶ 25. The digital Notice Plan will have a 70% reach, with up to 2X frequency. *Id.*

## 3. Attorneys' Fees and Costs, and Incentive Award

Plaintiff and her counsel will seek approval for incentive awards, and attorneys' fees and costs, to be paid from the Common Fund. SA ¶ 2.5. Any fees and costs awarded will be paid within seven calendar days of entry of Judgment, with counsel obligated to return to the Common Fund any difference if the amount is overturned or reduced. SA ¶ 2.4. Defendants will bear their own fees and costs. As set forth in the Long Form Notice, plaintiff's counsel will petition the Court for a fee award in an amount no greater than 33% of the Common Fund ($610,500), and actual litigation expenses, and plaintiff will seek a service award of no more than $7,500. Fitzgerald Decl. ¶ 17; *See also* SA Ex. A at 3.

## B. Prospective Relief: Defendants will Change their Advertising Practices

Plaintiff Sherry Hunter filed this suit on January 28, 2016. During the litigation, defendants removed the primary challenged "health" claims from the label, such that the last sales of the products containing those claims occurred in June 2016. Fitzgerald Decl. ¶ 12.

Although defendants voluntarily removed these claims during the litigation, as a term of the Settlement Agreement, for a period of five years following Final Approval, defendants will not advertise (including in print, on its website, on Coconut Oil Product labels or packaging, and in its sales pitches or public statements) its Coconut Oil Products using the

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4140 Page 23 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3941 Page 13 of 30

following terms and phrases, or substantially similar terms or phrases:

- • "Healthy"
- • "Ideal for Exercise and Weight Loss Programs"
- • "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- • "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

SA ¶ 2.2. If there is a change in law, regulations, science, or if the Food and Drug Administration offers further guidance permitting the use of the aforementioned claims, then defendants are permitted to include on their labels anything expressly permitted under the new law, regulation, or FDA guidance. *Id.*

As noted above, the current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the injunctive relief contemplated by the Settlement Agreement. Fitzgerald Decl. ¶ 12.

## IV. THE SETTLEMENT'S RELEASES

Class Members who do not opt out will fully release defendants and related entities from all claims that could have been asserted in the litigation. SA ¶¶ 4.3 - 4.6. The release includes a waiver under Cal. Civ. Code § 1542. SA ¶ 4.4. Defendants will also release claims against plaintiff and her counsel. SA ¶ 4.5.

## V. PROCEDURES FOR OPTING-OUT AND OBJECTING

### A. Opting Out

Class Members who wish to opt out of the Settlement must download from the Settlement Website and submit to the Claim Administrator by the deadline, a completed Opt-Out Form. SA ¶¶ 3.6.

### B. Objecting

Class Members who wish to object must file and serve a written objection by the

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 07/15/19 PageID.4141 Page 24 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3942 Page 16 of 30

applicable deadline.[2] An objection must contain (a) a caption or title clearly identifying the action, and a clear statement that the document is an objection, including by use of the word "Objection" at the top of the document; (b) information sufficient to identify and contact the objecting Class Member or his or her attorney; and (c) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection. SA ¶ 3.4. The objection should also indicate whether the objector intends to personally appear and/or testify at the Fairness Hearing. *Id*. Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections, whether by a subsequent objection, intervention, appeal, or any other process. *Id*. Unless otherwise permitted by the Court, Class Members will not be entitled to speak at the Fairness Hearing unless they have complied with the notice required under paragraph 3.4(vii) of the Settlement Agreement.

## **LEGAL STANDARD**

"Federal Rule of Civil Procedure 23(e) generally requires the Court to approve a class action settlement and requires notice to all class members." *Misra v. Decision One Mortg. Co.*, 2009 WL 4581276, at *2 (C.D. Cal. Apr. 13, 2009). When the settlement comes before certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Id.* (quoting *Staton*, 327 F.3d at 952). "The criteria for class certification are applied differently in litigation classes and settlement classes," and while "a district court must be concerned with manageability at trial" in a litigation class, "such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Hyundai*, 926 F.3d at 556-57.

## **ARGUMENT**

## I.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

"Courts may certify a class action only if it satisfies all four requirements identified in

---

[2] The parties contemplate a deadline of no later than fourteen (14) days before the Fairness Hearing. SA ¶ 3.4.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4442 Page 25 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3943 Page 17 of 30

Federal Rule of Civil Procedure 23(a), and satisfies one of the three subdivisions of Rule 23(b)." *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at \*1 (C.D. Cal. Jan. 31, 2014). Plaintiffs previously provided evidence Rule 23's requirements were satisfied in the context of a contested certification motion. *See* Dkt. Nos. 60, 75. In the settlement context, the burden may be lower, but the same evidence still shows the requirements are satisfied.

### A. The Requirements of Rule 23(a) are Satisfied

#### 1. Numerosity

Defendants' and third party records show that more than 1 million units of Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil were sold to California consumers during the Class Period, consisting of at least hundreds of thousands of individual consumers. *See* Dkt. No. 60-1 at ECF Header Page 22 of 36 (citing Expert Report of Colin Weir at 17). Thus, numerosity is easily satisfied. *See Ma*, 2014 WL 360196, at \*2; *Martin v. Monsanto*, 2017 WL 1115167, at \*3 (C.D. Cal. Mar. 24, 2017) (numerosity "easily satisfied because Monsanto sold thousands of Roundup Concentrates bearing the challenged labels to at least tens of thousands of consumers").

#### 2. Commonality

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted). Questions "have that capacity" when they have a "close relationship with the . . . underlying substantive legal test." *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at \*3 (S.D. Cal. May 12, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4443   Page 26 of
212
Case 3:16-cv-00532-WQH-AGS   Document 111-1   Filed 07/22/19   PageID.3944   Page 18 of 30

1    factual predicates is sufficient, as is a common core of salient facts," *Hanlon*, 150 F.3d at

2    1019. "[A] common nucleus of operative fact is usually enough to satisfy the commonality

3    requirement," *Rasario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), which exists "where

4    a defendant has engaged in standardized conduct toward members of the class." *Hale v. State*

5    *Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v.*

6    *Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). To satisfy Rule 23(a)(2), "even

7    a single common question will do." *Dukes*, 564 U.S. at 359 (brackets omitted).

8        Here, common questions include whether the challenged representations were

9    material, whether they constituted express or implied warranties, and whether they were

10    likely to mislead. *See Martin*, 2017 WL 1115167, at *4 ("A classwide proceeding in this

11    [false advertising] case has the capacity to generate common answers to common questions

12    apt to drive the resolution of the litigation, including, for example: (1) whether the [challenged

13    labeling claim] is an express warranty; (2) whether Monsanto breached that warranty by

14    selling non-conforming products; (3) whether the [challenged claim] is material, and (4)

15    whether the statement was likely to deceive reasonable consumers.").

16        **3.**    **Typicality**

17        Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are

18    typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). This means plaintiffs'

19    claims "are reasonably co-extensive with those of absent class members; they need not be

20    substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim

21    or defense of the class representative, and not to the specific facts from which it arose or the

22    relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation

23    omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.

24    2010). "In determining whether typicality is met, the focus should be on the defendants'

25    conduct and plaintiff's legal theory," *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391,

26    396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

27        Here, plaintiff's claims are typical of the Class Members' claims because each

28    purchased the Nature's Way Coconut Oil products and were exposed to the challenged

labeling claims, losing money as a result of overpaying for a product that contained material misrepresentations. *See Martin*, 2017 WL 1115167, at *4 ("Plaintiffs' claims are sufficiently typical of the class claims" where "Plaintiff alleges that she and all class members were exposed to the same statement . . . and that they were all injured in the same manner . . . .").

### 4. Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, plaintiff and her counsel are adequate. Plaintiff has no conflict of interest with other Class Members, and has been and will continue prosecuting the action vigorously on behalf of the Class. Plaintiff's counsel are adequate Class Counsel because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts, and have been and will continue prosecuting the action vigorously on behalf of the Class. Fitzgerald Decl. ¶ 9 & Ex. 2; Joseph Decl. ¶¶ 2-7 & Ex. 1.

### B. The Requirements of Rule 23(b)(3) are Satisfied

#### 1. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

"Considering whether 'questions of law or fact common to class members

11

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 10/15/19 PageID.4145 Page 28 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3946 Page 28 of 30

predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Plaintiffs bring claims on behalf of the Class for breach of warranty, and under California's consumer protection statutes. Because both include objective elements that are subject to common proof, these types of claims are readily amenable to certification. *See Martin*, 2017 WL 1115167, at *7 ("In light of the elements of the claims for breach of express warranty, and violations of the CLRA, FAL, and UCL, the Court concludes that 'the questions of law or fact common to the class members predominate over any questions affecting only individual members.'"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product'" (quotation omitted)); *accord Amchem Prods.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer . . . fraud"). The Ninth Circuit recently reiterated this view in holding that class treatment is especially applicable where class members are exposed to uniform misrepresentations and suffered identical injuries within only a small range of damages. *Hyundai*, 926 F.3d at 559. "[T]hese types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions." *Id.*

## 2. Superiority

"A consideration of the[] factors [set forth in Rule 23(b)(3)(A)-(D)] requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted). The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Since the products at issue cost between $10 and $20 per unit, and each contained up

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 01/15/19 PageID.4146 Page 29 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3947 Page 23 of 30

1    to 32 ounces of coconut oil, SA ¶ 2.3, most Class Members likely did not purchase more than

2    a few units, at most, during the four-year Class Period. As a result, Class Members' claims

3    for individual damages are exceedingly small in comparison to the costs of litigation. "The

4    Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for

5    recovery if there are multiple claims against the same defendant for relatively small sums."

6    *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (citation omitted).

7    In addition, there is no other litigation pending concerning the class's claims. *See Brazilian*

8    *Blowout*, 2011 WL 10962891, at *9 (superiority where "no individual actions [are] pending

9    against Defendant based on the claims asserted by Plaintiffs," and action was "most

10   procedurally advanced" among pending class actions). Accordingly, superiority is satisfied.

11   ## II.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED

12   ## SETTLEMENT

13         "Voluntary conciliation and settlement are the preferred means of dispute resolution in

14   complex class action litigation." *Morey v. Louis Vuitton N. Am., Inc.*, 2013 WL 12069021, at

15   *4 (S.D. Cal. 2013) (Hayes, J.) (internal quotes and citation omitted). "But because '[t]he

16   class action device . . . is [ ] susceptible to abuse and carries with it certain inherent structural

17   risks, . . . class actions may be settled only with the approval of the district court.'" *Id*.

18   (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d

19   615, 623 (9th Cir. 1982); Fed. R. Civ. P. 23(e)). Approval of a class settlement "involves a

20   two-step process in which the Court first determines whether a proposed class action

21   settlement deserves preliminary approval," *id*. (internal quotes and citation omitted). "This

22   initial decision to approve or reject a settlement proposal is committed to the sound discretion

23   of the trial judge." *Id*. (internal quotes and citation omitted). "Because class members will

24   subsequently receive notice and have an opportunity to be heard on the settlement, th[e] Court

25   need not review the settlement in detail at this juncture." *Id*. (internal quotes and citation

26   omitted). Generally, to grant preliminary approval, "the settlement need only be *potentially*

27   fair, as the Court will make a final determination of its adequacy at the hearing on Final

28   Approval, after . . . any party has had a chance to object and/or opt out." *Misra*, 2009 WL

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 1/15/19   PageID.4447   Page 30 of
212
Case 3:16-cv-00532-WQH-AGS   Document 111-1   Filed 07/22/19   PageID.3943   Page 22 of 30

4581276, at *3 (citation omitted).

"[B]ecause the Court cannot fully assess many of these factors prior to notice and an opportunity for objection, the Court need not conduct a full settlement fairness appraisal before granting preliminary approval; rather, the proposed settlement need only fall within 'the range of possible approval." *Morey*, 2013 WL 12069021, at *7. "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id*. (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008))

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits." (internal quotations omitted)); *Ma*, 2014 WL 360196, at *4 ("In general, there is a strong judicial policy favoring class settlements." (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1272 (9th Cir. 1992)). The Court should favor the proposed Settlement since it "eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims," *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) (citing *Morey*, 2014 WL 109194, at *5-6.

## A.   The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

The Settlement was reached 28 months into the litigation, after the parties exchanged thousands of pages of documents, consulted with merits and damages experts, took multiple fact and expert depositions, fully briefed class certification, and engaged in months of informal settlement discussions. Moreover, plaintiff's counsel had litigated numerous other similar cases in which they filed class certification motions or reached nationwide

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 01/15/19 PageID.4148 Page 31 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3948 Page 23 of 30

settlements.[3]

The parties were therefore well informed when negotiating the settlement at the February 2018 settlement conference. Moreover, nothing about the settlement indicates collusion, because there was no collusion. To the contrary, all the *Bluetooth* "subtle signs" of collusion are absent: plaintiffs' counsel do not stand to receive a disproportionate distribution of the settlement; there is no clear sailing provision on attorneys' fees; and there is no reversion of funds to defendant. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007). Here, Judge Schopler oversaw the settlement conference, acting as mediator between the parties, ensuring settlement was reached at arms' length.

## B. The Settlement Has No Obvious Deficiencies

The Settlement provides retrospective monetary relief and prospective injunctive relief that addresses the primary concerns raised in plaintiff's Complaint. The Common Fund will be divided equally among all units claimed, making reimbursement simple and straightforward.

## C. The Settlement Does Not Grant Preferential Treatment to the Class Representatives or any Class Members

All Class Members who make a claim, including plaintiff, will receive the same reimbursement for each unit purchased, and all Class Members are subject to the same requirements and limitations regarding claims. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (no preferential treatment where settlement

---

[3] These cases include *Delalat v. Nutiva, Inc.*, No. 4:16-cv-00711-HSG (N.D. Cal.); *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-19510-CU-BT-CTL (San Diego Sup. Ct.); *Ducorsky v. Premier Organics*, No. HG16801566 (Alameda Sup. Ct.); *Zemola v. Carrington Tea Company*, No. 17-cv-760-MMA (S.D. Cal.); *Tracton v. Viva Labs, Inc.*, No. 16-cv-2772-BTM (S.D. Cal.); and *Boswell et al. v. Costco Wholesale Corporation, et al.*, No. 8:16-cv-00278-DOC (C.D. Cal.).

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4449 Page 32 of
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3950 Page 24 of 30
212

"provides equal relief to all class members" and "distributions to each class member—including Plaintiff—are calculated in the same way").

**D. The Settlement Falls Within the Range of Possible Approval**

In determining whether a proposed settlement falls within the "range of possible approval," *see Tableware*, 484 F. Supp. 2d at 1079; *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009), "the fundamental inquiry is 'substantive fairness and adequacy,'" which "entails a weighing of" several factors. *See Ahdoot v. Babolat VS N. Am.*, 2014 WL 12586114, at *9 (C.D. Cal. Oct. 7, 2014). "[S]ome or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement." *Misra*, 2009 WL 4581276, at *3 (citing *Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959). "[S]ome of these factors cannot be fully assessed until the court conducts its fairness hearing," *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2016).

**1. The Experience and Views of Counsel**

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiff['s] counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *11 (N.D. Cal. Feb. 2, 2009) (citation omitted). That is particularly appropriate here because, by prosecuting a number of similar actions, plaintiffs' counsel have developed a deep understanding of this case's strengths and risks.

Beginning in January 2016, plaintiffs' counsel brought nine separate lawsuits against coconut oil manufacturers who advertise their products with health and wellness claims. Three cases (including this one) have settled on nationwide class bases. In cases involving coconut oil products alone, plaintiff's counsel have reviewed hundreds of thousands of documents, taken many expert and party depositions, consulted with and retained damages and liability experts and have become uniquely expert at understanding consumer research

16

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 01/15/19 PageID.4450 Page 33 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3931 Page 23 of 30

relating to the purchasing and usage behaviors of coconut oil purchasers.

In this case, as noted above, plaintiffs have taken depositions of the defendants and their experts, and have reviewed tens of thousands of pages of documents. Thus, plaintiff's counsel have an especially strong understanding of this case, both on merits and potential damages, not only from litigating against the defendants here for over two years, but based on other coconut oil class actions. Fitzgerald Decl. ¶ 9; *see also* Joseph Decl. ¶¶ 5-6, 8-10. Given this background, plaintiff's counsel believe this is a strong result for the Class, particularly in light of some of the unique challenges this case presents, which are discussed further below. Fitzgerald Decl. ¶ 13; Joseph Decl. ¶¶ 13-15.

### 2. Investigation and Discovery

Investigation and discovery has been sufficient to permit the parties and Court to make an informed analysis. Not only have the parties exchanged tens of thousands of documents and written discovery responses, but both consulted with experts on merits and damages issues. A motion for class certification was fully briefed. Plaintiffs have been informed, not just by the evidence in this case, but also consumer research and other evidence developed in similar cases, which is equally applicable here.

### 3. The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Duration of Further Litigation; and the Risk of Maintaining Class Certification Through Trial

Of the many coconut oil lawsuits plaintiff's counsel have brought and prosecuted the last several years, this one presents uniquely significant challenges, which defendants have highlighted, skillfully, in their opposition to plaintiff's motion for class certification. *See generally* Dkt. No. 74. On the merits, plaintiff and her counsel believe there is a strong scientific case that coconut oil consumption is unhealthy, increasing LDL cholesterol and risk of heart disease, and that on this basis, there is a reasonably good chance a jury would find it misleading, within the meaning of California's consumer protection statutes, to advertise coconut oil in a manner stating or suggesting that it is healthy. Fitzgerald Decl. ¶ 10. But here, the labels the defendants used changed significantly between May 2010 and July 2015,

17

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 01/15/19 PageID.4451 Page 34 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3952 Page 26 of 30

1    dropping the more explicit claims related to consumer health and instead utilizing less

2    concrete health claims like "Ideal for exercise and weight loss programs." *Id.* ¶ 11.

3         There are also unique challenges in proving plaintiff's damages model as a result of

4    defendants' use of different labels, at different times, conveying different messages. It is well-

5    established that a proper measure of damages or restitution in a consumer fraud case is the

6    difference between the value of the product as misrepresented, and its actual value, or the

7    "price premium." *See*, *e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at

8    *22 (N.D. Cal. May 23, 2014) (plaintiff "must present a damages methodology that can

9    determine the price premium attributable to [defendant's] use of the [challenged] labeling

10   statements"). While plaintiff's expert developed a damages model reflecting the changing

11   labels, that model was vigorously attacked by defendants in their opposition to class

12   certification.

13        Given the possible difficulty of establishing damages in this case, there is no guarantee

14   plaintiff could obtain and maintain class certification through trial—and even if plaintiff had

15   obtained certification, it would have been on behalf of a California class only, whereas the

16   Settlement resolves the claims of a nationwide class. *See Chamber v. Whirlpool Corp.*, 214

17   F. Supp. 3d 877, 888 (C.D. Cal. Oct. 11, 2016) ("Because plaintiffs had not yet filed a motion

18   for class certification, there was a risk that the class would not be certified. That risk was

19   magnified in this case because nationwide class certification under California law or the laws

20   of multiple states is rare." (citations omitted)). And even if plaintiffs obtained certification, it

21   would have been expensive and risky to continue the litigation. Fitzgerald Decl. ¶ 15. Courts

22   considering preliminary approval rightly consider "all the normal perils of litigation as well

23   as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust

24   Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). "[U]nless the settlement is clearly inadequate, its

25   acceptance and approval are preferable to lengthy and expensive litigation with uncertain

26   results." *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 526; *c.f. Nguyen v. Radient Pharms.

27   Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (granting final approval where

28   "although the claims were quite strong, there were clear factual challenges facing Plaintiffs

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4452 Page 35 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3953 Page 27 of 30

at trial" including "challenges of calculating damages").

### 4. The Amount of Settlement

The $1,850,000 common fund represents a significant recovery for the Class in light of the expense and challenges of continued litigation, and the likelihood that damages recovered at trial would be small.

Based on information obtained during discovery, sales of the challenged products in California were approximately $10.2 million of the Extra Virgin product, and $2.1 million of the Liquid products. Fitzgerald Decl. ¶ 16. Reflecting its population, California generally accounts for 12% - 13% of sales of retail items widely distributed nationwide, like these products. *Id*. Accordingly, we project that nationwide sales were approximately $81.6 million for the Extra Virgin, and $16.8 million for the Liquid, for a total of about $98.4 million. Fitzgerald Decl. *Id*.

Plaintiff's survey expert determined that the challenged claims carried premiums between 5.9% and 20.9%, with an average of 13.1%. *See* Dkt. No. 60-4 at p. 43 of 268 (ECF header), Dennis Decl. Ex. 4 (Conjoint Results). Although it is virtually impossible that the claims of a nationwide class could ever be adjudicated in a single trial, assuming they could, the Class's maximum recovery under plaintiff's theory of liability is, accordingly, approximately $12.9 million (13.1% of $98.4 million). The $1.85 million settlement thus represents approximately 14.3% of the largest potential judgment after trial, which is substantial. *See City of Detroit v. Grinnell Corp*., 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")).

Because the majority of Class Members will not make claims, the amount claimants receive almost certainly exceed their maximum likely recovery at trial. The products had average retail prices of $10, $11.50, or $20. With a 13.1% average premium, this equates to damages of $1.31, $1.51, or $2.62 respectively; but claimants will, by default, receive $3, $3.50, or $6, respectively (representing about 30% of the retail price). And if the Common Fund is not exhausted after claims and expenses, claimants will receive even more in a

19

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4153 Page 36 of
212
Case 3:16-cv-00532-WQH-AGS Document 111-1 Filed 07/22/19 PageID.3943 Page 28 of 30

1    supplemental distribution that could net claimants up to $30 total.[4] This compares favorably

2    to potential recovery at trial. *C.f. City of Detroit v. Ginnell Corp.*, 495 F.2d 448, 455 (2d Cir.

3    1974) ("The fact that a proposed settlement may only amount to a fraction of the proposed

4    recovery does not, in and of itself, mean the settlement is grossly inadequate and should be

5    disapproved."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015)

6    ("Immediate receipt of money through settlement, even if lower than what could potentially

7    be achieved through ultimate success on the merits, has value to a class, especially when

8    compared to risky and costly continued litigation.").

9    **III.**    **THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND NOTICE**

10        **PLAN, AND ENTER THE PROPOSED FINAL APPROVAL SCHEDULE**

11    RG2's proposed Notice Plan is reasonable under the circumstances. The plan includes

12    targeted ads through website banners, social media (including through the use of Facebook

13    analytics to target potential Class Members who have an interest in things related to coconut

14    oil), paid advertising searches, and online video ads. SA Ex. B, Wickersham Decl. ¶¶ 10-13.

15    RG2 has defined the likely demographics and created a tailored plan to reach the

16    maximum number of Class Members, and anticipates reaching over 70% of the projected 4.5

17    million potential Nature's Way coconut oil purchasers, at up to a 2X frequency. *Id*. ¶ 25 . In

18    RG2's opinion, the plan will effectively reach the class and meet due process standards. *Id.*

19    The proposed Notice itself is also appropriate, since it contains "information that a

20    reasonable person would consider to be material in making an informed, intelligent decision

21    of whether to opt out or remain a member of the class and be bound by the final judgment."

22    *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). *Compare*

23    SA Ex. A (Long Form Notice)

24

25

---

26    [4] The highest approximate average retail value is $20, and is for both the 32-ounce semi-solid

27    Extra Virgin Coconut Oil and the 20-ounce bottle of Liquid Coconut Cooking Oil. If a class
member claims the maximum three purchases for either of those products, the will receive

28    50% of the retail value, or $10, for each purchase, totaling $30.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Assuming the Court grants preliminary approval, plaintiff proposes the following schedule leading up to a final approval hearing, which gives absent Class Members sufficient time to receive notice and to make a claim, object, or opt out; and sufficient time to review plaintiff's Final Approval and Fee Motions.

| Event | Day | Approximate Weeks After Preliminary Approval |
|---|---|---|
| Date Court grants preliminary approval | 0 | - |
| Deadline to commence direct notice | 7 | 1 week |
| Deadline to complete direct notice | 30 | 4 weeks |
| Deadline to make a claim or opt out | 45 | 6 weeks |
| Deadline for plaintiffs to file Motions for Final Approval, Attorneys' Fees, and Incentive Awards | 60 | 8 weeks |
| Deadline for objections | 70 | 9 weeks |
| Deadline for replies to objections | 75 | 10 weeks |
| Final approval hearing date | 84 | 12 weeks |

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request the Court grant preliminary approval, authorize Class Notice, appoint plaintiff as Class Representative and her counsel as Class Counsel, and schedule a Final Approval Hearing and related briefing deadlines.

Dated: July 22, 2019        Respectfully Submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

21

Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. #309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Counsel for Plaintiff and the Proposed Class*

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiffs and the Proposed Class***

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LLC, and SCHWABE NORTH AMERICA, INC.,<br><br>Defendant. | Case No.: 3:16-cv-00532-WQH-AGS<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      August 26, 2019<br>Dept.:     14B<br>Judge:    Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 26, 2019 or as soon thereafter as may be heard, in Department 14B of the United States District Court for the Southern District of California, before the Hon. William Q. Hayes, plaintiff Sherry Hunter will and hereby does move the Court for entry of an Order preliminarily certifying a nationwide settlement class and approving a proposed class action settlement agreement, and more particularly:

1.    Preliminarily certifying a class and appointing plaintiff and her counsel to represent the class;

2.    Preliminarily approving the proposed class settlement;

3.    Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated to the class pursuant to this program; and

4.    Setting a fairness hearing and certain other dates in connection with the final approval of the Settlement.

This motion—which is unopposed by Defendants—is based upon the accompanying memorandum of points and authorities, the concurrently-filed declaration of Jack Fitzgerald and Paul K. Joseph,  all exhibits, and all papers and records on file in this matter, and any further argument offered in support of the motion.

