UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY HUNTER, on behalf of herself, all others similarly situated and the general public,<br><br>                             Plaintiffs,<br><br>v.<br><br>NATURE'S WAY PRODUCTS, LCC, and SCHWABE NORTH AMERICA, INC.,<br><br>                          Defendants. | Case No.:  3:16-cv-532-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

      The matter pending before the Court is the Motion for Settlement Final Approval, and for Attorneys' Fees, Costs, and Incentive Award filed by Plaintiff Sherry Hunter.  (ECF No. 116).

## PROCEDURAL BACKGROUND

      On January 28, 2016, Plaintiffs Sherry Hunter and Malia Levin, on behalf of herself and all others similarly situated and the general public, initiated this action by filing a Class Action Complaint against Defendants Nature's Way Products, LLC ("Nature's Way") and Schwabe North America, Inc. ("Schwabe") in the Superior Court of California, County of San Diego. (ECF No. 1-5 at 2-3).  Plaintiff alleges that Defendants misleadingly

market Nature's Way coconut oil products as inherently healthy and healthy alternatives to butter, margarine, shortening, and other cooking oils. (ECF No. 1-5 at 3; ECF No. 96 at 2). Plaintiff alleges that Nature's Way coconut oil products are inherently unhealthy and less health options compared to the alternatives. (ECF No. 1-5 at 3; ECF No. 96 at 2). Plaintiff alleges that she was harmed as a result of her reliance upon Defendants' misleading and unlawful claims when purchasing Nature's Way coconut oil products. (ECF No. 1-5 at 3; ECF No. 96 at 2). Plaintiff brings claims for violations of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750), violations of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), violations of False Advertising Law (Cal. Bus. & Prof. Code § 17500), breach of express warranties (Cal. Com. Code § 2313(1)), and breach of implied warranty of merchantability (Cal. Com. Code § 2314). (ECF No. 1-5 at 3; ECF No. 96 at 2). Plaintiff seeks an order compelling Defendants to cease marketing Nature's Way coconut oil products using allegedly misleading and unlawful tactics; to destroy all allegedly misleading, deceptive, and unlawful materials; to conduct a corrective advertising campaign; to restore amounts by which Defendants have been unjustly enriched; and to pay restitution, damages, and attorneys' fees. (ECF No. 1-5 at 3; ECF No. 96 at 2).

On March 2, 2016, Defendants removed the action to this Court. (ECF No. 1).

On August 12, 2016, this Court issued an Order granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 12) and denying Defendants' Motion to Strike (ECF No. 13). (ECF No. 28).

On September 2, 2016, Defendants filed an Answer to the Complaint. (ECF No. 31).

On March 23, 2017, this Court issued an Order dismissing Plaintiff Malia Levin's individual claims without prejudice. (ECF No. 49).

On January 9, 2018, this Court issued an Order denying Plaintiff's Motion for Class Certification (ECF No. 60) as moot; granting Plaintiff's Motions to File Documents Under

Seal (ECF Nos. 61 and 77); and granting Plaintiff's Motion for Reconsideration (ECF No. 85). (ECF No. 90).

On January 30, 2018, Plaintiff filed the First Amended Complaint ("FAC"). (ECF No. 95). On February 12, 2018, Plaintiff filed the Second Amended Complaint ("SAC"). (ECF No. 96).

On February 21, 2018, the Court held an Early Neutral Evaluation during which the parties reached a settlement. (ECF No. 97).

On February 26, 2018, Defendants filed an Answer to Plaintiff's SAC. (ECF No. 98).

On July 3, 2018, this Court issued an Order granting the parties' Joint Motion to Stay (ECF No. 103). (ECF No. 104). On June 27, 2019, this Court issued a Minute Entry lifting the stay. (ECF No. 110).