Dated: July 22, 2019                    Respectfully Submitted,

                                        /s/Jack Fitzgerald
                                        Jack Fitzgerald

                                        **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                        JACK FITZGERALD
                                        *jack@jackfitzgeraldlaw.com*
                                        TREVOR M. FLYNN
                                        *trevor@jackfitzgeraldlaw.com*
                                        MELANIE PERSINGER
                                        *melanie@jackfitzgeraldlaw.com*
                                        Hillcrest Professional Building
                                        3636 Fourth Avenue, Suite 202

1

San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Counsel for Plaintiff and the Proposed Class***

2

Case 3:16-cv-00532-WQH-AGS  Document 116-5  Filed 11/15/19  PageID.4159  Page 42 of
Case 3:16-cv-00532-WQH-BLM  Document 1-5  Filed 03/02/16  Page 1 of 38
212

# EXHIBIT 3

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs and the Proposed Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/28/2016** at 11:03:41 AM
Clerk of the Superior Court
By Jessica Pascual,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO

|  |  |
|---|---|
| SHERRY HUNTER and MALIA LEVIN, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LLC, and SCHWABE NORTH AMERICA, INC.,<br><br>Defendants. | Case No: 37-2016-00002933-CU-NP-CTL<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 *et seq.*; CAL. BUS. & PROF. CODE §§17500 *et seq.*; CAL. CIV. CODE §§ 1750 *et seq.*; and BREACH OF EXPRESS & IMPLIED WARRANTIES.<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Sherry Hunter and Malia Levin, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue defendants Nature's Way Products, LLC ("Nature's Way"), and Schwabe North America, Inc. ("Schwabe"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1. Defendants misleadingly market various Nature's Way brand coconut oil products as both inherently healthy, and a healthy alternative to butter, margarine, shortening, and other cooking oils, despite that coconut oil is actually inherently *unhealthy*, and a *less healthy* option to these alternatives. Defendants' Nature's Way coconut oil labeling and advertising also violates several federal and California state food regulations.

2. Plaintiffs relied upon defendants' misleading and unlawful claims when purchasing Nature's Way coconut oil products, and were damaged as a result. They bring this action on behalf of themselves, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"). Plaintiffs further allege that defendants breached express and implied warranties under state law.

3. Plaintiffs seek an order, *inter alia*, compelling defendants to (a) cease marketing its coconut oil products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which they have been unjustly enriched, and (e) pay restitution, damages, punitive damages, and attorneys' fees as allowed by law.

## PARTIES

4. Plaintiff Sherry Hunter is a resident of Chula Vista, California.

5. Plaintiff Malia Levin is a resident of Granada Hills, California.

1

6.     Defendant Nature's Way Products, LLC is a Wisconsin limited liability company with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311.

7.     Defendant Schwabe North America, Inc. is a Wisconsin corporation, with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311

## JURISDICTION & VENUE

8.     The California Superior Court has jurisdiction over this matter as a result of defendants' violations of the California Business and Professions Code, California Civil Code, and California common law principles.

9.     The aggregate monetary damages and restitution sought herein exceed the minimum jurisdictional limits for the Superior Court and will be established at trial, according to proof.

10.    The California Superior Court also has jurisdiction in this matter because there is no federal question at issue, as the issues herein are based solely on California statutes and law.

11.    The Court has personal jurisdiction over defendants because they have purposely availed themselves of the benefits and privileges of conducting business activities within California.

12.    Venue is proper in San Diego County because plaintiff Sherry Hunter resides in Chula Vista, California, in San Diego County, and a substantial part of the events or omissions giving rise to the claims occurred in San Diego.

## FACTS

I.     **Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity**

A.     **The Role of Cholesterol in the Human Body**

13.    Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body

2

synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high density lipoproteins, or HDL cholesterol.

14.     LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

15.     HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

**B.**     **High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

16.     Total and LDL cholesterol blood levels are two of the most important risk factors in predicting CHD, with higher total and LDL cholesterol levels associated with increased risk of CHD.[1]

17.     High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[2] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

---

[1] *See, e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[2] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

3

18.     This process can happen to the coronary arteries in the heart and restricts the
provision of oxygen and nutrients to the heart, causing chest pain or angina.

19.     When atherosclerosis affects the coronary arteries, the condition is called
coronary heart disease (CHD).

20.     Cholesterol-rich plaques can also burst, causing a blood clot to form over the
plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or
debilitating heart attack or stroke.

21.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single
most important thing to do."[3]

**C.      Saturated Fat Consumption Causes Increased Total and LDL Blood
Cholesterol Levels, Increasing the Risk of CHD and Stroke**

22.     The consumption of saturated fat negatively affects blood cholesterol levels
because the body reacts to saturated fat by producing cholesterol. More specifically, saturated
fat consumption causes coronary heart disease by, among other things, "increas[ing] total
cholesterol and low density lipoprotein (LDL) cholesterol."[4]

23.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid
intake and total and low density lipoprotein (LDL) cholesterol concentration and increased
risk of coronary heart disease (CHD)."[5]

24.     This linear relationship between saturated fat intake and risk of coronary heart
disease is well established and accepted in the scientific community.

---

[3]     Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at*
https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-
for-you.html.

[4] USDA Review of the Evidence, *supra* n.2.

[5] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat,
Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary
Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

4

25. For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[6]

26. In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[7]

27. Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[8]

28. For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[9]

29. In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[10]

30. Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[11]

---

[6] USDA Review of the Evidence, *supra* n.2.

[7] IOM, Dietary Reference Intakes, *supra* n.5, at 481.

[8] *Id.* at 422.

[9] *Id.*

[10] *Id.* at 460.

[11] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

31.     For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[12]

32.     The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[13] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[14]

33.     In short, consuming saturated fat increases the risk of CHD and stroke.[15]

**D.      In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels**

34.     For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[16]

35.     In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[17]

///

///

///

---

[12] USDA Review of the Evidence, *supra* n.2.

[13] *Id.*

[14] *Id.*

[15] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[16] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[17] *Id.*

6

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4167 Page 50 of
212
Case 3:16-cv-00532-WQH-BLM Document 1 Filed 03/02/16 Page 6 of 38

36.     In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[18]

37.     Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, *and coconut oils*)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[19]

## II.     Because of its High Saturated Fat Content, the Consumption of Coconut Oil Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

38.     Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[20] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

39.     For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[21] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[22] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[23]

---

[18] *Id.* Part D, Chapter 6, at 12.

[19] *Id.* (emphasis added).

[20] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[21] *Id.*

[22] *Id.*

[23] *Id.*

7

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

40.     In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[24] At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[25]

41.     The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[26]

42.     Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[27]

43.     Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[28]

44.     The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial

---

[24] *Id.*

[25] *Id.* at 586.

[26] *Id.* at 588.

[27] *Id.*

[28] *Id.* at 587.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

function."[29] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of fat.[30] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[31] In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[32]

45.     Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

46.     A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease.[33]

47.     Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid

---

[29] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 715.

[33] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

profiles.[34] The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[35]

48.     Finally, in another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol, LDL, and apo B."[36] Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease. In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[37]

## III.    Defendants' Manufacturing, Marketing, and Sale of Coconut Oil

### A.    Defendants' History and Sale of Coconut Oil

49.     Defendants have manufactured, distributed, marketed, and sold various Nature's Way brand coconut oil products on a nationwide, and indeed international basis for at least the past several years.

50.     According to Nature's Way's website, its products are sold nationally at major retailers such as Sprouts Farmers Market, Whole Foods Market, and the Vitamin Shoppe.[38]

51.     Nature's Way products are also available online at iHerb.com, Vitacost.com LuckyVitamin.com, Amazon.com, Drugstore.com, and many more "e-tailer" websites.

---

[34] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[35] *Id.*

[36] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[37] *Id.*

[38] Nature's Way, Store Locator, *available at* http://www.naturesway.com/Store-Locator.aspx?p=15673&z=48103&prx=10&ctry=271.

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4171 Page 54 of
212
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 13 of 38

52.     Nature's Way brand coconut oil products challenged in this lawsuit include at least the following, which are depicted below: (a) Extra Virgin Coconut Oil, and (b) Liquid Coconut Oil, which comes in a variety of flavors.

 

53.     Nature's Way Extra Virgin Coconut Oil is available in several sizes including 16- and 32-fluid-ounce jars. Nature's Way Liquid Coconut Oil is available in several sizes, including 10- and 20-fluid-ounce bottles.

**B.     The Composition of the Nature's Way Coconut Oils**

54.     The Nutrition or Supplement Facts boxes, listed on Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil, respectively, are pictured below. Each 1 tablespoon (or 15 mL) serving of Nature's Way coconut oil (whether "Extra Virgin," or "Liquid") contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nature's Way coconut oil is 100% fat, 93% of which is saturated fat.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4172 Page 55 of
212
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 14 of 39



**Supplement Facts**

Serving Size 1 Tablespoon (14 g)
Servings per Container 64

| Amount Per Serving | | % DV |
|---|---|---|
| Calories | 130 | |
| Calories from Fat | 130 | |
| Total Fat | 14 g | 22%† |
| Saturated Fat | 13 g | 67%† |
| Polyunsaturated Fat | <0.5 g | ** |
| Monounsaturated Fat | <1 g | ** |
| Medium Chain Fatty Acids | 9 g (8,694 mg) | ** |
| Lauric Acid | 7 g (6,657 mg) | ** |
| Caprylic Acid | 1 g (1,043 mg) | ** |
| Capric Acid | 994 mg | ** |

†Percent Daily Values are based on a 2,000 calorie diet. **Daily Value (DV) not established.

**Nutrition Facts**

Serving Size 1 Tablespoon (15 mL)
Servings per Container 40

| Amount Per Serving | |
|---|---|
| Calories 130 | Calories from Fat 130 |

| | % Daily Value* |
|---|---|
| Total Fat 14 g | 22% |
| Saturated Fat 13 g | 67% |
| Trans Fat 0g | |
| Polyunsaturated Fat <0.5 g | |
| Monounsaturated Fat <0.5 g | |
| Cholesterol 0 mg | 0% |
| Sodium 0 mg | 0% |
| Total Carbohydrate 0 g | 0% |
| Dietary Fiber 0 g | 0% |
| Sugars 0 g | |
| Protein 0 g | |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 0% | • | Iron 0% |

*Percent Daily Values are based on a 2,000 calorie diet.

Extra Virgin                                         Liquid

## IV.    Defendants Market the Nature's Way Coconut Oil Products with Misleading Health and Wellness Claims

55.    Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. Nielsen's 2015 Global Health & Wellness Survey, for instance, found that "88% of those polled are willing to pay more for healthier foods."[39]

56.    Defendants are well aware of consumer preference for healthful foods, and therefore employ, and have employed, a strategic marketing campaign intended to convince consumers that defendants' Nature's Way coconut oil products are healthy, despite that they are almost entirely composed of unhealthy saturated fat.

---

[39] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

12

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4178 Page 56 of
212
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 56 of 38

57.     Through statements placed directly on the labels of the Nature's Way coconut oil products, defendants market and advertise the products as both inherently healthy, and healthy alternatives to butter, margarine, and other oils, even though the products' total and saturated fat content render them both inherently unhealthy, and less healthy alternatives. Moreover, defendants' labeling claims are designed to conceal or distract consumers from noticing that their Nature's Way coconut oils are pure fat, almost all of which is unhealthy saturated fat.

**A.     Defendants Place Misleading Health and Wellness Claims Directly on the Nature's Way Extra Virgin Coconut Oil Label**

58.     Below is an exemplar of the front of Nature's Way's Extra Virgin Coconut Oil label.



*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4174 Page 57 of
212
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 16 of 38

59. Below are exemplars of the back and side of the Nature's Way's Extra Virgin Coconut Oil label.

**Pure, Expeller Pressed, Organic Coconut**

- **Premium Quality:** Extra virgin, unrefined & unbleached from non-GMO coconuts; No solvents (hexane-free), non-hydrogenated, no trans fat.

- **Variety of Healthy Uses:** Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless.

- **Delicious Creamy Taste / Aroma of Fresh Coconuts**

- **Natural Energy:** Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy.* Ideal for exercise & weight loss programs.

GLUTEN-FREE. No artificial ingredients or preservatives. Satisfaction Guaranteed. Safety sealed for your protection. Do not use if inner freshness seal is broken or missing.

*This statement has not been evaluated by the Food & Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

**Recommendation:** Take 1 tablespoon (14 g) up to 4 times daily. For cooking, can be used in place of butter, margarine, shortening or other cooking oils for baking or frying in temperatures up to 350°F. No refrigeration necessary.

©2013 Distributed by Nature's Way Products, LLC Green Bay, WI 54311 Product of Philippines Certified Organic by Pro-Cert

Questions? 1-800-9NATURE www.naturesway.com



LN15659.02 (ELK7534)

60. Directly on the Nature's Way Extra Virgin Coconut Oil label, defendants claim the product has a "Variety of Healthy Uses." Defendants encourage consumers to "Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless." These claims taken individually and in context of the label as a whole, are false and misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

61. To further convince consumers to that the Nature's Way Extra Virgin Coconut Oil is healthy, defendants claim that the product is "ideal for exercise & weight loss programs." This claim taken individually and in context of the label as a whole, is false and

14

1  misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to

2  its high saturated fat content.

3      62.    To reinforce this misleading health message, defendants label the Extra Virgin

4  Coconut Oil as "Premium Quality," "non-hydrogenated," and containing "no trans fat."

5  These claims taken individually and in context of the label as a whole, even if literally true,

6  are misleading because they suggest that the product is healthy, while in reality the Nature's

7  Way Extra Virgin Coconut Oil is unhealthy due to its high saturated fat content.

8      63.    In addition, defendants claim that their Nature's Way Extra Virgin Coconut Oil

9  provides "Natural Energy" and contains "62% (8,694 mg) medium chain fatty acids (MCTs)

10  per serving for energy." Defendants even recommend consumers "Take 1 tablespoon (14g)

11  up to 4 times daily." These claims, taken individually and in context of the label as a whole,

12  are false and misleading because Nature's Way Extra Virgin Coconut Oil is unhealthy and

13  contains dangerous amounts of saturated fat, the consumption of which causes morbidity

14  including heart disease and stroke.

15      64.    In conjunction with these misleading health claims, defendants suggest that their

16  Nature's Way Extra Virgin Coconut Oil "be used in place of butter, margarine, shortening or

17  other cooking oils." This misleadingly suggests that replacing butter, margarine, shortening

18  or other cooking oils with Nature's Way Extra Virgin Coconut Oil is a healthy choice despite

19  that doing so would increase consumption of saturated fat and decrease consumption

20  unsaturated fat,[40] and despite that "Strong and consistent evidence from RCTs and statistical

21

22  ─────────────────────
[40] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of

23  butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are

24  monounsaturated, and .5 of which are polyunsaturated, and lists a 14 gram serving of
margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are

25  monounsaturated, and 4 of which are polyunsaturated. *See* USDA Agricultural Research

26  Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001,
Butter, salted, NDB No. 04611, Margarine, regular, *available at*

27  http://ndb.nal.usda.gov/ndb/foods.

28

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

1  modeling in prospective cohort studies shows that replacing SFA with PUFA reduces the risk
2  of CVD events and coronary mortality."[41]

3       65.    These claims, taken individually and in context of the label as a whole,
4  misleadingly imply, by affirmative representations and material omissions, that Nature's Way
5  Extra Virgin Coconut Oil is healthy, when it is not, and that the product is healthier or more
6  nutritious than butter, margarine, shortening or other cooking oils, which it is not.

7       66.    In sum, the totality of the Nature's Way Extra Virgin Coconut Oil label and
8  packaging conveys the concrete message to a reasonable consumer that the product is healthy,
9  and a more healthful alternative to butter, margarine, shortening or other cooking oils.
10  Defendants intended consumers to rely upon this message, which is false and misleading for
11  the reasons stated herein.

12  **B.**    **Defendants Place Misleading Health and Wellness Claims Directly on the**
13        **Nature's Way Liquid Coconut Oil Label**

14       67.    Below is an exemplar of the front of the Nature's Way Liquid Coconut Oil label.



41 USDA & HHS, Dietary Guidelines, supra n.16, Part D, Chapter 6 at 12.

16

Case 3:16-cv-00532-WQH-AGS  Document 116-5  Filed 11/15/19  PageID.4177  Page 60 of
Case 3:16-cv-00532-WQH-BLM  Document 1-5  Filed 03/02/16  Page 19 of 38
212

68.    Below are exemplars of the back and side of the Nature's Way Liquid Coconut
Oil label.

## Pure Expeller Pressed Oil
- From premium, non-GMO coconuts
- Non-hydrogenated; No trans fat
- Hexane-free; No solvents used

## Superior Flavor
- Taste & aroma of fresh coconuts
- Enhances flavor of your favorite foods
- Wide variety of healthy uses

## 93% MCTs for Natural Energy
- **13 g of medium chain triglycerides** (lauric, capric and caprylic acids) per tablespoon
- Ideal for healthy lifestyles includ... exercise and weight loss pro...

**Suggested Cooking Use**
As an alternative to butter, margarine or vegetable oil, use for baking and sautéing in temperatures up to 350° F. Great for salad dressings, sauces, dips, smoothies, drizzling over popcorn & more!

### Nutrition Facts
Serving Size 1 Tablespoon (15 mL)
Servings per Container 40

| Amount Per Serving | |
|---|---|
| Calories 130 | Calories from Fat 130 |

| | % Daily Value* |
|---|---|
| Total Fat 14 g | 22% |
| Saturated Fat 13 g | 67% |
| Trans Fat 0g | |
| Polyunsaturated Fat <0.5 g | |
| Monounsaturated Fat <0.5 g | |
| Cholesterol 0 mg | |
| Sodium 0 mg | |
| Total Carbohydrate 0 g | |
| Dietary Fiber 0 g | |
| Sugars 0 g | |
| Protein 0 g | |

| | | | |
|---|---|---|---|
| Vitamin A 0% | • | Vita... | |
| Calcium 0% | • | | |

*Percent Daily Values are based on a 2,000 calorie...

69.    Defendants deceptively market their Nature's Way Liquid Coconut Oil with a
variety of labeling claims intended to convince consumers that the product is healthy, and to
conceal or distract from the fact that it is pure fat, almost all of which is unhealthy saturated
fat.

70.    As with the Nature's Way Extra Virgin Coconut Oil, defendants label their
Nature's Way Liquid Coconut Oil with the claim that it has a "Wide variety of healthy uses."
This claim taken individually and in context of the label as a whole, is false and misleading
because the product is actually unhealthy due to its high saturated fat content.

17

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

71.     Like the Nature's Way Extra Virgin Coconut Oil, defendants attempt to convince consumers that their Nature's Way Liquid Coconut Oil is "ideal for healthy lifestyles including exercise & weight loss programs." This claim, taken individually and in context of the label as a whole, is false and misleading because Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

72.     To reinforce this misleading health message, defendants label the Nature's Way Liquid Coconut Oil with the phrases "Premium," "non-hydrogenated," and "no trans fat." In addition, defendants claim that Nature's Way Liquid Coconut Oil provides "Natural Energy" and contains "13 g of medium chain triglycerides" or "93% MCTs." These claims taken individually and in context of the label as a whole, are false and misleading (even to the extent some may be literally true) because the Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

73.     In conjunction with these misleading health claims, defendants suggest that the Nature's Way Liquid Coconut Oil be used "as an alternative to butter, margarine or vegetable oil." This misleadingly suggests that replacing butter, margarine or vegetable oil with Nature's Way Liquid Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption unsaturated fat,[42] and despite that "Strong and consistent evidence from RCTs and statistical modeling in prospective cohort

---

[42] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are monounsaturated, and .5 of which are polyunsaturated; lists a 14 gram serving of margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are monounsaturated, and 4 of which are polyunsaturated; and lists a 13.6 gram serving of vegetable oil as being composed of 13.6 grams of fat, 1 of which is saturated, 3 of which are monounsaturated, and 9 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, NDB No. 04611, Margarine, regular, NDB No. 04670, Vegetable Oil. *available at* http://ndb.nal.usda.gov/ndb/foods.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

studies shows that replacing SFA with PUFA reduces the risk of CVD events and coronary mortality."[43]

74.    These claims, taken individually and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Liquid Coconut Oil is healthy, when it is not, and that it is healthier or more nutritious than butter, margarine, or vegetable oil, which it is not.

75.    In short, the totality of the packaging conveys the concrete message to a reasonable consumer that the Nature's Way Liquid Coconut Oil is healthy, and a more healthful alternative to butter, margarine or vegetable oil. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**C.    The Nature's Way Website Contains Misleading Health and Wellness Claims About the Nature's Way Coconut Oil Products**

76.    The labels of the Nature's Way coconut oil products direct consumers to the Nature's Way website (www.natureswar.com), which defendants use as a platform for their health marketing campaign.

77.    Through statements on Nature's Way's website, defendants portray Nature's Way as a company devoted "To help[ing] [consumers] enhance their health," and represent that "[t]his has become the basis of everything we do. The very foundation of a growing legacy of trust. And an oath to our customers that we take incredibly seriously—Trust the Leaf®."[44]

78.    On its website, Nature's Way further claims that "The health properties of coconut oil have been known for thousands of years. Coconut oil naturally contains "good fats" called medium chain triglycerides (MCTs), which your body uses to produce energy.[]

---

[43] USDA & HHS, Dietary Guidelines, supra n.16, Part D, Chapter 6 at 12.

[44] Nature's Way, Our Story, http://www.natureswar.com/Our-Story.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

1 Adding coconut oil to your diet can help increase metabolism, and help fuel any healthy
2 lifestyle."[45]

3 **V.     The Labeling of the Nature's Way Coconut Oil Products Violates California and**
4 **Federal Law**

5         **A.     Any Violation of Federal Food Labeling Statutes or Regulations is a**
6         **Violation of California Law**

7         79.     Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health
8 & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal
9 food labeling requirements as its own, *see id.* § 110665 ("Any food is misbranded if its
10 labeling does not conform with the requirements for nutrition labeling as set forth in Section
11 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant
12 thereto.").

13         80.     For the purposes of labeling, "a dietary supplement shall be deemed to be a
14 food." *See* 21 U.S.C. 321(ff).

15         81.     The Federal Food, Drug, and Cosmetic Act expressly authorizes state
16 regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA
17 and federal regulations. *See* 21 U.S.C. § 343-1.

18         82.     Because the Sherman Law's requirements are identical to the requirements of
19 the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly
20 authorized by the FDCA.

21         **B.     The Nature's Way Coconut Oil Products' False and Misleading Labeling**
22         **Claims Render the Products Misbranded Under California and Federal**
23         **Law**

24         83.     Defendants' deceptive statements described herein violate Cal. Health & Safety
25 Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is
26 "false or misleading in any particular."

27 _____

28 [45] Nature's Way, Coconut Oil, http://www.naturesway.com/Category/Coconut-Oil.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

84.    In addition, the products' labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

**C.    The Nature's Way Coconut Oil Products are Misbranded Because They Make Unauthorized Nutrient Content and Percentage Claims**

85.    The Nature's Way coconut oil products are misbranded because their labels bear nutrient content claims even though the products do not meet the requirements to make such claims.

86.    Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

87.    Characterizing the level of a nutrient on food labels and labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders a product misbranded under 21 U.S.C. § 343(r)(1)(A).

88.    Defendants label both the Nature's Way Extra Virgin Coconut Oil, and the Nature's Way Liquid Coconut Oil with the phrases "non-hydrogenated" and "no trans fat." In addition, the label of Nature's Way Extra Virgin Coconut Oil bears the phrases "62% MCTs" and 62% (8,694 mg) medium chain fatty acids (MCTs) per serving," while the label of the Nature's Way Liquid Coconut Oil bears the phrases "93% MCTs" and "13 g of medium chain triglycerides."

89.    These phrases meet the definition of nutrient content claims because they characterize the level of trans fat, and fatty acids, in the coconut oil products, which are nutrients of the type required to be in nutrition labeling. *See* 21 C.F.R. § 101.13(b)(1).

90.    Under 21 C.F.R. § 101.13(h), a food that bears an express or implied nutrient content claim, and that contains more than 13 grams of total fat or 4 grams of saturated fat

1   per serving, must also bear a disclosure statement on the label, immediately adjacent to the

2   claim, referring the consumer to nutrition information for that nutrient, e.g., "See nutrition

3   information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1). *See also* 21

4   C.F.R. § 101.13(q)(3)(ii) (requiring compliance with §101.13(h) for percentage claims).

5       91.    Despite that both Nature's Way coconut oil products contain 14 grams of total

6   fat and 13 gram of saturated fat per serving, their labels fail to bear these mandatory disclosure

7   statements, which provide consumers with material nutrition information. Therefore,

8   Nature's Way Extra Virgin Coconut Oil and Nature's Way Liquid Coconut Oil are

9   misbranded.

10      92.    Further, even if the Nature's Way coconut oil products had contained the

11  required disclosures, they would still be misbranded because "no trans fat" is an unauthorized

12  nutrient content claim that may not be used in the labeling of any foods. *See Reid v. Johnston*

13  *& Johnson*, 780 F.3d 952, 962-63 (2015). The FDA similarly has no defined nutrient content

14  claims for "non-hydrogenated," or any statements about MCTs, but all such claims must, in

15  any event, be not misleading. *See* 21 C.F.R. § 101.13(i)(iii).

16      93.    Plaintiffs and members of the Class would not have purchased the Nature's Way

17  coconut oil products if they knew the products were and are misbranded pursuant to

18  California and federal regulations because their labels make unauthorized nutrient content

19  claims despite containing disqualifying amounts of total and saturated fat and omit material

20  information and disclosures.

21      **D.    The Nature's Way Coconut Oil Products are Misbranded Because They**

22          **Make Unauthorized Health Claims**

23      94.    In addition, the labels of the Nature's Way coconut oil products are misleading

24  and misbranded because they claim that the oils are healthy, but the products do not meet the

25  requirements for making such claims.

26      95.    To "use the term 'healthy' or related terms (e.g., 'health,' 'healthful,'

27  'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness')" foods

28

1   must satisfy specific "conditions for fat, saturated fat, cholesterol, and other nutrients." 21
2   C.F.R § 101.65(d)(2).

3       96.    The Nature's Way coconut oil products are "not specifically listed" in the table
4   contained in 21 C.F.R § 101.65(d)(2)(i), and therefore are governed by section (F) of the
5   table. *See* 101.65(d)(2)(i)(F).

6       97.    Under 21 C.F.R. § 101.65(d)(2)(i)(F), to use a "healthy" term, a food must (1)
7   be "Low fat as defined in § 101.62(b)(2)," (2) be "Low saturated fat as defined in §
8   101.62(c)(2)," and (3) contain "At least 10 percent of the RDI [recommended daily intake]
9   or the DRV [dietary reference values] per RACC [reference amount customarily consumed]
10  of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." See 21 C.F.R. §
11  101.65(d)(2)(i)(F) (incorporating by reference total fat requirement, 21 C.F.R. § 101.62(b)(2),
12  and saturated fat requirement, 21 C.F.R. § 101.62(c)(2)). In addition, the food must comply
13  "with the definition and declaration requirements in this part 101 for any specific nutrient
14  content claim on the label or in labeling." 21 C.F.R. § 101.65(d)(2)(iii).