On August 30, 2019, this Court issued an Order granting Plaintiff's Motion for Preliminary Approval of Class Settlement (ECF No. 111). (ECF No. 113). On September 5, 2019, this Court issued an Amended Order granting Plaintiff's Motion for Preliminary Approval of Class Settlement. (ECF No. 115). In the Amended Order, this Court preliminarily approved the settlement agreement; provisionally certified the Class; appointed Plaintiff as Class Representative; appointed The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC as Class Counsel; approved RG2[1] to act as Claims Administrator; and approved the form and content of the Class Notice in the form attached to the Settlement Agreement as Exhibit A. *Id*. at 2-3.

On November 15, 2019, Plaintiff filed a Motion for Settlement Final Approval, and for Attorneys' Fees, Costs, and Incentive Award. (ECF No. 116). On December 2, 2019, Plaintiffs filed a Supplemental Declaration. (ECF No. 117). RG/2 states that it has received zero valid requests to opt-out as of December 2, 2019. *Id*. at 5. RG/2 states that

---

[1] The parties refer to the Claims Administrator as RG2 and RG/2 interchangeably.

"both RG/2 and the attorneys of record have not received or been made aware of any objections to the settlement" as of December 2, 2019. *Id*. On December 5, 2019, Defendants filed Notice of Non-Opposition. (ECF No. 118). On December 13, 2019 this Court held a final approval hearing. (ECF No. 119). No Class member appeared.

## TERMS OF THE PROPOSED SETTLEMENT

### I. The Class

The proposed settlement class (the "Class") consists of "all persons in the United States who purchased during the Class Period, for personal or household use, any Nature's Way coconut oil product bearing at least one of the challenged labeling claims, and including specifically the 16-ounce or 32-ounce jar of Nature's Way Extra Virgin Coconut Oil, and any bottle of Nature's Way Liquid Coconut Oil, including the 10-ounce and 20-ounce bottles." (ECF No. 116-1 at 9) (citing Settlement Agreement ¶¶ 1.3, 1.10, Ex. 1 to Fitzgerald Decl., ECF No. 111-2 at 8, 9-10). The Class Period began on January 18, 2012 to August 30, 2019, the date this Court issued preliminary approval. *Id*.

### II. Class Benefits

"For a period of five years following Final Approval, Defendants will not advertise (including in print, online, on Coconut Oil Product labels or packaging, and in sales pitches or public statements) the Nature's Way Coconut Oil Products using the following terms and phrases, or substantially similar terms or phrases: 'Healthy'; 'Ideal for Exercise and Weight Loss Programs'; 'Recommendation: Take 1 tablespoon (14 g) up to 4 times daily'; 'Non-hydrogenated, no trans fat' (unless the statement is made with the disclosures required by the FDA)." *Id*. at 9-10 (citing Settlement Agreement ¶ 2.2; Ex. 1 to Fitzgerald Decl., ECF No. 111-2 at 11). "Defendants have established a non-reversionary $1,850,000 common fund to pay Class Member claims and all Settlement expenses, namely notice and administration, and any incentive award and attorneys' fees and costs awarded by the Court. *Id*. at 10 (citing Settlement Agreement ¶ 2.3; Ex. 1 to Fitzgerald Decl., ECF No. 111-2 at 11-12).

### III.  Class Notice

"On July 31, 2019, RG/2 caused to be served by Federal Express or Certified Return Receipt Requested First-Claim mail, where applicable, a Notice of Proposed Settlement to the United States Attorney General and 57 State and Territory Attorney Generals." (Boub Decl. ¶ 4, ECF No. 116-5 at 2; Ex A. to Boub Decl., ECF No. 116-5 at 7-193).

On September 16, 2019, the website www.natureswaycoconutoilsettlement.com went live.  (Boub Decl. ¶ 5, ECF No. 116-5 at 3).  "The 'Homepage' contains a brief summary of the Settlement and advises potential Class Members of their rights under the Settlement."  *Id*.  "The 'Notice/Claim Form' page contains a pdf copy of the Court-Ordered Notice and Settlement Claim Form."  *Id*.  "The 'File a Claim' page [] [sic] contains a link to the Claims online filing portal."  *Id*.  "The 'Court Documents' page contains[: the] [sic] Initial Complaint, [t]he First Amended Complaint, [t]he Second Amended Complaint, [t]he Stipulation of the Class Action Settlement, the Order Granting Motion for Preliminary Approval, and the Amended Order Granting Motion for Preliminary Approval."  *Id*.  "The 'Contact' page contains the contact information of the Claims Administrator and Plaintiffs' Counsel."  *Id*.