15      98.    Section 101.62(b)(2)(i)(B) provides the applicable definition of "low fat" for the
16  Nature's Way coconut oil products because they have RACCs (reference amounts
17  customarily consumed) and labeled servings of less than 30 grams.

18      99.    Under section 101.62(b)(2)(i)(B), a food is low fat only if it "contains 3 g or less
19  of fat per reference amount customarily consumed and per 50 g of food."

20      100.   The Nature's Way coconut oil products both contain 14 grams of total fat per
21  RACC or labeled serving, and 50 grams of total fat per 50 grams. Thus the Nature's Way
22  coconut oil products do not meet the total fat requirement in section 101.65(d)(2)(i)(F), and
23  as a result, their use of a "healthy" term renders the products misbranded.

24      101.   Under section 101.62(c)(2), a food is "low saturated fat" only if it "contains 1 g
25  or less of saturated fatty acids per reference amount customarily consumed and not more than
26  15 percent of calories from saturated fatty acids."

27

28

102. The Nature's Way coconut oil products both contain 13 grams of saturated fat per RACC or labeled serving, and approximately 92 percent of calories come from saturated fat. The products therefore do not meet the saturated fat requirement in section 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

103. Further, the Nature's Way coconut oil products do not contain "at least 10 percent of the RDI or the DRV per RACC of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber," 21 C.F.R. § 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

104. Finally, the Nature's Way coconut oil products, as explained above, fail to comply "with the definition and declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling," 21 C.F.R. § 101.65(d)(2)(iii), further rendering them misbranded.

105. In sum, the Nature's Way coconut oil products bear unauthorized claims that the products are healthy. The products do not meet the clear and specific criteria the FDA (and by extension, California) requires for using the term healthy (and variations) to describe a food or supplement.

106. Defendants' use of the term healthy (and variations) to describe the Nature's Way coconut oil products not only violates 21 C.F.R. § 101.65 and renders the products misbranded, but also misleads consumers regarding the nature of the oils, in the specific manner the regulations are intended to prevent.

VI. **Plaintiffs' Purchase, Reliance, and Injury**

107. Plaintiff Sherry Hunter purchased Nature's Way Extra Virgin Coconut Oil. As best she can remember, she purchased the 16-ounce variety of Nature's Way Extra Virgin Coconut Oil in or around July 2015 from a Sprouts Farmers Market located at 690 3rd Ave., Chula Vista, CA 91910, for approximately $10.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

108.  As best she recalls, Ms. Levin began purchasing Nature's Way Extra Virgin Coconut Oil approximately five years ago. Since that time, until recently, she has purchased the product approximately once per month. Ms. Levin believes she most recently purchased a 32-ounce container of Nature's Way Extra Virgin Coconut Oil in or around September or October of 2015 from Accent on Health, located at 18559 Devonshire Street, Northridge, California 91324, for approximately $24.

109.  When deciding to purchase Nature's Way Extra Virgin Coconut Oil, plaintiffs read and relied on the following claims (or claims substantially similar to the following claims, which collectively conveyed the same health and wellness message as conveyed by the following claims) on the product's label:

a.  "Premium Quality"

b.  "Variety of Healthy Uses: Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless."

c.  "non-hydrogenated, no trans fat"

d.  "Natural Energy: Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy."

e.  "Ideal for exercise & weight loss programs."

f.  "62% MCTs"

g.  "Natural Energy"

h.  "Recommendation: Take 1 tablespoon (14g) up to 4 times daily"

i.  "For cooking, can be used in place of butter, margarine, shortening or other cooking oils."

110.  Based on these representations, plaintiffs believed the Nature's Way Extra Virgin Coconut Oil was healthy, healthier than butter, margarine, shortening and other cooking oils, and would not raise or otherwise detriment their blood cholesterol levels.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

111.   When purchasing Nature's Way Extra Virgin Coconut Oil, plaintiffs were seeking a product that had the qualities described on the Nature's Way Extra Virgin Coconut Oil label, namely, a healthy, nutritious food that was better than butter, margarine, shortening and cooking oils, the consumption of which would not increase their risk of CHD, stroke, and other morbidity.

112.   The Nature's Way Extra Virgin Coconut Oil label's representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiffs and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the products are not healthy but instead their consumption increases the risk of CHD, stroke, and other morbidity.

113.   Plaintiffs are not nutritionists, food experts, or food scientists, but rather lay consumers who did not have the specialized knowledge that Nature's Way had regarding the nutrients present in its coconut oils.

114.   Plaintiffs acted reasonably in relying on the health and wellness claims that defendants intentionally placed on the Extra Virgin Coconut Oil label with the intent to induce average consumers into purchasing it.

115.   The Nature's Way coconut oil products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

116.   Plaintiffs paid more for the Nature's Way Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

117.   For these reasons, the Nature's Way Extra Virgin Coconut Oil was worth less than what plaintiffs paid for it.

118.   Instead of receiving products that had actual healthful qualities, the products that plaintiffs and the Class received were ones that are not healthy, but rather their consumption causes increased risk of CHD, stroke, and other morbidity.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

119.   Plaintiffs would not have purchased Nature's Way Extra Virgin Coconut Oil if they knew that it was misbranded pursuant to California and FDA regulations, or that its labeling claims were false and misleading.

120.   Plaintiffs lost money as a result of defendants' deceptive claims and practices in that they did not receive what they paid for when purchasing Nature's Way Extra Virgin Coconut Oil.

121.   Plaintiffs detrimentally altered their position and suffered damages in an amount equal to the amount they paid for the product.

122.   Defendants' senior officers and directors allowed the Nature's Way coconut oil products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## DELAYED DISCOVERY

123.   Plaintiff Malia Levin did not discover that defendants' labeling of the Nature's Way Extra Virgin Coconut Oil was false, deceptive, or misleading until approximately December 2015 when she spoke with her counsel in this matter.

124.   Ms. Levin, in the exercise of reasonable diligence, could not have discovered defendants' deceptive practices earlier because, like nearly all consumers, she does not have access to scholarly publications where the scientific evidence of negative health effects of coconut oils on human health has been published.

125.   Further, Ms. Levin is not a nutritionist, food expert, or food scientist; she is a lay consumer who did not possess the specialized knowledge defendants possessed regarding the negative health effects of coconut oil.

## CLASS ACTION ALLEGATIONS

126.   California Code of Civil Procedure section 382 provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

27

Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 36 of 38

1    127.   While reserving the right to redefine or amend the class definition prior to

2  seeking class certification, plaintiffs bring this suit as a class action pursuant to California

3  Code of Civil Procedure section 382 on behalf of themselves and a Class of all persons in

4  California who purchased, for personal or household use, and not for resale or distribution,

5  Nature's Way Extra Virgin Coconut Oil, or Nature's Way Liquid Coconut Oil (the "Class").

6    128.   The members in the proposed Class are so numerous that individual joinder of

7  all members is impracticable, and the disposition of the claims of all Class Members in a

8  single action will provide substantial benefits to the parties and Court.

9    129.   Questions of law and fact common to plaintiffs and the Class include:

10             a.    whether   defendants   communicated   a   message   regarding

11           healthfulness of their coconut oil products through their packaging and

12           advertising;

13             b.    whether that message was material, or likely to be material to a

14           reasonable consumer;

15             c.    whether the challenged claims discussed herein are false,

16           misleading, or reasonably likely to deceive a reasonable consumer, because of

17           the high saturated fat content of the Nature's Way coconut oil products;

18             d.    whether defendants' conduct violates public policy;

19             e.    whether defendants' conduct violates state and federal food statutes

20           or regulations;

21             f.    the proper amount of damages, including punitive damages;

22             g.    the proper amount of restitution;

23             h.    the proper injunctive relief, including a corrective advertising

24           campaign; and

25             i.    the proper amount of attorneys' fees.

26    130.   These common questions of law and fact predominate over questions that affect

27  only individual Class Members.

28

28

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

131. Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to defendants' conduct. Specifically, all Class Members, including plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased the challenged products, and suffered economic injury because the products were and are misrepresented. Absent defendants' business practice of deceptively and unlawfully labeling the Nature's Way coconut oil products, plaintiffs and Class Members would not have purchased the products.

132. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

133. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

134. Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

135. Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Violations of the Unfair Competition Law,

#### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

136. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

137. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

1    138.  The acts, omissions, misrepresentations, practices, and non-disclosures of

2  defendants as alleged herein constitute business acts and practices.

3                                 **Fraudulent**

4    139.  A statement or practice is fraudulent under the UCL if it is likely to deceive the

5  public, applying an objective reasonable consumer test.

6    140.  As set forth herein, defendants' claims relating to the Nature's Way coconut oil

7  products are likely to deceive reasonable consumers and the public.

8                                   **Unlawful**

9    141.  The acts alleged herein are "unlawful" under the UCL in that they violate at least

10  the following laws:

11     •     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

12     •     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

13     •     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

14     •     The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety

15  Code §§ 110100 *et seq.*

16                                   **Unfair**

17    142.  Defendants' conduct with respect to the labeling, advertising, and sale of the

18  Nature's Way coconut oil products was unfair because defendants' conduct was immoral,

19  unethical, unscrupulous, or substantially injurious to consumers, and the utility of their

20  conduct, if any, does not outweigh the gravity of the harm to their victims.

21    143.  Defendants' conduct with respect to the labeling, advertising, and sale of the

22  Nature's Way coconut oil products was and is also unfair because it violates public policy as

23  declared by specific constitutional, statutory or regulatory provisions, including but not

24  necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and

25  Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

26    144.  Defendants' conduct with respect to the labeling, advertising, and sale of the

27  Nature's Way coconut oil products was and is also unfair because the consumer injury was

28

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 12/15/19 PageID.4191 Page 74 of
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 93 of 30
212

1   substantial, not outweighed by benefits to consumers or competition, and not one consumers
2   themselves could reasonably have avoided.

3       145.   Defendants profited from the sale of the falsely, deceptively, and unlawfully
4   advertised Nature's Way coconut oil products to unwary consumers.

5       146.   Plaintiffs and Class Members are likely to continue to be damaged by
6   defendants' deceptive trade practices, because defendants continue to disseminate misleading
7   information. Thus, injunctive relief enjoining defendants' deceptive practices is proper.

8       147.   Defendants' conduct caused and continues to cause substantial injury to
9   plaintiffs and other Class Members. Plaintiffs have suffered injury in fact as a result of
10  defendants' unlawful conduct.

11      148.   In accordance with Bus. & Prof. Code § 17203, plaintiffs seek an order enjoining
12  defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent
13  acts and practices, and to commence a corrective advertising campaign.

14      149.   Plaintiffs and the Class also seek an order for the restitution of all monies from
15  the sale of the Nature's Way's coconut oil products, which were unjustly acquired through
16  acts of unlawful competition.

17                          **SECOND CAUSE OF ACTION**
18                       **Violations of the False Advertising Law,**
19                       **Cal. Bus. & Prof. Code §§ 17500** *et seq.*

20      150.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as
21  if set forth in full herein.

22      151.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or
23  association, or any employee thereof with intent directly or indirectly to dispose of real or
24  personal property or to perform services" to disseminate any statement "which is untrue or
25  misleading, and which is known, or which by the exercise of reasonable care should be
26  known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

27
28
                                     31

152. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

153. As alleged herein, the advertisements, labeling, policies, acts, and practices of defendants relating to the Nature's Way coconut oil products misled consumers acting reasonably as to the healthfulness of the products.

154. Plaintiffs suffered injury in fact as a result of defendants' actions as set forth herein because plaintiffs purchased the Nature's Way coconut oil product in reliance on defendants' false and misleading marketing claims stating or suggesting that the product, among other things, is healthy, healthier than butter, margarine, shortening and other cooking oils.

155. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because defendants have advertised the Nature's Way coconut oil products in a manner that is untrue and misleading, which defendants knew or reasonably should have known, and omitted material information from the products' advertising.

156. Defendants profited from the sale of the falsely and deceptively advertised Nature's Way coconut oil products to unwary consumers.

157. As a result, plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which defendants were unjustly enriched.

158. Pursuant to Cal. Bus. & Prof. Code § 17535, plaintiffs, on behalf of themselves and the Class, seek an order enjoining defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

///

///

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

159. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

160. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

161. Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Nature's Way coconut oil products for personal, family, or household purposes by plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

162. Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Nature's Way coconut oil products to unwary consumers.

163. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

164. As a result, plaintiffs and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Nature's Way coconut oil products sold to all Class Members, (b) punitive damages in an amount sufficient to deter and

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4194 Page 77 of
212
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 96 of 98

1   punish, (c) injunctive relief in the form of modified advertising and a corrective advertising

2   plan, and (d) restitution.

3       165.  Pursuant to California Civil Code § 1782, on or around December 21, 2016,

4   plaintiffs notified defendants in writing by certified mail, return receipt requested, of their

5   claims, and of the particular violations of § 1770 of the CLRA, but defendants failed to

6   remedy the violations within 30 days.

7       166.  In compliance with Cal. Civ. Code § 1780(d), plaintiffs' affidavits of venue are

8   filed concurrently herewith, attached to the Complaint.

9                          **FOURTH CAUSE OF ACTION**

10                        **Breach of Express Warranties,**

11                          **Cal. Com. Code § 2313(1)**

12      167.  Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as

13  if set forth in full herein.

14      168.  Through the Nature's Way coconut oil product labels, defendants made

15  affirmations of fact or promises, or description of goods, which were "part of the basis of the

16  bargain," in that plaintiffs and the Class purchased the products in reasonable reliance on

17  those statements. Cal. Com. Code § 2313(1).

18      169.  Defendants breached their express warranties by selling products that are not

19  healthy, not healthier than butter, margarine, shortening, or other cooking oils, and that

20  negatively affect cholesterol levels, increasing risk of CHD and stroke.

21      170.  That breach actually and proximately caused injury in the form of the lost

22  purchase price that plaintiffs and the Class paid for the Nature's Way coconut oil products.

23                          **FIFTH CAUSE OF ACTION**

24                  **Breach of Implied Warranty of Merchantability,**

25                          **Cal. Com. Code § 2314**

26      171.  Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as

27  if set forth in full herein.

28

---

34

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4195 Page 78 of
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 37 of 38
212

172.  Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of the Nature's Way coconut oil products, made representations to plaintiffs and the Class that, among other things, the products are healthy.

173.  Plaintiffs and the Class bought the Nature's Way coconut oil products manufactured, advertised, and sold by defendants, as described herein.

174.  Defendants are merchants with respect to the goods of this kind which were sold to plaintiffs and the Class, and there was, in the sale to plaintiffs and other consumers, an implied warranty that those goods were merchantable.

175.  However, defendants breached that implied warranty in that the Nature's Way coconut oil products are not healthy, are not healthier than butter, margarine, shortening or other cooking oils, and negatively affect cholesterol levels, increasing risk of CHD and stroke, as set forth in detail herein.

176.  As an actual and proximate result of defendants' conduct, plaintiffs and the Class did not receive goods as impliedly warranted by defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

177.  Plaintiffs and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the products' purchase price.

## PRAYER FOR RELIEF

178.  Wherefore, plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against defendants as to each and every cause of action, and the following remedies:

A.  An Order declaring this action to be a proper class action, appointing plaintiffs as class representatives, and appointing undersigned counsel as class counsel;

B.  An Order requiring defendants to bear the cost of class notice;

C.  An Order compelling defendants to conduct a corrective advertising campaign;

*Hunter et al. v. Nature's Way Prods., LLC et al.*
CLASS ACTION COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 11/15/19 PageID.4196 Page 79 of
Case 3:16-cv-00532-WQH-BLM Document 1-5 Filed 03/02/16 Page 98 of 98
212

D.      An Order compelling defendants to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

E.      An Order requiring defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

F.      An Order requiring defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

G.      An Order requiring defendants to pay actual and punitive damages where permitted under law;

H.      An award of attorneys' fees and costs; and

I.      Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 28, 2016        /s/ Paul K. Joseph
**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840

*Counsel for Plaintiffs and the Proposed Class*

36

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LLC and SCHWABE NORTH AMERICA, INC.,<br><br>Defendants. | Case No: 3:16-cv-00532-WQH-AGS<br><br>Original Complaint Filed: January 28, 2016<br><br>Judge: Hon. William Q. Hayes<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200** *et seq.***; CAL. BUS. & PROF. CODE §§17500** *et seq.***; and CAL. CIV. CODE §§ 1750** *et seq.***; and BREACH OF EXPRESS & IMPLIED WARRANTIES**<br><br><u>CLASS ACTION</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues defendants Nature's Way Products, LLC ("Nature's Way"), and Schwabe North America, Inc. ("Schwabe"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1.     Defendants misleadingly market various Nature's Way brand coconut oil products as both inherently healthy, and a healthy alternative to butter, margarine, shortening, and other cooking oils, despite that coconut oil is actually inherently unhealthy, and a less healthy option to these alternatives. Defendants' Nature's Way coconut oil labeling and advertising also violates several federal and California state food regulations.

2.     Plaintiff relied upon defendants' misleading and unlawful claims when purchasing Nature's Way coconut oil products, and was damaged as a result. She brings this action on behalf of herself, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and False Advertising Law, id. §§ 17500 et seq. ("FAL"). Plaintiff further alleges that defendants breached express and implied warranties under state law.

3.     Plaintiff seeks an order, inter alia, compelling defendants to (a) cease marketing its coconut oil products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which they have been unjustly enriched, and (e) pay restitution, damages, punitive damages, and attorneys' fees as allowed by law.

## PARTIES

4.     Plaintiff Sherry Hunter is a resident of Chula Vista, California and citizen of California.

5. Defendant Nature's Way Products, LLC is a Wisconsin limited liability company with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311.

7. Defendant Schwabe North America, Inc. is a Wisconsin corporation, with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311.

## JURISDICTION & VENUE

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the state of which defendant is a citizen.

9. The Court has personal jurisdiction over Defendants because they have purposely availed themselves of the benefits and privileges of conducting business activities within California.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because plaintiff resides in and suffered injuries as a result of defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and defendants (1) have intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District, and (2) are subject to personal jurisdiction in this District.

## FACTS

I. **Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity**

A. **The Role of Cholesterol in the Human Body**

11. Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages

called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high-density lipoproteins, or HDL cholesterol.

12.    LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

13.    HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

**B.    High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

14.    Total and LDL cholesterol blood levels are two of the most important risk factors in predicting CHD, with higher total and LDL cholesterol levels associated with increased risk of CHD.[1]

15.    High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[2] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

---

[1] *See*, *e.g.*, Dr. Dustin Randolph, Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), available at http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[2] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

16.     This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

17.     When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease (CHD).

18.     Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

19.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[3]

**C.     Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke**

20.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[4]

21.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[5]

22.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

---

[3]  Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[4] USDA Review of the Evidence, *supra* n.2.

[5] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

23.    For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[6]

24.    In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[7]

25.    Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[8]

26.    For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[9]

27.    In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[10]

28.    Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[11]

29.    For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[12]

---

[6] USDA Review of the Evidence, *supra* n.2.

[7] IOM, Dietary Reference Intakes, *supra* n.5, at 481.

[8] *Id.* at 422.

[9] *Id.*

[10] *Id.* at 460.

[11] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[12] USDA Review of the Evidence, *supra* n.2.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

30.   The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[13] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[14]

31.   In short, consuming saturated fat increases the risk of CHD and stroke.[15]

**D.   In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels**

32.   For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[16]

33.   In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[17]

34.   In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[18]

35.   Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, *and coconut oils*)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[19]

---

[13] *Id.*

[14] *Id.*

[15] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[16] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[17] *Id.*

[18] *Id.* Part D, Chapter 6, at 12.

[19] *Id.* (emphasis added).

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

## II.   Because of its High Saturated Fat Content, the Consumption of Coconut Oil Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

36.    Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[20]  several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

37.    For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[21] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[22] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[23]

38.    In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[24] At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[25]

39.    The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced

---

[20] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 586.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[26]

40.     Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[27]

41.     Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[28]

42.     The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[29] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of fat.[30] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[31]   In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[32]

---

[26] *Id.* at 588.

[27] *Id.*

[28] *Id.* at 587.

[29] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 715.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

43.    Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

44.    A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease. [33]

45.    Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid profiles.[34]  The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[35]

46.    Finally, in another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol, LDL, and apo B."[36] Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease. In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[37]

---

[33] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

[34] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[35] *Id.*

[36] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[37] *Id.*

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

## III. Defendants' Manufacturing, Marketing, and Sale of Coconut Oil

### A. Defendants' History and Sale of Coconut Oil

47. Defendants have manufactured, distributed, marketed, and sold various Nature's Way brand coconut oil products on a nationwide, and indeed international basis for at least the past several years.

48. According to Nature's Way's website, its products are sold nationally at major retailers such as Sprouts Farmers Market, Whole Foods Market, and the Vitamin Shoppe.[38]

49. Nature's Way products are also available online at iHerb.com, Vitacost.com LuckyVitamin.com, Amazon.com, Drugstore.com, and many more "e-tailer" websites.

50. Nature's Way brand coconut oil products challenged in this lawsuit include at least the following, which are depicted below: (a) Extra Virgin Coconut Oil, and (b) Liquid Coconut Oil, which comes in a variety of flavors.




---

[38] Nature's Way, Store Locator, *available at* http://www.naturesway.com/Store-Locator.aspx?p=15673&z=48103&prx=10&ctry=271 (last visited Dec. 17, 2015).

10

51.   Nature's Way Extra Virgin Coconut Oil is available in several sizes including 16- and 32-fluid-ounce jars. Nature's Way Liquid Coconut Oil is available in several sizes, including 10- and 20-fluid-ounce bottles.

**B.   The Composition of the Nature's Way Coconut Oils**

52.   The Nutrition or Supplement Facts boxes, listed on Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil, respectively, are pictured below. Each 1 tablespoon (or 15 mL) serving of Nature's Way coconut oil (whether "Extra Virgin," or "Liquid") contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nature's Way coconut oil is 100% fat, 93% of which is saturated fat.



|                | Extra Virgin | Liquid |

<table>
<tr><td>Extra Virgin</td><td>Liquid</td></tr>
</table>

## IV.   Defendants Market the Nature's Way Coconut Oil Products with Misleading Health and Wellness Claims

53.   Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. Nielsen's 2015 Global Health & Wellness Survey, for instance, found that "88% of those polled are willing to pay more for healthier foods."[39]

54.   Defendants are well aware of consumer preference for healthful foods, and therefore employ, and have employed, a strategic marketing campaign intended to convince consumers that defendants' Nature's Way coconut oil products are healthy, despite that they are almost entirely composed of unhealthy saturated fat.

55.   Through statements placed directly on the labels of the Nature's Way coconut oil products, defendants market and advertise the products as both inherently healthy, and healthy alternatives to butter, margarine, and other oils, even though the products' total and saturated fat content render them both inherently unhealthy, and less healthy alternatives. Moreover, defendants' labeling claims are designed to conceal or distract consumers from noticing that their Nature's Way coconut oils are pure fat, almost all of which is unhealthy saturated fat.

---

[39] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

12

**A.    Defendants Place Misleading Health and Wellness Claims Directly on the Nature's Way Extra Virgin Coconut Oil Label**

56.    Below is an exemplar of the front of Nature's Way's Extra Virgin Coconut Oil label.



13

57.   Below are exemplars of the back and side of the Nature's Way's Extra Virgin Coconut Oil label.



58.   Directly on the Nature's Way Extra Virgin Coconut Oil label, defendants claim the product has a "Variety of Healthy Uses." Defendants encourage consumers to "Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless." These claims taken individually and in context of the label as a whole, are false and misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

59.   To further convince consumers to that the Nature's Way Extra Virgin Coconut Oil is healthy, defendants claim that the product is "ideal for exercise & weight loss programs." This claim taken individually and in context of the label as a whole, is false and misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

14

60.     To reinforce this misleading health message, defendants label the Extra Virgin Coconut Oil as "Premium Quality," "non-hydrogenated," and containing "no trans fat." These claims taken individually and in context of the label as a whole, even if literally true, are misleading because they suggest that the product is healthy, while in reality the Nature's Way Extra Virgin Coconut Oil is unhealthy due to its high saturated fat content.

61.     In addition, defendants claim that their Nature's Way Extra Virgin Coconut Oil provides "Natural Energy" and contains "62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy." Defendants even recommend consumers "Take 1 tablespoon (14g) up to 4 times daily." These claims, taken individually and in context of the label as a whole, are false and misleading because Nature's Way Extra Virgin Coconut Oil is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

62.     In conjunction with these misleading health claims, defendants suggest that their Nature's Way Extra Virgin Coconut Oil "be used in place of butter, margarine, shortening or other cooking oils." This misleadingly suggests that replacing butter, margarine, shortening or other cooking oils with Nature's Way Extra Virgin Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption unsaturated fat,[40] and despite that "Strong and consistent evidence from RCTs and statistical modeling in prospective cohort studies shows that replacing SFA with PUFA reduces the risk of CVD events and coronary mortality."[41]

---

[40] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are monounsaturated, and .5 of which are polyunsaturated, and lists a 14 gram serving of margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are monounsaturated, and 4 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, NDB No. 04611, Margarine, regular, *available at* http://ndb.nal.usda.gov/ndb/foods.

[41] USDA & HHS, Dietary Guidelines, supra n.12, Part D, Chapter 6 at 12.

15

63.    These claims, taken individually and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Extra Virgin Coconut Oil is healthy, when it is not, and that the product is healthier or more nutritious than butter, margarine, shortening or other cooking oils, which it is not.

64.    In sum, the totality of the Nature's Way Extra Virgin Coconut Oil label and packaging conveys the concrete message to a reasonable consumer that the product is healthy, and a more healthful alternative to butter, margarine, shortening or other cooking oils. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**B.    Defendants Place Misleading Health and Wellness Claims Directly on the Nature's Way Liquid Coconut Oil Label**

65.    Below is an exemplar of the front of the Nature's Way Liquid Coconut Oil label.



*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

66. Below are exemplars of the back and side of the Nature's Way Liquid Coconut Oil label.



67. Defendants deceptively market their Nature's Way Liquid Coconut Oil with a variety of labeling claims intended to convince consumers that the product is healthy, and to conceal or distract from the fact that it is pure fat, almost all of which is unhealthy saturated fat.