On September 16, 2019, RG/2 arranged for the launching of a 29-day media campaign.  *Id*. at ¶ 6, ECF No. 116-5 at 3.  The media plan consisted of

a) A Facebook campaign where potential Class Members could click on ads posted in Facebook and associated platforms, such as Instant Articles and Messenger.  The clicked ad is linked to the case website;

b) A banner ad campaign in which banner ads were created and appeared on various sites based on topics being searched. Class Members who saw the ads were able to click on the ad and be linked directly to the case website;

c) Bing and Good Adwords pay per click campaigns in which various search words/phrases produced an ad in which Class Members could click and be linked to the case website.

*Id*., ECF No. 116-5 at 3-4; Ex B. to Boub Decl., ECF No. 116-5 at 194-209.

RG/2 also arranged for the Short Form Notice to be published in the San Diego Union-Tribune.  (Boub Decl. ¶ 7, ECF No. 116-5 at 4; Ex C. to Boub Decl., ECF No. 116-

5

5 at 211-12). "The Short Form Notice was published on September 16, 2019; September 23, 2019; September 30, 2019; and October 7, 2019." (Boub Decl. ¶ 7, ECF No. 116-5 at 4).

## IV.  Opt-Outs and Objections to Settlement

"The Short Form Notice advised Class Members of their right to exclude themselves from the Settlement, provided that their request be postmarked by October 31, 2019." (Boub Decl. ¶ 8, ECF No. 116-5 at 4). As of December 2, 2019, "RG/2 has received 0 valid requests" to opt-out. *Id.* (Boub Decl. ¶ 4, ECF No. 117 at 5).

"The Short Form Notice advised Class Members of their right to object to the Settlement, provided that their objection be filed with the Court by November 25, 2019." (Boub Decl. ¶ 9, ECF No. 116-5 at 4). As of December 2, 2019, "both RG/2 and the attorneys of record have not received or been made aware of any objections to the settlement." (Boub Decl. ¶ 5, ECF No. 117 at 5).

## V.  Notice and Administration Costs

Pursuant to this Court's September 5, 2019 Amended Order approving the form and content of the Class Notice in the form attached to the Settlement Agreement as Exhibit A (ECF No. 115 at 3), "Class Administrator, RG2, subsequently executed the Notice Plan in accordance with the Settlement Agreement." (ECF No. 116-1 at 10) (citing Boub Decl. ¶¶ 3-7, ECF No. 116-5 at 2-4). In Plaintiff's Motion for Preliminary Approval, "RG2 estimated total cost of notice and administration of $128,599, based on an anticipated approximately 21,000 claims." *Id.*; *see* ECF No. 111-1 at 14. Approximately 76,416 claims have been received. (ECF No. 116-1 at 19). "RG2 now estimates total costs of notice and administration will be approximately $224,262" because of "the increased cost of processing and mailing (postage costs) for the higher-than-estimated number of claims" (ECF No. 116-1 at 10; Boub Decl. ¶¶ 12-13, ECF No. 116-5 at 5).

## VI.  Attorney's Fees and Costs

Plaintiff asserts that "[a]s of November 5, 2019, Class Counsel ha[s] expended over 1,270 hours of work on this matter, incurring a fee lodestar of $809,468.50." (ECF No.

116-1 at 11).  Pursuant to the Settlement Agreement, Class Counsel "request[s] herein a fee award of only $610,500, which is approximately 75% of Counsel's lodestar."  *Id*.  "Counsel also request reimbursement for $258,430.19 in out-of-pocket expenses."  *Id*.; Joseph Decl. ¶¶ 13-14, ECF No. 116-2 at 5; Fitzgerald Decl. ¶¶ 42-44, ECF No. 116-3 at 9.