68. As with the Nature's Way Extra Virgin Coconut Oil, defendants label their Nature's Way Liquid Coconut Oil with the claim that it has a "Wide variety of healthy uses." This claim taken individually and in context of the label as a whole, is false and misleading because the product is actually unhealthy due to its high saturated fat content.

17

69.     Like the Nature's Way Extra Virgin Coconut Oil, defendants attempt to convince consumers that their Nature's Way Liquid Coconut Oil is "ideal for healthy lifestyles including exercise & weight loss programs." This claim, taken individually and in context of the label as a whole, is false and misleading because Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

70.     To reinforce this misleading health message, defendants label the Nature's Way Liquid Coconut Oil with the phrases "Premium," "non-hydrogenated," and "no trans fat." In addition, defendants claim that Nature's Way Liquid Coconut Oil provides "Natural Energy" and contains "13 g of medium chain triglycerides" or "93% MCTs." These claims taken individually and in context of the label as a whole, are false and misleading (even to the extent some may be literally true) because the Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

71.     In conjunction with these misleading health claims, defendants suggest that the Nature's Way Liquid Coconut Oil be used "as an alternative to butter, margarine or vegetable oil." This misleadingly suggests that replacing butter, margarine or vegetable oil with Nature's Way Liquid Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption of unsaturated fat,[42] and despite that "Strong and consistent evidence from RCTs and statistical modeling in prospective cohort

---

[42] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are monounsaturated, and .5 of which are polyunsaturated; lists a 14 gram serving of margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are monounsaturated, and 4 of which are polyunsaturated; and lists a 13.6 gram serving of vegetable oil as being composed of 13.6 grams of fat, 1 of which is saturated, 3 of which are monounsaturated, and 9 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, NDB No. 04611, Margarine, regular, NDB No. 04670, Vegetable Oil. *available at* http://ndb.nal.usda.gov/ndb/foods.

18

studies shows that replacing SFA with PUFA reduces the risk of CVD events and coronary mortality."[43]

72.    These claims, taken individually and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Liquid Coconut Oil is healthy, when it is not, and that it is healthier or more nutritious than butter, margarine, or vegetable oil, which it is not.

73.    In short, the totality of the packaging conveys the concrete message to a reasonable consumer that the Nature's Way Liquid Coconut Oil is healthy, and a more healthful alternative to butter, margarine or vegetable oil. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**C.    The Nature's Way Website Contains Misleading Health and Wellness Claims About the Nature's Way Coconut Oil Products**

74.    The labels of the Nature's Way coconut oil products direct consumers to the Nature's Way website (www.naturesway.com), which defendants use as a platform for their health marketing campaign.

75.    Through statements on Nature's Way's website, defendants portray Nature's Way as a company devoted "To help[ing] [consumers] enhance their health," and represent that "[t]his has become the basis of everything we do. The very foundation of a growing legacy of trust. And an oath to our customers that we take incredibly seriously—Trust the Leaf®."[44]

76.    On its website, Nature's Way further claims that "The health properties of coconut oil have been known for thousands of years. Coconut oil naturally contains "good fats" called medium chain triglycerides (MCTs), which your body uses to produce energy.[]

---

[43] USDA & HHS, Dietary Guidelines, supra n.12, Part D, Chapter 6 at 12.

[44] Nature's Way, Our Story, http://www.naturesway.com/Our-Story.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

Adding coconut oil to your diet can help increase metabolism, and help fuel any healthy lifestyle."[45]

## IV.  The Labeling of the Nature's Way Coconut Oil Products Violates California and Federal Law

### A.  Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law

77.    Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 et. seq. (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, see id. § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto.").

78.    For the purposes of labeling, "a dietary supplement shall be deemed to be a food." See 21 U.S.C. 321(ff).

79.    The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. See 21 U.S.C. § 343-1.

80.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

### B.  The Nature's Way Coconut Oil Products' False and Misleading Labeling Claims Render the Products Misbranded Under California and Federal Law

81.    Defendants' deceptive statements described herein violate Cal. Health & Safety Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is "false or misleading in any particular."

---

[45] Nature's Way, Coconut Oil, http://www.naturesway.com/Category/Coconut-Oil.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 01/15/19   PageID.4218   Page 101 of
212
Case 3:16-cv-00532-WQH-AGS   Document 95-1   Filed 01/30/18   PageID.3741   Page 22 of 39

82.    In addition, the products' labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

**C.    The Nature's Way Coconut Oil Products are Misbranded Because They Make Unauthorized Nutrient Content and Percentage Claims**

83.    The Nature's Way coconut oil products are misbranded because their labels bear nutrient content claims even though the products do not meet the requirements to make such claims.

84.    Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. See also Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

85.    Characterizing the level of a nutrient on food labels and labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders a product misbranded under 21 U.S.C. § 343(r)(1)(A).

86.    Defendants label both the Nature's Way Extra Virgin Coconut Oil, and the Nature's Way Liquid Coconut Oil with the phrases "non-hydrogenated" and "no trans fat." In addition, the label of Nature's Way Extra Virgin Coconut Oil bears the phrases "62% MCTs" and 62% (8,694 mg) medium chain fatty acids (MCTs) per serving," while the label of the Nature's Way Liquid Coconut Oil bears the phrases "93% MCTs" and "13 g of medium chain triglycerides."

87.    These phrases meet the definition of nutrient content claims because they characterize the level of trans fat, and fatty acids, in the coconut oil products, which are nutrients of the type required to be in nutrition labeling. See 21 C.F.R. § 101.13(b)(1).

88.    Under 21 C.F.R. § 101.13(h), a food that bears an express or implied nutrient content claim, and that contains more than 13 grams of total fat or 4 grams of saturated fat per serving, must also bear a disclosure statement on the label, immediately adjacent to the

21

1   claim, referring the consumer to nutrition information for that nutrient, e.g., "See nutrition

2   information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1). See also 21

3   C.F.R. § 101.13(q)(3)(ii) (requiring compliance with §101.13(h) for percentage claims).

4       89.    Despite that both Nature's Way coconut oil products contain 14 grams of total

5   fat and 13 gram of saturated fat per serving, their labels fail to bear these mandatory

6   disclosure statements, which provide consumers with material nutrition information.

7   Therefore, Nature's Way Extra Virgin Coconut Oil and Nature's Way Liquid Coconut Oil

8   are misbranded.

9       90.    Further, even if the Nature's Way coconut oil products had contained the

10  required disclosures, they would still be misbranded because "no trans fat" is an

11  unauthorized nutrient content claim that may not be used in the labeling of any foods. See

12  Reid v. Johnston & Johnson, 780 F.3d 952, 962-63 (2015). The FDA similarly has no defined

13  nutrient content claims for "non-hydrogenated," or any statements about MCTs, but all such

14  claims must, in any event, be not misleading. See 21 C.F.R. § 101.13(i)(iii).

15      91.    Plaintiff and members of the Class would not have purchased the Nature's Way

16  coconut oil products if they knew the products were and are misbranded pursuant to

17  California and federal regulations because their labels make unauthorized nutrient content

18  claims despite containing disqualifying amounts of total and saturated fat and omit material

19  information and disclosures.

20      **D.    The Nature's Way Coconut Oil Products are Misbranded Because They**

21          **Make Unauthorized Health Claims**

22      92.    In addition, the labels of the Nature's Way coconut oil products are misleading

23  and misbranded because they claim that the oils are healthy, but the products do not meet

24  the requirements for making such claims.

25      93.    To "use the term 'healthy' or related terms (e.g., 'health,' 'healthful,'

26  'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness')" foods

27  must satisfy specific "conditions for fat, saturated fat, cholesterol, and other nutrients." 21

28  C.F.R § 101.65(d)(2).

94.     The Nature's Way coconut oil products are "not specifically listed" in the table contained in 21 C.F.R § 101.65(d)(2)(i), and therefore are governed by section (F) of the table. See 101.65(d)(2)(i)(F).

95.     Under 21 C.F.R. § 101.65(d)(2)(i)(F), to use a "healthy" term, a food must (1) be "Low fat as defined in § 101.62(b)(2)," (2) be "Low saturated fat as defined in § 101.62(c)(2)," and (3) contain "At least 10 percent of the RDI [recommended daily intake] or the DRV [dietary reference values] per RACC [reference amount customarily consumed] of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." See 21 C.F.R. § 101.65(d)(2)(i)(F) (incorporating by reference total fat requirement, 21 C.F.R. § 101.62(b)(2), and saturated fat requirement, 21 C.F.R. § 101.62(c)(2)). In addition, the food must comply "with the definition and declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling." 21 C.F.R. § 101.65(d)(2)(iii).

96.     Section 101.62(b)(2)(i)(B) provides the applicable definition of "low fat" for the Nature's Way coconut oil products because they have RACCs (reference amounts customarily consumed) and labeled servings of less than 30 grams.

97.     Under section 101.62(b)(2)(i)(B), a food is low fat only if it "contains 3 g or less of fat per reference amount customarily consumed and per 50 g of food."

98.     The Nature's Way coconut oil products both contain 14 grams of total fat per RACC or labeled serving, and 50 grams of total fat per 50 grams. Thus the Nature's Way coconut oil products do not meet the total fat requirement in section 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

99.     Under section 101.62(c)(2), a food is "low saturated fat" only if it "contains 1 g or less of saturated fatty acids per reference amount customarily consumed and not more than 15 percent of calories from saturated fatty acids."

100.     The Nature's Way coconut oil products both contain 13 grams of saturated fat per RACC or labeled serving, and approximately 92 percent of calories come from saturated fat. The products therefore do not meet the saturated fat requirement in section

101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

101.  Further, the Nature's Way coconut oil products do not contain "at least 10 percent of the RDI or the DRV per RACC of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber," 21 C.F.R. § 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

102.  Finally, the Nature's Way coconut oil products, as explained above, fail to comply "with the definition and declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling," 21 C.F.R. § 101.65(d)(2)(iii), further rendering them misbranded.

103.  In sum, the Nature's Way coconut oil products bear unauthorized claims that the products are healthy. The products do not meet the clear and specific criteria the FDA (and by extension, California) requires for using the term healthy (and variations) to describe a food or supplement.

104.  Defendants' use of the term healthy (and variations) to describe the Nature's Way coconut oil products not only violates 21 C.F.R. § 101.65 and renders the products misbranded, but also misleads consumers regarding the nature of the oils, in the specific manner the regulations are intended to prevent.

## V.  Plaintiff's Purchase, Reliance, and Injury

105.  Plaintiff Sherry Hunter purchased Nature's Way Extra Virgin Coconut Oil. As best she can remember, she purchased the 16-ounce variety of Nature's Way Extra Virgin Coconut Oil in or around July 2015 from a Sprouts Farmers Market located at 690 3rd Ave., Chula Vista, CA 91910, for approximately $10.

106.  When deciding to purchase Nature's Way Extra Virgin Coconut Oil, plaintiff read and relied on the following claims (or claims substantially similar to the following claims, which collectively conveyed the same health and wellness message as conveyed by the following claims) on the product's label:

      a.      "Premium Quality"

24

b.   "Variety of Healthy Uses: Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless."

c.   "non-hydrogenated, no trans fat"

d.   "Natural Energy: Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy."

e.   "Ideal for exercise & weight loss programs."

f.   "62% MCTs"

g.   "Natural Energy"

h.   "Recommendation: Take 1 tablespoon (14g) up to 4 times daily"

i.   "For cooking, can be used in place of butter, margarine, shortening or other cooking oils."

107.   Based on these representations, plaintiff believed the Nature's Way Extra Virgin Coconut Oil was healthy, healthier than butter, margarine, shortening and other cooking oils, and would not raise or otherwise detriment their blood cholesterol levels.

108.   When purchasing Nature's Way Extra Virgin Coconut Oil, plaintiff was seeking a product that had the qualities described on the Nature's Way Extra Virgin Coconut Oil label, namely, a healthy, nutritious food that was better than butter, margarine, shortening and cooking oils, the consumption of which would not increase their risk of CHD, stroke, and other morbidity.

109.   The Nature's Way Extra Virgin Coconut Oil label's representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the products are not healthy but instead their consumption increases the risk of CHD, stroke, and other morbidity.

110.   Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Nature's Way had regarding the nutrients present in its coconut oils.

111.    Plaintiff acted reasonably in relying on the health and wellness claims that defendants intentionally placed on the Extra Virgin Coconut Oil label with the intent to induce average consumers into purchasing it.

112.    The Nature's Way coconut oil products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

113.    Plaintiff paid more for the Nature's Way Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

114.    For these reasons, the Nature's Way Extra Virgin Coconut Oil was worth less than what plaintiff paid for it.

115.    Instead of receiving products that had actual healthful qualities, the products that plaintiff and the Class received were ones that are not healthy, but rather their consumption causes increased risk of CHD, stroke, and other morbidity.

116.    Plaintiff would not have purchased Nature's Way Extra Virgin Coconut Oil if she knew that it was misbranded pursuant to California and FDA regulations, or that its labeling claims were false and misleading.

117.    Plaintiff lost money as a result of defendants' deceptive claims and practices in that she did not receive what she paid for when purchasing Nature's Way Extra Virgin Coconut Oil.

118.    Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the product.

119.    Ms. Hunter remains in the market for, and interested in purchasing healthy cooking oils.

120.    She regularly shops at stores such as Sprouts, where the Products are sold.

121.    If she encountered the Products containing the same or similar health and wellness labeling claims in the future, she might reasonably assume that the Products had been reformulated to make them healthier, or that new scientific evidence supported the claims, and on that basis would consider and likely be interested in purchasing the Products

26

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4224   Page 107 of
212
Case 3:16-cv-00532-WQH-AGS   Document 115-5   Filed 01/30/18   PageID.3742   Page 28 of 39

again. Without prospective injunctive relief requiring defendants to label the Products in a truthful manner, she and other consumers will be unable to determine whether a future label bearing similar claims is valid, or whether defendants have simply resumed misleading behavior, and thus will be unable to decide how best to spend her money.

122.  The continued use of the challenged claims on the Products' labels threatens to repeatedly infringe upon the substantive right California's consumer protection statutes give plaintiff to be free from fraud in the marketplace.

123.  Defendants' senior officers and directors allowed the Nature's Way coconut oil products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

124.  While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in California who, at any time from four years preceding the date of the Original Complaint (January 28, 2016) to the time a class is notified, (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, Nature's Way Extra Virgin Coconut Oil, or Nature's Way Liquid Coconut Oil (the "Class").

125.  The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

126.  Questions of law and fact common to plaintiff and the Class include:

a.  whether defendants communicated a message regarding healthfulness of their coconut oil products through their packaging and advertising;

b.  whether that message was material, or likely to be material to a reasonable consumer;

c.  whether the challenged claims discussed herein are false, misleading, or reasonably likely to deceive a reasonable consumer, because of the high saturated fat content of the Nature's Way coconut oil products;

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 01/15/19   PageID.4825   Page 108 of
212
Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 01/30/18   PageID.4825   Page 29 of 89

d.  whether defendants' conduct violates public policy;

e.  whether defendants' conduct violates state and federal food statutes or regulations;

f.  the proper amount of damages, including punitive damages;

g.  the proper amount of restitution;

h.  the proper injunctive relief, including a corrective advertising campaign; and

i.  the proper amount of attorneys' fees.

127.  These common questions of law and fact predominate over questions that affect only individual Class Members.

128.  Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to defendants' conduct. Specifically, all Class Members, including plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the challenged products, and suffered economic injury because the products were and are misrepresented. Absent defendants' business practice of deceptively and unlawfully labeling the Nature's Way coconut oil products, plaintiff and Class Members would not have purchased the products.

129.  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

130.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

131.  Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

132.  Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

133.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

134.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

135.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

136.   The acts, omissions, misrepresentations, practices, and non-disclosures of defendants as alleged herein constitute business acts and practices.

### Fraudulent

137.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying an objective reasonable consumer test.

138.   As set forth herein, defendants' claims relating to the Nature's Way coconut oil products are likely to deceive reasonable consumers and the public.

### Unlawful

139.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

### Unfair

140.   Defendants' conduct with respect to the labeling, advertising, and sale of the Nature's Way coconut oil products was unfair because defendants' conduct was immoral,

29

unethical, unscrupulous, or substantially injurious to consumers, and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

141. Defendants' conduct with respect to the labeling, advertising, and sale of the Nature's Way coconut oil products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

142. Defendants' conduct with respect to the labeling, advertising, and sale of the Nature's Way coconut oil products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

143. Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Nature's Way coconut oil products to unwary consumers.

144. Plaintiff and Class Members are likely to continue to be damaged by defendants' deceptive trade practices, because defendants continue to disseminate misleading information. Thus, injunctive relief enjoining defendants' deceptive practices is proper.

145. Defendants' conduct caused and continues to cause substantial injury to plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of defendants' unlawful conduct.

146. In accordance with Bus. & Prof. Code § 17203, plaintiff seeks an order enjoining defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

147. Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Nature's Way's coconut oil products, which were unjustly acquired through acts of unlawful competition.

Case 3:16-cv-00532-WQH-AGS Document 16-5 Filed 01/30/18 PageID.4228 Page 111 of
212
Case 3:16-cv-00532-WQH-AGS Document 16-5 Filed 01/15/19 PageID.5732 Page 32 of 39

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

148. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

149. The False Advertising Law ("FAL') provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

150. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

151. As alleged herein, the advertisements, labeling, policies, acts, and practices of defendants relating to the Nature's Way coconut oil products misled consumers acting reasonably as to the healthfulness of the products.

152. Plaintiff suffered injury in fact as a result of defendants' actions as set forth herein because plaintiff purchased the Nature's Way coconut oil product in reliance on defendants' false and misleading marketing claims stating or suggesting that the product, among other things, is healthy, healthier than butter, margarine, shortening and other cooking oils.

153. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because defendants have advertised the Nature's Way coconut oil products in a manner that is untrue and misleading, which defendants knew or reasonably should have known, and omitted material information from the products' advertising.

154.    Defendants profited from the sale of the falsely and deceptively advertised Nature's Way coconut oil products to unwary consumers.

155.    As a result, plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which defendants were unjustly enriched.

156.    Pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff, on behalf of herself and the Class, seeks an order enjoining defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 et seq.**

157.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

158.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

159.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Nature's Way coconut oil products for personal, family, or household purposes by plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

    a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

32

160.   Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Nature's Way coconut oil products to unwary consumers.

161.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

162.   As a result, plaintiff and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Nature's Way coconut oil products sold to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution, and (e) attorneys' fees and costs.

163.   Pursuant to California Civil Code § 1782, on or around December 21, 2016, plaintiff notified defendants in writing by certified mail, return receipt requested, of her claims, and of the particular violations of § 1770 of the CLRA, but defendants failed to remedy the violations within 30 days.

164.   Plaintiff, on behalf of herself and the Class, seeks injunctive relief under Civil Code § 1782(d).

165.   In addition, because defendants failed to implement remedial measures, plaintiff, on behalf of herself and the Class, seeks restitution, and actual and punitive damages, including attorneys' fees.

166.   Filed concurrently with the original Complaint was a venue of affidavit as required under Civil Code § 1780(d).

### FOURTH CAUSE OF ACTION

### Breach of Express Warranties,

### Cal. Com. Code § 2313(1)

167.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

168.   Through the Nature's Way coconut oil product labels, defendants made affirmations of fact or promises, or description of goods, which were "part of the basis of

the bargain," in that plaintiff and the Class purchased the products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

169.   Defendants breached their express warranties by selling products that are not healthy, not healthier than butter, margarine, shortening, or other cooking oils, and that negatively affect cholesterol levels, increasing risk of CHD and stroke.

170.   That breach actually and proximately caused injury in the form of the lost purchase price that plaintiff and the Class paid for the Nature's Way coconut oil products.

171.   As a result, plaintiff seeks, on behalf of herself and other Class Members, their actual damages arising as a result of Nature's Way's breaches of express warranty.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability,

### Cal. Com. Code § 2314

172.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

173.   Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of the Nature's Way coconut oil products, made representations to plaintiff and the Class that, among other things, the products are healthy.

174.   Plaintiff and the Class bought the Nature's Way coconut oil products manufactured, advertised, and sold by defendants, as described herein.

175.   Defendants are merchants with respect to the goods of this kind which were sold to plaintiff and the Class, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

176.   However, defendants breached that implied warranty in that the Nature's Way coconut oil products are not healthy, are not healthier than butter, margarine, shortening or other cooking oils, and negatively affect cholesterol levels, increasing risk of CHD and stroke, as set forth in detail herein.

177.   As an actual and proximate result of defendants' conduct, plaintiff and the Class did not receive goods as impliedly warranted by defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

178.   Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the products' purchase price.

## PRAYER FOR RELIEF

179.   Wherefore, plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against defendants as to each and every cause of action, and the following remedies:

      A.    An Order declaring this action to be a proper class action, appointing plaintiff as class representative, and appointing undersigned counsel as class counsel;

      B.    An Order requiring defendants to bear the cost of class notice;

      C.    An Order compelling defendants to conduct a corrective advertising campaign;

      D.    An Order compelling defendants to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

      E.    An Order requiring defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

      F.    An Order requiring defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

180.   G.    An Order requiring defendants to pay actual and punitive damages where permitted under law;

181.   H.    An award of attorneys' fees and costs; and

182.   I.    Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

35

Dated: January 30, 2018

/s/ Paul K. Joseph
**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiff and the Proposed Class***

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 01/30/18 PageID.4234 Page 117 of
212
Case 3:16-cv-00532-WQH-AGS Document 95 Filed 01/30/18 PageID.5757 Page 38 of 39

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2018, I served the foregoing **FIRST AMENDED COMPLAINT** on counsel of record for all parties in this action, by notice of electronic filing, which was automatically generated by the Court's CM/ECF system at the time the document was filed with the Court.

Dated: January  30, 2018                      /s/ Paul K. Joseph
                                               Paul K. Joseph

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
FIRST AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 02/14/19 PageID.4285 Page 118 of
212
Case 3:16-cv-00532-WQH-AGS Document 96 Filed 02/12/18 PageID.3758 Page 1 of 30

1  | **THE LAW OFFICE OF**
2  | **JACK FITZGERALD, PC**
   | JACK FITZGERALD (SBN 257370)
3  | *jack@jackfitzgeraldlaw.com*
   | TREVOR M. FLYNN (SBN 253362)
4  | *trevor@jackfitzgeraldlaw.com*
5  | MELANIE PERSINGER (SBN 275423)
   | *melanie@jackfitzgeraldlaw.com*
6  | Hillcrest Professional Building
7  | 3636 Fourth Avenue, Suite 202
   | San Diego, California 92103
8  | Phone: (619) 692-3840
   | Fax: (619) 362-9555
9
10 | **THE LAW OFFICE OF**
   | **PAUL K. JOSEPH, PC**
11 | PAUL K. JOSEPH (SBN 287057)
12 | *paul@pauljosephlaw.com*
   | 4125 W. Pt. Loma Blvd. No. 206
13 | San Diego, California 92110
   | Phone: (619) 767-0356
14 | Fax: (619) 331-2943
15 | ***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SHERRY HUNTER, on behalf of herself, all others similarly situated, and the general public,

    Plaintiff,

v.

NATURE'S WAY PRODUCTS, LLC and SCHWABE NORTH AMERICA, INC.,

    Defendants.

Case No: 3:16-cv-00532-WQH-AGS

Original Complaint Filed: January 28, 2016

Judge: Hon. William Q. Hayes

**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 *et seq.*; CAL. BUS. & PROF. CODE §§17500 *et seq.*; and CAL. CIV. CODE §§ 1750 *et seq.*; and BREACH OF EXPRESS & IMPLIED WARRANTIES**

<u>CLASS ACTION</u>

<u>DEMAND FOR JURY TRIAL</u>

With the written consent of defendants pursuant to Fed. R. Civ. P. 15(a)(2), plaintiff Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby files this Second Amended Complaint against defendants Nature's Way Products, LLC ("Nature's Way"), and Schwabe North America, Inc. ("Schwabe"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1. Defendants misleadingly market various Nature's Way brand coconut oil products as both inherently healthy, and a healthy alternative to butter, margarine, shortening, and other cooking oils, despite that coconut oil is actually inherently unhealthy, and a less healthy option to these alternatives. Defendants' Nature's Way coconut oil labeling and advertising also violates several federal and California state food regulations.

2. Plaintiff relied upon defendants' misleading and unlawful claims when purchasing Nature's Way coconut oil products, and was damaged as a result. She brings this action on behalf of herself, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and False Advertising Law, id. §§ 17500 et seq. ("FAL"). Plaintiff further alleges that defendants breached express and implied warranties under state law.

3. Plaintiff seeks an order, inter alia, compelling defendants to (a) cease marketing its coconut oil products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which they have been unjustly enriched, and (e) pay restitution, damages, punitive damages, and attorneys' fees as allowed by law.

## PARTIES

4. Plaintiff Sherry Hunter is a resident of Chula Vista, California and citizen of California.

5.     Defendant Nature's Way Products, LLC is a Wisconsin limited liability company with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311.

7.     Defendant Schwabe North America, Inc. is a Wisconsin corporation, with its principal place of business at 825 Challenger Drive, Green Bay, Wisconsin 54311.

## JURISDICTION & VENUE

8.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the state of which defendant is a citizen.

9.     The Court has personal jurisdiction over Defendants because they have purposely availed themselves of the benefits and privileges of conducting business activities within California.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because plaintiff resides in and suffered injuries as a result of defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and defendants (1) have intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District, and (2) are subject to personal jurisdiction in this District.

## FACTS

I.     **Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity**

A.     **The Role of Cholesterol in the Human Body**

11.     Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages

called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high-density lipoproteins, or HDL cholesterol.

12. LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

13. HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

**B.    High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

14. Total and LDL cholesterol blood levels are two of the most important risk factors in predicting CHD, with higher total and LDL cholesterol levels associated with increased risk of CHD.[1]

15. High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[2] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

---

[1] *See*, *e.g*., Dr. Dustin Randolph, Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), available at http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[2] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

16.     This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

17.     When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease (CHD).

18.     Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

19.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[3]

**C.     Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke**

20.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[4]

21.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[5]

22.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

---

[3] Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[4] USDA Review of the Evidence, *supra* n.2.