## VII.  Incentive Award

"Plaintiff requests an incentive award of $7,500 for her work as the Class Representative."  (ECF No. 116-1 at 11).

## DISCUSSION

## I.  Class Certification

Plaintiff seeks certification of a settlement class under Federal Rule of Civil Procedure 23(b)(3).

> "To obtain certification of a class action ... under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s [ ] prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. 455, 460 (2013) (internal citations omitted).

In this case, this Court previously preliminarily certified the proposed settlement class.  (ECF No. 115 at 2).  At that time, this Court concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  *Id.*  This Court also found that the proposed class satisfied the predominance and superiority requirements of Rule 23(b)(3).  *Id.*  No party or class member has objected to certification of the settlement class.  The Court reaffirms its prior certification of the lass for purposes of settlement.

## II. Notice

In this case, this Court previously approved of "the form and content of the Class Notice in the form attached to the Settlement Agreement as Exhibit A." *Id*. at 3. This Court found that

> dissemination of the Class Notice as proposed in the Settlement Agreement meets the requirements of Federal Rule of Civil Procedure 23(c)(2), and due process, and further constitutes the best notice practicable under the circumstances.

*Id*. The Court reaffirms its prior approval of the form and content of the Class Notice for purposes of settlement.

## III. Fairness of the Settlement

### a. Standard of Review

Courts require a higher standard of fairness when a settlement takes place prior to formal class certification to ensure Class Counsel and Defendant have not colluded in settling the case. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). "The question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027.

Courts consider several factors when determining whether a proposed "settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon,* 150 F.3d at 1027). These factors may include one or more of the following: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the settlement).

### b. Analysis

#### 1. The strength of the case and the risk, expense, complexity, and likely duration of further litigation

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'")

Plaintiff asserts that the settlement is fair and reasonable in light of the risk, expense, complexity, and likely duration of further litigation if the case were to proceed to trial. (ECF No. 116-1 at 13-15). Plaintiff asserts that "the labels Defendants used changed repeatedly between May 2010 and July 2015," which Defendants argued made certification inappropriate and posed "a significant risk the Class would not be certified." *Id.* at 13-14 (citing ECF No. 74 at 22-23). Plaintiff contends that "[t]here are also unique challenges in proving Plaintiff's damages model as a result of Defendants' use of different labels, at different times, bearing different challenged statements." *Id.* at 14. Plaintiff asserts that "there is no guarantee Plaintiff could obtain and maintain class certification through trial"

and "even if Plaintiff had obtained certification, it would have been on behalf of a California class only, whereas the Settlement resolves the claims of a nationwide class." *Id*. Plaintiff asserts that it would be expensive and risky to continue the litigation and proceed to summary judgment and trial. *Id*. at 15 (citing Fitzgerald Decl. ¶ 15, ECF No. 111-2 at 4). Given these risks, the Court agrees that the actual recovery through settlement confers substantial benefits on the Class that outweigh potential recovery through full adjudication.

## 2. The stage of the proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239 (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir. 1982)) (internal quotations omitted). As long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Id.* In this case, "[s]ignificant discovery and investigation has been completed," allowing the parties to make an informed analysis. (ECF No. 116-1 at 15). The parties have exchanged tens of thousands of pages documents and written discovery responses, and have consulted with experts on merits and damages issues. *Id.* The parties have engaged in extensive settlement discussions through the course of this case, including a settlement conference with a Magistrate Judge. The parties' extensive investigation, discovery, and subsequent settlement discussions during that time weigh heavily in favor of granting final approval.