[5] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

Case 3:16-cv-00532-WQH-AGS Document 106-5 Filed 02/14/19 PageID.4240 Page 123 of
212
Case 3:16-cv-00532-WQH-AGS Document 106-5 Filed 02/14/19 PageID.3763 Page 6 of 30

23.    For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[6]

24.    In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[7]

25.    Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[8]

26.    For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[9]

27.    In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[10]

28.    Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[11]

29.    For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[12]

---

[6] USDA Review of the Evidence, *supra* n.2.

[7] IOM, Dietary Reference Intakes, *supra* n.5, at 481.

[8] *Id.* at 422.

[9] *Id.*

[10] *Id.* at 460.

[11] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[12] USDA Review of the Evidence, *supra* n.2.

5

30.     The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[13]  And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[14]

31.     In short, consuming saturated fat increases the risk of CHD and stroke.[15]

**D.     In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels**

32.     For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[16]

33.     In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[17]

34.     In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[18]

35.     Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, *and coconut oils*)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[19]

---

[13] *Id.*

[14] *Id.*

[15] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[16] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[17] *Id.*

[18] *Id*. Part D, Chapter 6, at 12.

[19] *Id.* (emphasis added).

6

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

## II. Because of its High Saturated Fat Content, the Consumption of Coconut Oil Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

36.     Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[20] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

37.     For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[21] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[22] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[23]

38.     In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[24] At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[25]

39.     The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced

---

[20] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 586.

7

a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[26]

40.     Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[27]

41.     Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[28]

42.     The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[29] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of fat.[30] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[31]   In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[32]

---

[26] *Id.* at 588.

[27] *Id.*

[28] *Id.* at 587.

[29] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 715.

43.    Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

44.    A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease. [33]

45.    Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid profiles.[34]  The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[35]

46.    Finally, in another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol, LDL, and apo B."[36] Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease. In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[37]

---

[33] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

[34] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J. Clin. Nutr. 190, 190 (1985).

[35] *Id.*

[36] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[37] *Id.*

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 12/15/19 PageID.4845 Page 128 of
Case 3:16-cv-00532-WQH-AGS Document 96-7 Filed 02/12/18 PageID.3768 Page 1 of 80
212

## III. Defendants' Manufacturing, Marketing, and Sale of Coconut Oil

### A. Defendants' History and Sale of Coconut Oil

47. Defendants have manufactured, distributed, marketed, and sold various Nature's Way brand coconut oil products on a nationwide, and indeed international basis for at least the past several years.

48. According to Nature's Way's website, its products are sold nationally at major retailers such as Sprouts Farmers Market, Whole Foods Market, and the Vitamin Shoppe.[38]

49. Nature's Way products are also available online at iHerb.com, Vitacost.com LuckyVitamin.com, Amazon.com, Drugstore.com, and many more "e-tailer" websites.

50. Nature's Way brand coconut oil products challenged in this lawsuit include at least the following, which are depicted below: (a) Extra Virgin Coconut Oil, and (b) Liquid Coconut Oil, which comes in a variety of flavors.




[38] Nature's Way, Store Locator, *available at* http://www.naturesway.com/Store-Locator.aspx?p=15673&z=48103&prx=10&ctry=271 (last visited Dec. 17, 2015).

10

51.  Nature's Way Extra Virgin Coconut Oil is available in several sizes including 16- and 32-fluid-ounce jars. Nature's Way Liquid Coconut Oil is available in several sizes, including 10- and 20-fluid-ounce bottles.

**B.  The Composition of the Nature's Way Coconut Oils**

52.  The Nutrition or Supplement Facts boxes, listed on Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil, respectively, are pictured below. Each 1 tablespoon (or 15 mL) serving of Nature's Way coconut oil (whether "Extra Virgin," or "Liquid") contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nature's Way coconut oil is 100% fat, 93% of which is saturated fat.



Extra Virgin                    Liquid

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

## IV. Defendants Market the Nature's Way Coconut Oil Products with Misleading Health and Wellness Claims

53. Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. Nielsen's 2015 Global Health & Wellness Survey, for instance, found that "88% of those polled are willing to pay more for healthier foods."[39]

54. Defendants are well aware of consumer preference for healthful foods, and therefore employ, and have employed, a strategic marketing campaign intended to convince consumers that defendants' Nature's Way coconut oil products are healthy, despite that they are almost entirely composed of unhealthy saturated fat.

55. Through statements placed directly on the labels of the Nature's Way coconut oil products, defendants market and advertise the products as both inherently healthy, and healthy alternatives to butter, margarine, and other oils, even though the products' total and saturated fat content render them both inherently unhealthy, and less healthy alternatives. Moreover, defendants' labeling claims are designed to conceal or distract consumers from noticing that their Nature's Way coconut oils are pure fat, almost all of which is unhealthy saturated fat.

---

[39] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS  Document 116-5  Filed 12/15/19  PageID.4248  Page 131 of
212
Case 3:16-cv-00532-WQH-AGS  Document 196-5  Filed 02/12/18  PageID.3771  Page 14 of 30

**A.** **Defendants Place Misleading Health and Wellness Claims Directly on the Nature's Way Extra Virgin Coconut Oil Label**

56.     Below is an exemplar of the front of Nature's Way's Extra Virgin Coconut Oil label.



*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 12/15/19 PageID.4249 Page 132 of
Case 3:16-cv-00532-WQH-AGS Document 96-2 Filed 02/12/18 PageID.3742 Page 15 of 30
212

57. Below are exemplars of the back and side of the Nature's Way's Extra Virgin Coconut Oil label.



58. Directly on the Nature's Way Extra Virgin Coconut Oil label, defendants claim the product has a "Variety of Healthy Uses." Defendants encourage consumers to "Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless." These claims taken individually and in context of the label as a whole, are false and misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

59. To further convince consumers to that the Nature's Way Extra Virgin Coconut Oil is healthy, defendants claim that the product is "ideal for exercise & weight loss programs." This claim taken individually and in context of the label as a whole, is false and misleading because the Nature's Way Extra Virgin Coconut Oil is actually unhealthy due to its high saturated fat content.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

60. To reinforce this misleading health message, defendants label the Extra Virgin Coconut Oil as "Premium Quality," "non-hydrogenated," and containing "no trans fat." These claims taken individually and in context of the label as a whole, even if literally true, are misleading because they suggest that the product is healthy, while in reality the Nature's Way Extra Virgin Coconut Oil is unhealthy due to its high saturated fat content.

61. In addition, defendants claim that their Nature's Way Extra Virgin Coconut Oil provides "Natural Energy" and contains "62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy." Defendants even recommend consumers "Take 1 tablespoon (14g) up to 4 times daily." These claims, taken individually and in context of the label as a whole, are false and misleading because Nature's Way Extra Virgin Coconut Oil is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

62. In conjunction with these misleading health claims, defendants suggest that their Nature's Way Extra Virgin Coconut Oil "be used in place of butter, margarine, shortening or other cooking oils." This misleadingly suggests that replacing butter, margarine, shortening or other cooking oils with Nature's Way Extra Virgin Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption unsaturated fat,[40] and despite that "Strong and consistent evidence from RCTs and statistical modeling in prospective cohort studies shows that replacing SFA with PUFA reduces the risk of CVD events and coronary mortality."[41]

---

[40] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are monounsaturated, and .5 of which are polyunsaturated, and lists a 14 gram serving of margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are monounsaturated, and 4 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, NDB No. 04611, Margarine, regular, *available at* http://ndb.nal.usda.gov/ndb/foods.

[41] USDA & HHS, Dietary Guidelines, supra n.12, Part D, Chapter 6 at 12.

15

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

63.     These claims, taken individually and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Extra Virgin Coconut Oil is healthy, when it is not, and that the product is healthier or more nutritious than butter, margarine, shortening or other cooking oils, which it is not.

64.     In sum, the totality of the Nature's Way Extra Virgin Coconut Oil label and packaging conveys the concrete message to a reasonable consumer that the product is healthy, and a more healthful alternative to butter, margarine, shortening or other cooking oils. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**B.      Defendants Place Misleading Health and Wellness Claims Directly on the Nature's Way Liquid Coconut Oil Label**

65.     Below is an exemplar of the front of the Nature's Way Liquid Coconut Oil label.



*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 12/15/18 PageID.4852 Page 135 of
212
Case 3:16-cv-00532-WQH-AGS Document 96-5 Filed 02/12/18 PageID.3748 Page 18 of 30

66.     Below are exemplars of the back and side of the Nature's Way Liquid Coconut Oil label.



67.     Defendants deceptively market their Nature's Way Liquid Coconut Oil with a variety of labeling claims intended to convince consumers that the product is healthy, and to conceal or distract from the fact that it is pure fat, almost all of which is unhealthy saturated fat.

68.     As with the Nature's Way Extra Virgin Coconut Oil, defendants label their Nature's Way Liquid Coconut Oil with the claim that it has a "Wide variety of healthy uses." This claim taken individually and in context of the label as a whole, is false and misleading because the product is actually unhealthy due to its high saturated fat content.

69.     Like the Nature's Way Extra Virgin Coconut Oil, defendants attempt to convince consumers that their Nature's Way Liquid Coconut Oil is "ideal for healthy lifestyles including exercise & weight loss programs." This claim, taken individually and in context of the label as a whole, is false and misleading because Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

70.     To reinforce this misleading health message, defendants label the Nature's Way Liquid Coconut Oil with the phrases "Premium," "non-hydrogenated," and "no trans fat." In addition, defendants claim that Nature's Way Liquid Coconut Oil provides "Natural Energy" and contains "13 g of medium chain triglycerides" or "93% MCTs." These claims taken individually and in context of the label as a whole, are false and misleading (even to the extent some may be literally true) because the Nature's Way Liquid Coconut Oil is actually unhealthy due to its high saturated fat content.

71.     In conjunction with these misleading health claims, defendants suggest that the Nature's Way Liquid Coconut Oil be used "as an alternative to butter, margarine or vegetable oil." This misleadingly suggests that replacing butter, margarine or vegetable oil with Nature's Way Liquid Coconut Oil is a healthy choice despite that doing so would increase consumption of saturated fat and decrease consumption of unsaturated fat,[42] and despite that "Strong and consistent evidence from RCTs and statistical modeling in prospective cohort

---

[42] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 of which are saturated, 3 of which are monounsaturated, and .5 of which are polyunsaturated; lists a 14 gram serving of margarine as being composed of 11 grams of fat, 2 of which are saturated, 5 of which are monounsaturated, and 4 of which are polyunsaturated; and lists a 13.6 gram serving of vegetable oil as being composed of 13.6 grams of fat, 1 of which is saturated, 3 of which are monounsaturated, and 9 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, NDB No. 04611, Margarine, regular, NDB No. 04670, Vegetable Oil. *available at* http://ndb.nal.usda.gov/ndb/foods.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

studies shows that replacing SFA with PUFA reduces the risk of CVD events and coronary mortality."[43]

72.     These claims, taken individually and in context of the label as a whole, misleadingly imply, by affirmative representations and material omissions, that Nature's Way Liquid Coconut Oil is healthy, when it is not, and that it is healthier or more nutritious than butter, margarine, or vegetable oil, which it is not.

73.     In short, the totality of the packaging conveys the concrete message to a reasonable consumer that the Nature's Way Liquid Coconut Oil is healthy, and a more healthful alternative to butter, margarine or vegetable oil. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**C.     The Nature's Way Website Contains Misleading Health and Wellness Claims About the Nature's Way Coconut Oil Products**

74.     The labels of the Nature's Way coconut oil products direct consumers to the Nature's Way website (www.naturesway.com), which defendants use as a platform for their health marketing campaign.

75.     Through statements on Nature's Way's website, defendants portray Nature's Way as a company devoted "To help[ing] [consumers] enhance their health," and represent that "[t]his has become the basis of everything we do. The very foundation of a growing legacy of trust. And an oath to our customers that we take incredibly seriously—Trust the Leaf®."[44]

76.     On its website, Nature's Way further claims that "The health properties of coconut oil have been known for thousands of years. Coconut oil naturally contains "good fats" called medium chain triglycerides (MCTs), which your body uses to produce energy.[]

---

[43] USDA & HHS, Dietary Guidelines, supra n.12, Part D, Chapter 6 at 12.

[44] Nature's Way, Our Story, http://www.naturesway.com/Our-Story.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

Adding coconut oil to your diet can help increase metabolism, and help fuel any healthy lifestyle."[45]

## IV.  The Labeling of the Nature's Way Coconut Oil Products Violates California and Federal Law

### A.  Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law

77.  Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 et. seq. (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, see id. § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto.").

78.  For the purposes of labeling, "a dietary supplement shall be deemed to be a food." See 21 U.S.C. 321(ff).

79.  The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. See 21 U.S.C. § 343-1.

80.  Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

### B.  The Nature's Way Coconut Oil Products' False and Misleading Labeling Claims Render the Products Misbranded Under California and Federal Law

81.  Defendants' deceptive statements described herein violate Cal. Health & Safety Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is "false or misleading in any particular."

---

[45] Nature's Way, Coconut Oil, http://www.naturesway.com/Category/Coconut-Oil.

82.  In addition, the products' labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

**C.   The Nature's Way Coconut Oil Products are Misbranded Because They Make Unauthorized Nutrient Content and Percentage Claims**

83.  The Nature's Way coconut oil products are misbranded because their labels bear nutrient content claims even though the products do not meet the requirements to make such claims.

84.  Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. See also Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

85.  Characterizing the level of a nutrient on food labels and labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders a product misbranded under 21 U.S.C. § 343(r)(1)(A).

86.  Defendants label both the Nature's Way Extra Virgin Coconut Oil, and the Nature's Way Liquid Coconut Oil with the phrases "non-hydrogenated" and "no trans fat." In addition, the label of Nature's Way Extra Virgin Coconut Oil bears the phrases "62% MCTs" and 62% (8,694 mg) medium chain fatty acids (MCTs) per serving," while the label of the Nature's Way Liquid Coconut Oil bears the phrases "93% MCTs" and "13 g of medium chain triglycerides."

87.  These phrases meet the definition of nutrient content claims because they characterize the level of trans fat, and fatty acids, in the coconut oil products, which are nutrients of the type required to be in nutrition labeling. See 21 C.F.R. § 101.13(b)(1).

88.  Under 21 C.F.R. § 101.13(h), a food that bears an express or implied nutrient content claim, and that contains more than 13 grams of total fat or 4 grams of saturated fat per serving, must also bear a disclosure statement on the label, immediately adjacent to the

claim, referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1). See also 21 C.F.R. § 101.13(q)(3)(ii) (requiring compliance with §101.13(h) for percentage claims).

89. Despite that both Nature's Way coconut oil products contain 14 grams of total fat and 13 gram of saturated fat per serving, their labels fail to bear these mandatory disclosure statements, which provide consumers with material nutrition information. Therefore, Nature's Way Extra Virgin Coconut Oil and Nature's Way Liquid Coconut Oil are misbranded.

90. Further, even if the Nature's Way coconut oil products had contained the required disclosures, they would still be misbranded because "no trans fat" is an unauthorized nutrient content claim that may not be used in the labeling of any foods. See Reid v. Johnston & Johnson, 780 F.3d 952, 962-63 (2015). The FDA similarly has no defined nutrient content claims for "non-hydrogenated," or any statements about MCTs, but all such claims must, in any event, be not misleading. See 21 C.F.R. § 101.13(i)(iii).

91. Plaintiff and members of the Class would not have purchased the Nature's Way coconut oil products if they knew the products were and are misbranded pursuant to California and federal regulations because their labels make unauthorized nutrient content claims despite containing disqualifying amounts of total and saturated fat and omit material information and disclosures.

**D.    The Nature's Way Coconut Oil Products are Misbranded Because They Make Unauthorized Health Claims**

92. In addition, the labels of the Nature's Way coconut oil products are misleading and misbranded because they claim that the oils are healthy, but the products do not meet the requirements for making such claims.

93. To "use the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness')" foods must satisfy specific "conditions for fat, saturated fat, cholesterol, and other nutrients." 21 C.F.R § 101.65(d)(2).

94.     The Nature's Way coconut oil products are "not specifically listed" in the table contained in 21 C.F.R § 101.65(d)(2)(i), and therefore are governed by section (F) of the table. See 101.65(d)(2)(i)(F).

95.     Under 21 C.F.R. § 101.65(d)(2)(i)(F), to use a "healthy" term, a food must (1) be "Low fat as defined in § 101.62(b)(2)," (2) be "Low saturated fat as defined in § 101.62(c)(2)," and (3) contain "At least 10 percent of the RDI [recommended daily intake] or the DRV [dietary reference values] per RACC [reference amount customarily consumed] of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." See 21 C.F.R. § 101.65(d)(2)(i)(F) (incorporating by reference total fat requirement, 21 C.F.R. § 101.62(b)(2), and saturated fat requirement, 21 C.F.R. § 101.62(c)(2)). In addition, the food must comply "with the definition and declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling." 21 C.F.R. § 101.65(d)(2)(iii).

96.     Section 101.62(b)(2)(i)(B) provides the applicable definition of "low fat" for the Nature's Way coconut oil products because they have RACCs (reference amounts customarily consumed) and labeled servings of less than 30 grams.

97.     Under section 101.62(b)(2)(i)(B), a food is low fat only if it "contains 3 g or less of fat per reference amount customarily consumed and per 50 g of food."

98.     The Nature's Way coconut oil products both contain 14 grams of total fat per RACC or labeled serving, and 50 grams of total fat per 50 grams. Thus the Nature's Way coconut oil products do not meet the total fat requirement in section 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

99.     Under section 101.62(c)(2), a food is "low saturated fat" only if it "contains 1 g or less of saturated fatty acids per reference amount customarily consumed and not more than 15 percent of calories from saturated fatty acids."

100.    The Nature's Way coconut oil products both contain 13 grams of saturated fat per RACC or labeled serving, and approximately 92 percent of calories come from saturated fat. The products therefore do not meet the saturated fat requirement in section

101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

101. Further, the Nature's Way coconut oil products do not contain "at least 10 percent of the RDI or the DRV per RACC of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber," 21 C.F.R. § 101.65(d)(2)(i)(F), and as a result, their use of a "healthy" term renders the products misbranded.

102. Finally, the Nature's Way coconut oil products, as explained above, fail to comply "with the definition and declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling," 21 C.F.R. § 101.65(d)(2)(iii), further rendering them misbranded.

103. In sum, the Nature's Way coconut oil products bear unauthorized claims that the products are healthy. The products do not meet the clear and specific criteria the FDA (and by extension, California) requires for using the term healthy (and variations) to describe a food or supplement.

104. Defendants' use of the term healthy (and variations) to describe the Nature's Way coconut oil products not only violates 21 C.F.R. § 101.65 and renders the products misbranded, but also misleads consumers regarding the nature of the oils, in the specific manner the regulations are intended to prevent.

## V. Plaintiff's Purchase, Reliance, and Injury

105. Plaintiff Sherry Hunter purchased Nature's Way Extra Virgin Coconut Oil. As best she can remember, she purchased the 16-ounce variety of Nature's Way Extra Virgin Coconut Oil in or around July 2015 from a Sprouts Farmers Market located at 690 3rd Ave., Chula Vista, CA 91910, for approximately $10.

106. When deciding to purchase Nature's Way Extra Virgin Coconut Oil, plaintiff read and relied on the following claims (or claims substantially similar to the following claims, which collectively conveyed the same health and wellness message as conveyed by the following claims) on the product's label:

a.    "Premium Quality"

Case 3:16-cv-00532-WQH-AGS Document 116-5 Filed 02/12/18/19 PageID.4260 Page 143 of
212
Case 3:16-cv-00532-WQH-AGS Document 96-1 Filed 01/12/18 PageID.3783 Page 26 of 30

   b. "Variety of Healthy Uses: Enjoy straight from the jar or supplement your diet by mixing into smoothies, spreading on bagels and toast, or adding to homemade energy bars. Be creative! The possibilities are endless."

   c. "non-hydrogenated, no trans fat"

   d. "Natural Energy: Provides 62% (8,694 mg) medium chain fatty acids (MCTs) per serving for energy."

   e. "Ideal for exercise & weight loss programs."

   f. "62% MCTs"

   g. "Natural Energy"

   h. "Recommendation: Take 1 tablespoon (14g) up to 4 times daily"

   i. "For cooking, can be used in place of butter, margarine, shortening or other cooking oils."

107. Based on these representations, plaintiff believed the Nature's Way Extra Virgin Coconut Oil was healthy, healthier than butter, margarine, shortening and other cooking oils, and would not raise or otherwise detriment their blood cholesterol levels.

108. When purchasing Nature's Way Extra Virgin Coconut Oil, plaintiff was seeking a product that had the qualities described on the Nature's Way Extra Virgin Coconut Oil label, namely, a healthy, nutritious food that was better than butter, margarine, shortening and cooking oils, the consumption of which would not increase their risk of CHD, stroke, and other morbidity.

109. The Nature's Way Extra Virgin Coconut Oil label's representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the products are not healthy but instead their consumption increases the risk of CHD, stroke, and other morbidity.

110. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Nature's Way had regarding the nutrients present in its coconut oils.

111. Plaintiff acted reasonably in relying on the health and wellness claims that defendants intentionally placed on the Extra Virgin Coconut Oil label with the intent to induce average consumers into purchasing it.

112. The Nature's Way coconut oil products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

113. Plaintiff paid more for the Nature's Way Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

114. For these reasons, the Nature's Way Extra Virgin Coconut Oil was worth less than what plaintiff paid for it.

115. Instead of receiving products that had actual healthful qualities, the products that plaintiff and the Class received were ones that are not healthy, but rather their consumption causes increased risk of CHD, stroke, and other morbidity.

116. Plaintiff would not have purchased Nature's Way Extra Virgin Coconut Oil if she knew that it was misbranded pursuant to California and FDA regulations, or that its labeling claims were false and misleading.

117. Plaintiff lost money as a result of defendants' deceptive claims and practices in that she did not receive what she paid for when purchasing Nature's Way Extra Virgin Coconut Oil.

118. Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the product.

119. Ms. Hunter remains in the market for, and interested in purchasing healthy cooking oils.

120. She regularly shops at stores such as Sprouts, where the Products are sold.

121. If she encountered the Products containing the same or similar health and wellness labeling claims in the future, she might reasonably assume that the Products had been reformulated to make them healthier, or that new scientific evidence supported the claims, and on that basis would consider and likely be interested in purchasing the Products

26

again. Without prospective injunctive relief requiring defendants to label the Products in a truthful manner, she and other consumers will be unable to determine whether a future label bearing similar claims is valid, or whether defendants have simply resumed misleading behavior, and thus will be unable to decide how best to spend her money.

122. The continued use of the challenged claims on the Products' labels threatens to repeatedly infringe upon the substantive right California's consumer protection statutes give plaintiff to be free from fraud in the marketplace.

123. Defendants' senior officers and directors allowed the Nature's Way coconut oil products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

124. While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in California who, at any time from four years preceding the date of the Original Complaint (January 28, 2016) to the time a class is notified, (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, Nature's Way Extra Virgin Coconut Oil, or Nature's Way Liquid Coconut Oil (the "Class").

125. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

126. Questions of law and fact common to plaintiff and the Class include:

    a. whether defendants communicated a message regarding healthfulness of their coconut oil products through their packaging and advertising;

    b. whether that message was material, or likely to be material to a reasonable consumer;

    c. whether the challenged claims discussed herein are false, misleading, or reasonably likely to deceive a reasonable consumer, because of the high saturated fat content of the Nature's Way coconut oil products;

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

     d.  whether defendants' conduct violates public policy;

     e.  whether defendants' conduct violates state and federal food statutes or regulations;

     f.  the proper amount of damages, including punitive damages;

     g.  the proper amount of restitution;

     h.  the proper injunctive relief, including a corrective advertising campaign; and

     i.  the proper amount of attorneys' fees.

127.  These common questions of law and fact predominate over questions that affect only individual Class Members.

128.  Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to defendants' conduct. Specifically, all Class Members, including plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the challenged products, and suffered economic injury because the products were and are misrepresented. Absent defendants' business practice of deceptively and unlawfully labeling the Nature's Way coconut oil products, plaintiff and Class Members would not have purchased the products.

129.  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

130.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

131.  Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

132.  Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

133.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

134.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

135.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

136.   The acts, omissions, misrepresentations, practices, and non-disclosures of defendants as alleged herein constitute business acts and practices.

### Fraudulent

137.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying an objective reasonable consumer test.

138.   As set forth herein, defendants' claims relating to the Nature's Way coconut oil products are likely to deceive reasonable consumers and the public.

### Unlawful

139.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- • The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

- • The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

- • The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

- • The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

140.   Plaintiff and Class Members are likely to continue to be damaged by defendants' deceptive trade practices, because defendants continue to disseminate

29

misleading information. Thus, injunctive relief enjoining defendants' deceptive practices is proper.

141. Defendants' conduct caused and continues to cause substantial injury to plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of defendants' unlawful conduct.

142. In accordance with Bus. & Prof. Code § 17203, plaintiff seeks an order enjoining defendants from continuing to conduct business through unlawful and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

143. Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Nature's Way's coconut oil products, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

144. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

145. The False Advertising Law ("FAL') provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

146. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

147. As alleged herein, the advertisements, labeling, policies, acts, and practices of defendants relating to the Nature's Way coconut oil products misled consumers acting reasonably as to the healthfulness of the products.

148.    Plaintiff suffered injury in fact as a result of defendants' actions as set forth herein because plaintiff purchased the Nature's Way coconut oil product in reliance on defendants' false and misleading marketing claims stating or suggesting that the product, among other things, is healthy, healthier than butter, margarine, shortening and other cooking oils.

149.    Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because defendants have advertised the Nature's Way coconut oil products in a manner that is untrue and misleading, which defendants knew or reasonably should have known, and omitted material information from the products' advertising.

150.    Defendants profited from the sale of the falsely and deceptively advertised Nature's Way coconut oil products to unwary consumers.

151.    As a result, plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which defendants were unjustly enriched.

152.    Pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff, on behalf of herself and the Class, seeks an order enjoining defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

### THIRD CAUSE OF ACTION
### Violations of the Consumer Legal Remedies Act,
### Cal. Civ. Code §§ 1750 et seq.

153.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

154.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

*Hunter v. Nature's Way Products, LLC et al.*, No. 16-cv-532-WQH-AGS
SECOND AMENDED COMPLAINT

155.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Nature's Way coconut oil products for personal, family, or household purposes by plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

        a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

        b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

        d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

156.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Nature's Way coconut oil products to unwary consumers.

157.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

158.    As a result, plaintiff and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Nature's Way coconut oil products sold to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution, and (e) attorneys' fees and costs.