## 3. The settlement amount

To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 459. While settlement amounts that are close to the plaintiffs' estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair. *Id.* (finding

settlement amount constituting one-sixth of the potential recovery was fair and adequate). Thus, district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation. *See Shames v. Hertz Corp.,* No. 07-cv-2174-MMA(WMC), 2012 WL 5392159, at *6 (S.D. Cal. Nov. 5, 2012); *see e.g.*, *Williams v. Costco Wholesale Corp.,* No. 02cv2003 IEG (AJB), 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (finding settlement amount constituting approximately 75.6% of the plaintiffs' claimed losses from unpaid overtime pay to be adequate); *Glass v. UBS Fin. Serv., Inc.,* No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

Plaintiff contends that the Class's estimated recovery is approximately $12,900,000.00. (ECF No. 116-1 at 16). The proposed settlement provides the Class with a $1,850,000.00 common fund. Plaintiff asserts that "Class [m]embers will receive an average $3.27 *per unit* claimed and approximately $9.87 per claimant." *Id*. Given the risk, expense, complexity, and duration of further litigation, the Court finds that the amount and terms of the proposed monetary benefits to the Class members are fair and reasonable.

### 4. Whether the Class has been fairly and adequately represented during settlement negotiations

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's outcome in litigation." *Rodriguez*, 563 F.3d at 967. Counsel who represented the Class included experienced attorneys at The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC. The attorneys have "an especially strong understanding of this case, both on merits and potential damages, not only from litigating against the Defendants here for over two years, but based on other coconut oil class actions." (ECF No. 116-1 at 18; Fitzgerald Decl. ¶ 9, ECF No. 111-2 at 3; Joseph Decl. ¶¶ 5-6, 8-10, ECF No. 111-3 at 3-4). Plaintiffs' attorneys are well qualified to conduct this litigation and to assess its settlement value. The Court

finds that the Class has been fairly and adequately represented during settlement negotiations.

### 5. The reaction of the Class to the proposed settlement

The Court of Appeals has held that the number of class members who object to a proposed settlement is a factor the Court may consider in its settlement approval analysis. *Shames,* 2012 WL 5392159, at *8 (citing *Mandujano v. Basic Vegetable Prods. Inc.,* 541 F.2d 832, 837 (9th Cir. 1976)). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *Id.; see also In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 175 (S.D. N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the Class filed no opposition).

In this case, Class Notice was given by mail (Federal Express or Certified Return Receipt Requested First-Claim mail), website, media campaign, and newspaper publication. There have been no requests for exclusion and no objections. The lack of requests for exclusion and objections favors approval of the settlement.

### 6. Absence of collusion in the settlement process

The Court of Appeals has characterized the "inherent dangers of class settlements as encompassing the possibility that 'the agreement ... is the product of fraud or overreaching by, or collusion between, the negotiating parties....'" *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Officers for Justice,* 688 F.2d at 625). "That is why district court review of class action settlements includes . . . consideration of whether there was *actual* fraud, overreaching or collusion." *Id*.

In this case, on February 21, 2018, the parties attended a settlement conference with Magistrate Judge Schopler. (Fitzgerald Decl. ¶ 8, ECF No. 111-2 at 2). "After substantial negotiations, and only on the basis of a mediator's proposal Judge Schopler made when the parties could not reach agreement themselves, the parties finally reached the instant settlement." *Id*., ECF No. 111-2 at 2-3. Participation of a mediator is not dispositive, but

is "a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 948 (9th Cir. 2011); *see also Amunrud v. Sprint Commc'ns Co.,* No. CV 10-57-BLG-CSO, 2012 WL 443751, at *3 (D. Mont. Feb. 10, 2012) (finding absence of signs of collusion based, in part, on mediator's participation); *In re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31, 2011) (same).

### c. Conclusion

The Court finds that the settlement is fundamentally "fair, adequate and reasonable" under Rule 23(e), and that no evidence of collusion exists. The Court grants the Motion for Final Approval of Class Action Settlement (ECF No. 116).

## IV. Attorney's Fees and Costs

### a. Standard of Review

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth,* 654 F.3d at 942.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Morales v. City of San Rafael,* 96 F.3d 359, 363 n. 8 (9th Cir. 1996).