159.    Pursuant to California Civil Code § 1782, on or around December 21, 2016, plaintiff notified defendants in writing by certified mail, return receipt requested, of her claims, and of the particular violations of § 1770 of the CLRA, but defendants failed to remedy the violations within 30 days.

160.    Plaintiff, on behalf of herself and the Class, seeks injunctive relief under Civil Code § 1782(d).

161.   In addition, because defendants failed to implement remedial measures, plaintiff, on behalf of herself and the Class, seeks restitution, and actual and punitive damages, including attorneys' fees.

162.   Filed concurrently with the original Complaint was a venue of affidavit as required under Civil Code § 1780(d).

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties,

### Cal. Com. Code § 2313(1)

163.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

164.   Through the Nature's Way coconut oil product labels, defendants made affirmations of fact or promises, or description of goods, which were "part of the basis of the bargain," in that plaintiff and the Class purchased the products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

165.   Defendants breached their express warranties by selling products that are not healthy, not healthier than butter, margarine, shortening, or other cooking oils, and that negatively affect cholesterol levels, increasing risk of CHD and stroke.

166.   That breach actually and proximately caused injury in the form of the lost purchase price that plaintiff and the Class paid for the Nature's Way coconut oil products.

167.   As a result, plaintiff seeks, on behalf of herself and other Class Members, their actual damages arising as a result of Nature's Way's breaches of express warranty.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability,

### Cal. Com. Code § 2314

168.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

169. Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of the Nature's Way coconut oil products, made representations to plaintiff and the Class that, among other things, the products are healthy.

170. Plaintiff and the Class bought the Nature's Way coconut oil products manufactured, advertised, and sold by defendants, as described herein.

171. Defendants are merchants with respect to the goods of this kind which were sold to plaintiff and the Class, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

172. However, defendants breached that implied warranty in that the Nature's Way coconut oil products are not healthy, are not healthier than butter, margarine, shortening or other cooking oils, and negatively affect cholesterol levels, increasing risk of CHD and stroke, as set forth in detail herein.

173. As an actual and proximate result of defendants' conduct, plaintiff and the Class did not receive goods as impliedly warranted by defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

174. Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the products' purchase price.

## PRAYER FOR RELIEF

175. Wherefore, plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against defendants as to each and every cause of action, and the following remedies:

A. An Order declaring this action to be a proper class action, appointing plaintiff as class representative, and appointing undersigned counsel as class counsel;

B. An Order requiring defendants to bear the cost of class notice;

C. An Order compelling defendants to conduct a corrective advertising campaign;

D. An Order compelling defendants to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

34

Case 3:16-cv-00532-WQH-AGS   Document 96-1   Filed 02/12/18   PageID.3793   Page 36 of 30

   E. An Order requiring defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

   F. An Order requiring defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

176. G. An Order requiring defendants to pay actual and punitive damages where permitted under law;

177. H. An award of attorneys' fees and costs; and

178. I. Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 12, 2018   /s/ Jack Fitzgerald

**THE LAW OFFICE OF
JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL
K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiff and the Proposed Class***

THE LAW OFFICE OF
PAUL K. JOSEPH, PC
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

THE LAW OFFICE OF
JACK FITZGERALD, PC
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public, | Case No: 3:16-cv-00532-WQH-AGS |
| Plaintiffs, | **DECLARATION OF JACK FITZGERALD IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC., | Judge:      William Q. Hayes |
| Defendant. | |

I, Jack Fitzgerald, declare:

1.    I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California, the Southern and Eastern Districts of New York, and the Western District of Wisconsin; and of the United States Court of Appeals for the Ninth Circuit. I make this Declaration based on my own personal knowledge in support of plaintiffs' motion for preliminary approval of the proposed class action settlement.

2.    A true and correct copy of the parties' proposed Class Action Settlement Agreement is attached hereto as <u>Exhibit 1</u>.

### **Discovery and Settlement Efforts**

3.    The parties served initial disclosures in April (plaintiff) and October (defendants) 2016.

4.    On September 26, 2016, plaintiffs served defendants with written discovery requests. In response to plaintiff's document requests, defendants produced nearly 40,000 pages of documents comprising, among other things, consumer research, labels and related business documents, pricing, sales, and science and expert related documents.

5.    Plaintiff also subpoenaed several third parties, obtaining a large amount of sales data.

6.    After reviewing these documents and other discovery responses, in March 2017, plaintiff's counsel took defendants' depositions pursuant to Fed. R. Civ. P. 30(b)(6), in Green Bay, Wisconsin. The following month, counsel deposed defendants' experts in Los Angeles and Ohio.

7.    In May 2017, defendants deposed plaintiff Sherry Hunter in a full day deposition.

8.    On February 21, 2018, the parties attended a settlement conference with Judge Schopler. After substantial negotiations, and only on the basis of a mediator's proposal Judge

1

Schopler made when the parties could not reach agreement themselves, the parties finally reached the instant settlement.

### The Qualifications of The Law Office of Jack Fitzgerald, PC

9. The Law Office of Jack Fitzgerald, PC ("LOJF") was formed in April 2013 and dedicates its practice almost entirely to prosecuting class action lawsuits. LOJF been appointed class counsel in numerous cases and helped victimized consumers recover millions of dollars. This specifically includes numerous cases involving the misleading advertising of foods as healthy, and in particular, the misleading advertising of coconut oil as unhealthy. Thus, we have an especially strong understanding of this case, both on merits and potential damages, not only from litigating against Nature's Way September 2016, but based on the portfolio of coconut oil class actions. LOJF has no conflicts, and have been and will continue prosecuting the action vigorously on behalf of the Class. The firm's resume is attached hereto as Exhibit 2, providing further detail.

### Counsel's View of the Case

10. On the merits, plaintiffs and their counsel believe there is a strong scientific case that coconut oil consumption is unhealthy, increasing LDL cholesterol and risk of heart disease, and that on this basis, there is a reasonably good chance a jury would find it misleading, within the meaning of California's consumer protection statutes, to advertise coconut oil in a manner stating or suggesting that it is healthy.

11. But here, the labels the defendants used changed significantly between May 2010 and July 2015, dropping the more explicit claims related to consumer health and instead utilizing less concrete health claims like "Ideal for exercise and weight loss programs."

12. During the litigation, defendants removed the primary challenged "health" claims from the label, such that the last sales of the products containing those claims occurred in June 2016. Therefore, the current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the injunctive relief contemplated by the settlement.

13. Given this background, I believe this is a strong result for the Class, in light of some of the unique issues in this case, particularly with respect to the ability of the Class to collect on a judgment.

14. In negotiating and ultimately agreeing to settle this matter on the terms embodied in the Agreement, we considered the benefits of settling the action to secure immediate relief with risks of proceeding with the litigation. Factors we considered include:

     a) The great discretion afforded to trial courts in deciding whether to grant or deny class certification, providing at least a possibility that this Court would deny certification of the proposed class, which would result in no recovery whatsoever for the Class;

     b) The arguments against certification of which plaintiff's counsel is already aware, such as the fact that coconut oil is also commonly used topically or that consumers may for other reasons not rely on challenged health claims;

     c) The substantial time and resources it would take to bring plaintiff's claims to trial, including the significant expense of hiring scientific, advertising/messaging, and damages experts to prove plaintiff's claims;

     d) The possibility, even if the Court certified the class, that the class might lose the case on the merits; and

     e) The possibility that the class would obtain, but be unable to collect on a judgment.

15. We believe these factors favor settlement in this case. The cost and risks attendant with preceding to trial are substantial. For example, Class Counsel estimate that the costs and expenses associated with proceeding through certification and trial would easily eclipse $1 million, and might therefore be equal to or greater than the Class's potential recovery if only a California class is certified. Even without taking into account the risks that certification might not be obtained or defendants would prevail at trial, this weighs strongly in favor of settlement.

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
DECLARATION OF JACK FITZGERALD

16.     One of the primary considerations was weighing the Class's potential recovery if proceeding through certification and trial against the relief provided by the Settlement Agreement. Based on information obtained during discovery, sales of the challenged products in California were approximately $10.2 million of the Extra Virgin product, and $2.1 million of the Liquid products. Reflecting its population, California generally accounts for 12-13%[1] of sales of retail items widely distributed nationwide, like these products. Accordingly, we project that nationwide sales were approximately $81.6 million for the Extra Virgin, and $16.8 million for the Liquid, for a total of about $98.4 million. Plaintiffs' damages experts estimated an average premium of about 13.1%. *See* Dkt. No. 60-4 at p. 43 of 268 (ECF header), Dennis Decl. Ex. 4 (Conjoint Results). Thus, the Common Fund represents about 14.3% of a nationwide class's hypothetical maximum potential recovery. We believe it is reasonable and advantageous to the Class to secure this immediate and certain relief, when weighing it against the substantial risk of obtaining no, or lesser recovery.

### Attorneys' Fees, Costs, and Incentive Award Likely to be Requested

17.     As we will detail in a forthcoming fee motion if the Settlement is preliminarily approved, LOJF and its co-counsel, The Law Office of Paul K. Joseph, PC, which have agreed to split fees equally, have incurred over $750,000 in fee lodestar, based on over 1,200 hours of work, and over $250,000 in out-of-pocket expenses. Nevertheless, as set forth in the Long Form Notice, we will seek no more than 33% of the common fund, or $610,500 in fees (representing a more than 20% discount on our actual lodestar). We will also seek on behalf of Plaintiff an incentive award of up to $7,500. Ms. Hunter has actively participated in the litigation since its inception. She has reviewed documents and pleadings, responded to discovery, attended the settlement conference, and was deposed for a full 8-hour day.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 22nd day of July, 2019, in San Diego, California.

/s/ Jack Fitzgerald
Jack Fitzgerald

---

[1] https://www.census.gov/quickfacts/fact/table/CA,US/PST045218.

4

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
DECLARATION OF JACK FITZGERALD

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC., <br><br> Defendant. | Case No: 3:16-cv-00532-WQH-AGS <br><br> **DECLARATION OF PAUL K. JOSEPH IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge:  William Q. Hayes |

I, Paul K. Joseph, declare as follows:

1.      I am a member in good standing of the state bar of California, and of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California. I make this based on my own personal knowledge in support of plaintiff's motion for preliminary approval of a proposed class action settlement.

2.      I have been practicing plaintiffs' side class action prosecution since 2012 and established the Law Office of Paul K Joseph, PC in May 2015. The Law Office of Paul K. Joseph, PC specializes in consumer protection class actions.

3.      I have significant experience in consumer protection class actions involving falsely advertise of foods products and dietary supplements, having devoted all of my practice to vindicating the rights of injured consumers through class actions. Before founding the firm, I was an associate at the Weston Firm, where I worked on numerous successful class actions, including:

- ***In re Qunol CoQ10 Liquid Labeling Litigation*, No. 11-cv-173-DOC (C.D. Cal.)** – Allegations that defendants misleadingly labeled a dietary supplement as providing "six times more absorption." Obtained certification of a nationwide class, *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524 (C.D. Cal. 2011), and avoided decertification following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *see Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012). Obtained class settlement obligating defendants to provide refunds and refrain from advertising the product as providing six times more absorption. *Bruno v. Quten Research Institute, LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013).

- ***In re Quaker Oats Labeling Litigation*, No. 10-cv-502-RS (N.D. Cal.)** – Allegations that Quaker labeled food products containing artificial trans fat with misleading health and wellness claims. In July 2014, the Honorable Richard Seeborg granted final approval to a settlement that required Quaker to remove

1

partially hydrogenated vegetable oils containing artificial trans fat from a wide variety of bar and oatmeal products.

- *Henderson v. The J.M. Smucker Company*, No. 2:10-cv-4524-GHK (C.D. Cal.) This action was the catalyst forcing the defendant to reformulate a children's frozen food production to remove trans fat. On June 19, 2013, the Honorable George H. King held the firm's client was a prevailing Private Attorney General and entitled to her costs and attorneys' fees.

4.     The Law Office of Paul K. Joseph, PC has substantial experience prosecuting false advertising food and dietary supplement class actions to vindicate the right of injured consumers. The firm's resume is attached hereto as Exhibit 1.

5.     Since being established, The Law Office of Paul K. Joseph, PC has recovered millions of dollars on behalf of consumers, including from manufacturers of coconut oils that placed false and misleading claims on the labels of their products.

6.     This includes three nationwide settlements against coconut oil manufacturers in matters alleging that the coconut oil products at issues bore false and misleading health and wellness claims. *See* Ex. 1.

7.     The Law Office of Paul K. Joseph, PC has no conflicts of interest in this matter and is devoted to obtaining the best results for the class and has invested substantial resources in this matter.

8.     Over the last three years, The Law Office of Paul K. Joseph, PC and The Law Office of Jack Fitzgerald, PC have been working to eradicate false and misleading health and wellness claims among coconut oil manufacturers.

9.     During that time we have brought claims against nine coconut oil manufacturers that have employed health and wellness labeling claims to enhance their sales in clear violation of federal and California food labeling laws that are intended to prevent consumer deception. Through our extensive efforts, our practices have gained a strong understanding of the merits of each case, including this case. This includes obtaining and reviewing tens of

thousands of documents from the manufacturers themselves as well as from third parties. Based on this discovery, we have an intimate understanding of the coconut oil market (including consumer perceptions and motives). We have also committed over hundreds of thousands of dollars to expert analyses of the scientific merits and damages.

10.     In short, these efforts provide us with an especially strong basis to evaluate the strengths and challenges of this case.

11.     In negotiating and ultimately agreeing to the settlement agreement, we considered all factors, including the strengths and weaknesses, that bear on this case.

12.     Regarding the merits, we believe that objective scientific evidence demonstrates scientific that coconut oil consumption is unhealthy in numerous respects. Thus, it is misleading, according to California's consumer protection statutes, to describe coconut oil with health and wellness claims.

13.     Nevertheless we are aware of certain individuals that, in direct contradiction to the scientific consensus, contend coconut oil is not necessarily unhealthy.

14.     Although we don't believe these views are credible, we recognize they could potentially create a question of fact, if not properly excluded.

15.     Of greater risk than the merits of this case are the procedural hurdles, particularly in obtaining certification for, and maintaining, a nationwide class. Further, the hurdle of establishing damages on a classwide basis is a very real hurdle.

16.     We believe this settlement is a strong result for the class considering the challenges specific to this case and, assuming these hurdles were overcome, our best estimate of potential damages that we may have been able to prove in this matter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed July 22, 2019, in San Diego, California.


/s/ Paul K. Joseph
Paul K. Joseph

*Hunter v. Nature's Way Prods., LLC et al.*, No. 3:16-cv-00532-WQH-AGS
DECLARATION OF PAUL K. JOSEPH

# Exhibit 1

THE LAW OFFICE OF

# PAUL K. JOSEPH

4125 W. Pt. Loma Blvd. #309 | San Diego, California 92110
Phone: 619.767.0356 | Fax: 619.331.2945

## Firm Resume – July 2019

**Overview**

The Law Office of Paul K. Joseph, PC, which was founded in 2015, specializes in consumer protection. The office has significant experience in consumer protection class actions involving falsely advertise of foods products and dietary supplements.

### Attorneys

**Paul K. Joseph**

Mr. Joseph has devoted nearly all of his practice to vindicating the rights of injured consumers through class actions. He has successfully prosecuted numerous consumer protection class actions, including against other coconut oil manufacturers for misleading health and wellness claims:

> *Boswell et al v. Costco Wholesale Corp.*, 8:16-cv-00278-DOC-DFM (C.D. Cal.)
> Allegations that Costco misleadingly and unlawful labeled its Kirkland Signature Coconut Oil with health and wellness claims. Obtained nationwide settlement that prohibits Costsco from using the challenged health and wellness claims on its coconut oil products. In addition, settlement provided $775,000 in monetary relief to the class.

> *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-00019510-CU-BT-CTL (San Diego County Super. Ct.)
> Allegations that BetterBody falsely and unlawful labeled its virgin and refined coconut oils with health and wellness claims. Obtained nationwide settlement that prohibits BetterBody's from using challenged health and wellness claims on its virgin and refined coconut oil products. In addition, settlement provided $1.1 in monetary relief to the class.

> *Ducorsky v. Premier Organics*, No. HG16801566 (Alameda County Super. Ct.)
> Allegations that Premier falsely and unlawful labeled its virgin coconut oil with health and wellness claims. Obtained nationwide settlement that prohibits Premier from using challenge health and wellness claims on its virgin coconut oil product. In addition, settlement provided $312,500 in monetary relief to the class.

Before founding his firm, Mr. Joseph was an associate at the Weston Firm, where he worked on numerous successful class actions including:

*In re Qunol CoQ10 Liquid Labeling Litigation*, No. 11-cv-173-DOC (C.D. Cal.) – Allegations that defendants misleadingly labeled a dietary supplement as providing "six times more absorption." Obtained certification of a nationwide class, *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524 (C.D. Cal. 2011), and avoided decertification following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *see Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012). Obtained class settlement obligating defendants to provide refunds and refrain from advertising the product as providing six times more absorption. *Bruno v. Quten Research Institute, LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013).

*In re Quaker Oats Labeling Litigation*, No. 10-cv-502-RS (N.D. Cal.) – Allegations that Quaker labeled food products containing artificial trans fat with misleading health and wellness claims. In July 2014, the Honorable Richard Seeborg granted final approval to a settlement that required Quaker to remove partially hydrogenated vegetable oils containing artificial trans fat from a wide variety of bar and oatmeal products.

*Henderson v. The J.M. Smucker Company*, No. 2:10-cv-4524-GHK (C.D. Cal.) This action was the catalyst forcing the defendant to reformulate a children's frozen food production to remove trans fat. On June 19, 2013, the Honorable George H. King held the firm's client was a prevailing Private Attorney General and entitled to her costs and attorneys' fees.

Mr. Joseph was admitted to practice law in California in 2012. He is a 2012 graduate of University of Michigan Law School, where he graduated *cum laude*. During law school, he also served as a judicial extern for the Honorable James Ware. Mr. Joseph spends substantial time on pro-bono work on behalf of at-risk youth and foster children.


## Richelle Kemler Vanden Bergh

Ms. Kemler is an experienced civil litigator who began practicing in 2004. Before joining the Law Office of Paul K. Joseph, PC, she was a partner at Joyce Childers LLP and was formerly with Glassman, Browning, Saltsman & Jacobs of Beverly Hills where she was primarily responsible for complex civil litigation, including representation of Playboy Enterprises, Inc., Allergan Pharmaceutical International, and Skechers USA, Inc. in defamation defense and product disparagement matters, as well as representing defamation victims against CNN, CBS, ABC, The New York Times, and the National Enquirer.

In 2017, Ms. Kemler joined The Law Office of Paul K. Joseph, PC. Since joining the office, Ms. Kemler has worked on numerous consumer class actions, including many involving false and misleading health and wellness claims on food products, including coconut oils. The cases Ms. Kemler has worked on include *Boswell et al. v. Costco Wholesale Corp.*, and *Ducorsky v. Premier Organics*, which as described above resulted in nationwide class settlements.

In addition to obtaining her Juris Doctorate from Loyola Law School in 2004, she obtained a Masters in Social Work from Arizona State University.

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Class Action Settlement, including its attached Exhibits, which are incorporated by this reference (the "Agreement"), is entered into by and between plaintiff Sherry Hunter, individually, and in her representative capacity on behalf of all others similarly situated ("the Settlement Class"), on the one hand, and defendants Nature's Way Products, LLC and Schwabe North America, Inc. (collectively, "Nature's Way"), on the other hand.  Ms. Hunter and Nature's Way are jointly referred to herein as the "Parties."  Capitalized terms used herein are defined in Section 1 herein or indicated in parentheses elsewhere in the agreement.

## RECITALS

A. **WHEREAS** on January 28, 2016, Ms. Hunter and Malia Levin filed a putative class action complaint in the Superior Court of California for the County of San Diego entitled *Sherry Hunter and Malia Levin v. Nature's Way Products, LLC, et al.*, Case No. 37-2016-00002933-CU-NP-CTL (the "Action"), in which they stated claims against Nature's Way for violations of California's Consumers Legal Remedies Act, Unfair Competition Law, California's False Advertising Law, and for Breach of Express and Implied Warranty on behalf of themselves, all others similarly situated individuals, and the general public.

B. **WHEREAS** on March 2, 2016 Nature's Way removed the Action to the United States District Court for the Southern District of California, and it was assigned case number 3:16-cv-00532-WQH-AGS.

C. **WHEREAS** after the Court's ruling granting in part and denying in part Nature's Way's motion to dismiss, Nature's Way answered the class action complaint and asserted various affirmative defenses on September 9, 2016.

D. **WHEREAS** on March 21, 2017, the Parties stipulated to dismiss Malia Levin's individual claims without prejudice, which the Court ordered on March 23, 2017.

E. **WHEREAS** on January 30, 2018, Ms. Hunter filed a First Amended Complaint, and on February 12, 2018, she filed a Second Amended Complaint, to which Nature's Way answered and asserted various affirmative defenses on February 26, 2018.

F. **WHEREAS** the Parties conducted a factual investigation and analyzed the relevant legal issues with regard to the claims in, and potential defenses to, the Action.  Ms. Hunter and her counsel contend that the claims asserted in the Action have merit, and that she and the putative class members are entitled to restitution and damages.  Nature's Way contends the claims asserted in the Action do not have merit, that Nature's Way has defenses that could eliminate or reduce liability and monetary recovery in this case, and that neither Ms. Hunter nor the putative class have been damaged in any sum whatsoever.

G. **WHEREAS** the Parties recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the claims through trial, possible appeals, and ancillary actions. The Parties also have taken into account the uncertain outcome and the

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 1 of 14

risk of any litigation, especially in multi-party actions such as this proceeding, as well as the difficulties and delays inherent in such litigation.

H.   **WHEREAS** the Parties engaged in arms-length negotiations and, on February 21, 2018, participated in a mandatory settlement conference before Magistrate Judge Andrew G. Schopler, and with the assistance of Judge Schopler, the principal terms of a settlement were reached, which, after additional arms-length negotiations, are embodied in this Agreement;

I.   **WHEREAS** the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement.  The Parties desire and intend to effect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW THEREFORE**, subject to Court approval, as hereinafter provided, it is hereby agreed by the Parties that, in consideration of the promises and covenants set forth in this Agreement and upon the entry by the Court of a Final Approval Order and the occurrence of the Final Settlement Effective Date, the Action, including the claims asserted by Ms. Hunter, individually and on behalf of the Class Members as defined herein, shall be settled and compromised upon the terms and conditions contained herein.

## 1.   DEFINITIONS

In addition to the terms defined above, the below-listed terms shall be defined for purposes of this Agreement.  Some of the definitions in this section use terms that are defined later in the section.

**1.1.**   "**Agreement**" means this Settlement Agreement and Release, including all Exhibits hereto.

**1.2.**    "**Claims Administrator**" means or refers to the professional claims administrator, RG2 Claims Administration LLC, and any successors chosen to effectuate the Agreement.

**1.3.**   "**Class**" or "**Class Members**" means all persons who, during the Class Period, purchased Nature's Way Extra Virgin Coconut Oil or Nature's Way Liquid Coconut Oil bearing at least one labeling claim challenged in this action for personal or household use.  Excluded from the Class are:  (a) persons or entities who purchased Coconut Oil for the purpose of resale or distribution; (b) persons who are directors and Officers of Nature's Way or its parent, subsidiary, or affiliate companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Agreement; (e) persons who signed a release of Nature's Way for compensation for the claims arising out of the facts or claims asserted in the Action; and (f) any judicial officer hearing this Action, including his or her immediate family members and employees.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e  | 2 of 14

1.4.    "**Class Period**" means January 28, 2012 to the date of preliminary approval of this Agreement.

1.5.    "**Class Representative**" means plaintiff Sherry Hunter in her representative capacity on behalf of the general public and the Class.

1.6.    "**Class Counsel**" means:

Jack Fitzgerald
**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Ste. 202
San Diego, California 92103
P | 619-692-3840
F | 619-362-9555

Paul Joseph
**The Law Office of Paul K. Joseph, PC**
4125 W. Pt. Loma Blvd, No. 309
San Diego, California 92110
P | 619-767-0356
F | 619-331-2943

1.7.    "**Court**" means the United States District Court for the Southern District of California.

1.8.    "**Common Fund**" means a qualified settlement fund (QSF) formed solely for purposes of effectuating this Agreement.

1.9    "**Nature's Way's Counsel**" or "**Defendant's Counsel**" means:

Kevin W. Alexander, Esq.
Thomas R. Watson, Esq.
Michael Bryant, Esq.
**GORDON & REES LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101
P | (619) 696-6700
F | (619) 696-7124

1.10    "**Coconut Oil**" means Nature's Way Nature's Way Extra Virgin Coconut Oil in either 16-ounce or 32-ounce jar, or Nature's Way Liquid Coconut Oil in either 10-ounce and 20-

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 3 of 14

ounce bottles, distributed by Nature's Way during the Class Period, and bearing at least one
labeling claim challenged in this action.

**1.11**   "**Fairness Hearing**" means the hearing at or after which the Court will make a
final decision whether to approve this Agreement as fair, reasonable, and adequate.

**1.12**   "**Final Approval Order**" means the Court order finally certifying the Class for
settlement purposes only and approving the settlement and this Agreement, as contemplated in
this Agreement.  "Final Approval" occurs on the date that the Court enters, without material
change, the Final Approval Order.

**1.13**   "**Final Effective Settlement Date**" shall be the date a judgment in the Action
becomes final and non-appealable, plus five (5) business days.

**1.14**   "**Full Class Notice**" means the legal notice of the terms of the proposed
Settlement, as approved by Plaintiff's Counsel, Defendant's Counsel, and the Court, to be
distributed according to a Notice Plan approved by the Court. The Full Class Notice shall be
substantially in the form attached as **Exhibit A** hereto, and/or any different or additional notice
that might be ordered by the Court.

**1.15**   "**Notice Date**" means thirty (30) calendar days after entry of the Preliminary
Approval Order.

**1.16**   "**Notice Plan**" means the plan for notice as described in the Declaration of
William Wickersham set forth in **Exhibit B** hereto.

**1.17**   "**Post-Challenged Label**" means a label for any Coconut Oil that no longer bears
any labeling claim challenged in this action.