The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. *Hensley v. Eckerhart,* 461 U.S. 424 (1983). But as the Supreme Court has noted, trial courts may use "rough" estimations, so long as they apply the correct standard. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### b. Analysis

The Court applies the lodestar method to calculate and evaluate attorneys' fees. Plaintiff provides the Court with declarations from Jack Fitzgerald and Paul Joseph in support of the Motion for Attorneys' Fees. (ECF Nos. 116-2, 116-3).

Class Counsel calculated the lodestar using current billing rates for the five attorneys who worked on this case: $750 per hour for Jack Fitzgerald (of The Law Office of Jack Fitzgerald, PC); $575 per hour for Trevor Flynn (an associate of The Law Office of Jack Fitzgerald, PC); $510 per hour for Melanie Persinger (an associate of The Law Office of Jack Fitzgerald, PC); $600 per hour for Paul K. Joseph (of The Law Office of Paul K. Joseph, PC); and $500 per hour for Richelle Kemler Vanden Bergh (associate of The Law Office of Paul K. Joseph, PC). (ECF No. 116-1 at 26). Plaintiff asserts that the requested rates are reasonable "because they are in line with previous fee awards and rates charged for similar complex class action litigation by attorneys here in Southern California with comparable experience, skill, and reputation." *Id*. (citing Fitzgerald Decl. ¶¶ 9-12, ECF No. 116-2 at 4; Joseph Decl. ¶¶ 14-41, ECF No. 116-3 at 4-9). Plaintiff asserts that the requested rates are reasonable because other District Courts in the Southern District of California have found a blended rate of $708 to be reasonable. *Id*. at 26-27 (citing *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (S.D. Cal. Aug. 9, 2010)). The Court finds that the hourly rates charged are reasonable.

Class Counsel asserts that they have spent approximately 1,270.8 hours in prosecuting this action at the time the Motion for Settlement Final Approval, and for Attorneys' Fees, Costs, and Incentive Award was filed. *Id*. at 25. The Law Office of Jack Fitzgerald, PC has expended 617.0 hours in prosecuting this action. (Fitzgerald Decl. ¶ 7, ECF No. 116-2 at 3). The Law Office of Paul K. Joseph, PC has expended approximately 653.8 hours in prosecuting this action. (Joseph Decl. ¶ 13, ECF No. 116-3 at 4). Class Counsel has not provided detailed time records, but instead provides general summaries of each firm's billing time. (ECF No. 116-1 at 23-25; Fitzgerald Decl. ¶¶ 7-8, ECF No. 116-2 at 3; Joseph Decl. ¶¶ 10-11, ECF No. 116-3 at 3-4). The summaries and declarations provide a sufficient showing of the hours counsel performed on this case.

As of November 15, 2019, when the Motion for Settlement Final Approval, and for Attorneys' Fees, Costs, and Incentive Award was filed, Class Counsel's total fee lodestar in this action was $809,468.50. (ECF No. 116-1 at 23). The total lodestar for The Law Office of Jack Fitzgerald, PC was $424,158.50. (Fitzgerald Decl. ¶ 7, ECF No. 116-2 at 3). The total lodestar for The Law Office of Paul K. Joseph, PC was $385,310.00. (Joseph Decl. ¶ 13, ECF No. 116-3 at 4). Class Counsel's calculation of a $809,468.50 lodestar amount is both appropriate and "presumptively reasonable," after multiplying the reasonable hourly rate by the number of hours. *In re Bluetooth,* 654 F.3d at 941 (citing *Cunningham v. Cnty. of L.A.,* 879 F.2d 481, 488 (9th Cir. 1988)). Pursuant to the Settlement Agreement, Class Counsel requests herein a fee award of $610,500.00, approximately 75% of Class Counsel's lodestar. (ECF No. 116-1 at 11). No class members have objected to Class Counsel's intent to seek an attorneys' fee award of $610,500.00. Class Counsel's $610,500.00 fee request is reasonable because it represents a 25% reduction of the lodestar. *See Shames,* 2012 WL 5392159, at *19 ("In light of this presumptively reasonable lodestar, Plaintiffs' $5,123,336.00 fee request is reasonable, as it represents a *20% reduction* of the lodestar.).

Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton,* 327 F.3d at 974.

Class Counsel asserts that they have expended $258,430.19 in un-reimbursed expenses in the prosecution of this action. (ECF No. 116-1 at 30). The Law Office of Jack Fitzgerald, PC has incurred $59,948.30 in costs. (Fitzgerald Decl. ¶ 13, ECF No. 116-2 at 5). The Law Office of Paul K. Joseph, PC has incurred $198,481.89 in costs. (Joseph Decl. ¶ 42, ECF No. 116-3 at 9). Class counsel seeks reimbursement of their out-of-pocket expenses in the amount of $258,430.19. (ECF No. 116-1 at 30). No class members have objected to Class Counsel's intent to seek reimbursement of $258,430.19 in costs. The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class, and shall be reimbursed in full in the amount requested.

### c. Conclusion

The Court approves the award of attorneys' fees, as well as Class Counsel's request for litigation costs and expenses, in the total amount of $868,930.19.

## V. Incentive Award

Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfiend Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995), which analyzes (1) risk to the Class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *Shames,* 2012 WL 5392159, at *21 (citing *Carter v. Anderson Merchs., LP,* No. EDCV 08-0025-VAP(OPx), 2010 WL 1946784 (C.D. Cal. May 11, 2010)).

16

Class Representative Sherry Hunter requests a $7,500.00 incentive payment to compensate her for her services as court appointed Class Representative. (ECF No. 116-1 at 30). The above factors weigh in favor of approving the service award requested. Plaintiff Hunter has protected the interest of the Class. (Hunter Decl. ¶¶ 3-5, ECF No. 116-4 at 2). For almost four years, Plaintiff Hunter has invested considerable time and effort to provide her counsel with all the requested assistance, to help draft and review numerous documents, to carefully consider the terms of the settlement, and to help to seek approval of the settlement. *Id.* ¶ 15, ECF No. 116-4 at 3. Plaintiff fully participated in all aspects of the case. *Id.* ¶¶ 6-15, ECF No. 116-4 at 2-3. The class has benefitted from these actions by, *inter alia,* receiving a settlement that represents an approximate 14.3% of the largest potential judgment after trial. (ECF No. 116-1 at 16). No class members have objected to Plaintiff's intent to seek an incentive award of $7,500.00.

The $7,500.00 incentive award is within the acceptable range of approval and does not appear to be the result of collusion. *See, e.g., Van Vranken,* 901 F.Supp. at 300 (approving an award of $50,000 for the named plaintiff); *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("[T]he settlement provides for an incentive award to the Plaintiff in the amount of $10,000. In this District, a $5,000 incentive award is presumptively reasonable. . . . However, since the final amount of the incentive award is a matter of the Court's discretion, the Court finds that the generous incentive award authorized by the Settlement does not necessarily render the settlement unfair or unreasonable."); *Williams,* 2012 WL 2721452, at *7 (S.D. Cal. Jul. 7, 2010) (approving a $5,000 award to a class representative in an antitrust case settling for $440,000). The Court finds the requested incentive award of $7,500.00 to be reasonable.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Settlement Final Approval, and for Attorneys' Fees, Costs, and Incentive Award filed by Plaintiff Sherry Hunter (ECF No. 116) is GRANTED as follows:

1. The Settlement and Settlement Agreement are hereby approved as fair, reasonable, adequate, and in the best interests of the Class, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied. The parties are ordered and directed to comply with the terms and provisions of the Settlement Agreement.

2. The Court, having found that each of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, for purposes of settlement only, the Class is permanently certified pursuant to Federal Rule of Civil Procedure 23, on behalf of the following persons:

All persons in the United States who purchased, for personal or household use, any Nature's Way coconut oil product bearing at least one of the challenged labeling claims, and including specifically the 16-ounce or 32-ounce jar of Nature's Way Extra Virgin Coconut Oil, and any bottle of Nature's Way Liquid Coconut Oil, including the 10-ounce and 20-ounce bottles.