**1.18**   "**Preliminary Approval Order**" means the order: (1) provisionally certifying the
Class for settlement purposes only and determining that the proposed settlement is within the
range for final approval; (2) determining that Ms. Hunter adequately represents the Class and
shall be its class representative; (3) appointing Class Counsel as counsel for the Class; (4)
approving the Notice Plan; and (5) setting a date for the Fairness Hearing, as contemplated in
this Agreement.

**1.19**   "**Request for Exclusion/Opt Out**" means any Class Member's request to be
excluded from the terms of this Agreement, by way of the procedures set forth in Section 3.6
herein.

**1.20**   "**Settlement**" means the settlement into which the Parties have entered to resolve
the Action.  The terms of the Settlement are set forth in this Agreement and the attached exhibits,
which are incorporated by reference herein.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* *(S.D. Cal.)*
P a g e  | 4 of 14

**1.21** "**Settlement Class**" means those persons who are members of the Class who have not properly and timely submitted a Request for Exclusion/Opt Out.

**1.22** "**Settlement Website**" means the website established by the Claims Administrator to aid in the administration of the Settlement.

**1.23** "**Product**" means any Coconut Oil, as defined above, purchased by any Class Member during the Class Period.

## 2. SETTLEMENT TERMS

**2.1. Certification of the Class.**

(a) For the purposes of Settlement and the proceedings contemplated herein only, and subject to Court approval, the Parties stipulate and agree that the Class shall be provisionally certified pursuant to Federal Rule of Civil Procedure 23 in accordance with the definition contained herein, that Ms. Hunter shall represent the Class for settlement purposes and shall be the Class Representative, and that Class Counsel shall be appointed as counsel for the Class.

(b) As soon as reasonably practicable, Ms. Hunter shall apply to the Court for entry of the Preliminary Approval Order, as provided in this Agreement.

**2.2 Injunction – Labeling Changes.** For a period of five (5) years commencing from the date the Court issues a Final Approval Order, Nature's Way will not advertise (including in print, on its website, on Coconut Oil Product labels or packaging, and in its sales pitches or public statements) its Coconut Oil Products using the following terms and phrases, or substantially similar terms or phrases:

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

However, this paragraph shall not apply if there is a change in law, regulations, science or FDA guidance that would make it appropriate to use the above-described terms and phrases. The current labels of Nature's Way Coconut Oil products do not include the above-described terms and phrases and are, therefore, in compliance with the terms described in this section.

**2.3 Common Fund for Class.** Within forty-five (45) days following the date of the Preliminary Approval Order, Nature's Way or any other entity on its behalf, shall deposit ONE MILLION EIGHT HUNDRED FIFTY THOUSAND dollars ($1,850,000.00) into a Common Fund, through the Claims Administrator, to be held in trust. The Common Fund shall be administered by the Claims Administrator. The Common Fund shall constitute the funds available to compensate Class Members, the Claims Administrator, Class Counsel, and Ms.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 5 of 14

Hunter. The Common Fund, after deducting any attorneys' fees and costs, class representative incentive payment, and notice and administration costs as approved and awarded by the Court, shall be paid to those Class Members who submit a valid claim, as determined by the Claims Administrator, within forty-five (45) days after commencement of the distribution of the Full Class Notice. Class Members who have their claims validated by the Claims Administrator and who provide a proof of purchase, in the form of receipt or Product packaging, will be reimbursed as follows: $3.00 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil, $6.00 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil, $3.50 for a 10-ounce jar of Liquid Coconut Cooking Oil, and $6.00 for a 20-ounce jar of Liquid Coconut Cooking Oil. Class Members without proof of purchase who have their claims validated by the Claims Administrator will be reimbursed those same amounts, but will be capped at reimbursement for three total units for claims with no proof of purchase. Nature's Way shall not be obligated to add any additional monies to the Common Fund. If the total amount of funds claimed by Class Members is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be distributed to Class Members who submitted Valid Claims on a pro-rata basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount, but that the total amount of claims paid to each Class Member shall be capped at 50% of the approximate average retail value of the products for which they are making claims. The approximate average retail value to be used for each product is as follows: Nature's Way semi-solid Extra Virgin Coconut Oil: $20 for a 32-ounce jar, and $10 for a 16-ounce jar; Nature's Way Liquid Coconut Cooking Oil: $20 for a 20-ounce bottle, and $11.50 for a 10-ounce bottle. If after that increase in funds to be distributed to Class Members, the total amount of funds claimed and to be distributed is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be paid to: American Heart Association, Inc., a 501(c)(3) nonprofit corporation. If the total amount of funds claimed by Class Members is greater than the total amount of the fund that is available for Class Members after costs and expenses, each claim validated by the Claims Administrator will be reduced on a pro-rata basis that is proportional to the value of each claim validated by the Claims Administrator.

  **2.4**   **Release of Common Funds.** Within seven (7) days following the entry of a Final Approval Order, the Claims Administrator shall pay to Class Counsel the amount of attorneys' fees and costs awarded by the Court, provided, however, that counsel shall be obligated to return to the Common Fund any fees if the amount is reduced prior to the Final Effective Settlement Date. On the Final Effective Settlement Date, the remaining funds in the Common Fund will become available to pay any Court-approved incentive award, and to compensate Class Members. In the event that the Agreement does not obtain final approval from the Court, the Common Fund shall be remitted back to the funding party.

  **2.5**   **Attorneys' Fees and Expenses, and Incentive Award**. No later than twenty-eight (28) days before the Fairness Hearing, or at such other time as required by the Court, the Class Representative and Class Counsel shall apply to the Court for an award, from the Common Fund, of attorney's fees and expenses incurred in prosecuting this Action, and an incentive award for the Class Representative. The Parties have not agreed to any particular amounts that the Class Representative or Class Counsel may seek. Nature's Way is not obligated to respond, but may respond to Class Counsel's fee motion and the Class Representative's motion for an incentive award in whatever manner it deems appropriate. Any Court-approved attorney's fees and

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 6 of 14

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4289   Page 172 of
212
Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 07/25/19   PageID.3689   Page 174 of 2

incentive award will be paid from the Common Fund in accordance with the provisions of paragraph 2.4. In the event the Court does not approve the attorneys' fees and costs requested by Class Counsel, or the Court awards fees and costs in an amount less than that requested by Class Counsel, such award shall not be a basis for rendering the entire Settlement null, void or unenforceable, provided however, that Class Counsel retains the right to appeal any decision by the Court regarding the Court's award of Attorneys' Fees and Costs.

     **2.6**     **Settlement Implementation Costs**.  All reasonable costs of retaining the Claims Administrator to effectuate the Settlement and provide Full Class Notice in the manner prescribed in this Agreement shall be paid from the Common Fund.

# 3. CLASS SETTLEMENT PROCEDURES

     **3.1.**     **Settlement Approval**.  As soon as practicable after the signing of this Agreement, Ms. Hunter shall prepare and file an application seeking the following orders from the Court: (1) preliminary approval of this Agreement as fair, reasonable, and adequate; (2) preliminary determining that the Class meets all applicable requirements of Federal Rule of Civil Procedure 23, and conditionally certify the Class for purposes of the Agreement under Rule 23 for settlement purposes only; (3) approving and appointing the Claims Administrator; (4) approving the form, manner, and content of the Notice Plan described in Section 3.2 and Exhibit B; (5) setting the date and time of the Fairness Hearing and related proceedings; and (6) appointing Ms. Hunter as Class Representative, and Ms. Hunter's counsel as Class Counsel for settlement purposes only.

     **3.2.**     **Full Class Notice**.  Subject to Court approval as provided in Section 3.1, the Parties agree that no later than thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator will provide the Class with notice of the proposed settlement via digital publication notice, consistent with the manner set forth in the Notice Plan (**Exhibit B**).

     **3.3.**     **Claims Administrator Will Administrator Claims Process.**

i.     The Claims Administrator will administrator the claims process and oversee the distribution of settlement proceeds to Class Members in accordance with the terms and conditions of the Settlement and orders of the Court.

ii.     The Claims Administrator will review and validate all claims submitted by Class members.  The Claims Administrator shall have the discretion to review claims with the objectives of efficiency and effecting substantial justice to the Parties and the Class Members.  The Claims Administrator shall have the right to contact Class Members to validate claims.  Issues regarding the validity of claims that cannot be resolved by the Claims Administrator shall be submitted to Class Counsel and Nature's Way's Counsel for resolution and, if no resolution is reached, to the Court.  Nature's Way shall have the right to seek the review of any claim handled by the Claims Administrator.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e  | 7 of 14

**3.4.   Objections**.  Any Class Member who wishes to object to the Settlement must file a signed, written objection with the Court, and serve copies on Class Counsel and Defense Counsel, no later than fourteen (14) days before the Fairness Hearing (or other date required by the Court).  Written objections must set forth the following:

  i.   The name of this Action ("*Sherry Hunter v. Nature's Way, et al.*, Case No. 3:16-cv-00532-WQH-AGS");

  ii.   The full name, address, and telephone number of the person objecting;

  iii.   The word "Objection" at the top of the document;

  iv.   An explanation of the basis upon which the person claims to be a Class member;

  v.   In clear and concise terms, the legal and factual arguments supporting the objection;

  vi.   The identity (name, address, and telephone number) of any counsel representing the person who will appear at the Fairness Hearing;

  vii.   A statement confirming whether the person intends to personally appear and/or testify at the Fairness hearing; and the person's signature or the signature of the person's duly authorized counsel or other duly authorized representative.

Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections, whether by a subsequent objection, intervention, appeal, or any other process.  Unless otherwise permitted by the Court, Class Members shall not be entitled to speak at the Fairness Hearing unless they have complied with this paragraph 3.4.

**3.5.   Intention to Appear at Fairness Hearing.**  Any Class Member who wishes to be heard at the Fairness Hearing must file a signed, written Notice of Intention to Appear with the Court and serve copies on Class Counsel and Defense Counsel no later than forty-five (45) days following the Notice Date (or other date required by the Court).  The Notice of Intention to Appear must set forth the following:

  i.   The name of this Action ("*Sherry Hunter v. Nature's Way, et al., Case No.* 3:16-cv-00532-WQH-AGS");

  ii.   The full name, address, telephone number, and last four digits of the social security number of the person intending to appear at the Fairness Hearing;

  iii.   The words "Notice of Intention to Appear" at the top of the document; and

  iv.   The identity (name, address, and telephone number) of any counsel who will speak on the person's behalf.

**3.6.   Requests for Exclusion/Opt Outs.**  Any Class Member who wishes to be excluded from (or "opt out" of) the Settlement must submit a written, signed Request for Exclusion to the Claims Administrator no later than forty-five (45) days following the Notice Date (or other date required by the Court) (the "Opt-Out Deadline"). Request for Exclusion

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 8 of 14

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4291   Page 174 of
212
Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/25/19   PageID.3971   Page 174 of 212

forms will be available for download on the settlement website, in substantially the form attached as **Exhibit C** hereto. Requests for Exclusion must be personally signed by the Class Member who seeks to opt out. No Class Member may opt out by having a request to opt out submitted by an actual or purported agent or attorney acting on behalf of the Class Member.  No opt out request may be made on behalf of a group of Class Members—i.e., so called "mass" or "class" opt outs are not allowed. Each Class Member who does not, on or before the Opt-Out Deadline, submit a Request for Exclusion substantially in compliance with this Section, shall be deemed to participate in the Settlement and all releases provided in this Agreement.  For purposes of determining timeliness, Requests for Exclusion shall be deemed to have been submitted on the date postmarked by the postal service or other expedited delivery service.

       **3.7.**    **CAFA NOTICE.**  Nature's Way, either directly or through the Claims Administrator (though not with funds from the Common Fund), shall send all notices and information required by 28 U.S.C. Sec 1715 to the appropriate federal and state public officials in accordance with the time requirements set forth therein.

       **3.8.**    **Motion for Final Approval**.  No later than twenty-eight (28) days before the Fairness Hearing, or at such other time required by the Court, Ms. Hunter shall move the Court for final approval of the Settlement.

## 4.     FINAL APPROVAL ORDER AND RELEASES.

       **4.1.**    **Approval of This Agreement.**  As soon as practicable after execution of this Agreement, counsel for all Parties will take all necessary and appropriate steps to secure the Court's approval of this Agreement as set forth herein.

       **4.2.**    **Final Approval Order**.  This agreement is subject to and conditioned upon the issuance by the Court of the Final Approval Order that finally certifies the Class for the purposes of settlement only, and grants final approval of the Settlement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' perforce of their continuing rights and obligations hereunder.

       **4.3.**    **Release of Nature's Way and Schwabe North America by All Class Members**.  Upon the Final Effective Settlement Date, Ms. Hunter and each member of the Settlement Class, and each of his or her successors, assigns, legatees, heirs, and personal representatives, hereby release and forever discharge Nature's Way and Schwabe North America, and each of their respective parents, sister and subsidiary corporations, affiliated entities, predecessors, successors and assigns, and any of their present and former directors, officers, employees, shareholders, agents, partners, licensors, privies, representatives, attorneys, accountants, insurers, manufacturers, retailers, distributors or any of them (collectively, "Released Parties"), from any action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, arising out of the conduct alleged or otherwise referred to in the Action, specifically any claim arising from the purchase of any Coconut Oil product (hereinafter "Released Claims").  It is expressly understood that, to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e  | 9 of 14

**4.4.     Waiver of California Civil Code section 1542**.  In addition, with respect to the Released Claims, Ms. Hunter, on behalf of herself and on behalf of the Class as Class Representative, expressly and affirmatively waives California Civil Code section 1542 to the fullest extent permitted by law, which states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Ms. Hunter, on behalf of herself and on behalf of the Class as Class Representative, hereby waives any and all federal and state statutes similar in substance, meaning, or application to California Civil Code section 1542.

**4.5.     Release of Plaintiff Persons.** Upon the Final Effective Settlement Date, Nature's Way will be deemed to have, and by operation of the judgment will have fully, finally, and forever released, relinquished, and discharged plaintiffs Sherry Hunter, Malia Levin, and their counsel, The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC, and each of their attorneys (collectively the "Released Plaintiff Persons"), from all claims, demands rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Nature's Way has or may have against the Released Plaintiff Persons arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action, and in connection with the conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

**4.6.     Covenant Not To Sue.** Upon the Final Effective Settlement Date, Ms. Hunter and each Class Member shall be deemed to have given and will be bound by the Covenant Not To Sue in favor of each Released Party.  "Covenant Not To Sue" means for and in consideration of the Settlement, each Class Member shall be deemed to have covenanted that he or she will not in the future: (1) assert any claim for economic injury or for an injunction related to the Coconut Oil products and arising out of the facts and claims asserted in the Action; or (2) assert or maintain any Released Claim, directly or indirectly, against any Released Party in any court or other forum on behalf of the Class Member.

## 5.     TERMINATION

5.1     This Agreement is being entered into only for the purpose of settlement.  In the event that (a) the Court does not approve the Settlement or a Final Approval Order and Judgment is not entered for any reason, or (b) the Final Effective Settlement Date does not occur for any reason, or (c) if the number of Class Members who exercise their rights to opt out under the terms of this Agreement exceeds a number separately agreed to by the Parties, then either party

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 10 of 14

may declare void ab initio the Agreement and Preliminary Approval Order, and all of their
provisions shall be vacated by its own terms, and the Action shall revert to the status that existed
prior to the execution date of this Agreement, including no certification of a class; and no term of
this Agreement or any draft thereof, or of the negotiation, documentation, or other part or aspect
of the Parties' settlement discussions, shall have any effect, nor shall any such matter be
admissible in evidence for any purpose in the Action, or in any other proceeding.

      5.2     In the event that there is a change in state or federal food labeling laws or
regulations that expressly permits the use of any of the terms listed in Section 2.2, the injunction
provided in Section 2.2 shall terminate automatically upon that occurrence and Nature's Way
may label and market its Coconut Oil Products in accordance with such state or federal laws or
regulations.  Notwithstanding the foregoing, every other term of this Agreement shall remain in
full force and effect.

## 6.    ADDITIONAL PROVISIONS.

**6.1    No Admission of Liability / For Settlement Purposes Only**.

A.   This Agreement reflects the compromise and settlement of disputed claims among the
Parties and is for settlement purposes only.  Neither the fact of, or any provision
contained in this Agreement or its Exhibits, nor any action taken hereunder, shall
constitute, be construed as, or be admissible in evidence as an admission of:  (a) the
validity of any claim or allegation by Ms. Hunter, or of any defense asserted by
Nature's Way, in the Action or any other action or proceeding; or (b) any
wrongdoing, fault, violation of law, or liability of any kind on part of any Party,
Defendant, Release Party, Class Member or their respective counsel.

B.   The Agreement is without prejudice to the rights of each Releasing Party and each
Released Party to:  (a) seek or oppose class certification in the Action should the
Agreement not be finally approved or implemented for any reason; (b) seek or oppose
class certification in any other action (except to the extent barred by the Releases
and/or the Covenant Not to Sue), or (c) use the certification of the Settlement Class to
oppose certification of any other proposed or existing class arising out of the facts or
claims asserted in the Action.

      **6.2    Fair, Adequate, and Reasonable Settlement.**  The Parties believe this
Settlement is fair, adequate, and reasonable, and the Parties arrived at this Settlement in arms-
length negotiations, taking into account all relevant factors, present and potential.

      **6.3    Change of Time Periods**.  The time periods and/or dates described in this
Agreement with respect to the giving of notices and notices of hearings are subject to approval
and change by the Court or by the written agreement of counsel for the Parties, without notice to
the Class.

      **6.4    Real Parties in Interest**.  In executing this Agreement, the Parties warrant and
represent that they, including Ms. Hunter in her representative capacity on behalf of the Class,

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 11 of 14

are the only persons having any interest in any of the claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Action, and, except as provided herein, neither said claims nor any part thereof have been assigned, granted, or transferred in any way to any other person, firm, or entity.

6.5     **Voluntary Agreement**.  This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

6.6     **Binding on Successors**.  This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

6.7     **Parties Represented by Counsel**.  The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

6.8     **Authorization**.  Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

6.9     **Entire Agreement**.  This Agreement and Exhibits attached hereto contain the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the subject matter hereof.  This Agreement is executed without reliance upon any promise, representation, or warranty by any Party or any representative of a Party, other than those expressly set forth herein.

6.10     **Construction and Interpretation**. Neither Party nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them. This Agreement has been, and must be construed to have been, drafted by all Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

6.11     **Headings**.  The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

6.12     **Exhibits**. The exhibits to this Agreement are integral parts of the Agreement and Settlement and are hereby incorporated and made a part of this Agreement.  The Parties contemplate that certain of the Exhibits relating to Class Notice may be modified by the Court or by subsequent agreement of Class Counsel and Nature's Way's counsel (with approval by the Court) prior to dissemination to Class members.

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 12 of 14

**6.13    Modifications and Amendments**.  No amendment, change, or modification of this Agreement or any part thereof shall be valid unless in writing signed by the Parties and approved by the Court, except as otherwise expressly provided herein.

**6.14    Governing Law**.  This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with those laws.

**6.15    Further Assurances**.  Each of the Parties hereto shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of his or her or its obligations hereunder to carry out the express intent of the Parties hereto.

**6.16    Agreement Constitutes a Complete Defense**.  To the extent permitted by law this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

**6.17    Execution Date**.  This Agreement shall be deemed executed upon the last date of execution of all of the undersigned.

**6.18    Continuing Jurisdiction.**  The Parties agree that the Court has, and shall continue to have, jurisdiction to make any orders as may be appropriate to approve awards of attorneys' fees and costs pursuant hereto, and to supervise the administration of and the distribution of money funded pursuant to this Agreement.

**6.19    Counterparts**.  This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.  The several signature pages will be collected and annexed to one or more documents to form a complete counterpart.  Photocopies or "pdfs" of executed copies of signatures shall have the same force and effect as originals.

**6.20    Resolution of Disputes**.  The Parties shall cooperate in good faith in the administration of this Settlement.  Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court.

**6.21    Severability.**  Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable, such provision shall be ineffective to the extent of such invalidity or unenforceability, without invalidating the remainder of such provision or the remaining portions of the Agreement.

**6.22    Confidentiality of Documents and Information.**  All orders, agreements and designations regarding the confidentiality of documents and information remain in effect, and all Parties and counsel remain bound to comply with them.  Within thirty (30) days of the Final Settlement Effective Date, the Parties will certify in writing that they have used their best efforts to destroy or return all documents and information produced in the Action that were designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only."  It is stipulated and agreed

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS* (S.D. Cal.)
P a g e | 13 of 14

that no money relief can remedy a breach of this provision such that immediate injunctive relief is proper and because of a breach of this provision by disclosure of or failure to destroy or return materials designated as "Confidential" or "Attorneys' Eyes Only," the prevailing party is entitled to reasonable Attorneys' fees and costs associated with bringing and prosecuting such enforcement action or motion.

**PLEASE READ THIS DOCUMENT CAREFULLY. THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF, the Parties hereto, acting by and through their respective counsel of record, have so agreed.**

Dated: 7-21-19

_____
Plaintiff Sherry Hunter, for herself and for the Class

Dated: _____

_____
Defendants Nature's Way, LLC and Schwabe North America, Inc.
By (*print*): Michael Devereaux, CEO

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 14 of 14

that no money relief can remedy a breach of this provision such that immediate injunctive relief is proper and because of a breach of this provision by disclosure of or failure to destroy or return materials designated as "Confidential" or "Attorneys' Eyes Only," the prevailing party is entitled to reasonable Attorneys' fees and costs associated with bringing and prosecuting such enforcement action or motion.

**PLEASE READ THIS DOCUMENT CAREFULLY.  THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF, the Parties hereto, acting by and through their respective counsel of record, have so agreed.**

Dated: _____

 

 

Plaintiff Sherry Hunter, for herself and for the Class

Dated: _Jul 18, 2019_____

 

Defendants Nature's Way, LLC and Schwabe North America, Inc.
By (*print*): Michael Devereaux, CEO

SETTLEMENT AGREEMENT AND RELEASE
*Sherry Hunter v. Nature's Way, et al.*
*Case No. 3:16-cv-00532-WQH-AGS (S.D. Cal.)*
P a g e | 14 of 14

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public, | Case No: 3:16-cv-00532-WQH-AGS |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| v. | |
| NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC., | Hon. William Q. Hayes |
| Defendant. | |

WHEREAS, the above-entitled action is pending before this Court (the "Action");

WHEREAS, Plaintiff Sherry Hunter has moved, pursuant to Federal Rule of Civil Procedure 23(e), for an order approving the Settlement of this Action in accordance with the Class Action Settlement Agreement ( "Settlement Agreement") attached as Exhibit 1 to the Declaration of Jack Fitzgerald in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (the "Motion"), which Settlement Agreement sets forth the terms and conditions for a proposed classwide settlement of the Action;

WHEREAS, the Court, has read and considered the Settlement Agreement and considered Plaintiff's Motion; and

WHEREAS, all capitalized terms herein have the same meanings as set forth in the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY FOUND AND ORDERED:**

1.     The Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all members of the Settlement Class.

2.     The Court finds on a preliminary basis that the Settlement as set forth in the Settlement Agreement falls within the range of reasonableness. Therefore, the Court preliminarily approves the Settlement Agreement and the Settlement set forth therein, as fair, reasonable, and adequate to the Class.

3.     The Court conditionally certifies, for settlement purposes only, a Class defined as all persons in the United States who purchased, for personal or household use, Nature's Way Extra semi-solid Extra Virgin Coconut Oil in 16-ounce or 32-ounce jars and/or Nature's Way Liquid Coconut Cooking Oil in 10-ounce or 20-ounce jars.

4.     The Court finds, for settlement purposes only, that class certification under Federal Rule of Civil Procedure 23(b)(3) is appropriate in the settlement context because (a) the Settlement Class Members are so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of the plaintiffs and

proposed Class Representatives are typical of the claims of the Settlement Class; (d) the plaintiffs and proposed Class Representatives and their counsel will fairly and adequately represent and protect the interests of the Settlement Class Members; (e) questions of law or fact common to the Settlement Class Members predominate over any questions affecting only individual the Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5.     The Court appoints Plaintiff Sherry Hunter as Class Representative.

6.     The Court appoints The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC as Class Counsel.

7.     The Court finds that, subject to the Final Approval hearing, the proposed Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class. The Court also finds that the Settlement Agreement: (a) is the result of serious, informed, non-collusive arms'-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case and made with the assistance and supervision of the Hon. Andrew G. Schopler (b) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

8.     The Court hereby approves RG2 to act as Claims Administrator, and approves the form and content of the Class Notice in the form attached to the Settlement Agreement as Exhibit A (Long Form Notice). The Court finds that dissemination of the Class Notice as proposed in the Settlement Agreement meets the requirements of Federal Rule of Civil Procedure 23(c)(2), and due process, and further constitutes the best notice practicable under the circumstances. Accordingly, the Court hereby approves the Notice Plan as set forth in Section V of the Settlement Agreement and in the Declaration of William W. Wickersham, attached to the Settlement Agreement as Exhibit B.

9.      The Court adopts the schedule proposed by Plaintiff, as follows:

| Event | Day | Approximate Weeks After Preliminary Approval |
|---|---|---|
| Date Court grants preliminary approval | 0 | - |
| Deadline to commence direct notice | 7 | 1 week |
| Deadline to complete direct notice | 30 | 4 weeks |
| Deadline to make a claim or opt out | 45 | 6 weeks |
| Deadline for plaintiffs to file Motions for Final Approval, Attorneys' Fees, and Incentive Awards | 60 | 8 weeks |
| Deadline for objections | 70 | 9 weeks |
| Deadline for replies to objections[1] | 75 | 10 weeks |
| Final approval hearing date | 84 | 12 weeks |

10.     A hearing (the "Final Approval Hearing") has been reserved on _____, 2019, to be held before this Court to determine whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be finally approved by the Court; whether a Judgment as provided in the Settlement Agreement should be entered; and to determine any amount of fees, costs, and expenses that should be awarded to Class Counsel and any award to the Plaintiffs for their representation of, or service on behalf of, the Settlement Class.

11.     The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the members of the Settlement Class, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement. The Court may approve the settlement, with such modifications as may be agreed to by the settling Parties, if appropriate, without further notice to the Settlement Class.

---

[1] The Parties may, but are not required to respond to any objections.

3

12.    All discovery and proceedings in this Action are stayed until further order of this Court, except as may be necessary to implement the settlement or comply with the terms of the Settlement Agreement.

13.    By entering this order, the Court does not make any determination as to the merits of this case. Preliminary approval of the Settlement Agreement is not a finding or admission of liability by Defendants.