The Court adopts and incorporates by reference its preliminary conclusions as to the satisfaction of Rules 23(b)(3) set forth in the Amended Order Granting Preliminary Approval (ECF No. 115).

3. For purposes of Settlement only, the named Plaintiff is certified as Representative of the Class and Class Counsel is appointed to the Class. The Court concludes that Class Counsel and the Class Representative have fairly and adequately represented the Class with respect to the Settlement and the Settlement Agreement.

4. Notwithstanding the certification of the foregoing Class and appointment of the Class Representative, for purposes effecting the Settlement, if this Order is reversed on appeal or the Settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of the Class and appointment of the Class Representative shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each

occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

5. Plaintiff and all Class members who are not excluded shall be deemed to fully and irrevocably release, waive, and discharge Defendant and each of its respective past, present and future owners, stockholders, parent corporations, related or affiliated companies, subsidiaries, officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, from any and all past, present, and future liabilities, claims, causes of actions (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), damages, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, or suspected or unsuspected, which Plaintiffs and all Class members have or may have arising out of or relating to any act, omission, or other conduct alleged or otherwise referred to in the Action (the "Released Claims").

6. With respect to the Released Claims, Plaintiff and all Class Members who are not excluded shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of the general release. Section 1542 provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

7. The Court has reviewed the application for an award of fees, costs, and expenses submitted by Class Counsel and the exhibits, memoranda of law, and other

materials submitted in support of that application. The Court recognizes that Defendant has not opposed the application for an incentive award of $7,500.00 to be paid by Defendant, an award of attorneys' fees of $610,500 to be paid by Defendant, and costs of $258,430.19 to be paid by Defendant. This agreement is in addition to the other relief to be provided to Class members under the Agreement. On the basis of its review of the foregoing, the Court finds that Class Counsel's request for attorneys' fees and expenses is fair, reasonable, and appropriate and hereby awards fees and expenses to Class Counsel in the aggregate amount of $868,930.19 and an incentive award to Plaintiff in the amount of $7,500.00 to be paid by Defendant in accordance with the terms of the Settlement Agreement.

8.  The Court has considered the costs of the Claim Administrator, RG/2 Claims Administration LLC, which it estimates as $224,262. The Court approves RG/2 Claims Administration LLC's actual costs, up to (but no greater than) $224,262.

9.  One hundred eighty (180) days after the payment of Valid Claims, Plaintiff and Defendants may jointly request in writing that the Claim Administrator have funds from uncashed checks remaining in the Common Fund be paid to the American Heart Association and, upon such request, the Claim Administrator shall make such distribution, without further Court approval. Any disputes that concern the disbursement of such funds will be resolved by the Court based upon a noticed motion.

10. Neither the Settlement Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Plaintiff, any Class Member, Defendant, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the action are or are not meritorious, and this

Order, the Settlement Agreement or any such communications shall not be offered or received in evidence in any action or proceedings, or be used in any way as an admission or concession or evidence of liability or wrongdoing of any nature or that Plaintiff, any Class member, or any other person has suffered any damage; *provided, however,* that the Settlement Agreement, this Order, and the final Judgment to be entered thereon may be filed in any action by Defendant or Class members seeking to enforce the Settlement Agreement or the final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata,* collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Settlement Agreement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future actions or other proceedings as to Released Claims and other prohibitions set forth in this Order that are maintained by, or on behalf of, the Class members or any other person subject to the provisions of this Order.

11. In the event that the Settlement Agreement does not become effective or is cancelled or terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the final Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

12. The action and the claims alleged therein are hereby ordered DISMISSED with prejudice.

/ / /

13. Without in any way affecting the finality of this Order and the final Judgment, the Court hereby retains jurisdiction as to all matters relating to the interpretation, administration, and consummation of the Settlement Agreement.

Dated:  January 6, 2020

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court