14.    The Court retains jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement Agreement and the settlement described therein.

**IT IS SO ORDERED.**

Dated: _____, 2019

_____
Hon. William Q. Hayes
United States District Judge

4

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

**NOTICE OF CLASS ACTION SETTLEMENT**

*SHERRY HUNTER. v. NATURE'S WAY PRODUCTS, LLC ET AL.*,
CASE NO. No. 16-cv-532-WQH-BLM (S.D. Cal.)

***The United States District Court has authorized this notice.***
***This is not a solicitation from a lawyer.***

***IF YOU PURCHASED NATURE'S WAY EXTRA VIRGIN COCONUT OIL, OR LIQUID COCONUT OIL, YOU MAY BE ENTITLED TO A CASH PAYMENT***



<span style="color:red">THIS NOTICE CONCERNS YOUR LEGAL RIGHTS
PLEASE READ IT CAREFULLY</span>

WHY ARE YOU RECEIVING THIS NOTICE?

• This settlement resolves a lawsuit (the "Action") against Nature's Way Products, LLC, and Schwabe North America, Inc., (referred to collectively as "Nature's Way"), alleging that Nature's Way, which marketed and sold the Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil that are the subject of the Action, violated certain California laws by misleadingly marketing the products as healthy. However, to avoid the cost of litigation, and potential risks for both sides, the Parties have reached a Stipulation of Class Action Settlement, which was preliminarily approved by the United States District Court for the Southern District of California on [DATE]. Nature's Way denies the allegations and any wrongdoing.

• If you purchased Nature's Way Extra Virgin Coconut Oil in a 16-ounce or 32-ounce jar or Nature's Way Liquid Coconut Oil in a 10-ounce or 20-ounce bottle, distributed by Nature's Way during the Class Period (January 28, 2012 to the date of preliminary approval), for your own personal or household use, and not for resale, bearing at least one of the claims below, you may be a member of the settling Class.

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat," unless the statement, "See Supplement Facts for total fat and saturated fat content," was displayed near the phrase "Non-hydrogenated, no trans fat"

• The Court requires this Notice because you have the right to know about the proposed Settlement and about all of your options before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and how to get them.

• All Class Members who do not exclude themselves from the settlement will receive the relief provided for in the settlement and will be bound by the orders issued by the Court regarding the settlement.

WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

• The two sides disagree on what relief, and how much, could have been won, if any, if the Class won at trial. The settlement avoids costs and risks to you from continuing the lawsuit, provides relief to affected persons like you, and releases Nature's Way and others from liability for the related claims.

• The proposed class action settlement will provide $1.85 million in funds to pay all aspects of Settlement (the "Common Fund"), including Class Member claims, notice, administration, plaintiff's service award, legal expenses, and attorneys' fees. Nature's Way has already voluntarily removed the challenged claims from the label of the Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil products, and has agreed to refrain in the future from using the following terms and phrases, or substantially similar terms or phrases:

- "Healthy"
- "Ideal for Exercise and Weight Loss Programs"
- "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
- "Non-hydrogenated, no trans fat" unless the statement is made with the disclosures required by the FDA

• Class Members who have their claims validated by the Claims Administrator and who provide a proof of purchase, in the form of receipt or Product packaging, will be reimbursed as follows: $3.00 for a 16-ounce jar of semi-solid Extra Virgin Coconut Oil, $6.00 for a 32-ounce jar of semi-solid Extra Virgin Coconut Oil, $3.50 for a 10-ounce jar of Liquid Coconut Cooking Oil, and $6.00

for a 20-ounce jar of Liquid Coconut Cooking Oil. Class Members without proof of purchase who have their claims validated by the Claims Administrator will be reimbursed those same amounts, but will be capped at reimbursement for three total units for claims with no proof of purchase.

• If the total amount of funds claimed by Class Members is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be distributed to Class Members who submitted Valid Claims on a pro-rata basis that is proportional to the value of each Valid Claim, with such distribution occurring concurrently with the distribution of the original refund amount, but that the total amount of claims paid to each Class Member shall be capped at 50% of the approximate average retail value of the products for which they are making claims. The approximate average retail value to be used for each product is as follows: Nature's Way semi-solid Extra Virgin Coconut Oil: $20 for a 32-ounce jar, and $10 for a 16-ounce jar; Nature's Way Liquid Coconut Cooking Oil: $20 for a 20-ounce bottle, and $11.50 for a 10-ounce bottle. If after that increase in funds to be distributed to Class Members, the total amount of funds claimed and to be distributed is less than the total amount of the fund that is available to Class Members after costs and expenses, the excess funds will be paid to American Heart Association.

• Class Counsel will petition the Court for a fee award in an amount no greater than 33% of the common fund ($610,500), and actual litigation expenses, and Class Representative will seek a service award of no more than $7,500. Class Counsel have agreed to split any fees awarded 50% to The Law Office of Jack Fitzgerald, PC, and 50% to The Law Office of Paul K. Joseph, PC.

BACKGROUND ON THE LAWSUIT & SETTLEMENT

The lawsuit seeks to obtain compensation for an alleged violation of California consumer protection statutes including the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA), and for Breach of Express and Implied Warranties.

After the parties engaged in substantial investigation, discovery, and settlement negotiations, plaintiff and defendants have reached an agreement providing for the settlement of the lawsuit. The terms of the proposed Settlement are set forth in the Settlement Agreement filed with the Court, which is also available online, at www.NaturesWayCoconutOilSettlement.com. The proposed Settlement Class covers the time period of January 28, 2012 to the date of preliminary approval of this Agreement.

Plaintiff and Class Counsel have evaluated the information made available in the course of the lawsuit and have taken into account the risks and uncertainties of proceeding with this litigation, including the risks and uncertainties of class certification, prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and appeal. Based upon their consideration of these factors, plaintiff and Class Counsel believe it is in the best interests of the Class to settle the lawsuit on the terms described below.

Nature's Way denies plaintiff's allegations and any wrongdoing, and the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

<u>THE CLASS</u>

The Court has certified a Settlement Class consisting of:

> All persons who, during the Class Period, purchased Nature's Way Extra Virgin Coconut Oil or Nature's Way Liquid Coconut Oil bearing at least one labeling claim challenged in this action for personal or household use. Excluded from the Class are: (a) persons or entities who purchased Coconut Oil for the purpose of resale or distribution; (b) persons who are directors and Officers of Nature's Way or its parent, subsidiary, or affiliate companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Agreement; (e) persons who signed a release of Nature's Way for compensation for the claims arising out of the facts or claims asserted in the Action; and (f) any judicial officer hearing this Action, including his or her immediate family members and employees.

<u>DO I HAVE A LAWYER IN THE CASE?</u>

The Court has appointed The Law Office of Jack Fitzgerald, PC and The Law Office of Paul K. Joseph, PC, as Class Counsel in this case. The Court has determined that Class Counsel are qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases.

Nevertheless, you have the right to consult or retain an attorney of your choice at your own expense to advise you regarding the Settlement and your rights in connection with the Settlement and Final Approval Hearing described below.

<u>YOUR RIGHTS TO PARTICIPATE IN, EXCLUDE YOURSELF FROM, OR OBJECT TO THE SETTLEMENT</u>

The purpose of this Notice is to inform you of this lawsuit so you can make an informed decision as to whether you should remain in or opt out of this Class Action. Your legal rights are affected, and you have a choice to make now. In response to this Notice, you may (1) do nothing, (2) ask to be excluded from the lawsuit, (3) object to the proposed Settlement, or (4) submit a claim form. Those options are summarized in the following table, and then discussed in greater detail below.

| Your Legal Rights and Options in This Lawsuit | |
|---|---|
| **Submit a Claim Form** | The only way to get a monetary payment. Postmark or submit your Claim Form online by [DATE (within 45 days of commencement of full class notice)]. |

| Your Legal Rights and Options in This Lawsuit | |
|---|---|
| **Ask To Be Excluded** | **Get out of this lawsuit. Get no benefits from it. Keep rights.** <br><br> If you ask to be excluded you will not be bound by what the Court does in this case and will keep any right you might have to sue Nature's Way separately about the same legal claims in this lawsuit. If there is a recovery in this case, including under the proposed Settlement, you will not share in that recovery. To do so you must submit an opt out form no later than [by [DATE (within 45 days of commencement of full class notice)].] |
| **Object** | **Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.** <br><br> You may file a written objection no later than [DATE (14 days before fairness hearing], and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. |
| **Do Nothing** | **Stay in this lawsuit. Await the outcome. Give up certain rights.** <br><br> By doing nothing, you will get no cash payment and give up any right you may have to sue Nature's Way separately about the same legal claims in this lawsuit. |

1.     **Submit a Claim Form**

You must submit a Claim Form to get a monetary payment. Claim Forms may be printed or filed online at the Settlement Website, www.NaturesWayCoconutOilSettlement.com. Claim Forms are simple and easy to complete, requiring (a) personal/contact information, (b) a statement of the quantity of products purchased during the Class Period, and (c) your affirmation that the information provided is true and correct. In exchange for receiving a monetary payment, under the Settlement Agreement, you will give up your rights to sue Nature's Way about the same claims in this lawsuit.

**Claim forms must be postmarked, faxed, or submitted online no later than** [DATE (within 45 days of commencement of full class notice)]**.**

2.     **Exclude Yourself from the Settlement and Do Not Receive Compensation**

If you do not want to be bound by this settlement, you must request to be excluded from the Class. If you request to be excluded from the Class, you will retain any individual rights you have against Nature's Way and will not have "released" it from any claims. However, you will ***not*** receive the compensation described above. You may not object to the Settlement under this option. If you wish to be excluded from the Class (also referred to as "opting out"), you must download and print an Opt-Out Form from the Settlement Website (www.NaturesWayCoconutOilSettlement.com),

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4308   Page 191 of
212
Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.3984   Page 291 of 02

fill out and sign the form, and mail it to the class action administrator, postmarked on or before [DATE (within 45 days of commencement of full class notice)], at the following address:

RG2 Claims Administration
Attn: Nature's Way Coconut Oil Settlement
30 S. 17th St.
Philadelphia, PA 19103

**3.      Object to the Settlement**

If you want to express an objection to part or all of the Settlement, you may appear at the Final Approval Hearing and/or object to the proposed Settlement. If the Settlement is approved, you will still receive the Settlement compensation and be bound by the Settlement Release.

If you wish to object, you must, no later than  [DATE (14 days before fairness hearing],, file a signed, written objection with the Court, and serve copies on Class Counsel and Defense Counsel. The objection must contain:

      i.     The name of this Action ("*Sherry Hunter v. Nature's Way, et al.*, Case No. 3:16-cv-00532-WQH-AGS");

      ii.    The full name, address, and telephone number of the person objecting;

      iii.   The word "Objection" at the top of the document;

      iv.   An explanation of the basis upon which the person claims to be a Class member;

      v.    In clear and concise terms, the legal and factual arguments supporting the objection;

      vi.   The identity (name, address, and telephone number) of any counsel representing the person who will appear at the Fairness Hearing;

      vii.  A statement confirming whether the person intends to personally appear and/or testify at the Fairness hearing; and the person's signature or the signature of the person's duly authorized counsel or other duly authorized representative.


If you wish to appear at the Final Approval Hearing, you should, no later than [DATE (within 45 days of commencement of full class notice)], file with the Court and serve on Class Counsel and Defense Counsel at the addresses set forth below, a Notice of Intent to Appear, either in person or through an attorney.

More detailed instructions and requirements for objecting are set forth in the Court's Preliminary Approval Order, which is available on the Class Settlement Website, at www.NaturesWayCoconutOilSettlement.com.


Class Counsel                                       Defense Counsel
Jack Fitzgerald                                     Kevin W. Alexander, Esq.

The Law Office of Jack Fitzgerald, PC
3636 4th Ave., Ste. 202
San Diego, CA 92103

Paul K. Joseph
The Law Office of Paul K. Joseph, PC
4125 W. Pt. Loma Blvd., No. 309
San Diego, CA 92110

Thomas R. Watson, Esq.
Michael Bryant, Esq.
**GORDON & REES LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

**4.     Do Nothing**

If you do nothing, you will get no money from the Settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit or be part of any other lawsuit against Nature's Way about the claims in this case.

RELEASE OF CLAIMS

If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and will be forever barred from suing Nature's Way and related entities for the claims released in the Settlement. This applies whether you currently know about the existence of such claims or not.

Here, the claims you will give up are:

> any action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, arising out of the conduct alleged or otherwise referred to in the Action, specifically any claim arising from the purchase of any Coconut Oil product.

FINAL APPROVAL HEARING

The Court has scheduled a Final Approval Hearing (also referred to as a "Fairness Hearing") to determine whether the Court should approve the Settlement as fair, reasonable, and adequate to the Class, and whether Judgment should be entered in accordance with the Settlement Agreement. The Court will also consider at the Final Approval Hearing the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as well as the request of the Class Representatives for incentive awards for services rendered on behalf of the Class.

The Final Approval Hearing will occur at [DATE] Courtroom 14B, Suite 1480, 333 West Broadway, San Diego, CA 92101.

Your attendance at the Final Approval Hearing is not required. However, you may be heard orally at the hearing in opposition to the proposed Settlement if you wish. You may also enter an

Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 11/15/19   PageID.4310   Page 193 of
212
Case 3:16-cv-00532-WQH-AGS   Document 116-5   Filed 07/25/19   PageID.3985   Page 309 of 02

appearance through an attorney retained at your own expense. If you do not enter an appearance through an attorney, and do not object, Class Counsel will represent you at the hearing.

WHERE CAN I GET MORE INFORMATION?

The Notice's description of the case and Settlement is general. For more details of the matters involved in this lawsuit and the Settlement, you may review the Settlement agreement and related pleadings as set forth below.

If you want more detailed information about the lawsuit and proposed Settlement, including reviewing the Settlement documents, you may visit the Settlement Website at www.NaturesWayCoconutOilSettlement.com, contact RG2 Claims Administration  at [Insert Phone Number], or contact Class Counsel at (619) 692-3840.

If you wish to review the Court's docket in this case, you may do so at www.pacer.gov, the Court's public access website.

**DO NOT TELEPHONE OR ADDRESS ANY QUESTIONS ABOUT THE CASE OR SETTLEMENT TO THE CLERK OF THE COURT OR TO THE JUDGE. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS. THE COURT EXPRESSES NO VIEW AS TO THE MERITS OF ANY CLAIMS OR DEFENSES ASSERTED BY ANY PARTY TO THE ACTION.**

# Exhibit B



# Campaign Wrap Report

Nature's Way
9/16/19– 10/14/19

Reported On: 10/15/19

# Campaign Overview

## Nature's Way
9/16/19-10/14/19

The campaign has delivered the total amount of impressions, successfully accomplishing 16.9M impressions with the 4X print placement in the San Diego Union-Tribune . All tactics delivered their impression goals. Retargeting was implemented to drive claims filings.



2

# Daily Impressions

## Nature's Way
9/16/19-10/14/19

| IMPRESSIONS | 16-Sep | 17-Sep | 18-Sep | 19-Sep | 20-Sep | 21-Sep | 22-Sep | 23-Sep | 24-Sep | 25-Sep |
|---|---|---|---|---|---|---|---|---|---|---|
| Display | 76,480 | 72,214 | 70,574 | 70,091 | 64,374 | 57,871 | 62,780 | 65,744 | 42,598 | 40,898 |
| Google | 65 | 174 | 39 | 46 | 12 | 22 | 108 | 51 | 72 | 50 |
| Bing | - | 160 | 78 | 250 | 220 | 116 | 449 | 148 | 297 | 276 |
| Facebook | 349,919 | 449,374 | 562,892 | 554,298 | 564,443 | 564,944 | 579,004 | 576,232 | 496,560 | 449,515 |
| Imp Total | 426,464 | 521,922 | 633,583 | 624,685 | 629,049 | 622,953 | 642,341 | 642,175 | 539,527 | 490,739 |
| Web Users | 539 | 358 | 1,931 | 7,025 | 9,368 | 6,604 | 8,778 | 6,213 | 15,554 | 7,257 |
| Unique Web Users | 519 | 352 | 1,917 | 6,936 | 9,118 | 6,189 | 8,397 | 5,765 | 14,774 | 6,543 |

| IMPRESSIONS | 26-Sep | 27-Sep | 28-Sep | 29-Sep | 30-Sep | 1-Oct | 2-Oct | 3-Oct | 4-Oct | 5-Oct |
|---|---|---|---|---|---|---|---|---|---|---|
| Display | 61,071 | 66,708 | 58,315 | 57,859 | 103,047 | 95,413 | 94,104 | 95,510 | 93,300 | 92,929 |
| Google | 28 | 30 | 56 | 26 | 14 | 84 | 86 | 55 | 204 | 86 |
| Bing | 255 | 206 | 147 | 112 | 166 | 18 | 57 | 45 | 425 | 225 |
| Facebook | 385,552 | 407,551 | 332,727 | 373,391 | 363,563 | 691,866 | 378,282 | 391,042 | 378,372 | 205,210 |
| Imp Total | 446,906 | 474,495 | 391,245 | 431,388 | 466,790 | 787,381 | 472,529 | 486,652 | 472,301 | 298,450 |
| Web Users | 7,975 | 9,907 | 5,278 | 3,936 | 4,116 | 10,775 | 6,081 | 3,815 | 3,712 | 2,501 |
| Unique Web Users | 7,414 | 9,257 | 4,751 | 3,526 | 3,692 | 9,884 | 5,318 | 3,352 | 3,235 | 2,171 |

| IMPRESSIONS | 6-Oct | 7-Oct | 8-Oct | 9-Oct | 10-Oct | 11-Oct | 12-Oct | 13-Oct | 14-Oct | 15-Oct |
|---|---|---|---|---|---|---|---|---|---|---|
| Display | 93,403 | 124,301 | 117,579 | 109,277 | 87,907 | 87,608 | 87,298 | 88,098 | 133,308 | - |
| Google | 73 | 164 | 77 | 221 | 337 | 666 | 467 | 340 | 138 | - |
| Bing | 273 | 141 | 145 | 451 | 457 | 431 | 423 | 249 | 484 | - |
| Facebook | 372,883 | 338,338 | 351,960 | 332,074 | 18,251 | 250,827 | 309,232 | 792,345 | 306,689 | - |
| Imp Total | 466,632 | 462,944 | 469,761 | 442,023 | 106,952 | 339,532 | 397,420 | 881,032 | 440,619 | - |
| Web Users | 2,439 | 3,379 | 6,170 | 3,804 | 10,241 | 5,403 | 2,888 | 2,691 | 2,506 | - |
| Unique Web Users | 2,099 | 3,009 | 5,362 | 3,294 | 9,233 | 4,791 | 2,463 | 2,268 | 2,115 | - |

3

# Campaign Summary

## Nature's Way
### 9/16/19-10/14/19

The campaign successfully delivered all intended impressions. During the digital notice period, there were a total of 168,292 web sessions to the settlement website. Over the duration of the campaign there was a bounce rate of 4.46% and the average session time on the website was 1 minutes and 51 seconds.

## DIGITAL

**Display:** Completed
**Facebook:** Completed
**Search:** Completed

| GOAL | Achieved |
|------|----------|
| **16.9** | **16.9** |
| MM | MM |

## RESULTS:

| 168,292 Web Sessions | 4.46% Bounce Rate |
|----------------------|-------------------|

4

# Campaign Optimizations

## Nature's Way
9/16/19-10/14/19

| Campaign Notes | | | |
|---|---|---|---|
| 9/16/19 | Campaign Launched (Print, social, display, search) Search bids were lowered to extend budget, search keywords were sent to MediaMath for new audience targeting for (Coconut Oil Consumers) | 9/26/19 | optimized coconut oil consumer audience in MediaMath from AND/OR |
| 9/17/19 | lowered bid cap from 1.25 to 1.00 for facebook for both ad sets | 9/30/19 | optimized site lists in MediaMath and budget allocations for tactics |
| 9/20/19 | Watched Search keywords for best performing key phrases | 10/4/19 | shifted budget from social to search to optimize for impressions |
| 9/21/19 | Monitored audiences and optimized display budget to best targeted consumers | 10/8/19 | shifted search spend, adjusted facebook impressions cap and lp view bid cap |
| 9/23/19 | lowered bid cap from 1.00-0.75 for both ad sets in FB | 10/14/19 | Campaign Wrap |

5

# Engagement Funnel Analysis

## Nature's Way

9/16/19-10/14/19



**Funnel Analysis**

Impressions — 16.9M Impressions

Visits to Website — 630,812 Total Page Views

Click to "File a Claim" Page — 196,638 Sessions

File a Claim

## Insights and Trends

- Users that visited the site convert at a rate of 37.45%

- 1,373 users visited the Court Documents page

# Media

## Nature's Way
9/16/19-10/14/19

### Landing Page



### Display

# Media

## Nature's Way

9/16/19-10/14/19

**Landing Page**



**Paid Search**



# Media

## Nature's Way
9/16/19-10/14/19

### Landing Page



### Facebook





Additional Display Insights

# Display Summary

## Nature's Way Audiences

| **Coconut Oil Consumers Details** | **Nature's Way Lifestyle Details** |
|---|---|

**Strategy Type:** Audience Targeting

**Supply Type:**  RTB & Private Market Place (PMP)

**Open Supply:** All sources, above fold

**Frequency Cap:** Even 2/30 day

**Strategy Type:** Audience Targeting

**Supply Type:**  RTB & Private Market Place (PMP)

**Open Supply:** All sources, above fold

**Frequency Cap:** Even 2/30 day





**Audience:** Custom Keywords » Coconut Oil Keywords

Interest » Food & Drink » Healthy Cooking and Eating

Branded Data » Global Fifty » Lifestyle and Culture » Vegan Lifestyle

Lifestyle & Demographics » Vegan / Vegan Recipes

**Contextual Targeting:** DoubleVerify » DV OMNICHANNEL » DV Fraud & Invalid Traffic » Safe from Fraud & Invalid Traffic Devices

**Audience:**
Nielsen » Nielsen Keller Fay » Word of Mouth Influencers » Issues » Talks About Nutrition/Healthy Eating

Branded Data » USA » US Plunge Digital » Interest » Food and Cooking » Healthy Eating

Branded Data » USA » US Kantar MARS » Exercise, Diet and Nutrition » Healthy Eating Habits

**Contextual Targeting:** DoubleVerify » DV OMNICHANNEL » DV Fraud & Invalid Traffic » Safe from Fraud & Invalid Traffic Devices



**Site Lists:** Global Blacklist

**Geo-Location:** United States

**Site Lists:** Global Blacklist

**Geo-Location:** United States

# Display Summary

## Peripheral Audiences

## News/Weather Details

**Strategy Type:** Audience Targeting

**Supply Type:**  RTB & Private Market Place (PMP)

**Open Supply:** All sources, above fold

**Frequency Cap:** Even 2/30 day



**Audience:** BlueKai » Audiences by Oracle » Media and Entertainment » News and Current Events » Pop Culture

**Contextual Targeting:** DoubleVerify » DV OMNICHANNEL » DV Fraud & Invalid Traffic » Safe from Fraud & Invalid Traffic Devices



**Site Lists:** Global Blacklist

**Geo-Location:** United States

12



Additional Social Insights

# Social Media Summary



## Nature's Way Facebook
9/16/19-10/14/19

Facebook: Interest
Targeting: Coconut milk,
Coconut, Nature's Way,
Coconut oil, Coconut water
or Coconut Oil Tips





Facebook: Interest
Targeting: Organic food,
Healthy food, Natural
product, weight Loss
(fitness & wellness),
Healthy diet, Natural
foods or Eating Healthy

# Website Visitation



# Exhibit C





**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**NOTICE OF CLASS ACTION SETTLEMENT**

*SHERRY HUNTER, v. NATURE'S WAY PRODUCTS, LLC ET AL.,*
CASE NO. No. 16-cv-532-WQH-BLM (S.D. Cal.)

**The United States District Court has authorized this notice.
This is not a solicitation from a lawyer.**

**IF YOU PURCHASED NATURE'S WAY EXTRA VIRGIN COCONUT OIL OR LIQUID COCONUT OIL, YOU MAY BE ENTITLED TO A CASH PAYMENT**

This settlement resolves a lawsuit against Nature's Way Products, LLC, and Schwabe North America, Inc., (referred to collectively as "Nature's Way"), alleging that Nature's Way, which marketed and sold the Nature's Way Extra Virgin Coconut Oil and Liquid Coconut Oil that are the subject of the Action, violated certain California laws by misleadingly marketing the products as healthy. Nature's Way denies the allegations and any wrongdoing.

You are a member of the settling class if you purchased Nature's Way Extra Virgin Coconut Oil in a 16-ounce or 32-ounce jar or Nature's Way Liquid Coconut Oil in a 10-ounce or 25-ounce bottle, distributed by Nature's Way during the Class Period (January 28, 2012 to August 30, 2019), for your own personal or household use, and not for resale, bearing at least one of the claims below:

* "Healthy"
* "Ideal for Exercise and Weight Loss Programs"
* "Recommendation: Take 1 tablespoon (14 g) up to 4 times daily"
* "Non-hydrogenated, no trans fat," unless the statement, "See Supplement Facts for total fat and saturated fat content," was displayed near the phrase "Non-hydrogenated, no trans fat"

The options available to class members are summarized as follows:

| Your Legal Rights and Options in This Lawsuit | |
|---|---|
| **Submit a Claim Form** | The only way to get a monetary payment. Postmark or submit your Claim Form online by October 31, 2019. |
| **Ask To Be Excluded** | Get out of this lawsuit. Get no benefits from it. Keep rights.<br><br>If you ask to be excluded you will not be bound by what the Court does in this case and will keep any right you might have to sue Nature's Way separately about the same legal claims in this lawsuit. If there is a recovery in this case, including under the proposed Settlement, you will not share in that recovery. To do so you must submit an opt-out form no later than October 31, 2019. |
| **Object** | Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.<br><br>You may file a written objection no later than November 25, 2019, and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. |
| **Do Nothing** | Stay in this lawsuit. Await the outcome. Give up certain rights.<br><br>By doing nothing, you will get no cash payment and give up any right you may have to sue Nature's Way separately about the same legal claims in this lawsuit. |

To be excluded you must act on or before October 31, 2019. To object you must act on or before November 25, 2019.

For a more detailed long-form Notice providing further information and specific instructions on how to exercise your options, please visit the Settlement Website at:

www.naturewaycoconutsettlement.com/index.html